1    **TRANSCRIBED FROM DIGITAL RECORDING**

2                    IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
3                          EASTERN DIVISION

4    THOMAS SIERRA,                          )
                                             )
5                   Plaintiff,               )
                                             )
6              vs.                           )   No. 18 C 3029
                                             )
7    REYNALDO GUEVARA, et al,                )   Chicago, Illinois
                                             )   April 22, 2019
8              Defendants.                   )   9:58 A.M.

9                    TRANSCRIPT OF PROCEEDINGS - Motion
         BEFORE THE HONORABLE M. DAVID WEISMAN, Magistrate Judge
10

     APPEARANCES:
11

     For the Plaintiff:        LOEVY & LOEVY
12                             311 North Aberdeen
                               Third Floor
13                             Chicago, Illinois  60607
                               BY:  MR. ANAND SWAMINATHAN
14

     For Defendant Officers:   THE SOTOS LAW FIRM, P.C.
15                             141 West Jackson Boulevard
                               Suite 1240A
16                             Chicago, Illinois  60604
                               BY:  MR. DAVID ANDREW BRUEGGEN
17                                  MR. JOSH MICHAEL ENGQUIST

18   For Defendant City:       ROCK FUSCO & CONNELLY, LLC
                               321 North Clark Street
19                             Suite 2200
                               Chicago, Illinois  60654
20                             BY:  MS. THERESA BEROUSEK CARNEY

21                   PAMELA S. WARREN, CSR, RPR
                          Official Court Reporter
22             219 South Dearborn Street, Room 2342
                       Chicago, Illinois  60604
23                          (312) 408-5100

24   **NOTE:  Please notify of correct speaker identification.**
     **FAILURE TO SPEAK DIRECTLY INTO THE MICROPHONE MAKES PORTIONS**
25   **UNINTELLIGIBLE.**

1    (Proceedings held in open court:)

2         THE CLERK:  18 C 3029, Sierra versus Guevara, et al.

3         MR. SWAMINATHAN:  Good morning, Judge.  Anand

4    Swaminathan for the plaintiff.

5         THE COURT:  Good morning.

6         MR. BRUEGGEN:  Good morning, Judge.  Dave Brueggen for

7    the individual defendant officers.

8         MS. CARNEY:  Good morning, your Honor.  Theresa Carney

9    on behalf of the defendant City of Chicago.

10        MR. ENGQUIST:  Good morning, your Honor.  Josh

11   Engquist also on behalf of the individual defendant officers.

12        THE COURT:  Good morning.

13        All right.  So we're here on the motion for protective

14   order.  And I have got some questions I kind of want to go

15   through.  This is how we have organized it.  So the

16   first -- I'm working off, just structurally, I'm working off

17   the -- what defendants want to amend.  So plaintiffs have

18   submitted their proposed -- it is a model confidentiality

19   order.  Defendants want to amend it.  And that's at 96 dash 1.

20        And I'm going through what we have identified as the

21   differences.  So if I am missing any of this or if I have -- if

22   you think I'm misapprehending, just let me know.

23        So first is paragraph -- and defendants want to add

24   paragraph H to paragraph 2(b) of the model order.

25        And I'm at 96 point 1, page 3 of 15, at 96 point 1.

1   So it is paragraph B.  And then B has subparts.  So subpart H

2   is where I think the first disagreement is.

3          Is everyone tracking that?

4          MS. CARNEY:  Yes, your Honor, starting with

5   employment, disciplinary, and other information?

6          THE COURT:  Right.

7          MS. CARNEY:  Yes.

8          THE COURT:  So plaintiffs don't like certain portions

9   of that because it allows defendants to make subjective

10  determinations of what may or may not be sensitive information.

11  I think there is a general -- I can see that point.

12         I have a proposed edit.  I want to see if it addresses

13  everyone's concerns.  And it is not a complete edit because I

14  have a question about one aspect of it.

15         So right now H reads:  Employment, disciplinary or

16  other information that is of a sensitive or non-public nature

17  regarding plaintiff's/defendants's non-party witnesses,

18  non-party employees of the City of Chicago, period.  Such

19  information includes, but is not limited to, private

20  information and personnel files; such as, employment

21  applications, performance evaluations, tax forms, requests for

22  medical leave, and the like, as well as personal and family

23  information of police officers and state's attorneys, including

24  residential information.  And then it goes on to (i).

25         So focusing on H, what I am proposing is that we

1  strike that -- we're fine employment, disciplinary or other

2  information that.  That all stays in.  And then strike, is of a

3  sensitive or non-public nature regarding plaintiff,

4  plaintiff's/defendants's non-party witnesses, non-party

5  employees of the City of Chicago.  Such information includes,

6  but is not limited to.

7         So I would strike all that because I think it

8  addresses plaintiff's concerns that there is a -- it is kind of

9  nebulous and would allow defendants to make subjective

10  determinations of what is sensitive or non-public.

11         And my thought is to -- the question I have is private

12  information and personnel files.  So you have that in there.

13  I'm fine with that concept.  I'll hear from plaintiff.  But

14  isn't that covered in the rest of the clause?  Is there

15  something that is private information in the personnel files

16  that is not covered in what the rest of what you're seeking the

17  ability to designate as confidential?

18         MS. CARNEY:  I think the city's perspective on this is

19  that it just wants to make personnel -- yeah, a personnel file

20  that would contain, whether it is mental health evaluations;

21  W-2 forms; tax forms; you know, references from interviews, and

22  it is a -- there is a whole host of things in personnel files

23  that would not be necessarily public at all or released but for

24  this litigation.  So putting kind of an all-encompassing

25  confidentiality tag on a personnel file so that that private

1   information stays within this litigation and not -- is not

2   filed publicly or released publicly for any reason --

3           THE COURT:  Well, without --

4           MS. CARNEY:  -- it is the city's --

5           THE COURT:  -- leave of Court.

6           MS. CARNEY:  Without leave of Court.

7           THE COURT:  Okay.  Tell me from your perspective

8   what's the problem with that?

9           MR. SWAMINATHAN:  Judge, a couple problems.  First is

10  to the extent there is information in personnel files that

11  should be non-public, that is covered by the other provisions

12  of the model protective order.  And, for example, the model

13  protective order specifically says, personnel employment

14  records of the person who is not a party to the case.  That's

15  G, right?  So non-parties, yeah, the personnel files are

16  protected under the model protective order.  The Court has

17  agreed that's the way to handle it.

18          But that also presumptively means personnel files for

19  folks who are parties to the case.  There is no presumptive

20  confidentiality of those personnel files.

21          Here we're talking about public employees, right?

22  That's in particular the case, the public employees.

23          Now there may be things within those personnel

24  files --

25          THE COURT:  Well, wait.  I don't even know if I agree

1    with that.  So public employees, their personnel files is not

2    presumptively public.

3         MR. SWAMINATHAN:  They are not presumptively

4    confidential.  That's what I am saying.  Under the model

5    protective order they would not be productive -- presumptively

6    confidential.  And there is nothing that has happened so far in

7    this litigation where anybody has come to the Court and said, I

8    have a reason why you should determine that all personnel files

9    are presumptively private going beyond what is in the model

10   protective order.

11        THE COURT:  So that's one of the things I just -- a

12   general observation about the motion practice on this

13   particular issue is that the confidentiality -- the model order

14   allows for someone to come in and say, we want this -- we want

15   to be able to use this publicly.  So there is -- it is just a

16   way of allowing discovery to go forward in what I think is the

17   safest way so people -- things aren't floating in the public

18   realm that may not -- may not or should not be out there,

19   possibly.

20        So this -- it is just mechanism.  So what we're

21   talking about is -- is it initially confidential or not?

22   That's kind of where I'm at.

23        MR. SWAMINATHAN:  Yeah, so let me --

24        THE COURT:  So tell me why -- what's your concern

25   if -- if, let's say, it is overly broad.  I'm not saying

1  you're -- you might not be wrong that some of this information

2  might not be overly broad at some point.  You might need to

3  make it public.

4       From a burden standpoint, what's the problem with you

5  coming forward after -- and maybe defendants agree, and you

6  don't even have to come forward.  But what's the problem with

7  you coming forward to say, we have a disagreement, and we want

8  some of this information to be used publicly?

9       MR. SWAMINATHAN:  So let me address that.  And I will

10  try to address it not just in the context of the personnel

11  file, but I think the underlying CRs as well, which was the

12  first clause of Section H that you're talking about.

13       THE COURT:  Yes.

14       MR. SWAMINATHAN:  Okay?  So let me -- I wish I would

15  have maybe sort of framed this differently in how we explained

16  the motion.  So let me explain it a little bit differently from

17  plaintiff's perspective.

18       Two very brief and obvious principles.  Principle

19  number one is federal litigation is public.  The discovery that

20  occurs in federal litigation is public.  Okay?

21       THE COURT:  No, I disagree.

22       MR. SWAMINATHAN:  Well --

23       THE COURT:  It is not -- that may be what you think.

24  I think that is a dangerous way to proceed.

25       MR. SWAMINATHAN:  Well, I think that we should

1  then -- we probably should include more information in our

2  motion about all of the cases that talk about the basic idea

3  that litigation, federal proceedings, these things take

4  (unintelligible).

5          THE COURT:  I agree with that one.

6          The second principle, there are a team of cases that

7  talk about the fact that discovery itself is not public.  And

8  it is not until a Court looks at discovery and uses it for

9  substantive rulings that it becomes open to the public.

10         MR. SWAMINATHAN:  So let me --

11         THE COURT:  And that's -- that's in place to allow

12  people -- plaintiff's full discovery.  Because I'm sitting here

13  saying, personnel files.  If I am thinking a personnel

14  file -- I'm a police officer.  My next question to defendants

15  is going to be, what's in that personnel file?  It is just open

16  for everyone to use to be available, posted on a website, do

17  whatever you want with it, my inclination to allow access to

18  that information is going to be different.

19         But if I know that that information is covered by a

20  confidentiality order and defendants are saying, Judge, it is

21  too burdensome, you know, it is getting into things that people

22  shouldn't see, and I know it is covered by a confidentiality

23  order, I can, you know, dismiss that concern out of hand by

24  saying, it is subject to a confidentiality order.

25         MR. SWAMINATHAN:  So let -- so let me address that.  I

mean, here is the basic principle that I think we can agree on. Somebody walks into federal court and says, I have documents to produce. Those documents get produced, and they are not produced as confidential. Right?

The model protective order says, we'll produce stuff, okay, that's relevant to this case. But if you have things that are confidential, we will identify some category of things that federal courts say, yes, these are things that are confidential: Tax information, personal identifying information, Social Security numbers, et cetera. All of that under the protective order the federal courts say, okay, I have thought about it, I have identified the categories of things that are typically confidential.

You come in, and you say as a party, plaintiff or defendant, I have stuff that's relevant I want to produce, but I want it -- I want to say that some of the specific things in this collection of documents is confidential and private. Okay? So let me go about designating these specific things as being confidential and they (unintelligible) these specific categories. I (unintelligible) designate anything I want. And everybody says, okay, that's fine, go ahead and produce that.

What the city is saying here is, let me take one category of documents, CR files, they in particular, and let me just simply exempt them from the basic rules that apply --

THE COURT: Well, we're talking about --

1          MR. SWAMINATHAN:  -- to how we produce things.

2          THE COURT:  We're going to get to CR files in a

3    moment.  Okay.  So that's why I have structured it the way I

4    have.

5          We're talking about H right now.  In the personnel

6    files, so let me -- I'm going to get back to where you -- where

7    you want to go.

8          But in the personnel files, what is in there?  So my

9    experience tells me that there is application information.  So

10   that would be, you know, at 25 years of age, officer applies.

11   You interview her family.  You interview her neighbors.  So her

12   family's address is there.  Her neighbors's addresses are

13   there.  She's now moved.  She's 35.  She lives somewhere

14   different, but the family information is still there.  That

15   type of stuff seems fine to me to be designated as

16   confidential.

17         The CRs are separate.  But I don't think they are part

18   of the personnel file, but maybe I'm wrong.

19         MS. CARNEY:  Correct.  These are two -- two separate

20   issues that plaintiff is trying to kind of commingle at the

21   moment.  And we have an argument.  The CR argument is in and of

22   itself different in that -- and I'll get to that.

23         THE COURT:  So tell me what --

24         MS. CARNEY:  Put a pin in that for a second.

25         THE COURT:  -- when you talk about personnel files --

1          MS. CARNEY:  I'm talking about the --

2          THE COURT:  -- what's in there?

3          MS. CARNEY:  -- the application -- the employment

4 file, application file for a City of Chicago police officer,

5 which has from the date -- his or her date of hire through the

6 end of employment.  Addresses, dates of birth, Social Security

7 numbers, disability information, family members's names, family

8 members's addresses, phone numbers, credit card applications.

9 I mean, every personnel file is a little bit different.  But

10 those basic things are in there.  And there is no reason why a

11 police officer needs to have all of their family and friends

12 information free for the world to see simply because they

13 are --

14          THE COURT:  I agree with --

15          MS. CARNEY:  -- a defendant in this litigation.

16          THE COURT:  Okay.  So you have used the term now, and

17 I -- you have used the term employment file and --

18          MS. CARNEY:  Sorry, personnel file.

19          THE COURT:  -- personnel file.

20          MS. CARNEY:  Personnel file.

21          THE COURT:  Okay.  So that's what -- so that's the

22 kind of stuff that I am thinking about.  Like why should, you

23 know, Officer Smith's credit card information be out there or

24 bank information?  I'm not sure what the department looks at or

25 keeps track of.

1    MS. CARNEY:  And it has changed over the years.

2    THE COURT:  Yeah.

3    MS. CARNEY:  I mean, these are -- these are older

4    files.  But and -- we don't -- for the city to have to go

5    through and figure out what's still valid addresses, what's

6    not, who is still --

7    THE COURT:  No, I'm not going to make you do that.

8    MS. CARNEY:  And then to go through and --

9    THE COURT:  I am trying to understand --

10   MR. SWAMINATHAN:  I agree with all the things she just

11   identified -- I think all the things she just identified are

12   things we would say, sure, mark those things confidential, and

13   do it under the model protective order, which would protect all

14   of those categories of things.  Right?

15   MS. CARNEY:  So basically what plaintiff wants us to

16   do is to go through every personnel file, and they asked

17   for -- I mean, their discovery is extensive --

18   THE COURT:  Yeah, no, I am --

19   MS. CARNEY:  -- and stamp every other page.

20   Whereas we would like to expedite production and state

21   his entire personnel file is confidential.  If you would like

22   to use something of a personal nature, take it to the Court and

23   ask, instead of us --

24   THE COURT:  Or come to you first.

25   MS. CARNEY:  Or come to us, and then we'll take it to

1    the Court.

2              THE COURT:  Yeah.

3              MS. CARNEY:  Instead of us going page by page by page

4    to decide what information needs to be confidential and what

5    doesn't.  It is not -- it is burdensome and a waste of

6    resources, where we can just mark the personnel file

7    confidential and produce it in an expedited fashion.

8              MR. SWAMINATHAN:  So --

9              THE COURT:  What's the problem with that?

10             MR. SWAMINATHAN:  Same basic principle.  I don't know

11   every -- for example --

12             THE COURT:  What's the basic principle you keep

13   talking about?

14             MR. SWAMINATHAN:  Those files are inherently public.

15   There may be things in them --

16             THE COURT:  They are wrong -- that's wrong.

17             MR. SWAMINATHAN:  But let me address that.

18             THE COURT:  Wait.  No, no, no.  What case says that

19   personnel files of public employees are inherently public?

20             MR. SWAMINATHAN:  What I am saying is the discovery is

21   inherently public.  They get --

22             THE COURT:  That's wrong.  I'm sorry, that's wrong.

23             MR. SWAMINATHAN:  All right.  So let me address it

24   this way.

25             The performance -- there are things in those files a

1  lot of which we would agree are things that they would

2  legitimately stamp as confidential.  Okay?

3         The question is why do you need -- they have to come

4  in and say to you, I need to have you add something to the

5  model protective order because the model protective order

6  doesn't do what I need it to do.

7         THE COURT:  Okay.

8         MR. SWAMINATHAN:  What do they need to -- why do they

9  need to add something that has you specifically determine that

10 regardless of whatever is in that personnel file I am going to

11 deem it as all being confidential?  I think performance

12 evaluations, for example, are a much closer call.  They are

13 much closer to the things like CRs --

14        THE COURT:  I agree with you.

15        MR. SWAMINATHAN:  -- that we're about to talk about.

16        THE COURT:  I agree with you.

17        MR. SWAMINATHAN:  And I think that's the kind of thing

18 that is probably an example of -- the only kinds of categories

19 of things that are probably what we -- when it comes to just

20 personnel files where we're really going to have any dispute.

21 But there is nothing about this -- there is no need to add this

22 --

23        THE COURT:  Okay.

24        MR. SWAMINATHAN:  -- to address this kind of a

25 problem.

1        THE COURT:  I think I have heard enough.  So here's

2   the issue.  One, I think you're fundamentally wrong that

3   discovery is a public process.  There are lots of cases that

4   say otherwise.  And it is, I think, a danger with technology

5   and availability of information for anyone, especially -- cases

6   like this that have a certain public profile, I think it

7   increases the likelihood.

8        But it is true in business disputes as well that the

9   idea that discovery itself is of a public concern is absolutely

10  counterintuitive to how cases get litigated now.  And the

11  reasons -- and there is cases, you know, 10, 15 years ago that

12  had the same sense that it doesn't become public until the

13  Court needs the information or uses the information.

14        And it serves two purposes.  One, it allows for the

15  parties to have more free exchange in discovery; and, two, it

16  protects people from what may be produced and relevant in

17  discovery, and then a case gets resolved one way or another.

18  It never sees the light of day in court.  Because I agree with

19  your first principle, federal litigation on the merits is a

20  public process.

21        Summary judgment, you know, dispositive motions of all

22  sorts are a public process.  And certainly the trial is a

23  public process.

24        But discovery is not trial.  And it is not resolution

25  on dispositive issues.  So, you know, we're at that stage.

1  We're here.  And when we get there, things will be different,

2  for sure.

3          So I agree with your first principle; I disagree with

4  your second principle.  For the record I'll cite to Bond versus

5  Utreras, 585 F.3d 1061.  It is a Seventh Circuit case that

6  stands for that principle.

7          And there's -- the reason -- and that's a 2009 case.

8  The reasons behind that have only gotten more so because

9  the -- you know, access to information through technology has

10  -- in ten years has expanded probably 20 fold.  So I agree with

11  what you're saying, the -- you know, performance evaluations

12  may become relevant.  I could see -- I could see why they might

13  become relevant.  And defendants might agree with you.

14          And if they don't, the protective order provides for a

15  mechanism for you to come in and say, we need to be able to use

16  this.  That's fine.

17          But I think for the reasons I have stated, that the

18  burden and -- to the defendants of producing and then having to

19  go through and identify page by page out -- that burden

20  outweighs the efficiency that will come from being able to

21  blanketly apply personnel files as confidential subject to all

22  the relief that you're entitled to under the protective order.

23          MR. SWAMINATHAN:  So -- and on this point you're

24  talking about the personnel files, right?

25          THE COURT:  Personnel files.

1          MR. SWAMINATHAN:  Accepted.  And let me just note,

2   just so that it is clear, on (unintelligible) 8, I think you

3   talked about striking some language.

4          THE COURT:  Yeah.

5          MR. SWAMINATHAN:  The beginning of Section 8 begins,

6   employment, disciplinary or other information.  And the reason

7   I'm noting that is because disciplinary is the topic of CRs, et

8   cetera.

9          So if H is intended to cover what we're talking about

10  right now, which is personnel -- information and personnel

11  files, I understand your Court's view.  I accept it.  And I

12  think fundamentally you're probably right.  As a practical

13  matter, we are probably unlikely to have very many

14  disagreements on the subject of the personnel file.

15         I just want to make sure that this language is then

16  tight because disciplinary is outside of what we have just

17  talked about as being personnel file information.

18         MS. CARNEY:  But I think that will be addressed with

19  the next issue, as far as the CR files go, whether or not the

20  disciplinary -- the word disciplinary needs to stay in or not.

21         THE COURT:  All right.  Yeah, so let's make sure we

22  circle back to that.  Because I was not focusing on

23  disciplinary, I was focusing on employment.

24         Now here's my proposal for H.  Employment,

25  disciplinary, with the asterisks, or other information that

1  includes private information in personnel files, employment

2  applications, tax forms, requests for medical leave, and

3  personal and family information of police officers and state's

4  attorneys, including residential information.

5          I'm striking performance evaluations anyway.  But I

6  think that covers what the city's interested in.  It allows

7  for --

8          MS. CARNEY:  I'm sorry, did you say you struck the

9  personal performance evaluations portions of it?

10          THE COURT:  I did, yeah.

11          MS. CARNEY:  Okay.

12          THE COURT:  Are there disciplinary records in the

13  employment files themselves?

14          MS. CARNEY:  It is a -- it depends.

15          MR. ENGQUIST:  Potentially, Judge.

16          MS. CARNEY:  Sometimes.  But not all the time.

17          THE COURT:  Okay.

18          MR. ENGQUIST:  It is rare, but it -- you know, it is

19  three years's worth of records or more, and sometimes something

20  will pop up in there.

21          THE COURT:  All right.  So if they're in there -- this

22  is just an issue of designation right now.  So if they're in

23  there, they're designated as confidential.  It will work its

24  way through.  And, you know, if there is an issue, someone is

25  going to bring it up.  And if you have got -- you can't resolve

1    it, I'll resolve it, you know, after I hear from each of you,

2    and we'll have a working model going forward.

3              Is that acceptable to the plaintiff?

4              MR. SWAMINATHAN:  I think the version that you have

5    identified, you know, putting asterisks around disciplinary, I

6    think the way you articulated it, I don't -- I think -- this

7    doesn't take a position on that issue yet.  So (unintelligible)

8    it is not problematic from plaintiff's perspective the way you

9    have artic- -- the way you have crossed it out so far.

10             THE COURT:  Okay.  All right.  So that's that.

11             Next -- then there is deletion of paragraph 2(g).

12             MS. CARNEY:  Well, should we go -- should we discuss

13   this?  Because the CR issue is kind of inherent in that.

14             THE COURT:  Yes.  Where is that?  Is that (i)?

15             MS. CARNEY:  So it is part of the added definition to

16   confidential information.  Obviously we have the word

17   disciplinary.  But it kind of dovetails into our inclusion then

18   of paragraph 17,

19             THE COURT:  Okay.  Let me find that.

20             MS. CARNEY:  Which would be --

21             THE COURT:  So 17 I thought is different.  Because I

22   saw 17 as a clawback of sorts.

23             MS. CARNEY:  No.  So the city's use of paragraph 17 is

24   kind of in conjunction with the additional definitions included

25   in the confidentiality information.  We do have kind of a

1  clawback, if you would like to call it that, provision as well.

2         THE COURT:  Oh, oh.

3         MS. CARNEY:  It is 2(c).

4         THE COURT:  Okay.  I apologize.  I'm getting

5  myself -- okay.

6         MS. CARNEY:  We could do that one first if that's

7  where you are.

8         THE COURT:  So let's do 2(c) then.

9         MS. CARNEY:  Okay.

10        THE COURT:  It is a little more straightforward to me.

11 And then we can do 17 and 2 -- is it (i)?  I guess it is under

12 2(b)(i).

13        Okay.  So the clawback -- I'll call it clawback --

14 provision, what -- I think that's okay.  What's the plaintiff's

15 objection to that?

16        MR. SWAMINATHAN:  I believe there is a clawback that

17 already exists.  Like the normal clawback provision where if

18 there is inadvertent production is you're talking about?

19        THE COURT:  Yeah.

20        MR. SWAMINATHAN:  Yeah.  There already is one of those

21 provisions.

22        THE COURT:  Or --

23        MS. CARNEY:  But I think this is different.

24        THE COURT:  It is inadvertent -- yeah, so inadvertent

25 in this case, where people are like, oops, I should have

1   designated.  They are -- what I think the city is looking for

2   is stuff that has been produced already in other cases that you

3   may have is kind of what I am thinking you're talking about.

4            MS. CARNEY:  Right.  And all we're asking is for -- to

5   be able to bring a motion to the Court and seek permission to

6   put it under a confidentiality order in this case.  If the

7   Court doesn't agree with us, that it is already out in the

8   public atmosphere, there is -- we can't essentially claw it

9   back at that point, so be it.

10           But it is a mechanism for the city because of the

11  volume of these litigations that are happening right now, and

12  the volume of things being produced, paper is flying all over

13  the place, so to speak.  So it is -- or if the city learns of

14  something that's produced in another litigation or somewhere it

15  shouldn't have been, our attempt to try to bring that back

16  under the confidentiality order in this case.

17           THE COURT:  So what's your objection to that?

18           MR. SWAMINATHAN:  So -- yeah, so I think as a

19  practical matter, I think what she's saying is not -- is not

20  unreasonable.  Okay?

21           THE COURT:  Is not?

22           MR. SWAMINATHAN:  Is not unreasonable.

23           THE COURT:  Okay.

24           MR. SWAMINATHAN:  But I think our -- plaintiff's

25  position, which I think is important for us to articulate this

1  position, if there is something that was inadvertently produced

2  in another case, then they should, in that case, go through the

3  process of taking, making that document confidential again.

4  Right?  Wherever you have inadvertently made the production,

5  you used the clawback procedure, and then you can deem it

6  confidential.

7        In this case to say that I can take any document that

8  has been inherently public now for whatever period of time,

9  either because it has been posted on a website, it has been on

10  four dockets, the parties have been using it, it has been -- it

11  is a meteor for whatever --

12        THE COURT:  Yeah.

13        MR. SWAMINATHAN:  -- to then say, wait a minute, we're

14  going to treat this thing as confidential.  We're going to be

15  able to come in and essentially recreate confidentiality on

16  something that was produced in another case non-confidential,

17  we view that as being problematic.

18        All right.  From our perspective, if you want it -- if

19  something had been inadvertently produced, which is all that

20  issue in that other court, but don't create a mechanism in this

21  case for things that are out in the public domain to suddenly

22  be deemed confidential.  Because what do I need to do as a

23  plaintiff?

24        THE COURT:  Well --

25        MR. SWAMINATHAN:  Like what can I do?  Do I go to

1  everybody whoever has had the document and say, you know, the

2  Court is not treating this document as confidential?  You have

3  to do -- you have some obligation to do something that I can't

4  articulate.  It is just -- it is very impractical from

5  plaintiff's perspective.  And it puts a burden on us as parties

6  to this litigation to address a problem that is a problem that

7  comes from some other litigation.

8          MS. CARNEY:  Well, to address the -- what happened

9  in --

10         THE COURT:  Well, hold on.  Let me kind of -- I

11  understand your concern about what are -- how do we put the

12  genie back in the bottle.  So -- and I -- that would be more of

13  like the scope of relief to me.

14         So if the city came in and said, oh, this is -- this

15  is out there in the public realm.  And using your examples on

16  websites and, you know, the Tribune has written an article on

17  it, we want it confidential.  Two problems with that.  One, it

18  is hard to see how that should be confidential anymore.

19         But, two, if the -- if in this case the city said, we

20  want this taken off the website.  We want you to stop the

21  Tribune from making it available by archive, whatever, I mean,

22  that relief seems well beyond a protective order in litigation

23  here.

24         I'm not saying one way or the other for me or the

25  district court.  Judge Lee saying, you know, maybe you'll get

1    that, I can't say yes or no to that.  But that's always in the

2    nature of the relief requested.

3          So I hear what you are saying.  It seems improbable on

4    two fronts.  It seems improbable for the city to effectively

5    come in where something is so publicly -- out in the public

6    realm to get the relief they are seeking, which is to, you

7    know, mark it confidential now.  That's problem one.

8          The second problem seems to me to be the nature of the

9    relief.  Even if they were able to say for purposes of this

10   litigation it is going to be confidential, the idea that they

11   would then be able to, like, go back and undo what's been done

12   seems problematic as well.

13         I'm not saying they can't ask for it.  I'm just saying

14   from a realistic standpoint, a practical standpoint, I don't

15   think we're going to be dealing with that.

16         What I think this is intended to do is -- something

17   that was produced in another litigation, not marked

18   confidential, you produce it to them likely in discovery, and

19   they are like, this isn't marked confidential, we'd like it

20   confidential, you would have to say, no, we don't agree.  Which

21   I -- you know, in the nature of your litigation, maybe you say,

22   we don't agree, that's fine.

23         They bring a motion and say, this -- these are

24   personnel files that were erroneously produced in another case,

25   and we want them marked confidential.  They are not out there

1  in the public realm, and, you know, the chips fall where they

2  fall.

3      They just want the opportunity to do it.  I don't see

4  a problem with that.

5      MR. SWAMINATHAN:  And I will say, I mean, you have my

6  position on it.  I will note that there -- their position

7  simply doesn't allow them to just designate it confidential.

8  Because they have to come in on a motion to your Honor --

9      MS. CARNEY:  Right.

10      MR. SWAMINATHAN:  -- which you're noting, and so

11  I -- I understand that there will be an opportunity to address

12  it without just sort of an automatic (unintelligible).

13      Let me just say, what I would propose to do is include

14  some timing provision in here.  This says, hey, if they just

15  notify us, then now this thing is confidential for all intents

16  and purposes until a motion is resolved.  I would say they put

17  us (unintelligible) notice.  File a motion within X amount of

18  time.  And I don't care -- I don't insist that it be so, you

19  know, rapid, 14 days, 21 days, 28 days.  I don't -- you know --

20      MS. CARNEY:  I --

21      MR. SWAMINATHAN:  -- some time period in which they

22  had to file.

23      MS. CARNEY:  My only issue with it -- with some sort

24  of timing requirement is, for example, in this and other cases,

25  the plaintiffs have recently dumped, two, three hundred

1  thousand pages of documents on us that we can't conceivably get

2  through in a 21-day --

3         THE COURT:  Sure.  So upon -- without envisioning the

4  written notice being your triggering event.  So what I think

5  you're getting at is that you send written notice to

6  plaintiff's notice today, on the 22nd, and then they say, no,

7  we don't agree, or they don't respond, you have to do something

8  within --

9         MS. CARNEY:  Within a certain amount of time.

10        THE COURT:  Yeah.  So --

11        MS. CARNEY:  Okay.  That --

12        THE COURT:  So, yeah, I get the dump problem.  But

13  until you send written notice --

14        MS. CARNEY:  Okay.

15        THE COURT:  -- we're --

16        MS. CARNEY:  So it is not a timing, oh, we produced

17  this three months ago.  Why are you just coming to us right

18  now?

19        THE COURT:  Right.  Yeah, yeah, yeah.

20        So let's look at that.

21     (Brief interruption.)

22        THE COURT:  Okay.  So upon written notice to all

23  parties, that a party will be seeking that the Court deem

24  certain documents confidential, all parties will treat those

25  documents as confidential until such time as the Court resolves

1    the motion, period.  Any motion must be filed within 21 days.

2          Does 21 seem reasonable to both sides?

3          MS. CARNEY:  Yes.

4          MR. SWAMINATHAN:  By the plaintiffs, yes.

5          THE COURT:  Okay.  Within 21 days of written notice.

6          If no notice is filed -- I'm sorry.  If no motion is

7    filed within 21 days, the parties no longer need to treat the

8    effected documents as confidential.

9          Everyone fine with that?

10         MR. SWAMINATHAN:  I'm comfortable with that.

11         MS. CARNEY:  Yes, your Honor.

12         MR. SWAMINATHAN:  One caveat to note is --

13         THE COURT:  Sure.

14         MR. SWAMINATHAN:  -- the related provision of the

15   related sentence is at the top of page 3.  So this issue that

16   we just, I think, we have resolved, has an additional provision

17   at the top of the paragraph (unintelligible) excised.

18         So from the Court's -- from the model protective order

19   there is a little -- there is a sentence that says, information

20   or documents that are available to the public may not be

21   designated as confidential information.

22         They have cut that sentence.  You see that on 96 dash

23   1, page 3.

24         THE COURT:  Yeah, I'm at C though.  So I'm at 96 dash

25   1, three going to four.

1      MR. SWAMINATHAN:  Yeah.  So if you look at C, up

2  higher on that page --

3      THE COURT:  Yes, sir.

4      MR. SWAMINATHAN:  -- above the word designation, they

5  have excised the sentence that is related to the issue we're

6  talking about.

7      THE COURT:  Oh, okay.

8      MR. SWAMINATHAN:  Do you see that sentence that I am

9  talking about?

10     THE COURT:  And is your concern --

11     MR. SWAMINATHAN:  Our view is that that sentence from

12 the model protective order should remain in place.  There's no

13 reason to cut the basic principle that you don't designate

14 things confidential that are public.

15     Now nothing about the procedure that we have just

16 talked about or agreed on creates a need to excise that

17 sentence nor has defendant articulated a reason to excise that

18 sentence.  Right?  Because if you leave that sentence in, but

19 then you have the procedure you have here, yeah, we were going

20 to treat something as confidential until we resolve the motion.

21     THE COURT:  Yeah, hold on.  I see your point.

22     (Brief interruption.)

23     THE COURT:  So tell me what is it you're thinking

24 about?  I can see some issues, but tell me what you're thinking

25 about that.

1    MS. CARNEY:  The purpose of us removing that, your

2    Honor, was because we felt it was then public information that

3    we took -- or that we -- we felt it was to help -- dealt with

4    in paragraph 2(c) or how -- this one that we're discussing now.

5         But I think that if 2(c) is agreed to, and we

6    can essentially put that clawback provision, as you have called

7    it, in, I think maybe if we changed the language to this:

8    Information of -- information of documents that are available

9    to the public may not be designated as confidential information

10   unless subject to the paragraph that we just talked about.

11        THE COURT:  Yeah.  What about, unless otherwise

12   covered by this confidentiality --

13        MS. CARNEY:  Oh, that's also --

14        THE COURT:  -- order?

15        MS. CARNEY:  We would agree to that.

16        THE COURT:  Okay.

17        MR. SWAMINATHAN:  Fine.

18        THE COURT:  Okay.  So that language will be included,

19   with, comma, unless otherwise covered by this confidentiality

20   order.

21        Oh, nevermind.

22        Okay.  Now let's get to the -- let's get to the CR

23   issue.

24        And, Mr. Swami- -- can you say your last name again?

25        MR. SWAMINATHAN:  Swaminathan.

1      THE COURT:  -- Swaminathan, we're just having trouble

2  hearing you on the mics.  So if you can --

3      MR. SWAMINATHAN:  I'll come a little closer.

4      THE COURT:  Thanks.

5      All right.  Now let's look at the CR issue, and that

6  is -- let me get myself -- okay.

7    (Brief interruption.)

8      THE COURT:  All right.  So I have -- so to orient

9  ourselves, and so the record is clear, so 2(b)(i) addresses the

10  issue of CRs.

11      And then paragraph 17, counsel, you correctly point

12  out I was in error because paragraph 17 deals with the CR issue

13  as well.  So those two have to be addressed in conjunction with

14  each other.

15      MS. CARNEY:  Correct.

16      THE COURT:  And 17, public disclosure of documents

17  designated confidential.  This order prohibits a disclosure of

18  any documents designated as a confidential -- as confidential.

19  It says, as a confidential -- but should be as confidential --

20  subject to the limitations of Section 4(b), any party or

21  counsel seeking to use or disclose confidential information for

22  any reason other than for purposes of this litigation,

23  including for public disclosure, will not use the documents

24  designated as confidential but shall instead comply with the

25  requirements set forth under the Illinois Freedom of

1  Information Act to obtain the desired documents from the proper

2  public body.

3        And so what I understand that to mean is that you're

4  saying if you produce the CRs, if the city produces the CRs,

5  they can't be produced as they were in this case.  The

6  plaintiff would need to go to -- through a Freedom of

7  Information and get the documents that -- through that process.

8        MS. CARNEY:  Correct.  So the documents, the CRs, that

9  would be requested in this case, would be produced confidential

10 with none of the FOIA redactions that would need to be made.

11 It would -- then in the event that plaintiff has any reason to

12 use those documents and put them out into the public, and they

13 go to FOIA and -- request those documents in the regular course

14 of business with FOIA, IFOIA makes the proper IFOIA redactions

15 to those documents, and they obtain copies that can be publicly

16 disclosed.

17       So it would expedite production of the CRs in this

18 case and allow for them to be produced to the plaintiffs from

19 the use in this litigation and not burden the city and the

20 city's attorneys with having to then go through and make a

21 second set of documents that could be set -- that could be

22 released publicly with the proper IFOIA redactions on them.

23       THE COURT:  So this is what I don't understand about

24 that.  I mean, I -- I give you credit for being creative in --

25 as a way to solve a problem.  Not like, you know, obfuscating

1  an issue.  So I give you credit for that.

2          But what I don't understand is the efficiency argument

3  because at the end of the day what would happen, as I

4  understand it, so tell me if I am wrong, is that plaintiff

5  would then send a FOIA -- IFOIA request to the city for the CRs

6  they want to use.  And then the city, through its FOIA

7  department -- I'm presuming the police department has its own

8  FOIA unit -- would then do the redaction.

9          MS. CARNEY:  Correct.

10          THE COURT:  And so I understand that.  I understand

11  why there would be things that would be -- you would want to

12  have redacted.

13          I don't understand why they need to submit a FOIA

14  request, as opposed to saying to you, okay, this CR or these 12

15  CRs we want to use.  And so will you -- please redact them.

16  And if we can't get, you know, agreement on the redaction, then

17  it will go to court.  But please redact them in a -- in a way

18  that you're comfortable that we can then use them publicly

19  because then -- here's what I am thinking, if plaintiff says

20  that to you, and you say, sure.  And then, you know, 30 days

21  may be a lot, it may be too short, so 45, 60 days, we'll figure

22  out the time.  And then it is not done, then plaintiff just

23  comes to me with a motion, and I get to control discovery.

24  That makes sense to me.

25          What doesn't make sense to me is -- because then we're

1    all doing what we do here.  That's what we do.  We -- you know,

2    we -- we get cases moved forward through discovery.

3            If we go your route, then plaintiff says, okay, I have

4    got to do my FOIA request.  It may be -- you know, maybe it is

5    easier than filing a motion here.  Probably.

6            But then they have a FOIA request out there.  And the

7    city is saying, well, we can't get it done in 30 days, we can't

8    get it done in 60, we can't get it done in 90 days, and

9    plaintiff's relief is to file an action in state court with the

10   state judge who they have got bigger dockets than we do.  I

11   don't understand that.

12           MS. CARNEY:  It --

13           THE COURT:  I mean, I understand what you are trying

14   to get done, but I don't understand why you can't do the same

15   thing just by the request from plaintiff saying, we want these

16   documents.  And you say to the unit that would do the FOIA

17   redaction anyway, here are these 12 CRs or 28 CRs.  It may be a

18   huge number.  But whatever the number is, I get to control it

19   from my vantage point.

20           MR. ENGQUIST:  The way it was served before, your

21   Honor, is that there was a whole section in there where you

22   have -- it would make a request for ten years worth of CRs or

23   whatever they are asking for, and then we'd fight about

24   whatever there was going to be.

25           But if there was going to be a production of CRs, we

1    would have to produce a set of CRs that -- under the

2    confidentiality order, and then another set of CRs with

3    additional redactions so they can do it for public use.

4          And we're talking about public use, where it is like

5    they can just give it to Buzzfeed or something like that, which

6    they have done.  You know, that kind of thing.

7          That's not what this case is about.  This is not what

8    this litigation is about.  If they're litigating this case,

9    they get to -- they get-- if they wanted something public, they

10   want to hand it out to Buzzfeed or do something to Detective

11   Guevara with it, then go through the proper channels by just

12   asking for a FOIA thing rather than burdening us in this

13   litigation with asking for things that wouldn't -- that are

14   outside the FOIA.

15         THE COURT:  Well, okay, if that's your concern, then

16   why not put something in a confidentiality order to say, any

17   production outside of the judicial process, they need to come

18   to court for relief.  I don't know if I would be open to that,

19   but if that's your concern, then address it head on.

20         But really what I hear is you have a concern.  Maybe

21   it is valid, maybe it is not, I don't know.  But you have

22   created this whole sub-mechanism to address this one off

23   concern.  Because what I am concerned about is then having a

24   legitimate use for the CRs.

25         So the Monell claim is being litigated, and they're

1    going to be getting experts or going to be doing all whatever

2    they're doing to, you know, get that case -- that portion of

3    the case ready.  And they're going to want to give it to their

4    expert, whether it is a litigation expert or a disclosed

5    expert.

6          MS. CARNEY:  And they can't because even though it

7    is -- they are not attorneys's eyes only, they're just

8    confidential in this litigation.  And I think the inherent

9    problem here is that the number of -- you know, you're

10   envisioning a world of 12, 28, 48 CRs.  For example, in another

11   case that The Sotos Firm has, where they have the City of

12   Chicago, after a year or so of negotiations, they are producing

13   almost 1800 CR files that are going to have to then be redacted

14   by the attorneys in the --

15         THE COURT:  I get the --

16         MS. CARNEY:  -- and they wanted them to be public, and

17   that --

18         THE COURT:  I get the burden.  I understand.  I mean,

19   you're right, I'm using 12 and 24, and 1800 is a whole lot

20   more.  So that's fair.  So maybe I don't fully appreciate the

21   burden.  But I appreciate the practical issue here.

22         What I don't understand is your solution seems wholly

23   impractical.  Because the relief -- am I wrong -- unless I'm

24   missing something, the relief that plaintiff would have to do

25   is file an action in state court.

1    MS. CARNEY: But they are not being -- I guess the

2    problem we have as the city is that they are not being burdened

3    in any way in this litigation. What they -- these are

4    confidential documents. If they need to file them in -- with a

5    motion for summary judgment or if they need to be -- they need

6    to come out at trial, all of that will be addressed at the

7    time. None of that is going to hinder the litigation as it is

8    going on right now.

9        THE COURT: When you say they are not being burdened,

10   what do you mean by that? I think I'm taking it differently.

11       MS. CARNEY: Because there is -- oh, sorry.

12       MR. ENGQUIST: No, when they -- when we would produce

13   the files, and -- without having to do the FOIA redactions

14   because they will use them during depositions, because they

15   will use them during motion practice. They can use them. They

16   can give them to their expert. They can go through them. They

17   can do everything they need to do for this case.

18       And if it goes to trial and certain CRs are used at

19   trial, you know, they are going to becoming public at -- to a

20   certain degree anyway, but they can still use them. It doesn't

21   affect their ability to litigate the case.

22       This is only for the situation where they say, I want

23   two sets, and the other set has nothing to do with my

24   litigation. The other set has something -- just do whatever I

25   want to do with.

1        THE COURT:  What am I missing though?  Under the

2  confidentiality order if they say, I want to take it out of the

3  confidentiality order, they would need to explain why.

4        MS. CARNEY:  Not with what they want.  They want to

5  just be able to request, we want this many CRs --

6        THE COURT:  I'm talking about just 17, just paragraph

7  17.  I know they are in tandem together, I, I think 2(b)(i).

8  But what is -- I don't understand the use of 17.  We'll get to

9  2(b)(i) in a moment.

10       MS. CARNEY:  Yeah.

11       THE COURT:  But I don't understand 17.  Because I get

12  what you are saying, they want to use -- CRs are -- you know,

13  the State of Illinois court says they are not confidential, so

14  they are not confidential.

15       You want to produce them as confidential.  You're

16  getting -- you may get that.  But you don't want the burden of

17  redaction.  I understand that.  And it sounds like that would

18  address some of plaintiff's concerns because if they are not

19  redacted, then this information, like witnesses and things like

20  that, they will have access to, correct?

21       MR. SWAMINATHAN:  That's true, if we're getting the

22  confidential version.

23       THE COURT:  Okay.  And then the issue will be we want

24  to use this in some other way so we need to redact stuff.

25       Now if it is going to be used at trial, I would

1 imagine even then you would say, we want the police officers's

2 addresses re- -- well, I don't know if that's in a CR.

3   We want certain things redacted, like the employee

4 number, Social Security number. We want that stuff redacted

5 from the CR. And if plaintiff puts up a big stink, Judge Lee

6 or me will figure out -- Judge Lee or I will figure out whether

7 it should be redacted or not.

8   MR. ENGQUIST: One of the -- I mean, you're talking

9 about that's -- FOIA redactions go much further. Initially

10 when this thing was drafted and we had FOIA things in there and

11 the double production, we had a whole list of all the FOIA

12 redactions that had to be done, and it became very, very

13 complicated and cumbersome. And the idea is that we want

14 something that's just for this case we can have. You can go

15 on, you can litigate your case, and it doesn't affect your case

16 at all.

17   The only reason to have documents, which are just FOIA

18 redacted, has nothing to do with litigating the case, nothing

19 to do with trying the case. The only reason to have something

20 that is FOIA redacted is so they can use it outside of

21 litigation. That's the only reason.

22   THE COURT: That's your concern.

23   MR. ENGQUIST: Yeah. The only reason is --

24   THE COURT: Okay.

25   MR. ENGQUIST: -- using it outside litigation.

1    THE COURT:  Okay.

2    MR. ENGQUIST:  And putting the burden on the City of

3  Chicago, whether or not it is the outside counsel, it is inside

4  counsel, or some different FOIA departments, to go through and

5  fight things out.  The way is -- a double production in this

6  case is useless.

7    If they want five CRs they want to give to Buzzfeed,

8  then Buzzfeed or them could FOIA five CRs and go from there.

9    You know, if they want 20 years's worth of CRs, they

10  are going to run into probably an issue with the FOIA thing,

11  which wouldn't be part of this.

12    THE COURT:  So, Mr. Swaminathan, let me hear on that.

13  So the -- 17 seems to be cumbersome for purposes of litigation.

14  Maybe I naively presume that the reason you would want

15  disclosable version of CRs was for the litigation itself.  It

16  sounds like from Mr. Engquist that's not the case.

17    Why would you want disclosable versions of the CRs

18  that weren't redacted?

19    MR. SWAMINATHAN:  So I don't know what he's talking

20  about when he says, we have handed documents over to Buzzfeed.

21  I don't know what case he is talking about.  I haven't handed

22  documents over to Buzzfeed so I'm not sure what that is.

23    What -- the underlying disputes, he says, well, it is

24  not ten CRs, it is 1800 CRs.  Right?  Regardless of whether the

25  number is 10 or 1800, the only question for the Court is --

1  because nobody is saying you don't get to ask for ten, you

2  don't get to ask for 1800.  There is no scope question here.

3  There is no relevance.

4          THE COURT:  No.

5          MS. CARNEY:  Well, that's a whole other debate.

6          THE COURT:  Yes.

7          MR. SWAMINATHAN:  Yeah.  But the number is part of the

8  debate we're having --

9          THE COURT:  Correct.

10         MR. SWAMINATHAN:  -- right?

11         THE COURT:  No, no.  That's, I think, part of -- I

12 don't know if I said this.  I thought I did.  Part of the

13 litigation around this protective order has been, I think,

14 issues unrelated to the protective order.  They are related to

15 discovery.  They could be related to trial.

16         MS. CARNEY:  Well, mostly because we know what -- I

17 think a -- a lot of it is preemptive, your Honor.  We're trying

18 to make sure that --

19         THE COURT:  I understand.

20         MS. CARNEY:  -- the scope is --

21         THE COURT:  I understand that.

22         MR. SWAMINATHAN:  And -- yeah.

23         THE COURT:  But we're dealing with a protective order

24 right now.

25         MR. SWAMINATHAN:  And so the point is when you're in

1   the situation where we're saying here's 10 or here's 1800 that

2   I want, the question is do we resolve disputes about that in

3   front of your Honor or do you resolve disputes about that

4   through ancillary litigation in FOIA?  And our point is, I

5   think, really the point -- you might have had a long speech

6   about it, but I'll cut it because you made the point.

7           It does -- it is not fair, it is not appropriate to

8   have us have to use ancillary litigation in state courts to

9   essentially address issues involving one category of relevant

10  documents out of all the category of relevant documents.  From

11  our perspective you don't get to take this one category of

12  documents and say, let's exempt them from the Federal Rules of

13  Civil Procedure and the Judge's authority and require plaintiff

14  to address any disputes about that category of documents in

15  this other forum.  That's the basic point that we want to make

16  and --

17          THE COURT:  Would you be open to a limitation that's

18  saying CRs that were produced in this case cannot be produced

19  outside the liti- -- cannot be disseminated outside the

20  litigation?

21          MR. SWAMINATHAN:  Well, I don't think I understand it.

22  There is no -- no -- they made a -- they took a very clear

23  position in this case for very good reason because this is not

24  coming to you used, it is coming to you based on a whole

25  history of litigation, including Calvin, and you know it.

1    They make sure they do what they have to do, which is

2    to say, we are not disagreeing that these are public documents,

3    publicly accessible documents available to everybody.

4    We -- what we say as defendants is, but there are some

5    things in those documents that even Calvin would acknowledge

6    may be private.  So let us at least use the confidentiality

7    order in this case to take these public documents and

8    identify -- and make some portions of them private because

9    there are some specific things that may be private.

10    Plaintiff says, we're in total agreement so far.  We

11    both agree that these are entirely public documents and that

12    there are -- there can be private things within them.

13    And then the question is, what do you do about that

14    fact?  And what we say as plaintiffs is, look, you want to

15    produce these documents to us as confidential and avoid having

16    to do all this -- and having all the delays that come with

17    that, fine.  Let's do that.  Okay?  Go ahead and produce them

18    to us confidential so we can all start the process of reviewing

19    these materials.

20    But what you have the obligation to do as a defendant,

21    as does any defendant in any case or any plaintiff in any case

22    who says, I have materials to be produced, but I think that

23    there are some things in this that are private that I want to

24    designate confidential, you have to do the thing that every

25    party does, which is go through the document and identify the

1    things that are actually confidential and produce them to us

2    with those confidential stamps.  Right?  With those things that

3    are confidential.

4         What they are saying is, you know what, don't make me

5    do the thing that every party has to do who says, I want to

6    take some things and decide, I don't want to produce them as

7    public, I want to produce them as confidential.  Every party

8    has to do this normal thing.

9         They're saying, don't make me do that thing, make them

10   have to go use FOIA litigation to do the thing that every party

11   has to do, which is designating things as confidential under a

12   confidentiality order.

13        Plaintiff's point is simply this, if we -- if we -- if

14   we dare to ask -- if they end up in this case because Monell

15   has not been bifurcated, yes, at some point in this litigation

16   they are going to likely have to produce a hundred or 200 or

17   300 or 500 CRs for non-party defendants.

18        THE COURT:  Yeah.

19        MR. SWAMINATHAN:  Okay?  If I say to them, and under

20   our version of the protective order I have to first say to

21   them, I want the non-confidential version of these 500 CRs if I

22   dare to do that, they're going to be able to say, under our

23   version of the protective order, they are going to be able to

24   say, whoa, whoa, whoa, that is a lot of documents that you're

25   seeking.  My version of the order says, you have to produce

1  those to me within 30 days.  They can of course -- and we might

2  change that to whatever is reasonable.

3       If I come and ask for 500, and they come in to you and

4  say, it is going to take me a year to produce this or it is

5  going to take me three months or six months, then we would

6  address the issue with you, and we would figure out what's

7  appropriate for that category of documents, et cetera.

8       If, similarly, on the flipside, if they came to you

9  and said, I said -- I want Detective Guevara's CRs produced

10 non-confidential, and they said -- and it is 25 CRs or 30 CRs

11 -- and they say, it is going to take me six months to produce

12 those.  I want to be able to have the right to come before you

13 and say, this is crazy, Judge.  His -- he has 19 unlawful

14 convictions cases and 12 prior civil cases.  These have all

15 been produced in prior litigation.  There is no reason it

16 should take this long to produce these non-redacted versions to

17 us.

18       So that is the kind of -- those are the kind of things

19 that can come up --

20       THE COURT:  No, I agree--

21       MR. SWAMINATHAN:  -- and all of that should be

22 addressed in front of you, and our protective order does all of

23 that.

24       What they are saying is, take all of those debates and

25 make those happen in state court, and that's just not fair.

1      MR. ENGQUIST:  Your Honor, if I may, one thing you

2  never heard in that entire soliloquy was the fact that what

3  would you use the -- only the FOIA-related version for?  Would

4  you use them in this case at all?  The answer was no answer.

5      THE COURT:  Well --

6      MR. ENGQUIST:  There is no reason to have FOIA-

7  redacted -- because these are not just non-confidential, these

8  are FOIA redacted, which means they are heavily redacted.

9  There is no reason for having the FOIA-redacted versions of

10  these things done in litigation other than the fact that you

11  want to use it for purposes other than litigation.

12      When you asked him, what would you use -- you know,

13  why do you need that?  The answer was, we want to -- we want

14  it.  We want it -- have it, has nothing to do with this

15  litigation.

16      MR. SWAMINATHAN:  I'll give you an example.

17      MR. ENGQUIST:  So --

18      MR. SWAMINATHAN:  I'll give you an example.  In these

19  cases, all these different plaintiffs are litigating these

20  cases against these same defendants.  In multiple cases,

21  including in the last two weeks, we have had a bunch of CRs

22  produced to us that have never been produced during the course

23  of the proper litigation in those cases.

24      Part of what we have done is worked with other

25  plaintiffs's counsel, other civil rights attorneys, and say,

1   hey, I have these CRs.  I have 13 for this officer.  Do you

2   have 13?  And (unintelligible) says, no, I have 15 or I have

3   these different ones.  And we want to be able to work with

4   other counsel.

5          If I have confidential versions, I cannot have those

6   communications.  Okay?  It is -- it is important for us, for

7   purposes of this litigation, to be able to communicate with

8   people in the civil rights bar.  As merely one example, to be

9   able to figure out what are the CRs that are out there.  Do we

10  all have the same CRs?  Are we getting the same things

11  produced?  And because this has come up repeatedly where CRs

12  get produced that didn't exist, and somebody says that didn't

13  exist before, plaintiffs had to follow up.  We identified them

14  as coming up in other litigation.

15         THE COURT:  Yeah, okay.

16         MR. SWAMINATHAN:  So we need the tools to be able to

17  do that.

18         THE COURT:  I have --

19         MR. SWAMINATHAN:  And nobody is saying that means

20  we're just running off to Buzzfeed.

21         THE COURT:  I think I have heard enough.  Here -- so I

22  think you're right, you need the tool and the ability to have a

23  conversation with someone related to the litigation, the

24  litigation here.

25         But what do you need to be able -- what information do

1  you need to be able to do that?  So -- or what rights do you

2  need under the confidentiality order, so that we can talk about

3  that?

4          To Mr. Engquist's point and the city's point, in

5  general, is to me the issue of, what would you be doing with

6  the non -- not the -- the confidential -- the non-redacted

7  versions of these CRs?

8          MR. SWAMINATHAN:  What would I do with the public

9  versions of public documents?  What I would like to say is

10  to --

11          THE COURT:  So let me stop you there.  And this is my

12  concern.

13          So FOIA is in play.  It is important.  You know, the

14  federal government has it.  The State of Illinois has it.  That

15  is important.  It is important for the public to have access to

16  public records.  There is way to do that.  That's through FOIA.

17  It is not through private litigation.

18          And so that's the balance I'm trying to strike is for

19  you to be able to zealously represent your client by having the

20  ability to use information in these designated confidential

21  records to compare.  And to -- you know, in the words of

22  President Reagan, trust, but verify.  To do all those things

23  that you seem to have done already and, you know, have led to

24  discovery of information that wasn't produced that's relevant

25  to cases in the past, that's all fine to me.

1    So if you don't think you can do that now, I want to

2    hear how you think -- what you think needs to be changed to

3    make that achievable.

4    On the other hand, from the city's perspective, they

5    do have an interest in if media sources want this information,

6    they certainly have a right -- I don't want to pre-decide

7    anything.  But they have a right to pursue it, generally

8    speaking, under Illinois Freedom of Information Act, and that's

9    how they should get it.

10    MR. SWAMINATHAN:  Yeah.  What we are now debating is

11    something that they have not -- they have not taken this

12    position in this motion with regard to this protective order.

13    And there is a reason for that.

14    THE COURT:  Well, they have today.  So they have

15    just --

16    MR. SWAMINATHAN:  It is -- I think it is really

17    improper to take this position now in front of you and not

18    raise this position in their motion.  They're doing it for a

19    specific reason.  They cannot take that kind of position in a

20    motion like this, and they can't take it officially, because it

21    is exactly contrary to year -- I mean, years of litigation in

22    state court over the fact that these are public CRs.  They have

23    been able to keep these things secret for so long.

24    MS. CARNEY:  Your Honor --

25    THE COURT:  Okay.  You're -- hold on.  No, no, no.

1      Look, something is public is fine.  It is a -- that's

2  what the state court has decided.  I have no quibble with it.

3  I have no quarrel with that determination.  That's a state

4  court's, you know, right to make that determination.

5      The issue to me is how do people get these public

6  records?  And there is a statute for them to do it.  The

7  statute -- the cases that are cited by you do not say that you

8  can get stuff in federal litigation and then dump it into the

9  media for them to use.  And that seems to be what the

10 defendants are saying they don't want to have happen, and I

11 think that's fair.

12     Just like I think it is fair that if you think the

13 confidentiality order prohibits you from calling another

14 plaintiff's attorney in this area to say, hey, I have got

15 defendant Smith.  They are telling me over the last ten years,

16 17 CRs.  What did you get?  You know, I know you filed a suit

17 against him or her in 2017.  How many did you get from them?  I

18 got 28.  Well, that seems implausible, right?  How did

19 17 -- how did 28 go down to 17?

20     If you don't think you can do that or say, I have got

21 17, eight are excessive force, one deals with this, you don't

22 think you can do that, then propose a change because I think

23 you should be able to do that.

24     MR. SWAMINATHAN:  So if you want us to address this

25 position, let us -- let us think about it and propose some

1    solution that tries to address the kind of concern you're

2    raising.

3           But, from our perspective, saying the solution to this

4    is, go use FOIA, is not the right solution.

5           THE COURT:  They're -- if you have not heard that

6    message from today, then you haven't been listening.

7           MR. SWAMINATHAN:  No, I do.

8           THE COURT:  I don't think that's -- I don't like that

9    concept for the reasons I have already stated.

10          I do understand their concern, and I understand your

11   concern.  It sounds to me that maybe you all need to talk about

12   something -- I mean, I can rule on this.

13          You tell me.  Do you want me to rule on this now?  Or

14   do you want to meet and talk about that, understanding

15   paragraph 17 is not going to fly?

16          MR. ENGQUIST:  If they have a proposal on how they

17   think they can talk with other plaintiffs's counsel, which I

18   don't think is addressed -- what their concern is

19   (unintelligible) addresses that at all, and --

20          THE COURT:  Well --

21          MR. ENGQUIST:  -- keeps thing -- it keeps things --

22          THE COURT:  -- to his point though, you did -- now

23   you're talking about public access to records.

24          MR. ENGQUIST:  Well, yeah.

25          THE COURT:  That's not in here either.  So that's

1  fine.

2       MR. ENGQUIST:  No.  No, the whole idea -- and we did

3  this in another case with the same firm -- is the idea that

4  we'll strip out all the FOIA stuff.  And you're saying if you

5  want a FOIA version, go to FOIA, we'll just deal with this

6  case, and that was fine.

7       Now they want both because it puts the burden on us to

8  do it.  It also goes around the FOIA rules.  And it has nothing

9  to do with the litigation, which we don't want.  Which there is

10  a burden we shouldn't have to take on.

11       But if they have a different proposal because they're

12  concerned that there is some -- that they can't talk to their

13  plaintiff's counsel, which I don't think this affects at all,

14  but if they have a concern about that, we'll talk to them about

15  that.

16       MR. SWAMINATHAN:  Here is my proposal.  Why don't we

17  see if we can confer over the next, let's say, three days.

18       THE COURT:  Okay.

19       MR. SWAMINATHAN:  And if we can't -- and if we can

20  resolve it, we can resolve it.  If we can't, why don't we say

21  that we would submit whatever supplemental positions we have on

22  these additional issues or a dispute about our proposals for

23  resolution within that three days or something like that, and

24  then leave it for your Honor to rule.  That's my proposal.

25       MR. ENGQUIST:  You know, I (unintelligible) time to

1    talk about it, but we're not any more than three days just

2    because we have to go back to the city with anything they give

3    to us in three days.

4           THE COURT:  That's fine.  We'll figure out timing.

5           Okay.  I mean, am I missing either side's concerns?  I

6    mean, I feel like I'm hearing both sides.  But am I missing

7    something?

8           MR. ENGQUIST:  The city's side I think is pretty

9    straightforward when it comes to the fact that if you want

10   documents in this case, for example, confidential --

11   confidentiality order, if you want documents you can use

12   outside this litigation, for public dissemination because there

13   would be -- because you have to do FOIA redactions, then go to

14   FOIA.  That's as simple as that.

15          MS. CARNEY:  Because I think the city's position is

16   that it doesn't -- that there is no additional burden on them

17   in this litigation, which is our only concern is getting them

18   the files for this litigation, not for other extraneous

19   purposes.

20          And we are trying to do that.  I mean, the volume of

21   this discovery is extensive.

22          THE COURT:  Well, I --

23          MS. CARNEY:  And, you know, for example, they are

24   asking for 20 years worth of CRs in categories that would

25   encompass hundreds and hundreds of documents -- of actual CR

1   files, not thousands.

2          THE COURT:  Where in this order does it allow for

3   plaintiff's counsel -- or what Mr. Swaminathan was

4   discussing -- to call another plaintiff's attorney and say, I

5   got this defendant, and I have got 17 CRs.  What do -- I know

6   you sued him last year.  Where -- because as I understand it,

7   when it is confidential, they have got to be an attorney of

8   record.

9          MS. CARNEY:  I mean, that --

10         THE COURT:  I mean, there is other groups.  Yeah,

11  there is experts and things like that.

12         But what allows Mr. Swaminathan to pick up the phone

13  and call, you know, someone at the University of Chicago civil

14  rights clinic saying, you know --

15         MS. CARNEY:  And I think that's something if that's

16  the -- if that is the inherent concern now, then that's

17  something we can talk about.  You know, this was a proposal

18  that was --

19         THE COURT:  Okay.  That's fine.

20         MS. CARNEY:  -- started a couple -- a year or so ago,

21  and it is then entered in other cases with these -- with these

22  plaintiffs.  I hesitate to say that it is kind of a red herring

23  because plaintiff's counsel has most of these officers in all

24  of these cases.  So it is all -- and they all have appearances

25  on file.  So it is all kind of counter.

1          THE COURT:  Well --

2          MS. CARNEY:  It is all being produced to the same

3     place with all of these cases.  So I -- but if it is something

4     that -- if that is the concern, the city is happy to have a

5     conversation about that to try to add --

6          THE COURT:  Great.

7          MS. CARNEY:  -- something into this to address that --

8          THE COURT:  Okay.

9          MS. CARNEY:  -- issue.

10         THE COURT:  So that sounds to be the concern plaintiff

11    has.

12         And defendants's concern is that you get documents

13    through this litigation that are not properly redacted as they

14    would be under the Illinois FOIA Act, and that they -- because

15    they are designated as non-confidential, because you have a

16    right to do that at some point after -- as things go forward,

17    that they are then produced outside of this litigation, and

18    that is their concern.

19         So it sounds like we have very discrete, addressable

20    concerns that we could get figured out.

21         MR. SWAMINATHAN:  And I would like to think about that

22    because they have not raised that concern until we were here

23    today.

24         THE COURT:  Okay.

25         MR. SWAMINATHAN:  And I don't want to take a position

1    that I'm not going to have an opinion about that.  I want to

2    think more about that issue.  And if we feel like we can't get

3    resolution, obviously we'll address with it your Honor.  But

4    we'll think about that and be prepared to confer about it.

5              THE COURT:  All right.  So let's put dates in place.

6              Okay.  By Friday, does everyone have time this week to

7    get a meet and confer done?

8              MR. SWAMINATHAN:  Yes, from the plaintiff's

9    perspective.

10             MS. CARNEY:  Yeah, I think we can do that.

11             MR. ENGQUIST:  I think so.

12             THE COURT:  All right.

13             MR. ENGQUIST:  It all depends on -- it all depends on

14   the ability to talk to city people basically.  They are the

15   people that are making the final decision on the

16   confidentiality order.

17             THE COURT:  Yeah, yeah.  Understood.

18             MR. ENGQUIST:  The client.

19             THE COURT:  Okay.  So I want to make sure the meet and

20   confer is done on the CR issue by 4-26.

21             Parties to submit any additional briefing.  Do you

22   want to do it jointly or simultaneously?

23             MR. SWAMINATHAN:  Let's do it simultaneously, and that

24   will avoid -- that would be easier.  We would prefer that.  But

25   I -- whatever your Honor says.

1          THE COURT:  You agree?

2          MS. CARNEY:  That's fine.

3          THE COURT:  Okay, simultaneously.

4          Any additional briefing by -- I think that's going to

5     be 5-1.  I'm sorry, 5-3.  So that's a week later.

6          Is that going to be enough time for you to consult?

7          MR. SWAMINATHAN:  Great for plaintiff.

8          MR. ENGQUIST:  I think so.

9          MS. CARNEY:  Yeah.

10         MR. ENGQUIST:  We hope so.  If it is not, then we'll

11    let you know.

12         MS. CARNEY:  We'll address -- we'll let the Court know

13    as soon as we can.

14         THE COURT:  Okay.

15         MR. ENGQUIST:  Their schedules are a little bit wonky

16    at the moment.

17         THE COURT:  Yeah.  Do you think anything is going to

18    change between now and --

19         MR. ENGQUIST:  I don't know.  I -- I'd hate to hazard

20    a guess.  But we should be able to --

21         THE COURT:  Okay.  Barring something like that, I'll

22    expect you to have it.

23         MR. SWAMINATHAN:  That's fine.

24         THE COURT:  If people want to perseverate, that's not

25    going to be a good reason.  If people are like, well, I'm --

1   you know, I just submitted my letter of resignation, I'll

2   consider that.

3            And then I'm looking at either 5-8 -- is that okay,

4   Ms. Owens, or 5-14 for a hearing?

5            MS. CARNEY:  Probably 5-14 --

6            MR. ENGQUIST:  5-14.

7            THE COURT:  Yeah, 5-14 at 9:45.

8            MR. ENGQUIST:  Someone else will be here.  That's

9   fine.  Someone else will have to be here.

10           MR. SWAMINATHAN:  5-14 you said, your Honor?

11           THE COURT:  Yeah.  I would prefer to do it 5-8 if we

12  could.

13           MR. SWAMINATHAN:  I work -- I think you just said it

14  does not work for you guys, right?

15       (Discussion off the record.)

16           MS. CARNEY:  Okay.  We can make 5-8 work.

17           THE COURT:  Okay.

18           MR. SWAMINATHAN:  We also -- oh, go ahead, your Honor.

19           THE COURT:  9:45 -- and would you --

20       (Brief interruption.)

21           THE COURT:  Again, 9:45.

22           MR. SWAMINATHAN:  We had a --

23           THE COURT:  The HIPAA issue, right?

24           MR. SWAMINATHAN:  Yeah, the HIPAA issue.

25           THE COURT:  Yeah.  Okay.  So --

1        MR. SWAMINATHAN:  And I was going to say

2  (unintelligible) if you want to --

3        THE COURT:  Yeah, no.  No, I mean, that -- so to me I

4  understand -- I am going to look at that.

5        So I understand plaintiff's concern about the language

6  about plaintiff has put at issue his mental health.

7        MS. CARNEY:  I am sorry, your Honor.  Before we change

8  gears, I think we missed one subject --

9        THE COURT:  Tell me.

10        MS. CARNEY:  -- of the protective order.

11        THE COURT:  Okay.

12        MS. CARNEY:  The city's request to include paragraph

13  5, redaction of personal identifying information.

14        Section 3 of our motion, page 6, 7 of the --

15        THE COURT:  Sorry.  Actually I may have missed another

16  one too now that I am looking.

17        MS. CARNEY:  No, I think that's the --

18        THE COURT:  You said -- what page?

19        MS. CARNEY:  I think it is pages 6 and 7 of 96-1.  So

20  it is the inclusion of paragraph 5, titled action of personal

21  identifying information, which coincides with our removal of

22  paragraph 8 of the model order.

23        THE COURT:  Page 6 of 96.1.

24        And what paragraph?  I'm sorry.

25        MS. CARNEY:  Five.

```
 1              THE COURT:  What was five?

 2              MS. CARNEY:  There was no -- I don't know what five

 3  would have been.  It may have --

 4              THE COURT:  So --

 5              MS. CARNEY:  Inadvertent failure --

 6              MR. SWAMINATHAN:  Inadvertent failure to designate.

 7              MS. CARNEY:  -- to designate.  So we --

 8              MR. SWAMINATHAN:  Normal clawback, yeah.

 9              THE COURT:  So I'm looking at page 6 of 15 at 96 point

10  1 is protection of confidential material.

11              MR. SWAMINATHAN:  On 96 dash -- you're looking at

12  Docket 96 dash 1.

13              THE COURT:  Yes.

14              MS. CARNEY:  So at the very bottom of page 6, it

15  should be --

16              THE COURT:  It says contractors on mine.

17              MS. CARNEY:  Oh.

18              MR. SWAMINATHAN:  Let me just hand you mine.  It may

19  have some markings on it.

20              Your Honor, is it okay if I hand you --

21              THE COURT:  Yeah.

22              MR. SWAMINATHAN:  -- to make sure you have the same

23  thing?

24              THE COURT:  Oh, mine is printed differently.

25              Okay.  So you're at 7.
```

1          Okay.  I'm at 7.  Redaction of personal identifying

2    information.  Thank you.

3          MR. SWAMINATHAN:  Yes.

4          MS. CARNEY:  Yeah, that would -- that's --

5          THE COURT:  Okay.  I'm sorry.

6          MS. CARNEY:  -- the paragraph at issue.

7          So the city is seeking to add in this paragraph, while

8    at the same time striking paragraph 8.  Although if -- if

9    paragraph 5 was allowed in, we're fine with paragraph 8.

10          Basically the city wants to be able to redact things

11   like Social Security numbers, dates of birth, home addresses

12   from documents that don't have a confidential designation or

13   even -- and for non-employee police officers and their family

14   members, even documents that do have a confidential

15   designation.  We don't feel that non-employee police officer --

16   or non-defendant police officers and their family's Social

17   Security numbers, dates of birth, home addresses, even if the

18   document is confidential, it need to be -- no, they don't need

19   to be known to the plaintiff and the plaintiff's lawyers.

20   There are safety concerns.

21          THE COURT:  So I agree with that as far as the

22   defendant -- non-defendant employees of the city or former

23   employees of the city.

24          Where -- you're fine with that, aren't you?

25          MR. SWAMINATHAN:  Yeah.  We don't have a problem with

1   redacting things like Social Security numbers.  And

2   fundamentally, right, I mean, I think our position is just we

3   don't know what all can fall within this provision.

4           What we care about is, yeah, if you're going to need

5   to redact a Social Security number, we're not going to end up

6   in a dispute.  But this provision just basically says, you can

7   redact all sorts of things like phone numbers, addresses, et

8   cetera, for categories of people, and I don't know -- I can't

9   say as I sit here today -- I know exactly what's going to be in

10  the documents in terms of what the redactions are.

11          And I have got a specific example in mind about the

12  thing I am concerned about.  What I would say is as a general

13  rule our experience is when things like addresses and phone

14  numbers get redacted, then we -- we are in a position where we

15  feel like we're inherently behind because those are potential

16  witnesses, et cetera.

17          Now I don't -- I'm not saying the defendant officer's

18  phone number I need it because I'm going to --

19          THE COURT:  Make sure you talk into the mic, please.

20          MR. SWAMINATHAN:  -- because I'm going to be calling

21  him directly.  I know I'm going to be communicating with him

22  through counsel.

23          THE COURT:  Right.

24          MR. SWAMINATHAN:  But once we talk -- start talking

25  about non-parties of any kind, those are potential witnesses in

1    these cases.  If you had access to their addresses and phone

2    numbers and I don't, then, you know, that's an investigation

3    problem.

4         So our view has been -- but you're already marking

5    these things confidential.  Why do you have to redact that so

6    that you have the information advantage on third parties?  They

7    are confidential.  I can't use them and share them with anybody

8    --

9         THE COURT:  Yeah.

10        MR. SWAMINATHAN:  -- so don't redact.

11        And I -- while also accepting, because I don't want to

12   make it seem like we have an unreasonable position, I want to

13   be clear, if they redacted a Social Security number, I wouldn't

14   have a problem with that.

15        If they said to me -- and I think we said this in our

16   response to the motion -- if they said to me, I need to redact

17   a particular thing because of an officer's safety concern, that

18   goes beyond what would just be done by having it be marked

19   confidential, I would understand that.  You know, and we could

20   talk about it.

21        But I don't have -- having a person that just says, go

22   ahead and redact all kinds of information out of the records

23   entirely so plaintiff doesn't see them, including third-party

24   information --

25        THE COURT:  Right.

1    MR. SWAMINATHAN:  -- that's our concern.

2    THE COURT:  Yeah.  That's kind of where I am on the

3  issue is the third parties.  For officers, if you want to

4  redact Social Security numbers, dates of birth, home addresses,

5  that's all fine.

6    I'm just trying to figure out third parties.

7    MR. ENGQUIST:  Nor like third-party non-employees,

8  like witnesses in the cases and like that their -- their

9  addresses and phone numbers aren't redacted.  We're required to

10  redact Social Security numbers.  And it might be something for

11  the Juvenile Court Act --

12    THE COURT:  Yeah.

13    MR. ENGQUIST:  -- but --

14    THE COURT:  That's all fine.

15    MR. ENGQUIST:  But we don't -- I mean, as a matter of

16  practice, and they have done this for years, we don't redact

17  their addresses or phone numbers for those people in the case

18  reports and stuff like that, no.

19    The only time we would have done something like that

20  is if it was redacted, like if someone called the OEMC and

21  demanded it be confidential, that was something that popped up,

22  but that's something that it doesn't necessarily address.

23    THE COURT:  All right.  So when I'm looking at -- it

24  is -- I'm sorry, paragraph 5, redaction of personal identifying

25  information.  Notwithstanding the foregoing provisions,

1 responding parties shall have the right to redact from all

2 documents produced in discovery Social Security numbers, dates

3 of birth, and information covered by the Juvenile Court Act.

4 So that would be for everyone.

5          MR. ENGQUIST:  Yes.

6          THE COURT:  As well as for security reasons all

7 references to a current or former individual police officer's

8 confidential information about him/herself, his/her family.

9 And then it goes on Social Security number, home address, cell

10 phones, personal email.

11          So I don't know -- it doesn't sound like there is a

12 dispute.  Or what am I --

13          MR. SWAMINATHAN:  Well, the latter seems to be where

14 we're having some more -- where there are some third parties.

15          Well, so on the former, I'll just use an example.

16 Dates of birth are --

17          THE COURT:  Is that your big issue, dates of birth?

18          MR. SWAMINATHAN:  Let me -- so let me give you two of

19 them.  Let me just state, the general concern is the

20 identifying information of third parties.

21          Dates of birth is an important piece of information

22 for us to know.  There can be a million John Smiths.

23          THE COURT:  Yeah.

24          MR. SWAMINATHAN:  But John Smith with a certain date,

25 birthdate, that's how you find him, right?

```
 1              THE COURT:  And Social Security number by rule.
 2              MR. SWAMINATHAN:  I have no problem redacting the
 3   Social Security number.
 4              THE COURT:  All right.  So what is your view on the
 5   date of birth?  So that's one issue I -- you know --
 6              MS. CARNEY:  I think as long it is not a juvenile, and
 7   the information is not covered by the Juvenile Court Act --
 8              THE COURT:  The Juvenile Court Act will stay in.  But
 9   the --
10              MS. CARNEY:  A date of birth -- what do you think?
11              MR. ENGQUIST:  For our clients?
12              THE COURT:  No, no, no.
13              MS. CARNEY:  No, for third -- any third-party --
14              THE COURT:  Third parties.
15              So if someone in the CR says, you know --
16              MR. ENGQUIST:  If they want it for, like, City of
17   Chicago employees or just --
18              THE COURT:  No.
19              MS. CARNEY:  Because this is more broad than that.
20              MR. ENGQUIST:  Okay.  For the --
21              MS. CARNEY:  From all documents produced in this case.
22              MR. ENGQUIST:  Oh, for the date of birth for the
23   non-employees?
24              MS. CARNEY:  Non-employees I don't think that it is a
25   problem --
```

1    MR. ENGQUIST:  That shouldn't be a problem.

2    MS. CARNEY:  -- include the date of birth.

3    THE COURT:  Yeah.  The Social Security number is

4 covered by rule.

5    MS. CARNEY:  Right.

6    THE COURT:  That -- and it doesn't seem to be what

7 plaintiff is asking for.  Dates of birth, so if, you know,

8 someone witnessed something, and you have got a date of birth

9 there, he wants to be able to try to track the person down

10 without calling you for the date of birth.

11    MR. ENGQUIST:  Fine.

12    MS. CARNEY:  That's fine.

13    THE COURT:  All right.  So date of birth will be

14 redact- -- taken out.  Take date of birth out.  And then you

15 need to include it in for the individual police officers.

16    MR. SWAMINATHAN:  And then in the latter provision,

17 right, then in the remaining provision all --

18    THE COURT:  Just one second.

19    Do you see how you have a Social Security number?  I

20 put it in dates of birth for the police officers.

21    MS. CARNEY:  Right.  Where it says including, but not

22 limited to --

23    THE COURT:  Yeah, exactly.

24    MS. CARNEY:  -- Social Security number, dates of

25 birth -- okay.

1    THE COURT:  Yeah.

2    Go ahead.  I'm sorry.

3    MR. SWAMINATHAN:  On that latter provision, as I read

4    this provision, it is not a provision about the police -- about

5    the party defendants or the parties to this, it is a blanket

6    provision for any current or former police officer, many of

7    whom might be third parties, of course, the redaction of all

8    information is deemed essentially by this order to be

9    considered security -- for security reasons protected,

10    including addresses, cell phone numbers, et cetera, et cetera.

11    THE COURT:  Okay.

12    MR. SWAMINATHAN:  There are many third-party the

13    defendants, for example, who are former employees of Chicago

14    Police Department for whom the city says, we don't have any

15    control over them.  Plaintiff go ahead and subpoena them

16    yourself.  Go find them.  Right?

17    That happens regularly.  They don't do that with

18    parties, obviously.  But if there are former employees, some of

19    them say -- they often say, go find them.  You talk to them

20    yourselves.  We're not -- we don't control them.

21    That would be the kind of person for whom, why

22    shouldn't I have their address and date of birth and kind of

23    the typical information.

24    THE COURT:  No.

25    MS. CARNEY:  I -- but --

1    THE COURT:  So if that comes to pass where you say

2  there is a police officer who is retired living in a boat --

3    MS. CARNEY:  What typically happens is they reach out

4  to us and say, do you have contact with this person?

5    We say -- and we, as the city, make the first attempt

6  because we would, if they so choose, represent them.  And we

7  make the first attempt to contact them.

8    In the event that they don't want our representation

9  or we can't get ahold of them or can't contact them, we, as we

10  have in the past, have given home addresses and have -- they

11  have been able to try to serve them themselves.  It is not

12  changing any of that.

13    MR. SWAMINATHAN:  That representation on the record

14  satisfies me --

15    THE COURT:  Okay.

16    MR. SWAMINATHAN:  -- for purposes of the --

17    MR. ENGQUIST:  Yeah, we just did (unintelligible) with

18  the same firm say.

19    THE COURT:  Yeah.  No, no, that's fine.  I mean,

20  that's fine.  I mean, and if --

21    MR. SWAMINATHAN:  When (unintelligible) let me know.

22  But we just have to address the language of the protective

23  order, so I appreciate that.

24    THE COURT:  All right.  So that it was 5.

25    And then I saw something Detective Guevara that --

1    MS. CARNEY:  So we had stricken in paragraph 8 out of

2  concern that if we did not have paragraph 5 in, we would have

3  to bring a motion every time we needed to redact this

4  information.  Since your Honor has granted our inclusion of

5  paragraph 5, we are fine with keeping in model order paragraph

6  8.

7    THE COURT:  Okay.

8    MR. SWAMINATHAN:  Or what would have been 7.  So no

9  greater protection of specific documents.  They're fine leaving

10  that section in.  It might have been in a different place

11  otherwise.

12    THE COURT:  Okay.  All right.  So that resolves

13  itself.

14    All right.  Anything Detective Guevara, other than the

15  CR issue, which we have tabled?

16    MS. CARNEY:  No.  But just one housekeeping thing.  So

17  would you like me to put together where I think we're at,

18  provide it to plaintiff's counsel, and so we can get a draft of

19  the -- everything but the CR issue where we're at?

20    THE COURT:  Correct.

21    MS. CARNEY:  Okay.

22    THE COURT:  That would help a lot.

23    MS. CARNEY:  I will do that, your Honor.

24    THE COURT:  Thank you.

25    Okay.  Then the HIPAA issue.  So the language that I

1   think -- let me go to plaintiff's.

2          So the objection I think plaintiff has is paragraph --

3   unfortunately we don't have a colored printer so I was at a

4   little bit of a disadvantage.

5          Where is the paragraph?  Oh, it is the very beginning.

6   So this isn't numbered.

7          So as I understand plaintiff's concern is at paragraph

8   2, they are not numbered, there is language in the proposed

9   HIPAA order.  It says, the Court further finds that plaintiff

10  has affirmatively placed his medical and mental health

11  condition at issue in this litigation.  And then goes on from

12  there.

13         And plaintiff objects to that by saying it is

14  unnecessary.

15         Why isn't this surplusage?

16         MR. ENGQUIST:  Judge, the reason this came up, and it

17  is in another case we basically entered a protective order, and

18  then we had fights where all of a sudden they are saying, oh,

19  yeah, we have a protective order, but we still have our

20  document privilege.  So before you can get the records, we want

21  to look at them.  And so just -- they kept adding additional

22  steps.

23         And so we would like to address it because that is in

24  fact what the case law says that (unintelligible) plaintiff

25  puts their medical and mental health at issue, you know, the

1    Taylor case, (unintelligible) case, going back to Doe, that

2    waives basically the rights under that to the extent that

3    remains at issue.  And so --

4         THE COURT:  I'm not agreeing or disagreeing with that

5    general statement.  I think it is generally tethered to the

6    law.  But it may be an oversimplification of the law.

7         But the -- I think the question I have for plaintiff

8    is, have you put that at issue?  In your briefing you suggest

9    you haven't.

10        MR. SWAMINATHAN:  Yes, we believe that we have not put

11   it at issue yet.  And the way to resolve the question of

12   whether we put it at issue is if they -- if they go and seek

13   some specific records for my client.  If I decide that I oppose

14   those records because of a privilege --

15        THE COURT:  Yeah, that's what I --

16        MR. SWAMINATHAN:  -- and we should have a motion to

17   compel and we should argue exactly the point he's making about

18   whether the redacting privilege has been waived based on the

19   law that he says it, I do -- all items identified for the Court

20   in our motion that his position on the law we disagree with in

21   terms of whether the facts have been put in place in this case

22   to articulate a waiver of Jaffe.  We have a disagreement about

23   that.

24        And all our point is, you don't need to agree or

25   disagree or resolve that dispute now, and we shouldn't.  We

1  should resolve it in context with whatever the request is, what

2  our basis for the objection is.  None of that is needed to do

3  what you're doing here, which all the parties agree on --

4         THE COURT:  Well --

5         MR. SWAMINATHAN:  -- putting in place a procedure for

6  producing these records.

7         THE COURT:  So -- okay.  Paragraph 11 of your motion,

8  defendants would have the Court believe that the very act of

9  seeking non-monetary damages in the form of emotional distress

10  waives of a patient's psychotherapist privilege and all other

11  privileges.

12         I don't know what you mean by seeking non-monetary

13  damages in the form of emotional distress.  Because in our

14  system, as far as I understand it, the jury can't give an

15  apology note, they can't give an award of feeling bad for you.

16  They compensate someone by money.  That's how our system -- the

17  limitation, you know, for better or for worse, they cannot

18  order that the officer apologize to the guy.  We all know that.

19         So I don't understand what you mean by the term

20  non-monetary damages in the form of emotional distress.

21         MR. SWAMINATHAN:  Simply the idea that when we seek

22  any form of emotional distress, as opposed to lost income,

23  medical expenses, the typical forms of what you might call

24  quantifiable economic damages, right, because if there is

25  quantifiable stuff that we might seek, like lost income,

1  like --

2           THE COURT:  Yes, I understand that.

3           MR. SWAMINATHAN:  -- like my funeral expenses, my --

4  those kinds of things.  What we're saying is the minute -- what

5  they're -- we're saying is our -- we understand their position

6  to be is the minute you seek any of the things that are not

7  that category of quantifiable money stuff, but rather any form

8  of emotional distress by damages, then suddenly you have

9  automatically waived Jaffe.  That's all that I'm trying to say

10 there.

11          And our brief is saying, we disagree with that.  The

12 minute we seek non-monetary damages, like emotional distress,

13 that doesn't automatically mean our Jaffe waiver has taken

14 place.  And for that reason, don't resolve the dispute now when

15 all we're doing is arguing a theoretical position to you on

16 each side.  Resolve the dispute when there is a dispute to be

17 had, put in place this mechanism.

18          THE COURT:  Okay.

19          Continuing on with your brief.  The psychotherapist-

20 patient relationship is not waived when the plaintiff does not

21 intend at trial to offer evidence of consultations with a

22 psychotherapist or rely on expert testimony concerning the

23 distress allegedly caused by defendants's actions.

24          When will you decide whether you intend to pursue that

25 form of relief at trial?  Because I understand what you're

1  saying, and I don't disagree that if someone says it bothered

2  me, that doesn't put in -- does not waive your psychotherapist

3  privilege.

4      MR. SWAMINATHAN:  Yeah, I mean, for example --

5      THE COURT:  By what I am getting at -- and I

6  understand what you're saying.  And I'm sure the city would be

7  happy to say, we don't have to do any discovery on this if

8  you're not going to be asking for damages on it.

9      So when can --

10     MR. SWAMINATHAN:  I'm not so sure they would take that

11 position.

12     THE COURT:  Okay.

13     MR. SWAMINATHAN:  But what I will say is, for example,

14 in this current posture, my client has not gone to therapists.

15 He hasn't -- doesn't have a diagnosis of depression, PTSD or

16 any of those things.

17     THE COURT:  You have put all that in there.

18     MR. SWAMINATHAN:  And so the point is --

19     THE COURT:  I am asking a direct question.  When will

20 you decide this?  Because what you -- what I am not going to

21 allow happen, and this happens when a Judge sends a big

22 complicated case of discovery to me, to a magistrate judge, who

23 is not going to try the case, and then the district court Judge

24 gets a case three years from now, and then this issue

25 percolates up.

1      MR. SWAMINATHAN:  I think I'm going to have to take a

2  position on this issue the minute I see a request for them to a

3  specific medical provider that seeks documents that I may

4  decide I think there is some reason why I think there is a

5  psychotherapist privilege that applies to these.  And therefore

6  I want to now make a decision about whether I want to assert --

7  you know, whether I want to put in play these types of damages

8  versus another type of damages.

9      I think I have to make that kind of an assessment at

10  the moment that I have got some request like this, and I have

11  got to make a call.

12      THE COURT:  So this is a little bit cart before the

13  horse because we're in a protective order.  It is a theoretical

14  issue.  Yet we -- we don't have the real issue here.

15      MR. ENGQUIST:  And, Judge, if I could, I mean, the

16  language of the plaintiff's complaint is, you know, it is -- he

17  is suffering from extreme psychological pain and suffering,

18  humiliation, constant fear, nightmares, anxiety, depression,

19  despair, rage, and other physical and psychological effects.

20      So the plaintiff has already put this at issue.  And I

21  appreciate the -- kind of the step back now, but he's not

22  getting any care or treatment.  He's already put this at issue

23  in the complaint.  And the problem is we don't want to get into

24  a problem where we're half in and half out.  The law --

25      THE COURT:  Well, we all know that what a trial --

1    what a case looks like at trial often, almost always, looks

2    different from what is alleged in the complaint.  So what

3    Mr. Swaminathan has just said is I'm going to have to decide

4    this when the first request goes out for these records.  So I'm

5    not saying you're not --

6            MR. ENGQUIST:  Our position was this should have been

7    decided before they filed the complaint.

8            THE COURT:  Okay.  Well, guess what?  Complaints

9    aren't evidence.  They don't come in at trial.  And complaints

10   are carved away.  Charges are dropped voluntarily.  Sometimes

11   they are dismissed by dispositive motion.  All sorts of things

12   change from the time a complaint or an amended complaint is

13   filed and it goes to trial.

14           But what I am not going to let happen is for this to

15   just kind of stay dormant.  And then when you're at a pretrial

16   conference, this come up and then you're like, we didn't get

17   discovery on this because Judge Weisman didn't let us.

18           So when can you get your subpoenas out?  Do you know

19   who his -- any mental health providers are or do you have

20   answers to interrogatories on those issues?

21           MR. ENGQUIST:  Just interrogatories.

22           I think we do, and, again, I don't know if there is.

23           THE COURT:  Do you have a question?

24           MR. ENGQUIST:  I'm pretty sure we would have asked her

25   who the mental health providers were.

1    THE COURT:  I'm sorry.  Okay.  When can you get those

2  subpoenas -- I'm sorry I interrupted you.

3    MR. ENGQUIST:  I'm pretty sure we would have asked

4  those questions, so I'm pretty sure we have asked them.

5    We can get the subpoenas out.  The only thing is we

6  would like some type of HIPAA order in place.  Because if we

7  get the subpoenas out, a lot of times the push back is, you

8  need a HIPAA, you need a mental health.

9    And so, I mean, if you want, we can issue the subpoena

10  now, and that will tee this all up a little down the road, even

11  without the order entered.

12    THE COURT:  That's what I -- well, we can modify the

13  order.  So I'm --

14    MR. ENGQUIST:  Right.

15    THE COURT:  -- what I am trying to get is an order in

16  place now.  And then I want to get this issue resolved.

17    So -- just so everyone is tracking.  I'm at Document

18  100-1.  Does everyone have that?  That was attached to

19  plaintiff's response.

20    MR. ENGQUIST:  Is that the redlined version?

21    THE COURT:  Yeah, I -- but I only have black and white

22  so I don't have -- you can call it redlined, but I'm looking at

23  their black and white version of it.

24    So they're looking at striking this finding from the

25  court.  I don't see a reason why that finding needs to be in

1  there at this point.  I don't even know if it needs to be in

2  there ever.  It seems to have an aura of judicial finding that

3  is unnecessary for the protective order.

4       So on page 1 that language that's redacted will stay

5  redacted.

6       And then, Mr. Swaminathan, walk me through -- because

7  I just have black and white.  The next area that I think is a

8  change would be the inclusion of the officers.  And for the

9  same reasons that, you know, right now I don't understand how

10  the officers's mental health or personnel health is at issue.

11  And it may become at issue, I don't know.  But right now I

12  don't see it being at issue.

13       MR. SWAMINATHAN:  Yes, so from our perspective, I

14  think -- I get that point.  I think what we're saying is, for

15  example, we were just having a debate about the confidentiality

16  order in which we were taking, about -- well, one of the things

17  that's in personnel files, for example, is a request for

18  medical leave.  Right?

19       THE COURT:  Yeah.

20       MR. SWAMINATHAN:  So there are -- these kinds of

21  things are in the records.  I'm not saying tomorrow I'm going

22  out to issue a subpoena for defendant Guevara's, you know,

23  psyche history.  And I understand we have a rich debate if we

24  did.

25       All we're saying is if there are things in these

1    records, like the personnel files where legitimately you might

2    see the cases, there is mental health or that kind of

3    information.

4          All we want to do is have this mechanism in place to

5    address it.  None of this is resolving -- what I am saying is

6    don't put in things like judicial findings.  So there won't be

7    a judicial finding in our version of the protective order that

8    says Detective Guevara's psych history is relevant or anything

9    else.

10          All we're saying is when you produce CRs to me, if

11   there are requests for medical leave and they relate to medical

12   or mental health issues, yeah, we should have this HIPAA

13   protective order in place to cover that.

14          If tomorrow I walk in here or tomorrow I issue a

15   subpoena for his psyche records and say, oh, well, look, I have

16   a HIPAA order, of course they have a right to come in and quash

17   that subpoena and say there is not relevance to this.  They

18   shouldn't get it, blah, blah, blah, and there should be no

19   HIPAA -- there should be a HIPAA order in place that protects

20   that information if it was produced or there should be a HIPAA

21   order that says -- that does not say anything about judicial

22   finding preemptively that is relevant or not relevant.

23          THE COURT:  We're not going to do that.  But to the

24   point --

25          MR. ENGQUIST:  Judge --

1          THE COURT:  Hold on just for a second.

2          To the point that was made about the complaint's

3     language, that is a prima facie showing that there is a reason

4     for the defendants to be seeking records of the nature they're

5     going to issue a subpoena for.

6          Right now I don't even see a prima facie showing of

7     why you would be out looking for these records.  Now certainly,

8     you know, you're going to be getting personnel records and

9     other things that may make it relevant under Rule 26 that you

10    want to get those records, in which case you can file a motion

11    for a modified protective or a HIPAA order.

12         MR. SWAMINATHAN:  And, look, at the end of the day, I

13    don't -- I mean, my view is I think it is prima facie showing

14    because they have talked about, even on the confidentiality

15    order, hey, there is requests for medical leave and these kinds

16    of things in these personnel files.

17         And we said to them in this case, you know what, we'll

18    just leave out defendants if you say -- if I guys represent to

19    us there isn't any of this kind of information in the personnel

20    file or CR files, then, fine, we'll leave out defendants.  They

21    didn't make that representation, so we felt we needed to

22    include it.

23         THE COURT:  Yeah.  But medical leave could cover, you

24    know --

25         MR. SWAMINATHAN:  Sure.

```
1              THE COURT:  -- injured knee, which would have nothing
2      to do with anything.
3              MR. SWAMINATHAN:  And if you say come back on an
4      amended protective order --
5              THE COURT:  Right.
6              MR. SWAMINATHAN:  -- if you have this dispute, I --
7              THE COURT:  Yeah.  So that -- I'm at 1 on page 2 of 6,
8      the included language is -- of the office -- defendant officers
9      is not going to be included in the HIPAA order.
10             Did you want to add something, counsel?
11             MR. ENGQUIST:  No, Judge, you have addressed it.  But
12     just for a clarification, the other protective order would
13     cover any, quote unquote, medical records that might be in a
14     personnel file because that's one of the elicited letters in
15     the first paragraph about what is covered.
16             THE COURT:  Okay.
17             MR. ENGQUIST:  So this document is specifically so
18     that we can obtain records from providers.
19             THE COURT:  Okay.
20             MR. ENGQUIST:  That's the purpose of this protective
21     order.
22             THE COURT:  And, Mr. Swaminathan, so the -- I'm
23     looking at paragraph 5 now.  This is 3 of 6 on 100 dash 1.
24     Same thing, those are just the defendant officers, right?
25             MR. SWAMINATHAN:  Yes.
```

```
 1              THE COURT:  It is the same issue.

 2              MR. SWAMINATHAN:  It is the same for everyone of those

 3   where it just lists a bunch of names.

 4              THE COURT:  Okay.

 5              MR. SWAMINATHAN:  That is -- so that addresses all of

 6   those.

 7              THE COURT:  Okay.  Is there anything in here that

 8   there was --

 9              MR. SWAMINATHAN:  I think there was one other one

10   on -- let me just -- I have that.

11              It is the paragraph near the end that is also

12   stricken, which relates to the first issue of a judicial

13   finding.

14              THE COURT:  Eleven?

15              MR. SWAMINATHAN:  Eleven.

16              THE COURT:  Okay.  So do you see -- so that reads,

17   other than based on HIPAA, the Illinois MHDCA, the Jaffe

18   psychotherapist-patient privilege and drug and alcohol

19   treatment rehabilitation confidentiality statutes.

20              MR. SWAMINATHAN:  We just view that as an extension of

21   the issue you just addressed, which is that addition makes it

22   like it is a waiver.

23              THE COURT:  So I think that should be struck.  And

24   that's not going to prohibit you from -- I'm asking, that's not

25   going to stop you from seeking those records now as an initial
```

1  matter, correct?

2         MR. ENGQUIST:  No, Judge.  If we can just strike the

3  Jaffe psycho-therapist patient privilege.  Because the reality

4  is the effect of this is, to some extent, waiving HIPAA.  And

5  the Illinois Mental Health and Development Disabilities

6  confidentiality (unintelligible) say they do agree with.  It is

7  the Jaffe that they don't want to waive.

8         THE COURT:  Well, drug and alcohol treatment,

9  rehabilitation.

10        Why do you need that language in there?

11        MR. SWAMINATHAN:  Judge, one of the problems is, to

12  the extent they have received treatment and they have received

13  treatment at a hospital, you know, throughout the majority of

14  their life sometimes they might be receiving drug and alcohol

15  treatment, in addition to what they are there for.  If they are

16  in a car accident, but they also have a substance abuse issue,

17  and that creates an issue where you have -- the hospital is

18  arbitrarily to parse out certain records that are potentially

19  confidential in this Drug and Alcohol Rehabilitation Act.

20        Whether there are or not, we don't know.  But we just

21  don't want the hospital to make an arbitrary decision of what

22  we do and don't get from an admission for something unrelated.

23        THE COURT:  What is your view on that?

24        MR. SWAMINATHAN:  It is all already -- all that is

25  protected.  The first paragraph says, all those things, medical

1   health, mental health, alcohol or drug use.  It is all covered

2   by this HIPAA protective order.

3         The additional language saying, plus a judicial

4   finding of waiver, whether it is in that first paragraph or --

5         THE COURT:  Mr. Swaminathan is correct.

6         MR. SWAMINATHAN:  -- implicitly --

7         THE COURT:  Okay.  So that -- paragraph 11, that

8   redaction that's proposed should be redacted, which -- do you

9   see that parenthetical?

10        MR. ENGQUIST:  Just the parentheses?

11        MR. SWAMINATHAN:  It is just saying that no waiver --

12   nothing about that assumes any waivers or anything else.  We

13   can debate those issues later.

14        THE COURT:  All right.  So I think that addresses the

15   concerns raised by the plaintiff.

16        Correct, Mr. Swaminathan?

17        MR. SWAMINATHAN:  Yes, your Honor.  Thank you.

18        THE COURT:  So now let's get back to when we can get

19   the issue of the psychotherapist privilege teed up.  So we have

20   got the CR issue.

21        When did you say you could get subpoenas out?  I just

22   --

23        MR. ENGQUIST:  We should be able to get subpoenas out

24   in the next week or two, provided that we -- there is a treater

25   that has been disclosed.  It is possible that, you know,

1    plaintiff doesn't know because the actual plaintiff himself has

2    not advised them that he is seeking treatment.

3           And I don't know, to the extent they have disclosed

4    any prior mental health treatment prior to his incarceration or

5    they -- so again, Judge, I should -- I would hope we could get

6    out at least one subpoena that would tee this issue up for all

7    essential other treaters that might have this privilege.  But,

8    again, I just don't know right now if they have disclosed a

9    treater that would have a mental health (unintelligible) type

10   privilege.

11          THE COURT:  Okay.  I'll put that -- be prepared to

12   address that for our next hearing on the 8th.  Okay?

13          MR. ENGQUIST:  Okay, Judge.

14          THE COURT:  Because I'm going to put a date in place

15   so you aren't prejudiced with -- you know, two years from now

16   there being an issue that you never sought out because of this.

17   Okay?

18          MR. ENGQUIST:  Yes, Judge.

19          THE COURT:  We will -- it sounds like plaintiff

20   acknowledges we have got to get that issue teed up.  And I

21   agree with Mr. Swaminathan that it is better to do in the

22   context of an actual subpoena and a motion to quash the

23   subpoena as opposed to a protective order.

24          MR. SWAMINATHAN:  Okay.

25          THE COURT:  So just be prepared to tell me when you

1    can get those out when we're back on the 8th.

2           So defendants's motion for entry of a HIPAA protective

3    order is generally granted, with the modifications we have made

4    on the record.

5           Then the motion for entry of a protective order is

6    generally granted, and then continued to address the CR issue,

7    which we can -- then hopefully you'll exchange a draft so we

8    can look at a full draft on the 8th and get that all worked

9    out.

10          MS. CARNEY:  I will, your Honor.

11          MR. SWAMINATHAN:  And meanwhile I'll just note for the

12   record, I think we have said it before, and I think writing to

13   them, but I'll say it again on the record so it is clear, we

14   have agreed in this case, to the extent there are things that

15   they think would be subject to the protective order but has not

16   been entered yet, we have agreed to take those things as

17   confidential until the issue of the protective order is

18   resolved so that there is nothing that would -- should delay

19   anything.

20          THE COURT:  Okay.

21          And you acknowledge that, correct?

22          MS. CARNEY:  Yes, your Honor.

23          THE COURT:  Okay.  All right.  We'll be back on the

24   8th to get this cleared up.  And then we'll look forward to

25   getting discovery moving forward with some more dates to kind

1  of get things going forward.

2       All right?

3       MR. SWAMINATHAN:  Thank you, Judge.

4       THE COURT:  Thank you so much.

5       MS. CARNEY:  Thank you.

6     (Which concluded the proceedings.)

7                    CERTIFICATE

8       I certify that the foregoing is a correct transcript

9  from the digital recording of proceedings in the above-entitled

10  matter to the best of my ability, given the limitation of using

11  a digital-recording system.

12

13

14  */s/Pamela S. Warren*                    April 24, 2019
    Official Court Reporter                     Date
15  United States District Court
    Northern District of Illinois
16  Eastern Division

17

18

19

20

21

22

23

24

25