# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS SIERRA, | ) | |
| | ) | Case No. 18 CV 3029 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| REYNALDO GUEVARA, et. al, | ) | Judge John Z. Lee |
| | ) | Magistrate Judge David Weisman |
| | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |
| | ) | |

### **DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO QUASH 12 SUBPOENAS**

Defendants JoAnn Halvorsen, as Special Representative for the Estate of Ernest Halvorsen, deceased, Anthony Wojcik, John McMurray, George Figueroa, Edward Mingey, Robert Biebel, Reynaldo Guevara, and the City of Chicago, by and through their attorneys, and for their Response in Opposition to Plaintiff's Motion to Quash 12 Subpoenas, state as follows:

### **INTRODUCTION**

Plaintiff's motion to quash twelve[1] subpoenas opens with the statement "context matters." (Dkt. 202, at 2). Indeed, it does. Over two months ago, Defendants gave Plaintiff notice of intent to serve fifteen subpoenas along with the corresponding detailed riders. But just four minutes later, Plaintiff's counsel responded with a single-sentence blanket objection to all of them; and in the two months that followed, Plaintiff persisted in the employment of delay tactics. Ultimately, in the interests of moving discovery forward, Defendants withdrew two of their subpoenas, narrowed others, offered a means of efficiency by way of agreeing to accept joint

---

[1] To clarify, Defendants gave notice of intent to serve 15 subpoenas, but later withdrew two of them. Thus, there are 13 subpoenas remaining. Plaintiff states throughout his motion that he seeks to quash "12" subpoenas, yet, he discusses all 13 by name throughout his motion. Based upon Plaintiff's July 21, 2020 letter, which he attaches to his motion as Plaintiff's Exhibit O, Defendants are operating under the understanding that the subpoena Plaintiff is *not* seeking to quash herein is the Exoneration Project subpoena. Nor could Plaintiff move to quash the EP subpoena, as the EP represented Plaintiff in his post-conviction proceeding and the subpoena is limited to the documents and materials related to Plaintiff's murder conviction, incarceration, and post-conviction. Of course, to the extent Plaintiff asserts a privilege over any documents, Defendants simply seek a privilege log consistent with Fed. R. Civ. P. 26.

responses, and even provided documentary evidence of established links between the subpoenaed parties and Plaintiff (despite the fact Plaintiff's counsel was already in possession of those exact documents). Thus, thirteen subpoenas remained, and Plaintiff did not raise further arguments or move the Court, despite Defendants' request that he do so before service of any of the subpoenas. Accordingly, in the full view of Plaintiff, Defendants served the thirteen subpoenas. And a week later, Plaintiff decided—unbeknownst to Defendants—to resurrect old objections, and to assert new objections never previously raised, via filing the instant motion. Suffice it to say, Plaintiff's motion has a bit of context missing which matters here.

Of particular note is the thesis statement of Plaintiff's motion: that Defendants seek to "have it both ways" (Dkt. 202, at 21), seemingly meaning that Defendants' attorneys should not be able to argue differently in this action in defense of their clients, from how they have argued in defense of clients in an entirely separate action from this one. Plaintiff's thesis is not only misguided but contrary to his own counsel's practices. Plaintiff's motion here first posits that he is unaware of how the subpoenaed entities could be connected to this action—in his own words, the entities have feeble connections, if any, and request "entirely irrelevant information," have "no connection whatsoever to the case," and are "far [too] attenuated to the facts[.]" (Dkt. 202, at 2, 13, 16.) Simultaneously, however, Plaintiff also posits that he is entitled to assert privileges over the third-party subpoenaed entities' documents—entities which he states, expressly, that he is not only linked to but has "regular communications" with regarding the defendants named in *this* case, the "victims" of Defendant Guevara-related cases (*inclusive* of Plaintiff), and the fact that said entities *together with Plaintiff* have "shared [Defendant Guevara-related] cases and common objectives." Indeed, this is the perfect illustration of trying to "have it both ways."

Above all, however, the most important context that matters here is that Plaintiff lacks the standing necessary to challenge the subpoenas discussed herein. And, for those few subpoenas for which Plaintiff may have standing to challenge, the solution is simple: a privilege log. Thus,

for the reasons outlined in this response, the Court should deny Plaintiff's motion to quash the subpoenas in its entirety.

## FACTUAL BACKGROUND

On June 1, 2020, Defendants gave notice of intent to serve the following fifteen subpoenas: Loevy & Loevy; the Innocence Project; the Innocent Demand Justice Committee; Jenner & Block; Northwestern Pritzker School of Law; Northwestern University; the Center on Wrongful Convictions (a Northwestern Law entity); the Bluhm Legal Clinic (a Northwestern Law entity); the Medill School of Journalism (a Northwestern entity); the Medill Investigative Lab (a Northwestern entity); the University of Chicago; the University of Chicago Law School; the Exoneration Project (a University of Chicago Law entity, essentially run by attorneys from Loevy & Loevy); Armando Serrano; and Jose Montanez.[2] (Ex. A; Ex. F.) Four minutes after receipt of these subpoenas, Plaintiff made a blanket objection to all fifteen and provided no basis for it. (Ex. A.) On June 2, 2020, Defendants, without prompting from Plaintiff, withdrew their subpoena to Loevy & Loevy. (Ex. A.) One week later, on June 7, 2020, Plaintiff's counsel provided a few objections to the subpoenas, while also stating Plaintiff was not "waiving any objections Plaintiff might raise in a motion to quash[.]"[3] (Ex. A.)

On June 10, 2020, the parties held a telephone conference to discuss the fourteen remaining subpoenas. (Ex. A.) During that call, Plaintiff's attorneys posited four main issues: (1) with the exception of the Exoneration Project ("EP"), they struggled to see a connection between Plaintiff and the other thirteen subpoenaed parties; (2) the subpoenas to the NU Entities and UC

---

[2] Herein, Defendants will refer to the Northwestern Pritzker School of Law, Northwestern University, the Center on Wrongful Convictions, the Bluhm Legal Clinic, the Medill School of Journalism, and the Medill Investigative Lab, collectively as the "NU Entities." Likewise, for the University of Chicago and the University of Chicago Law School, Defendants will refer to these collectively as the "UC Entities."

[3] Preservation catch-all statements made in objection to a subpoena do not preserve all objections for review in a motion to quash; objections must be pointedly and directly made. *See, e.g., Otto v. City of Milwaukee,* 682 F.3d 552, 558 (7th Cir. 2012).

Entities were duplicative and improper, but Plaintiff may be open to a resolution; (3) several subpoenas appeared to seek documents beyond Plaintiff's case; and (4) there was no objection to answering the EP subpoena, so long as the subpoena was narrowed to this action. Responding in turn, Defendants: (1) provided, as an illustration, specific examples of connections between subpoenaed entities and Plaintiff by way of referring to documents obtained in discovery; (2) explained that subpoenaing all of the NU Entities and UC Entities was necessary to ensure that each entity provided a response and did not shelter documents or information in one entity versus another; (3) confirmed they are seeking documents specific[4] to Plaintiff's action; and (4) confirmed that the EP subpoena was limited to Plaintiff's action. The June 10th telephone conversation thus ended with three action points: Defendants would pull and send a few additional examples of connections between Plaintiff and the subpoenaed entities for Plaintiff's reconsideration of his objections; the EP subpoena was narrowed specifically to this action; and the parties were at an impasse on the remaining objections until the documents were exchanged and further discussion was held to clarify Plaintiff's objections.

On June 30, 2020, the undersigned sent a letter to Plaintiff memorializing the parties' discussion and requesting that Plaintiff reconsider and provide further clarification on any objections he still seeks to move forward. (Ex. C.) Defendants proffered opportunities for compromise in three ways: for the entities that were deemed duplicative by Plaintiff, Defendants had no objection to accepting joint responses from entities that were under the same umbrella; Defendants annexed a packet of documents, for reference, establishing a variety of connections between various subpoenaed parties and Plaintiff; and Defendants were open to further attempts to resolve the alleged conflict. (Ex. C)

---

[4] Indeed, the subpoena riders themselves define the terms "plaintiff," "criminal proceedings," and "incident" in order to use express terminology throughout the requests that explain how the documents sought are those specifically relating to Plaintiff and *this* action.

On July 16, 2020, after receiving no further response, Defendants requested that the parties schedule a call to discuss the outstanding issues from the June 10th call. (Ex. B.) A telephone conference was scheduled for July 22, 2020, but Plaintiff sent a letter the day before summarizing all of Plaintiff's objections from June 1 through July 21 in order to "alleviate the need for a conference." (Ex. B.)

The parties corresponded briefly thereafter via email, and in a further attempt at compromise, Defendants withdrew their subpoena to the Innocence Project, leaving the remaining thirteen subpoenas to be issued. (Ex. B.) Defendants informed Plaintiff's counsel that, as two months had passed since the initial notice, if Plaintiff did not move forward with a motion to quash or a motion for a protective order on or before July 27, 2020, Defendants would issue the remaining thirteen subpoenas. (Ex. B.) Plaintiff did not respond, and Defendants issued the thirteen subpoenas on July 29. (Ex. B.) On August 7, Plaintiff filed the instant motion resurrecting the objections he asserted in his July 21, 2020 letter, and adding new objections never before raised or discussed amongst the parties. For the reasons outlined herein, Defendants request that this Court deny Plaintiff's motion.

## ARGUMENT

The Federal Rules of Civil Procedure provide for broad discovery. Pursuant to Rule 26, parties may seek discovery "that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Moreover, information sought "need not be admissible in evidence to be discoverable." *Id.* In other words, "discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues. Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (internal citation omitted). Certainly, discovery has its "boundaries." *Id.* at 352. However, even Plaintiff's cited case, *Oppenheimer* (Dkt. 202, at 6-7)—which supports the denial

5

of discovery "that is relevant only to claims or defenses that have been stricken"—recognizes that discovery of information pertaining to stricken claims is still appropriate if it "is otherwise relevant to issues in the case." *Id.* at 352.

I.  **Plaintiff Does Not Have Standing to Quash the Subpoenas.**

A party must have standing to challenge a subpoena. "The law is clear that generally, a party does not have standing to quash a subpoena to a non-party. Instead, it is usually up to the non-party to bring its own motion to quash." *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 187 (N.D. Ill. 2013). The exception to this rule is the "'personal right or privilege' exception [which may] confer standing on a party [via] the assertion of work product or attorney-client privilege, interference with business relationships, or production of private information about the party that may be in the possession of a third party." *Id.* Absent these narrow and "limited circumstances," a party does not have standing to object to the issuance of a third-party subpoena. *Id.*; *see also Uppal v. Rosalind Franklin Univ. of Med. & Sci.*, 124 F. Supp. 3d 811, 815 (N.D. Ill. 2015); *Hard Drive Prods. v. Does 1-48*, 2012 WL 2196038, at *3 (N.D. Ill. June 14, 2012).

Where a party seeks to confer standing upon itself via the assertion of a claim of privilege, it is the burden of the party asserting the privilege to show that their claim of privilege is legitimate and has not been waived. *See Whitney v. Tallgrass Beef Co. LLC*, 2015 WL 3819373, at *2 (N.D. Ill. June 18, 2015); *Square D Co. v. E.I. Elecs., Inc.*, 264 F.R.D. 385, 390 (N.D. Ill. 2009). Notably, privilege attaches on a "document by document basis"—not as a wholesale stamp—and "producing documents to an independent third party breaches this confidence." *Graco Children's Prod., Inc. v. Dressler, Goldsmith, Shore & Milnamow, Ltd.*, 1995 WL 360590, at *4 (N.D. Ill. June 14, 1995) (citing *In re Int'l Harvester's Disposition of Wis. Steel*, 666 F. Supp. 1148, 1150 (N.D. Ill. 1987).

6

In addition to the assertion of a legitimate claim of privilege, a party may also seek to confer standing upon itself where the subpoena implicates the movant's personal or privacy interests. *See United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982). However, a party may not simply confer standing upon itself merely because it *believes* it has such an interest. On the contrary, a party who seeks to object on that basis must expressly do so in a way that will enable the issuing party to challenge and assess the claim. *See Otto v. City of Milwaukee,* 682 F.3d 552, 558 (7th Cir. 2012). Thus, absent a clear showing of either a privilege or a personal/privacy interest, a party has no standing to object to a third-party subpoena.

Moreover, a party who seeks to assert a privilege over third-party subpoenas "cannot just assert that all documents responsive to the subpoena are privileged without providing more particularized information from the agencies invoking the privilege, such as a declaration about the nature of the documents and why the privilege applies." *DeLeon-Reyes v. Guevara*, 2020 WL 3050230, at *3 (N.D. Ill. June 8, 2020). Moreover, "generic privilege claims are inadequate in part because of the fact-intensive nature of privilege claims….That is why, in the attorney-client relationship context, it is '[o]nly when the district court has been exposed to the contested documents and the specific facts which support a finding of privilege,' that a court can 'make a principled determination' as to privilege." *Id.* (quoting *Holifield v. United States*, 909 F.2d 201, 204 (7th Cir. 1990). It is for this reason that, "[r]egardless of form, the Court has to be provided with enough information about the privilege claims and the documents at issue to make the privilege determination." *DeLeon-Reyes,* 2020 WL 3050230, at *4.

Here, in an effort to gain standing to object to the third-party subpoenas, Plaintiff blanketly states that the subpoenaed entity has either confidential attorney-client materials, personal financial information, or protected medical records; yet, Plaintiff noticeably fails to

7

provide any declaration about the nature of the privilege[5] and why it applies. Given Plaintiff's wholesale objections, "the Court does not have enough information to make the privilege call. It is impossible to know now whether all of the documents in the nonparty recipients' possession are privileged, or if there are documents that would not be subject to the privileges." *DeLeon-Reyes,* 2020 WL 3050230, at *4. Additionally, while Plaintiff asserts a privilege applies to all of the subpoenas—and seeks to import privileges upon ten of them—nowhere in his motion does he provide any basis for any privileges or personal/privacy interests in connection with the subpoenas to Jenner & Block ("J&B") and the Innocent Demand Justice Center ("IDJC"). As Plaintiff has not articulated any recognized exception as a basis for standing with regard to J&B or the IDJC—and because he is only providing blanket attenuated objections to the remaining subpoenas—Plaintiff is bound by the rule that parties do not have standing to object, and Plaintiff's effort to quash cannot be condoned. Thus, the subpoenas should be issued, the subpoenaed parties should have the opportunity to respond with responsive documents, and to the extent the subpoenaed entities have privileged documents or confidential materials, a privilege log can be provided in accordance with Federal Rule of Civil Procedure 26. Further, the parties could also agree to specific subpoenaed records being returned to Plaintiff for review prior to production to Defendants, as has been commonplace in other reverse conviction cases. Consequently, Plaintiff's motion should be denied for lack of standing to object to the subpoenas.

## II. The Subpoenas Seek Relevant Documents.

As for the nature of the materials the subpoenas seek, Plaintiff's assertion that he has an attorney-client relationship, provided confidential medical and mental records, and/or provided

---

[5] *All* of Plaintiff's objections concerning privileges—with the exception of those pertaining to the EP subpoena—are asserted here for the very first time in Plaintiff's motion to quash. In the two months of conferences and correspondence concerning these subpoenas, Plaintiff never once raised these privilege objections, which touch on questions of Plaintiff's standing to object.

private confidential information to the third-party entities implicitly concedes that the subpoenas are seeking relevant information with regard to Plaintiff's § 1983 claims. (Dkt. 202, at 10-12, 16-21.) Indeed, all the corporate subpoenaed entities are in the post-conviction business. For these corporate entities to now hide behind Plaintiff's motion to quash based on relevance and burden, after having assisted in securing Plaintiff's release from prison, is disingenuous and can only be intended to purposely hamstring Defendants from adequately defending against a suit in which Plaintiff is seeking tens of millions of dollars, and further prevent Defendants from undermining the steps these corporate entities took in overturning Plaintiff's conviction.

While steadfastly asserting that Plaintiff lacked standing to object to the subpoenas, Defendants nevertheless provided Plaintiff, in an effort to compromise, with documentary evidence establishing a solid connection between the subpoenaed entities and Plaintiff's action. (Ex. C.) *See DeLeon-Reyes*, 2020 WL 3050230, at *2 (collecting cases holding that parties do not have standing to object to third-party subpoenas on relevance or proportionality grounds). While Plaintiff claims Defendants are on a "fishing expedition," Defendants have, as explained below, pointed to precise documents and connections that link the subpoenaed entities to Plaintiff and the allegations in this action. Consequently, the subpoenas are seeking relevant information pertaining to the gravamen of Plaintiff's case.

      A.      **Email Chain with the NU Entities Shows a Connection to Plaintiff's Case.**

First, Defendants provided an email chain between Professor Karen Daniel—whose signature line lists the "Center on Wrongful Convictions," the "Bluhm Legal Clinic," and the "Northwestern University School of Law"—and Tina Rippy, the attorney for a key eyewitness (Jose Melendez) in the instant action, which demonstrates the NU Entities' connection with Plaintiff's case. Specifically, one email begins with, "The matter we discussed involves the murder of your client's friend Noel Andujar on May 23, 1995, in Chicago….Your client signed a statement (which I believe was handwritten by Chicago Detective Reynaldo Guevara) saying that

9

Thomas Sierra [Plaintiff] was the person who shot his friend." (Ex. C., at 4.) The email chain goes in depth discussing police lineup reports, other potential witnesses, and Defendant Guevara's alleged "coaching" of a witness to identify Plaintiff as a killer. Defendants' requests for documents from the NU Entities center on these very items and matters discussed in these emails, and for Plaintiff to claim otherwise is simply disingenuous.

      **B.**      **Post-conviction Testimony Summaries Show a Connection Between Plaintiff's Case and J&B and the NU Entities.**

Defendants next provided Plaintiff a portion of Gabriel Solache's and Arturo DeLeon-Reyes' joint petition for post-conviction relief, dated February 13, 2013, just a few years prior to Plaintiff's release from prison and this action's initiation. Solache and Reyes were represented by J&B and the NU Entities. During that post-conviction hearing, Jose Melendez (who identified Plaintiff as the shooter in the instant action) testified to the alleged actions of Defendant Guevara in connection with Plaintiff's prosecution for the Andujar murder. As is made clear in the document, J&B and the NU Entities were directly involved in investigating Plaintiff's case in an attempt to get the convictions of Solache and Reyes overturned. Thus, the connection is clear, the requests are relevant, and Plaintiff's assertion to the contrary lacks merit.

      **C.**      **Armando Serrano and Jose Montanez Have a Connection to Plaintiff's Case.**

Defendants also provided Plaintiff a dated and signed letter from Armando Serrano to Plaintiff, wherein Mr. Serrano engages in a discussion of intimate details of Plaintiff's life—indicating they have some level of friendship—thereafter asking him how Hector Montanez (another witness in the instant action) was doing, and seeking Plaintiff's help to protect a fellow gang member housed just a few buildings away from Plaintiff's correctional facility. Defendants also provided Plaintiff a copy of Mr. Montanez's responses to interrogatories in Mr. Montanez's action, wherein he lists Plaintiff as someone to whom he proclaimed his innocence. It is *more* than reasonable to assert Plaintiff and these two individuals are connected in such a fashion that

10

subpoenaing them will likely lead to more discoverable information. Indeed, Mr. Serrano references *other* letters he has sent to Plaintiff, implying there are more to discover. Moreover, there is a link made apparent—be it current or historical—between Plaintiff, Mr. Serrano, and the Imperial Gangsters, a central issue in this case. Thus, the relevancy is clear and direct.

> D. **The IDJC Website Shows a Connection to Plaintiff's Case.**

Defendants discovered that the IDJC website contains a list of "exonerated" individuals who are connected to the defendants in this action. Specifically, the IDJC has an entry on Plaintiff which provides, *inter alia*, allegations made in his case. (Ex. E.) It also contains a photograph of Plaintiff, the year of his "exoneration," and furthermore—as Plaintiff admits— IDJC is a "community organization consisting primarily of the mothers" of individuals (like Plaintiff) who were incarcerated in cases involving Defendant Guevara. (Dkt. 202, at 22.) Additionally, IDJC was expressly created to help allegedly wrongfully convicted individuals from the Humboldt Park neighborhood get out of prison. Thus, a subpoena to IDJC is relevant and warranted, with the reasonable presumption relevant information is in IDJC's possession, custody, or control.

> E. **The UC Entities and the EP Show a Connection to Plaintiff's Case.**

Finally, Plaintiff asserts the UC Entities are not connected to this action or Plaintiff, whilst conceding the EP is in possession/custody/control of responsive documents and will be responding to its subpoena in due course. (Ex. D.) The EP's website states that it is a clinical program *of* the UC Entities and that it is run "*with the support and contributions* of current [UC] law students." It also states the UC Entities' students "*assist in every aspect of representation*, including selecting cases, investigation and developing evidence, as well as in-court litigation of post-conviction petitions, petitions for DNA testing, and federal habeas petitions." The website further proffers that the EP welcomes "students, attorneys, and community members" to get involved with the EP "in and outside of the courtroom." To conclude that the UC Entities, then,

11

are not relevant, while the EP is concededly relevant, is contrary to logic. Furthermore, Defendants would not be performing due diligence without subpoenaing the same records from the parent/affiliate organizations of the EP. If Plaintiff is correct, and the UC Entities have no information in response to the subpoenas, then a simple response would suffice, and any burden would be nominal.

### III. The Subpoenas are Well Within the Confines of Discoverable Information.

Plaintiff argues the subpoenas are unduly burdensome, overbroad, costly, and duplicative. But even where subpoenas are "broad in both scope and timeframe, the breadth of documents that will be responsive to the subpoenas is currently unknown [and] the third-parties have not been served with the subpoenas and therefore have not attested to the actual burdens and costs associated with the production of the documents." *DeLeon-Reyes*, 2020 WL 3050230, at *3; *see also Allstate Ins. Co. v. Electrolux Home Prod., Inc.,* 2017 WL 5478297, at *3 (N.D. Ill. Nov. 15, 2017) ("As a non-recipient of the subpoena, Plaintiff has no interest in any undue burden that compliance would require, and Plaintiff thus has no standing to object on that basis."); *Malibu Media, LLC v. John Does 1-6*, 291 F.R.D. 191, 196 (N.D. Ill. 2013) (The "burden that Rule 45 refers to is [a] burden on the subpoenaed person or entity[.]"). Defendants' subpoenas are specific to this action, and directed to third-parties, so no party can definitively know the burden and cost of the subpoenaed *third-parties*. Thus, Plaintiff's assertions of burden and costs are not well-placed; the subpoenaed parties are perfectly capable of asserting their own objections and motions. *See Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 187 (N.D. Ill. 2013) ("Relevance, burden or service objections fall to the subpoena's recipient to make."). As an additional point, Defendants have offered to accept, from entities under the same umbrella, *i.e.*, the NU Entities or the UC Entities, a joint response to the subpoenas in order to be efficient and conserve resources. And moreover, Defendants will work and have worked, in serving similar subpoenas in the past, with the corporate subpoenaed entities to help alleviate any unnecessary

work in responding to the subpoenas. But again, these corporate entities are involved in assisting individuals in overturning their convictions. To the extent they claim an undue burden, it is a product solely of their making, and they cannot now claim burden when Defendants are merely seeking the information, collected by the corporate entities developed to reverse a conviction, in defending against the § 1983 suits that follow.

Additionally, discovery is "not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues. Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits." *Oppenheimer*, 437 U.S. at 351. The subpoenas are clearly narrowed and targeted at the claims, defenses, and material issues at play in the instant action. To say that a subpoena should be quashed, merely because it is broad in nature, is to seek a solution contrary to the case law and policy of this Circuit, which permits broad and often voluminous discovery. *Id.*

### III. The *DeLeon-Reyes* Decision is Not Comparable to the Instant Action.

Finally, throughout his motion, Plaintiff puts heavy emphasis on the recent ruling in *DeLeon-Reyes v. Guevara*, 2020 WL 3050230 (N.D. Ill. June 8, 2020), where the law firms providing representation to all parties therein are the same law firms involved in representation of the parties here. In short, the roles were reversed there, as Plaintiff's law firm was seeking to subpoena third-parties on behalf of their clients in that case, and Defendants' law firms were moving to quash those third-party subpoenas. While Plaintiff attempts to explain why that case should be directly applicable to this suit, the reality is that the subpoenas in *DeLeon-Reyes* are diametrically opposed to the subpoenas in the instant action.

In *DeLeon-Reyes*, the plaintiff's subpoenas centered on requesting documents concerning a former Chicago Police Department officer—Joseph Miedzianowski—who engaged in criminal activities that resulted in his arrest, conviction, and a sentence to life in prison. *DeLeon-Reyes*, 2020 WL 3050230, at *1. Miedzianowski's jury trial, and a "wide-ranging investigation" by the

government, uncovered and led to the convictions of 23 defendants, none of whom are defendants here. *Id.* at *6. The plaintiffs in *DeLeon-Reyes* sought to issue subpoenas to obtain information on Miedzianowski, despite: (1) he was not a defendant in the action; (2) he did not have any role in the investigation or criminal matters pertaining to the civil suit or underlying criminal proceedings; and (3) the plaintiff could not show a connection between Miedzianowski and the defendants in Plaintiff's action, despite three months of jury trial testimony from his criminal trial, plus the governmental investigation. *Id.* Additionally, the subpoenas sought, *inter alia*, emails and communications between the Chicago Police Department and the Cook County State's Attorney's Office concerning Miedzianowski, *inclusive of* emails and communications with the defendants' *current* counsel in the Section § 1983 action. *Id.* Ultimately, the court found that the subpoenas were improper, irrelevant, outside the scope of Rule 26, and disassociated from the claims and defenses of the lawsuit. *Id.* at 11. Consequently, the court granted the defendants' construed motion for a protective order. *Id.*

Here, Defendants have requested documents *directly* pertaining to Plaintiff, the defendants *named* in this action, and the documents responsive to *these* parties' claims and defenses. Indeed, each of Defendants' subpoenas are defined to narrow their document requests to Plaintiff and his action, as well as the directly-linked parties and witnesses in Plaintiff's underlying criminal proceedings, post-conviction proceedings, and the instant action. Even more importantly: this is a reversed conviction case, and the most important and relevant evidence to the case is that of the underlying criminal proceedings and post-conviction proceedings that led to the vacatur of Plaintiff's conviction. In *DeLeon-Reyes*, the plaintiff was seeking emails from the *present-day civil counsel* of the *§ 1983 civil case*. Accordingly, Plaintiff's suggestion that his and *DeLeon-Reyes*' subpoena scenarios are on even remotely analogous footing is sophistry. This is not a fishing expedition for Plaintiff's counsels' emails; these are straightforward subpoenas directed only to parties which Defendants have identified, through documentation and

14

Plaintiff's own admissions, as having direct links to Plaintiff and the claims and defenses of the instant action. For this reason, *DeLeon-Reyes* cannot be compared or analogized to the instant action.

## Conclusion

For the reasons explained herein, Defendants respectfully request that this Court deny Plaintiff's motion to quash the subpoenas.

Dated: August 24, 2020

/s/ Jeffrey R. Kivetz
Jeffrey R. Kivetz, Atty No. 6308250
Special Assistant Corporation Counsel
*One of the Attorneys for Individual Defendants*

James G. Sotos
Jeffrey N. Given
Josh M. Engquist
Jeffrey R. Kivetz
Samantha J. Pallini
Special Assistant Corporation Counsel
THE SOTOS LAW FIRM, P.C.
141 W. Jackson Blvd., Suite 1240A
Chicago, IL 60604
Tel: (630) 735-3300
jkivetz@jsotoslaw.com

## CERTIFICATE OF SERVICE

      I certify under penalty of perjury, pursuant to 28 U.S.C.A. § 1746, that on **Monday, August 24, 2020,** I electronically filed the foregoing **Response to the Motion to Quash** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants listed in the below service list:

***Attorneys for Thomas Sierra:***
Jon Loevy
Steven Art
Anand Swaminathan
Joshua A. Tepfer
Rachel Brady
Sean Starr
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
(312) 243-5900
jon@loevy.com
steve@loevy.com
anand@loevy.com
josh@loevy.com
brady@loevy.com
sean@loevy.com

***Attorneys for City of Chicago:***
Eileen E. Rosen
Patrick R. Moran
Catherine M. Barber
Theresa B. Carney
Austin G. Rahe
Rock Rusco & Connelly, LLC
312 N. Clark, Suite 2200
Chicago, IL 60654
(312) 494-1000
erosen@rfclaw.com
pmoran@rfclaw.com
sbenjamin@rfclaw.com
cbarber@rfclaw.com
tcarney@rfclaw.com
arahe@rfclaw.com

***Attorneys for Defendants Guevara:***
Thomas M. Leinenweber
James V. Daffada
Justin L. Leinenweber
Kevin E. Zibolski
Michael J. Schalka
Leinenweber Baroni & Daffada, LLC
120 N. LaSalle St., Suite 2000
Chicago, IL 60602
(312) 663-3003
thomas@ilesq.com
jim@ilesq.com
justin@ilesq.com
kevin@ilesq.com
mjs@ilesq.com

                                              /s/ Jeffrey R. Kivetz
                                              JEFFREY R. KIVETZ