# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS SIERRA, | ) | |
| | ) | No. 18 C 3029 |
| Plaintiff, | ) | |
| | ) | Magistrate Judge M. David Weisman |
| v. | ) | |
| | ) | |
| REYNALDO GUEVARA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiffs have moved to quash subpoenas defendants served on: (1) University of Chicago ("U of C") Law School, U of C Office of Legal Counsel, and The Exoneration Project (which is associated with U of C); (2) Northwestern University ("NWU"); NWU Pritzker School of Law, The Bluhm Legal Clinic, and The Center for Wrongful Convictions at Bluhm Legal Clinic (collectively, the "NWU law entities"); (3) NWU's Medill School of Journalism and Medill Investigative Lab; (4) Jenner & Block; (5) Innocent Demand Justice Committee; (6) Jose Montanez; and (7) Armando Serrano. For the reasons set forth below, the Court construes the motion to quash as a motion for a protective order and grants the motion [202] in part.

## Discussion

"Generally, a party has standing to object to a subpoena to a non-party if the objecting party has a claim of privilege or the subpoena 'infringes on their legitimate interests.'" *Ossola v. Am. Express Co.*, 149 F. Supp. 3d 934, 936-37 (N.D. Ill. 2015) (quoting *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982)). Moreover, courts have generally held that, absent such an interest, "a party lacks standing to challenge subpoenas issued to non-parties" on the grounds of relevancy, undue burden, and the like. *Uppal v. Rosalind Franklin Univ. of Med. & Sci.*, 124 F. Supp. 3d 811, 815 (N.D. Ill. 2015). Plaintiff says he has standing to move to quash all of the subpoenas because they seek privileged and/or private information such as his medical and tax records. He has not, however, identified the specific requests in each subpoena that implicate privileged or private information.[1] *DeLeon-Reyes v. Guevara*, No. 1:18-CV-01028, 2020 WL 3050230, at *3 (N.D. Ill. June 8, 2020) ("Defendants cannot just assert that all documents responsive to the subpoena are privileged without providing more particularized information from the agencies invoking the privilege, such as a declaration about the nature of the documents and why the privilege applies."). Thus, he lacks standing to move to quash them.

Plaintiff does, however, have standing to seek a protective order with respect to the scope of third-party discovery. *Buonovolanto v. LG Chem, Ltd.*, No. 18 C 2802, 2019 WL 8301068, at *2 (N.D. Ill. Mar. 8, 2019) ("'[A] party clearly has standing to seek a protective order to limit

---

[1] There are thirty-seven documents requests in the subpoenas to the entities and sixteen requests in the subpoenas to Montanez and Serrano.

discovery from a third party.'") (quoting *Silcox v. AN/PF Acquisitions Corp.*, No. C17-1131 RSM, 2018 WL 1532779, at *3 (W.D. Wash. Mar. 29, 2018)); *DeLeon-Reyes*, 2020 WL 3050230, at *3 (same); *see* Fed. R. Civ. P. 26(c) ("A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . ."). The Court will, therefore, construe the motion to quash as a motion for a protective order.

Rule 26(c) empowers the Court "for good cause, [to] issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Plaintiff contends that a protective order is necessary here because the subpoenas seek irrelevant information and are duplicative and unduly burdensome. (Pl.'s Mot., ECF 202 at 13.)

The Court is not persuaded by plaintiff's burden argument. Absent testimony from the subpoena recipients, and plaintiff offers none, any contention that the subpoenas are too burdensome is purely speculative. Thus, the motion for a protective order on the grounds of burden is denied.

Alternatively, plaintiff contends that there is no relevance to the documents sought by the subpoenas to, inter alia, the two Medill entities. Simultaneously, however, plaintiff says that the Medill entities "are involved in regular communications [with plaintiff's counsel] about these defendants and their victims through their shared cases and common objectives." (*Id.*, ECF 202 at 11.) Given that statement, and defendants' representation that the Medill entities investigated defendant Guevara and his alleged victims as early as 1999, the Court denies the motion for a protective order as to the subpoenas to the Medill entities.

Plaintiff argues that the subpoena to the Innocent Demand Justice Center ("IDJC") also seeks irrelevant information. Defendants say Sierra is pictured on the site of this community organization, which "was expressly created to help allegedly wrongfully convicted individuals from the Humboldt Park neighborhood get out of prison." (Defs.' Resp., ECF 204 at 11.)[2] Given that the IDJC claims to help victims of police misconduct and features Sierra as one of those victims, a subpoena to it is fair game.

Plaintiff contends that the subpoenas to the NWU law entities and Jenner & Block also seek irrelevant information. Defendants point to: (1) a letter written by a NWU law/Bluhm Clinic lawyer asking the counsel of Jose Melendez, a witness to the murder for which Sierra was convicted, to interview Melendez in connection with the post-conviction proceedings of another alleged Guevara victim, Gabriel Solache; and (2) Melendez's testimony in a witness binder from the post-conviction proceedings of Solache and his co-defendant Arturo Reyes, who was represented by Jenner. (*See* Defs.' Resp., ECF 204, Ex. C.) These documents suggest, albeit slightly, that Solache and Reyes's lawyers, *i.e.*, the NWU law entities and Jenner & Block, investigated the crime for which plaintiff was convicted. Though it is a thin reed, it is enough to justify the subpoenas.[3]

---

[2] Sierra is pictured on the site but not on the screen shot of the site that defendants submitted as an exhibit. (*See* Defs.' Br., ECF 204, Ex. E.)

[3] Even if there is a sufficient connection between these entities and this case, plaintiff argues that the subpoenas are duplicative of those served on these entities by the same defense counsel in the *Reyes* and *Solache* cases. If that's true, these entities can attest as such and need not produce the documents again.

Similarly irrelevant, plaintiff says, are the subpoenas to Montanez and Serrano. To connect them to this case, defendants offer: (1) a letter Serrano wrote to plaintiff while plaintiff was in prison asking him to help protect another inmate; and (2) Montanez's answers to interrogatories in his own case against Guevara in which Montanez identifies Sierra as a friend to whom he had proclaimed his innocence. (*See* Defs.' Resp., ECF 204, Ex. C.) Notably, neither of these assertions connects Montanez or Serrano to claims being brough by plaintiff. Defendants say these materials establish that both men were friends of plaintiff's, and thus may have information about this case. The fact that the men knew each other does not, however, suggest that Montanez and Serrano have any information about this case. (If that were enough, defendants could subpoena anyone who knows or knew Sierra.) Without a more concrete connection between Montanez and Serrano, on the one hand, and this case on the other, the subpoenas to Montanez and Serrano are improper.

That leaves the subpoenas to the U of C entities, which plaintiff contends are too broad. Plaintiff says the Exoneration Project is the only U of C entity that has anything to do with this case. (Pl.'s Br., ECF 202 at 20.) Defendants counter with:

> The EP's website states that it is a clinical program *of* the UC Entities and that it is run "*with the support and contributions* of current [UC] law students." It also states the UC Entities' students "*assist in every aspect of representation*, including selecting cases, investigation and developing evidence, as well as in-court litigation of post-conviction petitions, petitions for DNA testing, and federal habeas petitions." The website further proffers that the EP welcomes "students, attorneys, and community members" to get involved with the EP "in and outside of the courtroom."

(Defs.' Resp., ECF 204 at 11) (emphasis in original). Again, that is enough of a connection to justify subpoenas to all of the U of C entities.[4]

Even if there is a sufficient connection to the U of C entities, plaintiff says the document requests seek irrelevant information and they will only produce documents "relating to the Sierra criminal and post-conviction case." (Pl.'s Br., ECF 202 at 20.) According to plaintiff, "[f]aculty, coursework, and students' grades from the University of Chicago clinic that worked on Mr. Sierra's post-conviction case, none of whom have been disclosed as witnesses or identified as individuals with any information related to this litigation, are irrelevant." (*Id.*) First, P's objection implicates only one request, ¶ 33, of the subpoenas to the U of C entities. (*See, e.g.*, Pl.'s Br., ECF 202, Ex. 2.) Second, the contested request seeks information about potential witnesses, which defendants are entitled to seek.[5] In short, plaintiff has not demonstrated that the subpoenas to the U of C entities seek irrelevant information.

---

[4] Defendants have agreed to accept a joint response from associated entities.

[5] If the U of C entities believe that the subpoenas seek inappropriate information, these entities can certainly seek relief from this Court as recipients of the subpoenas. *See* Fed. R. Civ. P. 45(d)(3) ("On timely motion, the court for the district where [subpoena] compliance is required must quash or modify a subpoena that: . . . requires disclosure of privileged or other protected matter, . . . or subjects a person to undue burden.")

**Conclusion**

     For the reasons stated above, the Court construes plaintiff's motion to quash [ECF 202] as a motion for a protective order, grants the motion with respect to the subpoenas to Montanez and Serrano, but otherwise denies it.

**SO ORDERED.**                  **ENTERED:**    September 30, 2020

_M. David Weisman_

**M. David Weisman**
**United States Magistrate Judge**