**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| THOMAS SIERRA, | ) | |
| | ) | Case No. 18 C 3029 |
| Plaintiff, | ) | |
| | ) | Hon. John Z. Lee, |
| v. | ) | District Judge |
| | ) | |
| REYNALDO GUEVARA, *et al.*, | ) | Hon. M. David Weisman, |
| | ) | Magistrate Judge |
| Defendants. | ) | |
| | ) | JURY TRIAL DEMANDED |

**DEFENDANT CITY OF CHICAGO'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
<u>RULE 72 OBJECTIONS TO THE MAGISTRATE'S ORDER DENYING DISCOVERY</u>**

Defendant, City of Chicago ("the City"), by and through its undersigned counsel, submits the following response in opposition to Plaintiff's Rule 72 Objections to Order Denying Plaintiff's Motion to Compel Documents Relating to the *Klipfel* lawsuit (Dkt. 236), and states:

## INTRODUCTION

This is a Section 1983 case against the City of Chicago and several former Chicago Police Officers ("Defendant Officers") arising from Plaintiff Thomas Sierra's arrest and prosecution for the shooting death of Noel Andujar in 1995. One of the two surviving victims of the shooting recanted his identification at the criminal trial; the other maintains he correctly and voluntarily identified Sierra as the killer. *See* Ex. 1, Dep. Trans., Alberto Rodriguez, Jan. 9, 2009, p. 69-73. Nevertheless, Sierra alleges that Defendant Officers manipulated the witness identifications, fabricated evidence, and concealed exculpatory evidence. He further alleges the City is liable pursuant to *Monell v. New York Dept. of Social Services*, 436 U.S. 658 (1978), claiming the City's alleged municipal policy to frame innocent people was the moving force behind Defendant Officers' violation of his right to due process.

Sierra moved to compel the City to produce discovery related to the *Klipfel v. Rubin et al.*, 95 C 6415, lawsuit and all complaints and investigations related to former Chicago Police Officer Joseph Miedzianowski, a defendant in the *Klipfel* litigation and former Chicago Police Officer who was convicted in 2001 of crimes related to his role in a drug conspiracy with gang members. *See* Ex. 2, Chicago Tribune, "Rogue Cop Gets Life," published on January 25, 2003. His conviction resulted from a lengthy criminal investigation conducted by the FBI, and further assisted by the Internal Affairs Division of the Chicago Police Department ("IAD"), culminating in a three-month-long trial and Miedzianowski serving a life sentence. *Id.* Ex. 3, USAO Press Release, Feb. 26, 2003, p. 2. Miedzianowski is not a defendant in this case, was never a member of the Detective Division, and was not involved in Sierra's case.

The *Klipfel* plaintiffs were both supervising agents in the U.S. Bureau of Alcohol, Tobacco, and Firearms (ATF) in the 1990s. *See* Plf. Ex. A. In their 1994 lawsuit, they alleged that Miedzianowski was engaged in criminal activity, and, when they reported it, suffered retaliation by numerous individuals, including Miedzianowski, other ATF agents, and the U.S. Department of the Treasury, and the Treasury Secretary. *See Klipfel v. Bureau of Alcohol, Tobacco & Firearms,* 94 C 6415, 1996 WL 566452, at *1-2 (N.D. Ill. Sept. 27, 1996). According to the *Klipfel* plaintiffs, CPD failed to adequately investigate their accusations against Miedzianowski, and the ATF agents also tried to cover it up and took additional steps to retaliate against the *Klipfel* plaintiffs for reporting sexual harassment. *Id.* The retaliation tactics were allegedly widespread and included personal attacks against the *Klipfel* plaintiffs' reputations. *Id.*

Sierra claimed the *Klipfel* lawsuit and the complaints and investigations of Miedzianowski were relevant to his *Monell* claim and his claims that Defendant Officers violated his due process rights. It has been almost 14 years since the civil trial in *Klipfel*, and the City has explained that it has only been able to locate very few documents related to that case still in its possession. (Dkt. 226, p. 3). Nevertheless, the City objected to producing any documents related to *Klipfel* because there is no relevant connection between Miedzianowski and Defendant Officers, and the issues of Miedzianowski's criminal conduct and the alleged harassment the *Klipfel* plaintiffs suffered do not relate to Sierra's allegations that he was framed for a murder he did not commit. The Magistrate Judge agreed. The Magistrate Judge concluded that Sierra failed to establish that any of the Defendants were involved with Miedzianowski's criminal activities and, because the issues in *Klipfel* differed from those here, it was unlikely that any of the demanded documents would contain evidence relating to Sierra's claims of manipulating witnesses, fabricating evidence, or withholding exculpatory evidence.

Magistrate Judge Harjani reached the same conclusions in a similar case involving similar issues and overlapping defendants. In the consolidated case of *Reyes v. Guevara et al.*, 18 C 1028 and *Solache v. City of Chicago, et al.,* 18 C 2312, where Sierra's counsel represents the plaintiff Reyes, Sierra's counsel argued that discovery related to Miedzianowski was relevant to the plaintiffs' claims that the officers coerced and fabricated their confessions and did so pursuant to the same alleged policy of framing innocent people for murder. *See* 18-CV-01028, 2020 WL 3050230, at *9-10 (N.D. Ill. June 8, 2020). The court was not persuaded that Miedzianowski's criminal conduct related to the plaintiffs' alleged wrongful conviction claims, and, instead, found the plaintiffs' effort to be a speculative fishing expedition. *Reyes*, *6-11. The Court also concluded that allegations that Miedzianowski accepted bribes and engaged in drug conspiracies are too dissimilar to the plaintiffs' allegations of framing purportedly innocent people for murder. *Id.* at *8. The Magistrate Judge here applied the same reasoning, concluding that the criminal behavior for which Miedzianowski was accused and the misconduct at issue in *Klipfel* would not shed light on the claims Sierra asserts here.

Because another Magistrate Judge rejected the same attempts to inject Miedzianowski into cases where he was not involved, demonstrates the Magistrate Judge's conclusion here was not clearly erroneous, and Sierra's Rule 72 Objections should be overruled.

## LEGAL STANDARD

Federal Rule of Civil Procedure 72 governs the District Court's review of Magistrate Judge decisions on matters of discovery. The Rule provides that the District Court may modify or set aside an order that is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a). "The clear error standard means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v.*

*Samsung Heavy Indus. Co., Ltd.,* 126 F.3d 926, 943 (7th Cir. 1997). Because the standard is so deferential, the District Court may not reverse the decision simply because the District Court would have come to a different conclusion. *Africano v. Atrium Med. Corp.*, 17-CV-7238, 2020 WL 5691596, at *2 (N.D. Ill. Sept. 3, 2020). Rather, a decision is only clearly erroneous if "it strikes as wrong with the force of a 5 week old, unrefrigerated dead fish." *Industries, Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 627 (7th Cir. 2001).

## THE CHALLENGED ORDER

The Magistrate Judge's order summarized the allegations presented in the *Klipfel* Fourth Amended Complaint. The Magistrate Judge explained that the *Klipfel* plaintiffs claimed they learned that Miedzianowski had stolen money and property during a search of the home of Darren Pippen and that he had supplied a gang with guns and drugs recovered during the search. The Magistrate Judge stated that after the *Klipfel* plaintiffs reported Miedzianowski, he threatened their lives, and, with the explicit or tacit approval of CPD, waged a campaign of retaliation and harassment against them, causing them to be demoted and stripped of their police powers.

The Magistrate Judge also identified all four categories of discovery Sierra demanded, which included documents related to *Klipfel*, as well as all complaints and investigations against Miedzianowski while he was a CPD officer. Further, the Magistrate Judge acknowledged the City's objection to producing the documents and identified all nine different arguments and pieces of information Sierra claimed established a relevant basis for the discovery.

The Magistrate Judge next assessed whether the information Sierra proffered about Miedzianowski and the *Klipfel* lawsuit related to the claims and issues in this case. The Court concluded none of it connected any Defendant Officer to Miedzianowski or to the *Klipfel* allegations. Finding such a paucity of evidence, the Magistrate Judge also rejected Sierra's

contention that the evidence was relevant for 404(b) purposes. For that decision, the Magistrate Judge relied on the decision in *Reyes*, which rejected the same argument.[1]

Finally, the Magistrate Judge determined that the demanded discovery is not relevant to Sierra's *Monell* claim. Considering the constitutional violations Sierra alleges, and relying on the Seventh Circuit's decision in *Thomas v. Cook County Sheriff's Department*, 604 F.3d 293, 306 (7th Cir. 2010), the court concluded that Sierra's *Monell* claim requires him to prove CPD's alleged broken disciplinary system and code of silence caused Defendant Officers to fabricate inculpatory evidence and conceal exculpatory evidence. The Court then determined that, because the issues in *Klipfel* and the allegations against Miedzianowski concerned stealing and conspiring with drug dealers, the demanded discovery is unlikely to contain evidence the alleged lax discipline system or supposed code of silence caused Defendant Officers to frame innocent people for murder. Again, relying on *Reyes*, the Court rejected Sierra's attempt to generalize his *Monell* claim into one of a general failure to discipline because that could allow for discovery into any matter involving a Chicago police officer who acted outside his or her authority.

Sierra's Rule 72 Objections argue the court should have found in his favor but fail to explain how or why the Magistrate Judge's decision contains errors in law or fact.

## ARGUMENT

## I. The Magistrate Judge did not apply the wrong legal standard in denying Sierra's Motion to Compel.

Framing Sierra's Rule 72 Objections is his contention that the Magistrate Judge erred because the relevance standard is so low that a motion to compel should almost always be granted. He cites no authority to support that proposition.

---

[1] Also, contrary to Sierra's insinuation, Darren Pippen's affidavit is not 404(b) evidence as it makes no mention of Defendant Officers.

To the contrary, it is axiomatic that "discovery, like all matters of procedure, has ultimate and necessary boundaries." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Rule 26 provides that only discovery that relates to the claims and defenses in the case and is proportional to the needs of the litigation is permitted. R. Civ. P. 26(b)(1). Along with Rule 26, Rule 1 emphasizes the rules of civil discovery should be administered by the Court to reach just, speedy, and inexpensive resolutions in every case. Fed. R. Civ. P. 1. In accordance with those rules, speculative fishing expeditions are not allowed. *E.E.O.C. v. Harvey L. Walner & Associates*, 91 F.3d 963, 971–972 (7th Cir.1996). Indeed, discovery is not "a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest." *Vakharia v. Swedish Covenant Hosp.*, No. 90 C 6548, 1994 WL 75055, at *2 (N.D. Ill. Mar. 9, 1994). Rather, to "clear the proverbial relevancy limbo bar," the requesting party must support its demand for discovery with more than conjecture and speculation. *Reyes*, 2020 WL 3050230, at *1-2.

Thus, if the Court finds the demanded discovery is merely speculative and does not relate to the issues in the case, it is well within its discretion to deny it. The Magistrate Judge applied that principle. Hardly "contrary to law," it is the law.

## II. It was not clearly erroneous for the Magistrate Judge to conclude the demanded discovery is irrelevant to Sierra's claims against Defendant Officers.

Sierra next contends that the Magistrate Judge ignored that the *Klipfel* litigation is "directly relevant" to his claims that Defendant Officers violated his right to due process. Yet, Sierra's Motion did not establish any relevant connection between Miedzianowski and Defendant Officers, or that the misconduct at issue in *Klipfel* would help prove his claims against Defendant Officers. Having failed to make that showing, the Magistrate Judge's decision to reject Sierra's assertion of relevance does not demonstrate clear error.

First, Sierra's argument fails at the start because he misleadingly conflates the issues in *Klipfel* with those here. Make no mistake, Sierra's suggestion that *Klipfel* serves as notice to the City because it concerned "fixing homicides, including with rigged identification procedures" (Dkt. 236, p. 10) is baseless. None of Sierra's submissions substantiates that. As explained, *Klipfel* concerned the alleged personal retaliation and harassment against the plaintiffs after reporting Miedzianowski's criminal activity and the alleged violations of their First Amendment rights, not some due process conspiracy rampant in the Area 5 Detective Division. If there was a shred of information to suggest that *Klipfel* had anything do with framing people using rigged identification procedures, this Court can be confident Sierra would have cited to a record to support it. He did not. Certainly, the Magistrate Judge could not have erred in failing to accept Sierra's unsubstantiated bluff.

Further, as explained, Miedzianowski is not a defendant in this case and was not involved in the Andujar murder investigation. Moreover, neither witness alleges they were bribed, and Sierra does not allege that Defendant Officers pursued him because they were conspiring with drug dealers. Thus, the allegations in *Klipfel* do not relate at all to the allegation of due process violations alleged here.

Secondly, Sierra neglects to explain why the Magistrate Judge erred in concluding that Sierra failed to establish a relevant connection between Miedzianowski and Defendant Officers. Rather, Sierra presents this Court with just a bullet point list, choosing *not* to explain why the Magistrate Judge got it wrong. The analysis below shows that none of the information Sierra provided this Court shows a relevant connection between Miedzianowski and Defendant Officers.

To begin, Sierra relies on an affidavit from Fred Rock to claim that Guevara and Miedzianowski were friends and that Guevara helped "shake down individuals as part of

7

Miedzianowski's criminal enterprise." The Rock affidavit does not say that. The affidavit states that Rock was present for a conversation that included Guevara and Miedzianowski, where Miedzianowski made comments about a drug dealer named "Poochie." *Id.* Acknowledging that Rock's affidavit suggests that Guevara might have known about Miedzianowski's misconduct, the Magistrate Judge concluded that it does not provide evidence that Guevara was involved with it. (Dkt. 231, p. 3). Similarly, Magistrate Judge Harjani rejected Rock's affidavit as evidence of a connection between Guevara and Miedzianowski, finding it merely described Rock's interpretation of his interaction with Miedzianowski, which is insufficient to conclude Guevara had anything to do with it. *Reyes*, at *7. The fact that another Court rejected the same information offered for the same purpose established that the Magistrate Judge's conclusion was not clearly erroneous.

Next, Sierra claims that the testimony of George Laureano shows that Miedzianowski "was working with" Defendant Guevara and Mr. Halvorsen to "falsely pin a murder case" on someone. The most the cited testimony describes, however, is the detectives' effort to persuade a witness to provide evidence against their suspect, "Chino." *See* Plf. Ex. I, p. 21. The Magistrate Judge concluded that while Laureano's statement connects Guevara and Halvorsen and Miedzianowski, it is not connected to the misconduct at issue in *Klipfel*. (Dkt. 231, p. 3). That is not clear error because, as explained, *Klipfel* did not concern the alleged due process violations at issue here.

Sierra also relies on Jose Maysonet's allegations to suggest that Miedzianowski was with Guevara when he offered for Maysonet to pay him "protection money" and that Maysonet believes the detectives pursued a homicide case against him because he decided to stop paying. The Magistrate Judge disregarded these allegations because they have yet to be proven. Sierra cites no authority that it is clearly erroneous not to rely on unsubstantiated allegations as a basis to compel.

Lastly, both the Magistrate Judge and the court in *Reyes* rejected Sierra's contention that the fact that the officers worked in the same building provides evidence that they were engaged in some criminal conspiracy together. Dkt. 231, p. 3; *Reyes*, *7. Again, the fact that two different magistrate judges reached the same conclusion demonstrates it is not clearly erroneous.[2]

Having failed to establish any relevant connection between Miedzianowski and Defendant Officers, Sierra nevertheless argues the demanded documents will show Miedzianowski's criminal conduct created "the opportunity" for Defendant Officers to commit the misconduct alleged here. If Sierra's contention is that the City's alleged response to the *Klipfel* plaintiffs' allegations gave Defendant Officers the impression they were permitted to violate Sierra's due process rights, that contention fails. Sierra has offered nothing to suggest Defendant Officers would have known about the scope of the City's investigation of Miedzianowski, let alone that they concluded they could or should frame an innocent person because of it.

Additionally, Sierra claims he should be permitted to argue to the jury that evidence of Miedzianowski's criminal conduct shows that police officers can be criminals, so the jury should discredit Defendant Officers' denial that they violated Sierra's constitutional rights. Put differently, Sierra suggests a party's credibility can be impeached with the character or prior bad acts of another, such that Miedzianowski's criminal conduct could be imputed to Defendant Officers. Naturally, Sierra cites no authority for such a novel proposition. This, of course, undermines his assertion that the Magistrate Judge's rejection of it was contrary to law.

---

[2] In his motion to compel, Sierra relied on additional information to suggest a link between Miedzianowski and Defendant Officers. He has abandoned those arguments, tacitly conceding the Magistrate Judge correctly rejected them. In any event, because Sierra does not reraise those here, the City does not discuss them. For explanation on each of the pieces of information Sierra raised to suggest a connection to Miedzianowski, see the City's Response to Plaintiff's Motion to Compel. (Dkt. 226).

In that regard, Sierra's reliance on *Velez* is misplaced. *Velez* is not a decision about the scope of discovery; rather *Velez* concerns the Court's denial of the City's motion to bifurcate the plaintiff's *Monell* claim, finding, in part, that evidence of an unconstitutional policy could be probative as to whether the individual officers violated the plaintiff's constitutional rights pursuant to that policy. *See* Plf. Ex. G. That is not the same as concluding that one officer's criminal conduct can be imputed to another. What's more, Judge Chang directed the Magistrate Judge in *Velez* to focus discovery tightly to the specific *Monell* allegations in the case, rather than more generalized allegations. And so, the *Velez* opinion *supports* the Magistrate Judge's reasoning because, just like Judge Chang directed in *Velez*, the Magistrate Judge declined to open the door to discovery of alleged misconduct that is unrelated to the issues in this case.

Finding such a paucity of evidence connecting Miedzianowski to Defendant Officers, the Magistrate Judge also aptly concluded that the demanded discovery is irrelevant for purposes of pursuing Rule 404(b) prior bad act evidence against Defendants Officers, again, relying upon the court's analysis in *Reyes*, which reached the same conclusion. Specifically, Magistrate Judge Harjani explained that Miedzianowski's criminal conduct of accepting bribes and conspiring with drug dealers is not sufficiently similar to allegations like fabricating and concealing evidence in effort to frame someone to deem it relevant for 404(b) purposes. *Reyes*, at *8.

Ultimately, the Magistrate Judge was well within the bounds of discretion to conclude the demanded discovery was irrelevant to Sierra's claims against Defendant Officers.

## III. It was not clearly erroneous for the Magistrate Judge to conclude the demanded discovery is irrelevant to Sierra's *Monell* Claim.

Sierra also faults the Magistrate Judge for failing to conclude documents from the *Klipfel* litigation and those relating to CPD's investigation of Miedzianowski are relevant to his *Monell* claims because, he alleges, the documents will show evidence of "widespread misconduct in

homicide investigations" and a "broken disciplinary system," calling this a "direct factual nexus" between his claims and the issues litigated in *Klipfel*. The Magistrate Judge aptly rejected those contentions. Sierra never presented any basis to conclude that the issues litigated in *Klipfel* or Miedzianowski's criminal activity relate to the constitutional violation he alleges here.

Once again, Sierra's argument fails from the start because he claims the *Klipfel* documents will show evidence that officers assigned to the Area 5 Detective Division and Gang Crimes North "framed innocent people for crimes in coordination with leaders of street gangs." That assertion is baseless. The information Sierra relies on to suggest that the *Klipfel* litigation had anything to do with homicide investigations is not on-point and is misleading.

First, Sierra reliance on the reported testimony of former Superintendent Philip's Cline's testimony misses the mark. According to the article cited, Cline testified that he was concerned that Miedzianowski removed critical documents in murder cases. *See* Ex. 4, Chicago Tribune, "Police Chief Testifies in Corrupt Cop Case," Feb. 8, 2007. That is the *opposite* of what Sierra accuses detectives of doing here. Whereas Sierra alleges that detectives manufactured evidence to frame innocent people, Miedzianowski apparently sought to *undermine* the police investigations against legitimate suspects, likely to protect the drug dealers with whom he worked or in effort to conceal discovery of his own criminal conduct. In fact, in one instance, Miedzianowski allegedly provided the document to a criminal defense attorney and, in the other case, the document ended up on the street where the witness was confronted about it. *Id.* That is not the same as fabricating and concealing exculpatory evidence, and Sierra does not explain how Miedzianowski's effort to protect suspected murderers could provide notice to the City that Defendant Officers in this case would frame a purportedly innocent person.

11

Second, Sierra argues the *Klipfel* documents will show that the former Assistant Deputy Superintendent of IAD, Raymond Risely, "knew of misconduct in homicide investigations." He cites to a newspaper article recounting evidence at the *Klipfel* trial, but nowhere in the article does it state that Risely knew of misconduct in homicide investigations. *See* Ex. 5, Chicago Tribune, "Agents charges about corrupt cop called 'crazy,'" Feb. 9, 2007. And, as explained many times, the allegations against Miedzianowski are not at all similar to the allegations that the officers in this case violated Sierra's due process rights.

As to the opinion of former Assistant U.S. Attorney Brian Netols, Sierra failed to raise that argument before the Magistrate Judge, so it is now waived. *Woodall v. Jo-Ann Stores, Inc*., No. 14 C 263, 2015 WL 417660, at *2 (S.D. Ind. Jan. 30, 2015). In any event, Netols' testimony concerned the 18 criminal cases he prosecuted, not some comprehensive audit of CPD's disciplinary system. *Klipfel v. Gonzales*, 94 C 6415, 2006 WL 1697009, at *11 (N.D. Ill. June 8, 2006). And, once again, the cited testimony is not related to the types of allegations in this case concerning violations of due process.

Also meritless is Sierra's attempt to reframe his *Monell* claim as the existence of an alleged "code of silence" or one of a "lax disciplinary system." Sierra alleges a City-wide practice of fabricating inculpatory evidence and suppressing exculpatory evidence to frame innocent people for murder. In fact, he titled his *Monell* allegations in his complaint as "Policy and Practice of Wrongfully Convicting Innocent Persons in Violation of Due Process." *See* Dkt. 185, p. 12. Thus, the Magistrate Judge rightly concluded that for Sierra to prevail on his *Monell* claim, he "must show that his injuries were the caused by the practices of which he complains, *i.e.*, that [CPD's] broken disciplinary system and code of silence caused defendants to fabricate inculpatory evidence and suppress exculpatory evidence to secure his conviction." (Dkt. 231, p. 3). Put differently,

12

while Sierra faults the City for failing to discipline its officers, he alleges the unconstitutional policy, which he claims the City knew of and was deliberately indifferent to, was a practice denying innocent people their due process rights to wrongfully convict them. Neither the *Klipfel* litigation or Miedzianowski's conduct relate to manipulating witness testimony, hiding exculpatory information, or any of the other misconduct Sierra alleges led to his conviction.

Far from lacking any basis in law or fact, the Magistrate Judge's reasoning is in line with others in this district. In *Reyes*, the Court also rejected Plaintiff's demand for discovery related to Miedzianowski, reasoning that the plaintiffs' attempt to grow their *Monell* claims into general claims regarding failure to discipline and supervise was impermissible. Relying on yet another case, *Wright v. City of Chicago*, the court concluded that the policies and practices at issue for purposes of *Monell* are those that are allegedly the *moving force* behind the specific constitutional violations the plaintiffs alleged, which in *Reyes*, included coercing confessions, manipulating witness statements, and concealing exculpatory evidence. Reyes, at *9. Applying the same reasoning in *Wright*, the court determined that allowing the plaintiffs to morph their claims into generalized failure to discipline "would open the door to any matter involving any Chicago police officer who acted outside his or her authority," and the law "does not allow for vicarious liability cases." *Id.* The Magistrate Judge concurred with that reasoning. The fact that two prior decisions reach the same conclusion, one of which also involved a demand for discovery about Miedzianowski, confirms the Magistrate Judge's ruling was not clearly erroneous.

## IV. The demanded discovery is not proportional to the needs of the case.

The Magistrate Judge did not deny Sierra's Motion to Compel on proportionality grounds, and so Sierra's argument concerning proportionality serve no purpose in a motion challenging the

Magistrate Judge's decision and should be disregarded. Nevertheless, because he raised them, the City will explain why Sierra's arguments as to proportionality lack merit.

First, Sierra makes certain assumptions about what documents are in the City's possession and, without basis, claims that they are easy for the City to produce. But the City has already explained that it has located very few documents from the *Klipfel* litigation. Sierra's entire motion seems to ignore that. Even so, the proportionality analysis is not merely concerned with the number of documents, but rather whether the burden of the discovery sought outweighs its likely benefit. *See Howard v. Meli*, 17-CV-1353-PP, 2020 WL 4464606, at \*4 (E.D. Wis. Aug. 4, 2020). Put differently, the discovery still must be important in resolving the issues in the case, which Sierra failed to show. Further, Sierra is asking the City's counsel to produce records in their defense file from a legal proceeding; certainly, counsel must review the records so as not to inadvertently produce privileged information. And Sierra does not meaningfully address the Magistrate Judge's concern that a party seeking all discovery relating to another civil case seems open to abuse and not well grounded in the Federal Rules. (Dkt. 321, n. 5).

Additionally, Sierra demands all documents related to complaints and investigations against Miedzianowski. The burden there is readily apparent because Miedzianowski is not a defendant in this case and was not involved in the investigation. Plus, those files, too, would have to be reviewed and redacted for confidential information, which Sierra knows from the other complaint files that the City has produced in this case. The burden of producing those documents related to Miedzianowski outweighs any benefit because Sierra cannot show that any complaint against Miedzianowski would tend to make any fact in this case more or less likely. *See Hill v. City of Chicago* et al., 19-cv-6080, Dkt. 115, Dec. 9, 2020 (MJ Cox) (concluding that the burden

of collecting, reviewing, and redacting complaint register files against officers that are of limited relevance to the parties' claim outweighs their likely benefit).

Finally, Sierra's contention that he is entitled to this discovery because his *Monell* theory is hard to prove is no excuse for demanding irrelevant discovery. *See Batchelor v. Merck & Co., Inc.*, 3:05-CV-791 JTM, 2007 WL 4179015, at *3 (N.D. Ind. Nov. 20, 2007) (denying party's attempt at 'fishing' for discovery with hopes that there is discovery that will generate evidence to fill the evidentiary holes in its theory"). Sierra can still pursue other avenues of discovery related to these theories, (Dkt. 231, n. 5), and the Magistrate Judge has already granted him *significant* discovery related to his *Monell* claim, including *hundreds* of Complaint Register files and *hundreds* of investigative files for homicide victims, which have nothing to do with this case but for Sierra's purported search for a practice of framing innocent people. (Dkt. 154).

Moreover, the fact that Sierra alleges he was wrongfully convicted and now seeks millions of dollars in damages is no cover for his failure to show the discovery is relevant. Bear in mind, this is a case where one of the two surviving victims stands by his identification of Sierra as the man who shot and killed his friend and confirmed he was not manipulated by the police. *See* Ex. 1, Rodriguez testimony, p. 69-73. Sierra would like nothing more than to use Miedzianowski as a smoke screen to detract from that evidence, make unfounded allegations about Defendant Officers' involvement in his criminal conspiracy, and leave Defendants to prove otherwise.

Because the Magistrate Judge's denial of this discovery as irrelevant is not clearly erroneous, this Court should overrule Sierra's Rule 72 Objections.

Dated: February 19, 2021

Respectfully submitted,

CELIA MEZA

Acting Corporation Counsel for the City of Chicago

By: _____/s/ *Eileen E. Rosen*_____
          One of its attorneys

Eileen E. Rosen
Catherine M. Barber
Theresa Berousek Carney
Austin G. Rahe
Special Assistant Corporation Counsel
Rock Fusco & Connelly, LLC
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654
312.494.1000
erosen@rfclaw.com