IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| **Thomas Sierra**, | No. 18 C 3029 |
| Plaintiff, | Hon. John Z. Lee, District Judge |
| v. | |
| **Reynaldo Guevara** et al., | Hon. M. David Weisman, Magistrate Judge |
| Defendants. | |

### Plaintiff's Motion to Compel Production of
### *Monell* Homicide Files Without Improper Redactions

Plaintiff Thomas Sierra, through his undersigned counsel, respectfully moves to compel the production of Area 5 homicide files without improper redactions of information pertaining to juveniles. In support of the motion, Plaintiff states as follows:

### Introduction

This Court has twice ordered Defendant City of Chicago to produce Area 5 investigative and RD files. Dkt. 154 (ordering Area 5 homicide files from 1991 through 1995); dkt. 166 (denying the City's motion to reconsider its ruling). The purpose of this production is to adjudicate Plaintiff's *Monell* theories that the City maintained widespread customs of suppressing exculpatory evidence and manipulating eyewitness identifications.

The City, however, has elected to produce almost 100 of these files in a format that renders them unusable for the purposes the Court has ordered. Specifically, the City has extensively redacted the files to remove information pertaining to juveniles,

resulting in homicide files that are unintelligible. The City's supposed justification for these redactions—that they are mandated by the Illinois Juvenile Court Act—is simply incorrect as a matter of law, as Plaintiff is an interested party entitled to inspect juvenile records in this federal proceeding. Any concerns about the confidentiality of this information under Illinois law are resolved because the City has marked the homicide files as confidential pursuant to the protective order in this case.

Because the City has refused requests to provide usable versions of these documents, Plaintiff respectfully moves for entry of an order compelling the production of RD and investigative files without redactions for juvenile information.[1]

## Background

### A.    The Court's orders on *Monell* discovery

Plaintiff moved to compel the production of Area 5 homicide and CR files for the years leading up to the homicide investigation that resulted in Plaintiff's wrongful murder conviction. Dkt. 138. The Court granted the motion over the City's strenuous objections, ordering the production of those files from the years 1991 through 1995. Dkt. 154. The Court noted that the homicide files were relevant to Plaintiff's *Monell* claims in multiple ways, including "through comparison of documents produced during various stages of the underlying criminal proceedings." *Id.* at 1. And the Court further explained that "[t]he fact that plaintiff has no other ready means of gathering this type of information and his *Monell* claim raises questions that are important not

---

[1] The particular RD numbers corresponding to redacted files are listed in Exhibit A.

only to him but to the public-at-large also justifies the burden involved in the discovery requested." *Id.* at 2.

In granting the motion, however, the Court limited the use of these documents. It held that Plaintiff was not permitted to "re-investigate the homicide cases." *Id.* at 2. By prohibiting further investigation, the Court restricted Plaintiff to relying on information contained on the face of the documents.

The City moved for reconsideration of the ruling, dkt. 156, which the Court denied, dkt. 166. The Court then ordered the City to conduct rolling production of Investigative and RD files to be completed by November 30, 2020. Dkt. 195.

## B.    The City's deficient production and Plaintiff's efforts to confer

The City failed to meet the Court's deadline and instead provided what it represented was the last of the homicide files on January 22, 2021. *See* dkt. 233.[2]

Upon review of the files, Plaintiff discovered that almost 100 of the homicide files, or approximately one fifth, had been heavily redacted to remove information pertaining to juveniles. These redactions make it difficult or impossible for Plaintiff to use the files for the purposes authorized by the Court. For example, the redaction of juveniles' names in many cases obscures who viewed, participated in, or was selected in lineup procedures. And these redactions also make narratives about the homicide investigation, whether in detectives' supplementary reports or in recorded witness statements, indecipherable.

---

[2]  Even then, the City's production contained noticeable gaps and errors that are the subject of ongoing conferral and which are not yet ripe for this Court's resolution.

Plaintiff requested that the City re-produce these files, hoping to resolve the issue without Court intervention. On March 16, 2021, Plaintiff's counsel notified the City of the deficiencies in its production and requested a prompt response on the specific issue of juvenile redactions to avoid unnecessary delay if motion practice proved necessary, given the impending fact discovery deadline in this case. *See* Ex. B (Mar. 16, 2021 letter from J. Hazinski to E. Rosen, et al.) at 2–3. The City failed to respond promptly despite repeated requests. Ex. C (Mar. 26, 2021 email from J. Hazinski to E. Rosen, et al.). Finally, after further delay, the City stated that it would not re-produce the files, necessitating this motion. Ex. D (Apr. 5, 2021 email from E. Rosen to S. Art, et al.).

## Argument

The extensive redactions of juvenile information prevent Plaintiff from analyzing the homicide files to litigate his *Monell* claims. And without recourse to conduct independent investigation, Plaintiff cannot use these files at all. The redactions thus flout the Court's rulings ordering the production of the homicide files. Moreover, these redactions are legally baseless; designating the files as confidential, as the City has done, accounts for any problems of confidentiality. In addition, numerous courts in this District have held that "interested parties" in federal litigation are authorized to inspect juvenile records that might otherwise be covered by the Illinois Juvenile Court Act. Because the City's redactions are legally improper and serve only to undermine this Court's repeated discovery orders, Plaintiff respectfully requests that the Court compel the re-production of the homicide files

4

listed in Exhibit A to remove the excessive and improper redactions the City has imposed.

## A.     The City's redactions render the homicide files unusable

Homicide files are useful in this litigation only if the parties can figure out what they say. The City's redactions of juvenile information make this task exceedingly difficult and in many cases impossible. By removing information pertaining to juveniles, such as their names and nicknames, from every report—including typed supplementary reports, arrest records, witness statements, and handwritten notes—the City has defeated the purpose of producing these files. In particular, the redactions cover up information revealing patterns of evidence suppression and fabrication that Plaintiff is entitled to discover.

One example illustrates the point. In the case of *Rivera v. Guevara*, No. 12 C 4428 (N.D. Ill.), the City produced investigative and RD files pertaining to the 1991 Edwin Fred homicide investigation. Upon examining the investigative file, it became clear that there were two contradictory reports of a single lineup procedure—one in which it was reported that a witness named Aby Gonzalez made no identification, and one stating that Gonzalez identified an alternate suspect named Bryan Johns. *See* Ex. E (Lineup reports from RD No. P272087 produced in *Rivera*).[3] Only the former report, signed by Detective Guevara, was disclosed to the criminal justice system; neither the State's Attorney nor the Public Defender received the unsigned lineup report showing that Gonzalez had identified Johns. This suppression of exculpatory

---

[3] Though these files bear a confidentiality stamp, they became public when they were introduced at the *Rivera* trial in 2018.

evidence—which was apparent on the face of homicide files produced during federal civil litigation—resulted in wrongful conviction and imprisonment of a 15-year-old boy named Demetrius Johnson. When this suppressed exculpatory evidence was revealed in *Rivera*, it caused Johnson's conviction to be vacated, and on April 7, 2021, he was granted a certificate of innocence. Ex. F.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████ *See* Ex. G █████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████.

Demetrius Johnson's case is just one example based on information already known to Plaintiff's counsel, but it is easy to imagine countless others where the City's redactions would prevent Plaintiff from ascertaining information essential to his *Monell* claims:

- If investigating detectives obtained prior arrest reports or issued a stop order for a juvenile alternate suspect, and that suspect was never disclosed to the criminal justice system, the City's redactions would prevent Plaintiff from discovering that the juvenile was in fact an undisclosed alternate suspect. *See, e.g.*, Ex. H ████████████████████

- Handwritten witness statements may contain information that contradicts other information in the investigative file, suggesting

fabrication, or that implicates undisclosed alternative suspects, suggesting suppression. Redactions of juvenile information in written statements make it impossible in many cases to cross-check the information contained in such statements. *See, e.g.*, Ex. I ████████████ ████████████████████████████████████████████████

- If detectives conducted unduly suggestive photo arrays or lineups with juveniles, the City's redactions black out those photographs and prevent Plaintiff from assessing the legitimacy of those identification procedures. *See, e.g.*, Ex. J █████████████████████████ ████████████████████████████████████████████████

- Handwritten notes by detectives, including General Progress Reports (GPRs), may contain exculpatory or impeaching information or show that detectives took investigative steps that were not properly documented in typed reports pursuant to CPD policy. The City's redactions would obscure such information in the GPRs. *See, e.g.*, Ex. K ████████████████████████████████████████████

In each of these circumstances, the City's redactions of juvenile information would prevent the parties and the Court from reviewing important indicators that evidence suppression and fabrication were widespread phenomena within the CPD.

Finally, beyond these particular examples of ways in which the City's redactions for juvenile information might cover up direct evidence of misconduct, they also render the homicide files excessively difficult to interpret. Consider, for instance, ██████████████████████████ ██ █████████████████████████████ which is attached as Exhibit L. ████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████ Without the ability to interview witnesses

or take depositions regarding these files, Plaintiff has no means of filling in these gaps or the countless others in the City's Swiss-cheese production. And even if it were possible to do so, reconstructing these reports imposes an excessive and unnecessary burden on Plaintiff.

## B. The juvenile redactions are legally improper

The City's justification for these large-scale redactions—the Illinois Juvenile Court Act—does not support its position. First, state-law prohibitions on disclosure do not override federal law. Cf. *Martinez v. City of Chicago*, 2012 WL 1655953, at *1 (N.D. Ill. May 10, 2012) (noting that a state statute—the Illinois Freedom of Information Act—did not dictate the confidentiality of information in federal litigation). Any contention that a state statute limits this Court's ability to order the production of information in this federal-question case simply ignores that discovery in this litigation is governed by the Federal Rules of Civil Procedure, not state statute.

Second, the relevant provision of the Juvenile Court Act states that "[a]ll juvenile law enforcement records which have not been expunged are confidential and may never be disclosed to the general public or otherwise made widely available." 705 ILCS 405/1-7(A). Marking the homicide files confidential, as the City has done, meets this requirement. Nothing in the Act demands the further step of redacting information that is protected from public disclosure by order of a federal court.

Third, courts have repeatedly held that juvenile law enforcement records may be properly disclosed in federal litigation when the parties have an interest in reviewing those records. *Brokaw v. Brokaw*, 128 F. App'x 527, 530–31 (7th Cir. 2005);

*Chatman v. City of Chicago*, No. 13 C 5697, 2014 WL 1813172, at *1 (N.D. Ill. May 5, 2014); *Landon ex rel. Munici v. Oswego Unit Sch. Dist. #308*, No. 00 C 1803, 2000 WL 33172933, at *1 (N.D. Ill. Feb. 13, 2000) ("As a defendant in a suit brought by plaintiff, defendant is a "properly interested person" in inspecting the plaintiff's juvenile records to enable defendant to defend against the suit when, in good faith, it believes the records are relevant to the case.").

## C.    The protective order does not mandate these redactions

In refusing to provide unredacted versions of these documents, counsel for the City cited the protective order entered in this case, Ex. D at 1, but that order does not excuse the extensive redactions in the City's *Monell* production. First, by its own terms, the protective order permits redactions only of "information covered by the Juvenile Court Act," dkt. 123 ¶ 5, which does not include information that the parties in this case have an interest in reviewing, *see Brokaw*, 128 F. App'x at 530–31; *Chatman*, 2014 WL 1813172, at *1; *Landon*, 2000 WL 33172933, at *1. Second, the protective order did not contemplate the situation now before the Court: the parties must analyze hundreds of homicide files to determine whether, on their face, they contain indications that evidence was suppressed or fabricated. To the extent this provision of the protective order would authorize redactions that make that task impossible, it is overridden by the Court's multiple orders authorizing this *Monell* discovery and precluding "reinvestigation" that might allow Plaintiff to independently ascertain the redacted information. Dkts. 153, 166. The only relevance of the protective order to this dispute is that it permits the records to be designated

confidential, resolving any concerns that might emanate from the Juvenile Court Act and obviating the need for any redactions. Defendants' objection based on the protective order in this case therefore lacks merit.[4]

## Conclusion

For the foregoing reasons, Plaintiff respectfully moves for an entry of an order compelling Defendant City of Chicago to produce RD and investigative files associated with the RD numbers listed in Exhibit A without redactions for information pertaining to juveniles.

April 13, 2021                                    Respectfully submitted,

                                                  /s/ John Hazinski
                                                  *One of Plaintiff's Attorneys*

Arthur Loevy
Jon Loevy
Anand Swaminathan
Steve Art
Joshua Tepfer
Rachel Brady
Sean Starr
John Hazinski
LOEVY & LOEVY
311 N. Aberdeen St.
Chicago, IL 60607
(312) 243-5900
hazinski@loevy.com

---

[4] The City also pointed to a motion filed in an unrelated case in which different attorneys at Plaintiff's counsel's firm sought to limit the review of juvenile records to only relevant and potentially admissible files. Ex. D at 1. Nothing in that motion contradicts Plaintiff's request in this case to obtain information relating to juveniles that is undisputedly relevant to the *Monell* discovery the Court has ordered. Moreover, that motion concerned attempts to obtain entire juvenile court records, not merely, as in this case, police reports in which juveniles' names sometimes appear. Indeed, that motion simply reveals the City's acknowledgement that the Juvenile Court Act should not be a barrier to obtaining information in documents that the Court has ordered the City to produce.

**Certificate of Service**

I, John Hazinski, an attorney, hereby certify that on April 13, 2021, I caused the foregoing Plaintiff's Motion to Compel Production of Monell Homicide Files Without Improper Redactions and attachments thereto to be filed using the Court's CM/ECF system, which served the documents on all counsel of record.

/s/ John Hazinski
*One of Plaintiff's Attorneys*

11