**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Thomas Sierra, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>Reynaldo Guevara, et. al. )<br>)<br>Defendants. )<br>) | Case No. 18 CV 3029 |

**COOK COUNTY PUBLIC DEFENDER'S
<u>MOTION TO QUASH OR MODIFY SUBPOENA</u>**

NOW COMES the Hon. Sharone R. Mitchell, Jr., Public Defender of Cook County, through his Deputy, Karen J. Dimond, and pursuant to Federal Rule of Civil Procedure 45(d)(3), moves to quash or modify a subpoena directed to the Cook County Public Defender, (CCPD), a non-party, as being unduly burdensome. In support of this motion, the CCPD states as follows:

**The Subpoena Issued to the CCPD in this Case**

On or about December 20, 2020, Plaintiffs served upon the CCPD a subpoena to produce documents (the "Sierra Subpoena"). This subpoena directed the CCPD to produce 515 case files. (Exhibit A) An additional 23 files were later added to the list of subpoenaed files.

**The Subpoena Issued to the CCPD in the Reyes Case**

A few months after they sent the Sierra Subpoena to the CCPD, counsel for the Plaintiffs in this case also sent a subpoena to the CCPD on behalf of the Plaintiff in *Reyes v. Reynaldo Guevara*, 18 CV 1028 (the "Reyes Subpoena"). Attached to that subpoena was a rider directing the CCPD to produce 263 of its case files. (Exhibits B and B1)

1

Combined, the Reyes Subpoena and the Sierra Subpoenas directed the CCPD to produce a total of 801 files. This number is four times the average number of files the CCPD is requested to produce in a normal calendar year.

**The CCPD's Subpoena Response Process and Workload**

In a typical year, the CCPD receives requests from outside parties for about 200 of its files. This number includes subpoenaed CCPD files and CCPD files requested by private attorneys representing former clients ("External Requests"). This External Request number of 200 does not include (1) internal requests for files made by current Assistant Public Defenders who need a client's prior file in order to prepare their client's defense in a currently-pending case, or (2) requests from the Office of the State Appellate Defender.

As part of its normal workload, the CCPD must field External Requests for files for all past years and from all locations, including the Leighton Courthouse, Juvenile Court, and five suburban locations. Different steps need to be taken to locate and retrieve different types of files.

When the CCPD receives a request for murder files from the 1990's, (as is the case with the Sierra Subpoena), its staff must take the steps outlined below. Currently there are two staff members located at the Leighton Courthouse who are familiar with how to conduct this type of search. These two staff members look in a Homicide Task Force disposed list called "INA." This list was manually created in the 1990's, but often states "no record" for a requested file. Then, these staff members must look at an Excel sheet which contains some, but not all, information from an AS400 database which was used from 1988 to 1994, but which is no longer supported. Finally, the staff must look in the Clerk of the Circuit Court's Odyssey system for clues as to what the charge was, the location of the trial, and so forth. Some, but not all, box numbers may be found using these steps.

Almost all of the box numbers for requested files are funneled to one CCPD employee who must retrieve those files from the CCPD warehouse space located at 23rd and Rockwell in Chicago, Illinois. Murder files are usually located on shelves on the sixth floor of the warehouse or on skids on the third floor, with 20 to 25 boxes stacked on each skid. The above-mentioned warehouse employee is currently the only CCPD employee who knows how to locate files in the warehouse and who retrieves those files.

After a file is located and retrieved from the warehouse, it is normally shipped to the CCPD offices at 69 West Washington, where the file is reviewed, privileged documents are pulled and scanned, and a privilege log is created by the undersigned, with the assistance of one support staff member. Then private attorneys who have submitted External Requests may review the non-privileged documents.

**The CCPD's Efforts to Comply with the Reyes Subpoena and the Sierra Subpoena.**

Since the Sierra Subpoena and the Reyes Subpoena were served upon the CCPD, its staff has spent many hours trying to determine in which boxes the requested files may be located. The staff has now completed that task, and the results have been shared on spreadsheets sent to counsel for the Plaintiffs and counsel for the City of Chicago. These spreadsheets indicate that the CCPD staff has been able to locate the box numbers for about 145 of the 263 subpoenaed files in Reyes and about 300 of the 538 subpoenaed files in Sierra.[1] The CCPD's sole warehouse employee is now in the process of determining how many of the identified boxes can be located within the warehouse.

While the CCPD staff has already expended a great deal of time to locate the box numbers and the boxes themselves, this effort represents just a small percentage of the time that the CCPD would have to expend in order to fully comply with the Sierra Subpoena and the Reyes Subpoena. The CCPD acknowledges that the Plaintiffs' attorneys have offered to assist the CCPD by (1) engaging a copy service to bring equipment to scan or copy the CCPD files at its warehouse at 23rd and Rockwell, and (2) offering to hire a company that would assist in moving files within the warehouse to a staging area near

---

[1] In some cases, the CCPD has no file because the defendant was represented by a private attorney.

3

where the copiers would be set up. The CCPD has agreed to allow such a copy service to temporarily move its equipment into its warehouse, move the files to a staging area in the warehouse, and then scan all files (instead of shipping all of the boxes to the CCPD Offices at 69 West Washington, as would normally be done).

However, the CCPD would still be responsible for reviewing each and every one of about 300 files in the Sierra case and about 145 files in the Reyes case and so as to remove or redact privileged documents. This process is extremely time-consuming and cannot be outsourced by the CCPD. Therefore, requiring the CCPD to fully comply with the Sierra Subpoena, in addition to the Reyes Subpoena, places an undue burden on the CCPD.

**The Rivera and Fields Cases**

Plaintiffs' counsel may note that the files it subpoenaed in *Jacques Rivera v. Reynaldo Guevara,* 12 CV 4428, and *Nathan Fields v. Reynaldo Guevara,* 10 CV 1168, were copied in just one day in 2016 at the CCPD warehouse. This assertion, of course, ignores all the work that needed to be done by the CCPD in terms of researching the location of those files prior to the day spent at the warehouse. Further, while the Rivera Subpoena and the Fields Subpoena created a very large project for the CCPD, that project pales in comparison to the amount of work that would be required by the Reyes Subpoena and the Sierra Subpoena.

The Rivera Subpoena directed the CCPD to produce 81 files. The CCPD was unable to locate about 27 files, but it did produce about 54 files for scanning. The Fields Subpoena directed the CCPD to produce 44 files. The CCPD was unable to locate about 9 files, but it did produce about 35 files for copying. Therefore, about 89 files were located and scanned at the CCPD warehouse.

Here, the Sierra Subpoena and its supplement request 538 files and the CCPD has been able to determine the box numbers for about 300 of those files. The Reyes Subpoena requests 263 files, and the CCPD has been able to determine the box number for about 145 of those files.

Therefore, together, the Sierra Subpoena and the Reyes Subpoena request 801 files versus the 125 files requested by the Rivera Subpoena and the Fields Subpoena. Looking at the respective numbers for *located* files, the Sierra Subpoena and the Reyes Subpoena cumulatively request 445 located files, while the Rivera Subpoena and Fields Subpoenas together requested only 89 located files. Regardless of which type of numbers one compares, the Sierra Subpoena and Reyes Subpoenas require the CCPD to produce about *five to seven times* as many files as were required by the combined Rivera Subpoena and the Fields Subpoena.

**The Applicable Law**

A court may quash or modify a subpoena if it "subjects a person to undue burden." Fed. R. Civ. Pro. 45 (d)(3)(A)(iv). A party has a general right to subpoena any person to appear at a deposition or to produce documents for inspection and copying, but "this right is not limitless." *Whitlow v. Martin*, 263 F.R.D. 507, 510 (C.D. Ill. 2009). The *Whitlow* court summarized the test used to determine whether a subpoena places an undue burden on the recipient:

> The Seventh Circuit has applied a relative hardship test in analyzing undue burden under Fed. R. Civ. P. 45(c)(3)(A)(iv), considering whether the burden of compliance with a subpoena would exceed the benefit of production of the material sought by it. *Northwestern Memorial Hosp. v. Ashcroft*, 362 F. 3d 923, 927 & 933 (7th Cir. 2004). Non-party status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue. *United States v. Amerigroup Ill., Inc.*, 2005 U.S. Dist. LEXIS 24929, 2005 WL 3111972 at *4 (N. D. Ill. Oct. 21, 2005). To determine whether a Rule 45 subpoena is unduly burdensome, a court may weigh a number of factors including "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are requested, and the burden imposed." *Morrow v. Air Ride Technologies, Inc*., 2006 U.S. Dist. LEXIS 96651, 2006 WL 559288 at *2 (S.D. Ind. Mar. 6, 2006).

263 F.R.D. at 512.

In *United States ex rel Tyson v. Amerigroup Illinois, Inc.*, No. 02 C 6074, 2005 U.S. Dist. LEXIS 24929, at *7 (N.D. Ill. Oct. 21, 2005), the court explained the effect of the 1991 Rule 45 Advisory Committee's Notes, especially as to non-parties:

5

> Rule 45(c)(3)(A)(iv) mandates that a court "shall quash or modify" a subpoena if it "subjects a person to undue burden." The Advisory Committee's Notes to the 1991 amendments to Rule 45 make clear that the amendments have "enlarged the protections afforded persons who are required to assist the court by giving information or evidence." The rule "requires the court to protect all persons from undue burden imposed by the use of the subpoena power." *Id.* This is not the discretionary language of Rule 26(c), under which a court "may make any order which justice requires to protect a party or person from . . . undue burden . . . ." It is a "command[]." *Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.,* 333 F.3d 38, 41 (1st Cir. 2003).

2005 U.S. Dist. LEXIS 24929, at *7. The court also collected cases stressing the importance of protecting non-parties and explaining why they are entitled to additional protection:

> In keeping with the text and purpose of Rule 45(c)(3)(A), it has been consistently held that "non-party status" is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue. *See N.C. Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 2005 U.S. Dist. LEXIS 22554, 2005 WL 2456982 (D.D.C. 2005); *Wyoming v. United States Dep't of Agric.,* 208 F.R.D. 449, 452 (D.D.C. 2002); *In re Automotive Refinishing Paint,* 229 F.R.D. 482, 495 (E.D. Pa. 2005). As the First Circuit has explained: "Although discovery is by definition invasive, parties to a law suit must accept its travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations. Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to *special weight* in evaluating the balance of competing needs." *Cusumano v. Microsoft Corp.,* 162 F.3d 708, 717 (1st Cir. 1998) (Emphasis added).

2005 U.S. Dist. LEXIS 24929, at *14-15.

The fact that the proponent of a subpoena may offer to pay out of pocket costs incurred in the production is not determinative. "Expense is but a part of the burden." 2005 U.S. Dist. LEXIS 24929, at *13. The time that a non-party must spend to collect the documents must also be considered. *Id*.

In *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556 (7th Cir. 1984), the Court observed that a trial judge has "the power to fashion virtually any order" so as to protect a party or person from an undue burden, and thus it was possible for the court to have fashioned a protective order or modified a subpoena in some way so as to protect a non-party "against any loss of confidential information and unreasonable financial and temporal costs." 740 F.2d at 564.

Here, the CCPD is a non-party, and it requests that this Court give it the protections Rule 45 affords. The CCPD suggests that this Court either quash the subpoena directed to it or modify the subpoena to lessen the burden imposed on the CCPD. The burden of *fully* complying with the subpoena exceeds the

benefit of production of the material sought by the subpoena. Were this Court to order that a reduced number of files should be produced, the burden imposed on the non-party CCPD would be reduced and the parties would not be substantially prejudiced.

**An Alternative Approach**

The CCPD believes that the litigants can conduct an appropriate amount of discovery in this case if this Court allows the CCPD to produce a sample of the subpoenaed files. This might be accomplished by limiting the years for which the CCPD must produce files or by randomly selecting files in some fashion. For example, one fifth of the subpoenaed files might be selected by choosing all cases that end[2] with the number "2" or "7."

The CCPD contends that none of the parties will be harmed by this approach and that this sampling approach will lesson litigation costs for all.[3] The CCPD also notes that it appears that one or more of the parties with be sending a subpoena to the Cook County State's Attorney's Office (CCSAO) for its corresponding files in these same cases. It would seem that the CCSAO would also be burdened by producing such a large number of files unless a sampling method were adopted.

**Conclusion**

When evaluating whether a subpoena imposes an undue burden on a non-party subpoena respondent, courts normally look at whether a certain subpoena issued in an individual case will impose an undue burden. But here, the CCPD urges this Court to examine the *cumulative* effect of subpoenas issued to the CCPD in two related cases (Reyes and Sierra). And the CCPD also asks the Court to

---

[2] Technically, all Cook County felony cases end with the numbers "-01," "-02," "-03" etc., which indicate which defendant is charged in a particular case. The CCPD suggests ignoring these last two digits when selecting which cases will be examined.

[3] The undersigned has mentioned such a sampling approach to some of the attorneys for Plaintiffs and for Defendants, but no agreement to sample has been reached as of yet.

consider the likelihood that *more* subpoenas will be served upon the CCPD in the other similar pending cases.

The CDPD recently learned that there have been sixteen suits filed against Reynaldo Guevara, *thirteen* of which are still pending,[4] and that there are an unknown number of similar suits filed against other defendants. The CCPD assumes that it may well receive numerous subpoenas issued in these other cases, each requesting hundreds of files. Unless controlled and limited, these subpoenas will simply overwhelm the CCPD's limited staff and resources.

The primary statutory charge imposed on the CCPD is to "act as attorney, without fee, before any court within any county for all persons who are held in custody or who are charged with the commission of any criminal offense, and who the court finds are unable to employ counsel." 55 ILCS 5/3-4006. The CCPD must carry out this work with limited tax dollars. The CCPD receives no additional compensation or government funding for the work that must be performed by its staff when the CCPD is required to comply with subpoenas from private litigants.

The subpoenas issued in this case and other similar cases siphon staff hours and resources away from the core mission of the CCPD. While some work required in responding to subpoenas (the moving

---

[4] 1:05-cv-01042 Johnson v. Guevara et al filed 02/22/05 closed 01/31/11
1:12-cv-04428 Rivera v. Guevara et al filed 06/07/12 closed 08/03/18
1:17-cv-02869 Serrano v Guevara et al filed 04/17/17
1:17-cv-04560 Montanez v. Guevara et al filed 06/19/17
1:18-cv-01028 DeLeon-Reyes v. Guevara et al filed 02/09/18
1:18-cv-02312 Solache v. City of Chicago et al filed 03/30/18
1:18-cv-02341 Almodovar, Jr. v. Guevara et al filed 04/01/18
1:18-cv-02342 Maysonet, Jr. v. Guevara et al filed 04/01/18
1:18-cv-02701 Negron v. Guevara et al filed 04/13/18
1:18-cv-03029 Sierra v. Guevara et al filed 04/30/18
1:18-cv-03335 Gomez v. Guevara et al filed 05/10/18
1:18-cv-07951 Rodriguez v. Guevara et al filed 12/03/18
1:19-cv-02441 Bouto v. Guevara et al filed 04/11/19
1:19-cv-06508 Iglesias v. Guevara et al filed 10/01/19
1:20-cv-04156 Johnson v. Guevara et al filed 07/15/20
1:99-cv-04476 Santiago, et al v. Guevara filed 07/07/99 closed 02/05/01

and scanning of files) may be outsourced, a significant portion of the work that must be performed in response to subpoenas (locating files and removing privileged documents) may only be performed by CCPD staff. The CCPD's limited resources should not be drained by efforts required to comply with subpoenas issued by private parties.

Wherefore, the CCPD requests that the Plaintiffs' subpoena served upon the CCPD should be quashed or, in the alternative, modified to require the CCPD to produce only about one fifth of the files the CCPD has located pursuant to said subpoena.

        Respectfully submitted,

        Sharone R. Mitchell, Jr
        Public Defender of Cook County

        */s/Karen J. Dimond*

        _____
        By:    Karen J. Dimond
                Deputy Public Defender
                69 West Washington, Suite 1600
                Chicago, Illinois 60602
                (312)603-0712
                Karen.dimond@cookcountyil.gov
                3126059

## Certificate of Service

  I, Karen Dimond, hereby certify that on June 21, 2021, I e-filed a copy of the above COOK COUNTY PUBLIC DEFENDER'S MOTION TO QUASH OR MODIFY SUBPOENA and that all counsel of record will thereby receive a copy of it.

_____<br>
__/s/Karen J. Dimond