IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS SIERRA, | ) | |
| | ) | No. 18 C 3029 |
| Plaintiff, | ) | |
| | ) | Magistrate Judge M. David Weisman |
| v. | ) | |
| | ) | |
| REYNALDO GUEVARA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

Non-party Sharone R. Mitchell, Jr., Cook County Public Defender ("CCPD"), asks the Court to quash or modify the subpoena plaintiff served on him. For the reasons set forth below, the Court grants the motion [287].

Background

On December 21, 2020, plaintiff served on the CCPD a subpoena to produce more than 500 case files. (*See* ECF 287-1.) In March 2021, plaintiff's counsel, who are also counsel for the plaintiff in *Reyes v. Guevara*, 18 C 1028 (N.D. Ill.), served on the CCPD a subpoena to produce 263 case files. (*See* ECF 287-2, 287-3.) Together, these subpoenas ask the CCPD to produce more than 800 files, which is four times the number of files the CCPD is normally requested to produce in a calendar year. (ECF 287 at 2.)

After a labor-intensive process, the CCPD has identified warehouse box numbers for 145 of the files subpoenaed in *Reyes* and 300 of the files subpoenaed in this case. (*Id.* at 3.) The CCPD's sole warehouse employee is now trying to determine how many of the boxes can be located in the warehouse. (*Id.*) Assuming the boxes containing these files are located, the files will then be sent to the CCPD's offices, where the files will be reviewed and privileged documents will be removed and scanned. (*Id.* at 3-4.) After that process is complete, the remaining documents can be reviewed by the attorneys who have requested them.

Discussion

In relevant part, Federal Rule of Civil Procedure 45(d)(3)(A) states: "On timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . subjects a person to undue burden." To determine whether a subpoena subjects the respondent to undue burden, "courts consider a number of factors, including the person's status as a non-party, the relevance of the discovery sought, the subpoenaing party's need for the discovery, and the breadth of the request." *Uppal v. Rosalind Franklin Univ. of Med. & Sci.*, 124 F. Supp. 3d 811,

813 (N.D. Ill. 2015). "[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to *special weight* in evaluating the balance of competing needs." *Id.* (emphasis in original).

At a conceptual level, the files plaintiff seeks are relevant to his broadly-framed *Monell* claim. (*See* ECF 185 ¶¶ 161-720.) If an exculpatory piece of evidence from CPD's Area 5 homicide investigation files never made its way to the CCPD's files, that could suggest that the City has a policy, practice, or custom of suppressing exculpatory materials. However, as defendants point out, police officers have a duty to disclose exculpatory evidence to prosecutors, not to defense counsel. *Carvajal v. Dominguez*, 542 F.3d 561, 566 (7th Cir. 2008) ("While [*Brady* is] most commonly viewed as a prosecutor's duty to disclose to the defense, the duty extends to the police and requires that they similarly turn over exculpatory/impeaching evidence to the prosecutor, thereby triggering the prosecutor's disclosure obligation."). Thus, defendants say, a better comparison is between the CPD's files and the files of the Cook County State's Attorney's Office ("CCSAO"). The Court agrees that the CCSAO's files are relevant, but that does not mean the CCPD's files are not. What it does mean is that the CCPD's production of its files will lead to another discovery thicket—the production of the corresponding files of the CCSAO. (*Id.*)

This labyrinth of discovery is intended to determine if exculpatory evidence made it from CPD to CCPD. But not every criminal investigation produces constitutionally-defined exculpatory evidence. An actual *Brady* violation requires a *post facto* analysis to determine if the suppressed piece of evidence would have been material to the outcome of the criminal proceeding. *See Smith v. Cain*, 565 U.S. 73, 75 (2012) ("[E]vidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had [it] been disclosed, the result of the proceeding would have been different."). Adding further complication to the materiality component, a *Brady* violation requires consideration of the totality of evidence that was suppressed, not simply assessing each piece of evidence in seriatim. *See Goudy v. Basinger*, 604 F.3d 394, 400 (7th Cir. 2010).

Putting aside the materiality component of the *Brady* analysis, the suppressed evidence must be exculpatory. Assessing whether evidence is exculpatory is not a simple binary analysis. *See e.g. Camm v. Faith*, 937 F.3d 1096, 1109-10 (7th Cir. 2019) (no duty to disclose "latent exculpatory evidence . . . evidence that requires processing or supplantation to be recognized as exculpatory," but failure to disclose that a forensic examination was not done when investigators promised to conduct the test is exculpatory); *see also United States v. Agurs*, 427 U.S. 97, 109 (1976) (stating that "there are situations in which evidence is obviously of such substantial value to the defense that elementary fairness requires it to be disclosed even without a specific request" while also acknowledging the range of evidence that might not be obviously exculpatory). For example, a murder witness's statement that he did not actually see the shooter is not necessarily *Brady* material. *See id.* n.21 ("If, for example, one of only two eyewitnesses to a crime had told the prosecutor that the defendant was definitely not its perpetrator and if this statement was not disclosed to the defense, no court would hesitate to reverse a conviction resting on the testimony of the other eyewitness. But if there were fifty eyewitnesses, forty-nine of whom identified the defendant, and the prosecutor neglected to reveal that the other, who was without his badly needed glasses on the misty evening of the crime, had said that the criminal looked something like the defendant but he could not be sure as he had only had a brief glimpse, the result might well be different"). True, a skilled defense attorney might be able to develop an argument that if Witness A did not see the shooter, but Witness B, who was sitting next to Witness A, did identify the

2

shooter, maybe Witness B was lying. But *Brady* requires the government to disclose evidence that is material to guilt or punishment, not "to divulge every possible shred of evidence that could conceivably benefit the defendant," *United States v. Hamilton*, 107 F.3d 499, 509 (7th Cir. 1997), and plaintiff does not know which, if any, of the CCPD's files *should* contain exculpatory evidence.

As noted *supra*, plaintiff's discovery approach of requesting wholesale copying of CCPD files without any inkling as to whether these files have any relevant information imposes a significant burden on the CCPD, a public agency with limited funds that is tasked with providing one of the most important public services in our criminal justice system. 55 Ill. Comp. Stat. 5/3-4006 ("The Public Defender, as directed by the court, shall act as attorney, without fee, before any court within any county for all persons who are held in custody or who are charged with the commission of any criminal offense, and who the court finds are unable to employ counsel."). Given that plaintiff seeks to impose this burden before reviewing the CPD files already in his possession to determine which CCPD files ought to contain exculpatory evidence, the Court holds that the burden to CCPD outweighs the discovery's benefit to plaintiff. *Builders Ass'n of Greater Chi. v. City of Chi.*, 215 F.R.D. 550, 553 (N.D. Ill. 2003) (Rule 45 requires a court to determine whether "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.").[1] Accordingly, the Court grants CCPD's motion to quash [287].

**SO ORDERED.**                    **ENTERED: September 20, 2021**

*[signature: M. David Weisman]*

**M. David Weisman**
**United States Magistrate Judge**

---

[1] Plaintiff has offered to take various steps, such as paying for movers to move the boxes from CCPD's warehouse to a staging area (ECF 310 at 9-11), to alleviate the burden on CCPD. While the CCPD acknowledges these offers, he says they will not appreciably lessen the burden associated with complying with the subpoena. (ECF 287 at 3-4.)