# EXHIBIT D

```
 1   STATE OF ILLINOIS  )
                        )  SS.
 2   COUNTY OF C O O K  )

 3              IN THE CIRCUIT COURT OF COOK COUNTY
                COUNTY DEPARTMENT-CRIMINAL DIVISION
 4
     THE PEOPLE OF THE     )
 5   STATE OF ILLINOIS     )
                           )   Case No. 95-18602
 6        -vs-             )
                           )   Charge:  Murder
 7   THOMAS SIERRA         )

 8

 9                    MOTIONS

10        REPORT OF PROCEEDINGS of the hearing before the

11   Honorable STUART E. PALMER, on the 20th day of

12   August, 1996.

13
          APPEARANCES:
14
          HONORABLE JACK O'MALLEY,
15             State's Attorney of Cook County, by
          MS. NEERA WALSH and
16        MR. KEVIN BYRNE,
               Assistant State's Attorneys,
17             for the People of the State of Illinois;

18        MS. RITA A. FRY,
               Public Defender of Cook County, by
19        MR. BERNARD SARLEY,
               Assistant Public Defender,
20             for the Defendant.

21
     Jamie F. Brown, CSR
22   Official Court Reporter
     2650 South California Avenue
23   Chicago, Illinois 60608

24
```

FILED

JUL 17 1997

AURELIA PUCINSKI
CLERK OF CIRCUIT COURT

SIERRA 000735

```
 1          MR. SARLEY:   That's my copy and it's not
 2   signed. That's the only one I have. If you want to
 3   look at it that's fine, Judge. Or have it.
 4          THE COURT:   All right. You may proceed.
 5          MR. SARLEY:   Thank you, your Honor.
 6             Your Honor, my first witness is Alberto
 7   Rodriguez.
 8          THE COURT:   All right.
 9          MR. SARLEY:   There would be a motion to exclude
10   witnesses.
11          MS. WALSH:   We will join in that motion.
12          THE COURT:   Those motions will be allowed. Go
13   ahead.
14                        (Witness sworn.)
15                   ROBERTO RODRIGUEZ,
16   called as a witness on behalf of the
17   Petitioner/Defendant, being first duly sworn, was
18   examined and testified as follows:
19                   DIRECT EXAMINATION
20                   By MR. SARLEY:
21     Q.   Sir, would you please state your name and
22   spell your last name please?
23     A.   Alberto Rodriguez, R-o-d-r-i-g-u-e-z.
24     Q.   And, Mr. Rodriguez, preliminarily I want
```

**A 4**

1   to direct your attention to May 23d of 1995 at

2   approximately 10:30 p.m.  Were you present when a

3   person by the name of Noel Andujar was shot?

4       A.   Yes.

5       Q.   And would that occur in the vicinity of 26

6   hundred north Kedzie in Chicago?

7       A.   Kedzie and Chicago?

8       Q.   No. Did that -- did that occur around the

9   area of 26 hundred North Kedzie?

10      A.   Yes.

11      Q.   In Chicago?

12      A.   Yes.

13      Q.   And you actually saw him get shot,

14   correct?

15      A.   Yes.

16      Q.   Now, I'm going to direct your attention to

17   about two days later, that is May 25th of 1995.

18         Did you have occasion to see some police

19   detectives on that day?

20      A.   Yes.

21      Q.   Okay. And where was it that you saw those

22   police detectives?

23      A.   My house.

24      Q.   Okay. Do you know about what time of day

SIERRA 000739

```
 1    it was that you saw those detectives at your house?

 2         A.    I don't know the date, but it was --

 3         Q.    The time?

 4         A.    Around the evening, around seven o'clock.

 5         Q.    And it was two days after the shooting?

 6         A.    Around that time, yes.

 7         Q.    Okay. Now, when the police officers came

 8    over to your house did you -- was it a surprise to

 9    you or did you know they were coming?

10         A.    It was a surprise.

11         Q.    And when they -- when the police officers

12    came over, how many officers were there?

13         A.    Three.

14         Q.    And do you know whether they were all

15    detectives or not?

16         A.    They were all detectives.

17         Q.    Okay.  How were they dressed?

18         A.    Plainclothes.

19         Q.    Do you know the names of those officers or

20    those detectives?

21         A.    No.

22         Q.    Would you recognize them if you saw them

23    though?

24         A.    Yes.
```

SIERRA 000740

1      Q.    Now, when those three officers came over

2  to your house tell us what happened?

3      A.    They asked me if I can identify the

4  shooter of what happened on the day that my buddy

5  got shot.

6      Q.    And when you say the day your buddy got

7  shot, that's -- the person you're talking about is

8  Noel Andujar?

9      A.    Yes.

10     Q.    That's the shooting that you were present

11 for two days earlier?

12     A.    Yes.

13     Q.    Okay. After they asked you that question,

14 what did they do or say?

15     A.    They asked me if I could look at the

16 pictures.

17     Q.    Now, when you say the pictures, what are

18 you referring to?  What did they show you or give

19 you?

20     A.    Some photographs of some suspects.

21     Q.    Do you know how many photographs that you

22 were given?

23     A.    Around five or six.  Five or six.

24     MR. SARLEY:  May I approach the witness, your

SIERRA 000741

1    Honor?

2        THE COURT:  Yes.

3        MR. SARLEY:  Q.  I'm going to show you six

4    photographs which I'm considering marked as

5    Petitioner's Exhibit Number, group number one for

6    identification.  And I'm going to -- I've handed you

7    six photographs.

8            Would you first look at those photographs

9    and see if you -- do you recognize what I'm giving

10   you, what I've given you?  Go ahead.  You can

11   answer.

12       A.   These are pictures of some suspects.

13       Q.   Can you tell us whether these are the

14   pictures that the detective or detectives showed you

15   on May 25 at your house?

16       A.   Yes.

17       Q.   Yes?  Okay.

18            Now, by the way, was one of the officers,

19   the one that was speaking to you or were they all

20   speaking to you during this thing that happened at

21   your house?

22       A.   Just basically one officer.

23       Q.   One officer.  Do you remember his name?

24       A.   No.

SIERRA 000742

```
 1      Q.   Okay. So when the officer came in -- and
 2  prior to handing you the picture what did he say to
 3  you?
 4      A.   See if I can identify the guy that did the
 5  shooting.
 6      Q.   Did he say anything, anything to you about
 7  whether or not they thought they had the person in
 8  the photos?
 9      A.   No.
10      Q.   Specifically what did he say?
11      A.   He just said if I could identify the guy.
12      Q.   Okay. Specifically did he ask you -- or
13  excuse me. Strike that.  Withdraw that question.
14           Specifically did the officer say to you
15  that they thought they had the person in the
16  photos?
17      MR. BYRNE:  Objection.  It's been asked and
18  answered.
19      THE COURT:  Sustained.
20      MR. SARLEY:  Well, Judge -- well, Judge, I
21  don't think that specific question has been asked or
22  answered.  I asked him specifically if anything was
23  said and I'm asking him a different question.
24      THE COURT:  You asked him that question.  He
```

SIERRA 000743

1    said no.

2        MR. SARLEY:  Q.  Well, Mr. Rodriguez, do you

3    recall speaking to me a few minutes ago in the

4    hallway?

5        A.   Yes.

6        Q.   About this presentation of the

7    photographs?

8        A.   Yes.

9        Q.   Okay. And that was just a few minutes

10   earlier outside of court, correct?

11   A.   Yes.

12       Q.   And I asked you questions about what the

13   officers did and said to you prior to showing you

14   these photographs?

15       A.   Yes.

16       Q.   Correct?  Didn't you tell me just a few

17   minutes ago that prior to showing the pictures the

18   officer -- the officer that showed you the pictures

19   told you that he thought he had the person?

20       MR. BYRNE:  Objection.  Now, Judge, he's

21   injecting himself into this as a witness.

22       THE COURT:  Overruled.

23       THE WITNESS:  Yeah.  He asked me -- he said

24   they probably got the guy.  But he didn't say that

A 10

1   he does.  He said he's probably the guy in these

2   pictures.

3        MR. SARLEY:  Q.  So the officer did tell you

4   that probably the guy that did the shooting was in

5   those pictures?

6        A.   Yes.

7        Q.   And after he said that to you, what did he

8   do?  Gave you the pictures?

9        A.   Yes.

10       Q.   And what did you do?

11       A.   I looked through them.

12       Q.   Okay. And how long did it take for you to

13  look through those pictures?

14       A.   Five, ten minutes.

15       Q.   Okay. After those five or ten minutes that

16  you looked through those pictures did you select one

17  of the photographs?

18       A.   Yes.

19       MR. SARLEY:  Now, if I may approach the witness

20  again, your Honor.

21       THE COURT:  Sure.

22       MR. SARLEY:  Q.  Do you see the photograph in

23  that group of six photographs that's been marked as

24  Petitioner's Exhibit Number one, do you see the one

SIERRA 000745

1    that you selected on that day?

2          A.    Yes.

3          Q.    Would you please take that one picture out

4    of that group of six?

5                Your Honor, for the record he has pulled

6    one of the six photographs out of this group and --

7          THE COURT:  Well, let's give that photograph a

8    number. One A?

9          MR. SARLEY:  We will make it one A.

10         THE COURT:  All right.

11         MR. SARLEY:  Your Honor, there would be a

12   stipulation also that the photograph that he

13   selected is a photograph of Thomas Sierra.

14         THE COURT:  All right.  Thank you.

15         MR. SARLEY:  Q.  Now, after you selected that

16   photograph, what happened after that?

17         A.    They said they were going to see what they

18   can do about it and basically that's it.  They just

19   left.

20         Q.    They left. And all three of the officers

21   left your house?

22         A.    Yes.

23         Q.    Okay. Now, sir, directing your attention

24   to -- strike that.

A 12

1          Sometime after you picked that one

2    photograph out of those six, did you have occasion

3    to view a lineup?

4          A.    Yes.

5          Q.    Okay. And do you remember when that lineup

6    was, in relationship to when you looked at the

7    pictures, how much later?  Do you remember?

8          A.    A couple of days later.

9          Q.    Could it have been on May 30, five days

10   later?

11         A.    Yes.

12         Q.    Okay. And where did that lineup take

13   place?

14         A.    I believe in Grand and Central.

15         Q.    Grand and Central, at a police station?

16         A.    Yes.

17         Q.    And I'm going to take these away from you

18   now.

19         I'm going to show you, sir, Petitioner's

20   Exhibit Number two for identification. And it's a

21   photograph. Would you take a look at that

22   photograph?  And first of all tell the Court what it

23   is I have shown you?

24         A.    A picture of a lineup.

SIERRA 000747

```
 1      Q.   Okay. And how many people are in that

 2  lineup?

 3      A.   Six.

 4      Q.   Can you tell us whether that -- those are

 5  the six people -- strike that.

 6           Can you tell us whether that's the lineup

 7  that you viewed on May 30th of 1995 at Grand and

 8  Central as you just indicated?

 9      A.   I don't know if this is the same exact

10  pictures, but it's something like that.

11      Q.   It looks like it but you're not sure?

12      A.   Yes.

13      Q.   During the course of that lineup did you

14  select, pick one of the people out of the lineup you

15  viewed, did you make an identification at that time

16  on May 30?

17      A.   Yes.

18      Q.   Okay. And was that the same -- did you

19  identify the same person whose photograph you picked

20  out on May 25 when the officers came to your house?

21      A.   Yes.

22      Q.   Now, Mr. Rodriguez, directing your

23  attention to -- again to the date of the incident

24  when your friend got shot.  You had -- did you have
```

SIERRA 000748

1 an opportunity to see or look at the person that

2 shot your friend?

3   MR. BYRNE:  Objection.

4   MS. WALSH:  Objection.

5   MR. BYRNE:  We're getting into the actual

6 incident itself, Judge.  It's beyond the scope of

7 the suggestiveness.

8   MR. SARLEY:  Your Honor, if an initial

9 suggestiveness or some initial suggestiveness is

10 shown, according to the case law you are entitled to

11 examine the witness on the issues of the

12 identification, portions of the identification in

13 order to determine whether the identification was

14 based on the suggestiveness or based on the actual

15 confrontation or the incident.  I mean, that becomes

16 a question of fact that your Honor has to determine.

17 And in support of that proposition I would cite

18 People versus Robinson, 46 Ill 2d 229.

19    Basically for that proposition I believe

20 I'm entitled at this point, once an initial

21 suggestiveness is shown, to examine him on the

22 issues of the identification so that your Honor can

23 make a determination.

24   MR. BYRNE:  Judge, there has been no showing of

SIERRA 000749

1   any unduly suggestive behavior on the part of the

2   police. If there were and the Court indicated there

3   were then we could go to an independent basis.  But

4   right now what he's trying to do is cross examine

5   this witness about what he was able to observe at

6   the time of the event, and that's improper.

7       THE COURT:  Objection sustained.

8       MR. SARLEY:  Your Honor, can I ask you to look

9   at this Robinson case then?  And I will give a copy

10   to counsel also.

11                   (Recess taken.)

12       THE COURT:  Well, all right.  Anyone want to

13   say anything about this Robinson case?

14       MR. BYRNE:  No, Judge.

15       MR. SARLEY:  Judge --

16       THE COURT:  Go ahead.

17       MR. SARLEY:  Just to analogize the situations

18   here. With regard to the facts of this case as we've

19   heard so far, this gentleman has testified that he

20   was shown a group of six photographs. And he was

21   told by officers that we probably have the guy in

22   those six photographs.

23       THE COURT:  It depends on which time you ask

24   him.

SIERRA 000750

1        MR. SARLEY:  I'm paraphrasing.

2        THE COURT:  All right. Here's my ruling. If I

3    make a finding that the conduct of the police was

4    such that either the photo array or the lineup was

5    unduly suggestive, then I will allow a hearing as to

6    the independent basis of whether or not the witness

7    had an opportunity to observe the offender at the

8    time of the crime, and not before. All right? And I

9    don't think we're at that juncture yet.

10       MR. SARLEY:  So --

11       THE COURT:  So the objection is sustained.

12       MR. SARLEY:  So I can't ask him any questions

13   at all about the incident in terms of the

14   identification?

15       THE COURT:  The objection to the question that

16   you posed is sustained.

17       MR. SARLEY:  Q.  Okay. Then let me ask you

18   this, Mr. Rodriguez.

19           The person that you saw shoot your friend

20   on May 23d of 1995, had you ever seen that person

21   before?

22       MR. BYRNE:  Objection.

23       THE COURT:  Sustained.

24       MR. SARLEY:  Q.  During the incident where your

A 17

SIERRA 000751

```
 1    friend was shot, how long after -- how long did you
 2    have an opportunity to observe the person that shot
 3    your friend?
 4         MR. BYRNE:  Objection.
 5         THE COURT:  Sustained.
 6         MR. SARLEY:  May I have a moment please, your
 7    Honor?
 8                        (Recess taken.)
 9         MR. SARLEY:  Q.  Sir, after the -- after the
10    incident where your friend was shot, did you have
11    occasion to speak on that same day to any police
12    officers about what you had seen?
13         MR. BYRNE:  Objection.
14         THE COURT:  Overruled.
15         THE WITNESS:  Yes.
16         MR. SARLEY:  Q.  And how long after the
17    shooting did you speak to those -- that police
18    officer or those police officers?
19         A.   After everything happened, some police
20    officers and homicide came.  They put me in the back
21    of the car with homicide and he asked me questions
22    and I answered them.
23         Q.   You said in a car?
24         A.   Yeah.
```

SIERRA 000752

1      THE COURT:  Sir, is there a reason why you're

2  whispering?  I can't hear you.

3      THE WITNESS:  No, sir.

4      THE COURT:  Speak up please.

5      THE WITNESS:  Homicide asked me some questions.

6      THE COURT:  All right.

7      THE WITNESS:  And I answered them.

8      MR. SARLEY:  Q. Okay.  You said that

9  conversation happened in a car?

10     A.   Yes.

11     Q.   Was it your car or another car?

12     A.   It was a detective car.

13     Q.   Where did the conversation take place?

14     A.   Right on Kedzie and Fullerton.

15     Q.   And how many officers did you speak to?

16  One or more than one?

17     A.   One.

18     Q.   Do you remember that officer's name?

19     A.   No.

20     Q.   Do you know if it was a man or a woman?

21     A.   A man.

22     Q.   Was it a white, hispanic or black officer?

23     A.   A white officer.

24     Q.   And that officer asked you questions about

A 19

SIERRA 000753

1    what you had observed?

2        A.    Yes.

3        Q.    And you answered those questions?

4        A.    Yes.

5        Q.    How long -- approximately how long after

6    the shooting did the conversation happen?

7        A.    Fifteen minutes.

8        Q.    And during that conversation did you give

9    the officer a description of the person who did the

10   shooting?

11       MR. BYRNE:  Objection.

12       THE COURT:  What is your objection?

13       MR. BYRNE:  Again it's beyond the scope of the

14   motion which alleges an unduly suggestive lineup.

15   Now we are getting into an earlier description

16   that's given.  It has nothing to do with whether the

17   lineup was suggestive or not.

18       THE COURT:  Mr. Sarley?

19       MR. SARLEY:  Your Honor, one of the criteria on

20   whether the lineup is suggestive is whether the

21   description of the person picked out of a lineup,

22   how that is or how it squares with any earlier

23   description that the witness may have given to an

24   officer. And that's the basis for my question.

SIERRA 000754

1        THE COURT:  Well, I think that that's an

2    appropriate line of questioning. I mean, if a person

3    witnesses an event, gives a description to the

4    police, for example says that the shooter had short

5    hair, and then they do a showup and they put

6    everybody in the showup with long hair except for

7    one guy, then they've used the description to make

8    something suggestive.  So I mean, the description

9    does go to whether or not the procedure was correct.

10           The objection is overruled.

11       MR. SARLEY:  Q.  Did you -- do you recall if

12    you gave a description?

13       A.   Yes.

14       Q.   Okay. And what -- what was that

15    description?

16       A.   An hispanic guy.

17       Q.   Okay.  Was there any further description

18    besides an hispanic guy?

19       A.   No.

20       Q.   No?

21           And how long was that conversation that

22    you had with that officer in that car fifteen

23    minutes after the shooting? How long did the whole

24    conversation take?

SIERRA 000755

1       A.    Around twenty minutes, half an hour.

2       Q.    And during that conversation did he ask

3   you -- in other words did that officer ask you

4   whether you could give any other -- any further

5   description other than just an hispanic guy?

6       A.    He asked me who else was in the car and

7   what kind of car it was and --

8       Q.    Okay. But my question is regarding the

9   description of the person that did the shooting, did

10  the officer ask you whether you could describe him

11  any further other than just an hispanic guy?

12      A.    Yes.

13      Q.    And you were not able to do that?

14      A.    No.

15      MR. SARLEY:  Your Honor, based on your ruling I

16  have no other questions of this witness on this

17  issue. But I reserve the right to question him again

18  on the independent basis.

19      THE COURT:  Very well.

20      MR. SARLEY:  Depending on your Honor's ruling.

21  So I have no further questions at this time.

22               CROSS EXAMINATION

23               By MS. WALSH:

24      Q.    Mr. Rodriguez?

SIERRA 000756

```
1          A.    Yes.

2          Q.    When the police officers came to your

3    house on May 23d of 1995, did they tell you who to

4    pick out in that packet of the six pictures that

5    counsel showed you?

6          A.    No.

7          Q.    Did they threaten you or promise you

8    anything in exchange for picking out any one of

9    those persons?

10         A.    No.

11         Q.    On May 30 when you went to view the

12   lineup, 1995, did the officers -- did anybody or any

13   officers tell you who to pick out of the lineup?

14         A.    No.

15         Q.    Did they threaten you or promise you or

16   make any promises to you for picking out anyone in

17   that lineup?

18         A.    No.

19         Q.    Counsel showed you a picture of the

20   lineup.

21               Your Honor, I believe there will be a

22   stipulation that the witness did, in fact, pick out

23   the defendant in that lineup photograph.

24         THE COURT:  All right.
```

SIERRA 000757

1      MS. WALSH:  Which is person number two.  One

2  moment.

3           I have nothing further.

4      THE COURT:  Anything else, Mr. Sarley?

5      MR. SARLEY:  Just briefly, your Honor.

6      THE COURT:  Yes.

7                  REDIRECT EXAMINATION

8                  BY MR. SARLEY:

9      Q.   So the -- during -- when the six

10 photographs were shown to you at your house, before

11 you were asked to look at the photographs, you

12 weren't told which picture to pick out, correct?

13     A.   Correct.

14     Q.   Okay.  But you were told by one of the

15 officers that they probably got the guy?

16     A.   Yes.

17     MR. SARLEY:  No other questions.

18     MS. WALSH:  I have nothing further, your Honor.

19     THE COURT:  All right. You're excused, sir.

20                          (Witness excused.)

21     MR. SARLEY:  Your Honor, I have no further

22 witnesses to call on the motion and the petitioner

23 rests.

24     THE COURT:  All right.

**A 24**

SIERRA 000758