THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS SIERRA, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. 18 CV 3029 |
| | ) | |
| REYNALDO GUEVARA, JOANN | ) | |
| HALVORSEN as Special Representative for | ) | Judge John Robert Blakey |
| ERNEST HALVORSEN, ANTHONY WOJCIK, | ) | |
| JOHN McMURRAY, GEORGE FIGUEROA, | ) | |
| EDWARD MINGEY, ROBERT BIEBEL, | ) | |
| FRANCIS CAPPITELLI, UNKNOWN | ) | **JURY TRIAL DEMANDED** |
| EMPLOYEES OF THE CITY OF CHICAGO, | ) | |
| and the CITY OF CHICAGO, Illinois, | ) | |
| | ) | |
| *Defendants.* | ) | |

**DEFENDANT CITY OF CHICAGO'S *OPPOSED* MOTION FOR LEAVE TO FILEOVERSIZED MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT AND OVERSIZED *DAUBERT* MOTIONS AND MORE THAN 80 PARAGRAPHS FOR 56.1 STATEMENT**

Defendant, City of Chicago (the "City"), by and through its undersigned counsel, hereby moves this Honorable Court, pursuant to L.R. 7.1 and L.R. 56.1, for leave to file an oversized Memorandum of Law in Support of Summary Judgment, more than 80 paragraphs for Statements of Material Facts, and oversized *Daubert* Motions, and in support thereof, states as follows:

1. Plaintiff filed a sprawling 43 page eleven-count First Amended Complaint against seven (7) individual Defendants and the City of Chicago alleging various claims pursuant to 42 U.S.C. § 1983 and Illinois law arising out of his arrest, prosecution and conviction for the 1995 murder of Noel Andujar.

2. Plaintiff asserts the following three (3) claims against the City: (1) a Section 1983 policy and practice *Monell* claim (Count V); (2) a state law claim for *respondeat superior* (Count X); and (3) a state law claim for indemnification pursuant to 745 ILCS 10/9-102 (Count XI).

3. Additionally, Plaintiff's *Monell* claim asserts seven (7) theories of liability against the City related to municipal policies for: (1) conducting photographic and live lineup procedures; (2) conducting interrogations and questioning of criminal suspects; (3) the collection, documentation, preservation, testing, and disclosure of evidence; (4) the writing of police reports and taking of investigative notes; (5) obtaining statements and testimony from witnesses; (6) the maintenance of investigative files and disclosure of those files in criminal proceedings; and (7) the training and supervision of officers of the Chicago Police Department.

4. The parties have engaged in exhaustive fact discovery—tens of thousands of pages of records have been produced, numerous sets of written discovery have been exchanged and dozens of witnesses have been deposed. Further, the parties have exchanged a voluminous amount of documentation concerning the investigation of Noel Andujar and several collateral challenges to Plaintiff's conviction involving other cases in which one or more of the defendants was accused of misconduct.

5. Furthermore, Plaintiff has retained multiple expert witnesses to support his wide-ranging *Monell* claim and multiple theories of liability against the City. Specifically, Plaintiff has retained Dr. Nancy Steblay to provide opinion testimony about eyewitness identification procedures; Thomas Tiderington, to provide opinion testimony related the City's record keeping practices and report writing, as well as the police investigation in this case; and Anthony Finnell to provide opinion testimony about CPD's supervision and disciplinary practices. Plaintiff's

experts have a combined total of 232 pages of reports, excluding attachments, and multiple spreadsheets that distill thousands of pages of data.

6. The City's summary judgment memorandum addresses **all nine**[1] of Plaintiff's theories of liability for his claims.

Regarding Plaintiff's fabricated and suggestive identification *Monell* theories, the City must explain how:

a. There is no evidence of a widespread practice of fabricating or suggesting eyewitness identifications.
   i. There is no causal connection between CPD's express written policies and Plaintiff's alleged constitutional injury.
   ii. Steblay cannot identify a single fabricated or suggestive identification from the 1,423 witness outcomes identified in the Dataset.
   iii. Steblay's "possible" explanations for the City's purported higher than expected identification rates do not amount to an unconstitutional practice.
b. Plaintiff cannot succeed on a failure to train or discipline theory.

To address Plaintiff's "street file" and *Brady* violation *Monell* theories, the City must explain:

a. The history of "street files" in the *Jones* and *Palmer* litigation.
b. CPD's written policies regarding record keeping.
c. That there is no evidence any Defendant suppressed or withheld exculpatory evidence in this case.
d. That there is no evidence of a widespread practice of failing to document investigative information or suppressing or withholding exculpatory evidence.
   i. Tiderington's reliance on spreadsheets that he had no hand in preparing and which he cannot manipulate render his opinions without foundation and unreliable.
   ii. Tiderington concedes it would not be "humanly possible" to become familiar with each of the investigations and, therefore, he cannot establish the City had a policy and practice of maintaining and concealing exculpatory evidence in clandestine "street files."
   iii. Tiderington's concession that he never reviewed any CCSAO files renders his opinion irrelevant to any theory that CPD had a policy and practice of maintaining and concealing exculpatory evidence in clandestine "street files."
   iv. If CPD disclosed all of its investigative documents for a case to the CCSAO, and the CCSAO did not, in turn, disclose those documents to the criminal defense attorney, the fault would be with the CCSAO

---

[1] Plaintiff's Count V includes seven different theories of liability.

3

>   > not CPD. Yet Tiderington has no idea whether any of the documents he claims were not turned over, were in fact given to the prosecutor by CPD, so his opinion that documents were systematically withheld lacks a valid basis. Tiderington's haphazard statistically insignificant review of 64 CCPDO files does not establish that any material was withheld.
>   > v. Tiderington's "failure to document" opinions are not supported by any data in his Report.
>
> To address Plaintiff's failure to discipline *Monell* theory, the City must explain how:
>
>   a. Plaintiff's police oversight expert failed to identify any CR file that was not appropriately investigated.
>   b. It is undisputed that CPD's "sustained rate" cannot form the basis of a *Monell* claim based on a failure to discipline theory.
>   c. The "historical context" of CPD's disciplinary system cannot form the basis of a *Monell* claim based on a failure to discipline in 1995.
>   d. Any reference to the CR histories of Defendant Officers cannot amount to a citywide practice.
>   e. Any reference to prior lawsuits involving Defendant Officers cannot amount to a citywide practice.
>
> Finally, the City must address Plaintiff's derivative claims – *respondeat superior* (Count X) and indemnification (Count XI).

7. The City has edited the argument section of its memorandum in an attempt to remove unnecessary arguments. Notwithstanding that effort, given the number of parties, the number of claims and theories of liability being put forth by Plaintiff, and the complexity of the issues presented in Plaintiff's Complaint, the City's Memorandum exceeds the fifteen-page limit set by L.R. 7.1 and the City's Statement of Material Facts exceeds the 80 numbered paragraphs limit set forth in L.R. 56.1(d)(5).

8. Accordingly, in order to effectively detail to this Court the pertinent material facts and governing principles of law, the City respectfully request that it be provided 53 pages (*see* Ex. 1 – City's Memorandum of Law in Support of Summary Judgment) to present its arguments in

support of it motion for summary judgment and request leave to file 283 paragraphs of material facts (*see* Ex. 2 – City's 56.1 Statement of Material Facts).

9. Furthermore, the City intends to file three separate *Daubert* motions seeking to bar Plaintiff's experts.

Regarding the City's motion to bar Dr. Nancy Steblay, the City must explain how:

a. Steblay's Methodology is Unreliable.
   i. No reliable evidence supports Steblay's purported suspect identification rate.
   ii. Steblay's Facts and Data are not Quantitatively or Qualitatively Sufficient.
b. Steblay's Comparison to the Field Studies in Unreliable.
c. Steblay's Opinions are Not Helpful to the Jury.

To address the City's motion to bar Thomas Tiderington, the City must explain how:

a. Tiderington's opinions should be excluded because they lack proper foundation.
   i. Tiderington has no foundation to discuss the *Jones* and *Palmer* litigation from the early 1980s.
   ii. Tiderington has no foundation to discuss the civil trials in *Fields, Rivera* or *Kluppelberg*.
   iii. Tiderington lacked a basic understanding of the opinions contained within his own report.
   iv. There is no foundation for the statistical analysis in Tiderington's Report.
   v. Tiderington did not bill enough time to complete the analysis in his report.
b. Tiderington's opinions should be excluded because his methodology is non-existent.
   i. Tiderington's opinions on "missing pages" from criminal defense files are not based on sound methodology and therefore unreliable.
   ii. Tiderington's opinions that CPD's policies were not being followed are not based on any articulated methodology and should be barred.
c. Tiderington's opinions should be excluded because they are not helpful to the jury.

To address the City's motion to bar Anthony Finnell, the City must explain how:

a. Finnell lacks the qualifications to render the opinions contained in his report.

5

        i. Finnell does not have the requisite knowledge, skill and experience necessary and has no training or education that qualifies him to opine on CPD's disciplinary policies and practices.
        ii. Finnell has no knowledge, skill, experience, training, or education in statistical analysis and therefore is not qualified to render any opinions based on statistical analysis.
        iii. Finnell has no knowledge, skill, experience, training, or education in qualitative analysis and therefore is not qualified to render any opinions based on qualitative analysis.
    b. Finnell has no foundation to provide the opinions contained within his report.
        i. Finnell has no foundation to opine on the "historical context" of CPD.
        ii. Finnell has no foundation to opine on CPD's "sustained rate" in comparison to other departments.
        iii. There is no foundation for the statistical analysis in Finnell's Report, including the Outlier Analysis.
    c. Finnell lacks a reliable methodology.
        i. There is no reliable evidence to support Finnell's purported sustained rates.
        ii. There is no reliable evidence to support Finnell's Outlier analysis.
        iii. The facts and data contained within Finnell's report are not quantitatively or qualitatively sufficient.
        iv. Finnell's reliance on Knight and Meza means there is no way to determine the methodology used in preparation of the report.
    d. Finnell's opinions are not relevant or helpful to the jury.

10. As with its memorandum, the City has edited the argument sections of its *Daubert* motions in an attempt to remove unnecessary arguments. Notwithstanding that effort, given the extensive expert discovery in this case, breadth of the experts' reports, materials reviewed, spreadsheets and datasets, and the complexity of the Plaintiff's *Monell* claim and theories of liability, the City's *Daubert* motions exceed the fifteen-page limit set by L.R. 7.1.

11. Accordingly, in order to effectively detail to this Court the pertinent material facts and governing principles of law, the City respectfully request that it be provided 32 pages (*see* Ex. 3 – City's Motion to Bar Nancy Steblay) to present its arguments in support of it motion to bar Steblay, 26 pages (*see* Ex. 4 – City's Motion to Bar Thomas Tiderington) to present its arguments in support of it motion to bar Tiderington, and 29 pages (*see* Ex. 5 – City's Motion to Bar Anthony Finnell) to present its arguments in support of it motion to bar Finnell.

12. This motion is not brought for purposes of harassment or undue delay.

13. Additionally, on January 25, 2024, the undersigned conferred with counsel for Plaintiff, who objects to this motion and requested that Defendants include in this motion and the Defendant Officers' similar motion related to its Brief and Statement of Facts in an attempt to avoid a separate response(s) in opposition the following position:

> Plaintiff is willing to agree to a reasonable enlargement of the page limits and paragraphs permitted under the Rules, but the Defendants' request for a total of 212 pages of briefing and 415 paragraphs of purportedly undisputed material facts (an impossibility in a case as hotly disputed as this, with two individual Defendants having pleaded the Fifth regarding their conduct in this case) is far beyond what the Rules permit. We have considered the length of Defendants' summary judgment briefs in the most recent Guevara cases: (1) in *Jacques Rivera v. Guevara, et al.*, 1:12 Civ. 4428, the City filed a 24-page summary judgment brief and the Individual Defendants filed a 25-page brief; (2) in *Serrano/Montanez v. Guevara, et al.*, 1:17 Civ. 2869, the Individual Defendants filed a 22-page brief. Defendants have provided no justification for briefs almost three times the length of their prior summary judgment briefs. Nevertheless, Plaintiff agrees to 120 pages of total summary judgment briefing (including any *Daubert* motions) and 120 facts each for the City and the Individual Defendants (so, 240 total facts).

14. Defendants are hesitant to burden this Court and to go into all the differences of various cases that have had motions for summary judgement filed in the Northern District of Illinois in reversed conviction cases. For example, in *Serrano*, that 2019 motion for summary judgment only dealt with three individual defendants, it was not completely dispositive, there was no *Monell* claim and no *Daubert* motions thus the issues were less complex than this matter, and it was still 23 pages in length. Simply put, each case is different and rather than pick and choose through the various dissimilar cases filed with oversized briefs, Defendants have attempted to show this Court the breadth of the material they had to distill for this court as well as the many varied claims that needed to be addressed.

WHEREFORE, Defendant, City of Chicago, respectfully requests that this Honorable Court enter an order granting it leave to file an enlarged brief of 55 pages in support of it Motion

for Summary Judgment, leave to file 283 paragraphs of material facts, leave to file an enlarged brief of 32 pages to bar the opinions of Nancy Steblay, leave to file an enlarged brief of 26 pages to bar the opinions of Thomas Tiderington, and leave to file an enlarged brief of 29 pages to bar the opinions of Anthony Finnell, and for any and all other relief that this Court deems just and proper.

Dated: January 26, 2024

Respectfully Submitted,

/s/ Eileen E. Rosen
Eileen E. Rosen
Special Assistant Corporation Counsel
*One of the Attorneys for City of Chicago*

Eileen E. Rosen
Catherine M. Barber
Theresa B. Carney
Austin G. Rahe
Lauren M. Ferrise
Jessica L. Zehner
ROCK FUSCO & CONNELLY, LLC
333 W. Wacker Dr., 19th Floor
Chicago, IL 60606
(312) 494-1000
erosen@rfclaw.com