1

1    IN THE UNITED STATES DISTRICT COURT
     FOR THE NORTHERN DISTRICT OF ILLINOIS
2              EASTERN DIVISION

3   THOMAS SIERRA,                    )  No. 18 C 3029
                                      )
4                  Plaintiff,         )
                                      )
5          vs.                        )  Chicago, Illinois
                                      )
6   REYNALDO GUEVARA, et al.,         )
                                      )  September 14, 2023
7                  Defendants.        )  9:15 a.m.

8              TRANSCRIPT OF PROCEEDINGS
      BEFORE THE HON. M. DAVID WEISMAN, MAGISTRATE JUDGE
9

   APPEARANCES:
10

   For the Plaintiff:    MR. ANAND SWAMINATHAN
11                        Loevy & Loevy,
                          311 North Aberdeen Street, 3rd Floor,
12                        Chicago, Illinois  60607

13  For Defendant
    Guevara:              MR. THOMAS M. LEINENWEBER
14                        Leinenweber, Baroni & Daffada, LLC,
                          120 North LaSalle Street, Suite 2000,
15                        Chicago, Illinois  60602

16  For the Individual
    Defendant Officers:   MR. JOSH M. ENGQUIST
17                        The Sotos Law Firm, P.C.,
                          141 West Jackson Boulevard, Suite 1240A,
18                        Chicago, Illinois  60604

19  For Defendant City
    of Chicago:           MS. EILEEN E. ROSEN
20                        Rock, Fusco & Connelly, LLC,
                          333 West Wacker Drive, 19th Floor,
21                        Chicago, Illinois  60606

22

23               PATRICK J. MULLEN
               Official Court Reporter
24           United States District Court
        219 South Dearborn Street, Room 1412
25            Chicago, Illinois  60604
                 (312) 435-5565

 1          (Telephonic proceedings on the record.)

 2               THE CLERK:  18 CV 3029, Sierra versus Guevara, et al.

 3               THE COURT:  Good morning.  For plaintiff?

 4               MR. SWAMINATHAN:  Good morning.  This is Anand

 5     Swaminathan for plaintiff.

 6               THE COURT:  Good morning, Mr. Swaminathan.

 7               For defendant Guevara?

 8               MR. LEINENWEBER:  Good morning, Judge.  Tom

 9     Leinenweber on behalf of defendant Guevara.

10               THE COURT:  Good morning, Mr. Leinenweber.

11               For the other individual defendants?

12               MR. ENGQUIST:  Good morning, Your Honor.  Josh

13     Engquist on behalf of those defendants.

14               THE COURT:  And for the City of Chicago?

15               MS. ROSEN:  Good morning, Your Honor.  Eileen Rosen on

16     behalf of defendant City of Chicago.

17               THE COURT:  Good morning.

18               Any other counsel that needs to be identified for the

19     record?

20          (No response.)

21               THE COURT:  All right.  So I saw Judge Blakey's entry

22     from yesterday.  It looks like you all have a settlement

23     conference you'd like to do.  It was a little unclear to me on

24     the motion for a reasonable amount of time to conduct the

25     deposition, but it looks like he denied it without prejudice,

1     and then the discovery is handled by me.

2          But I don't know, Mr. Swaminathan, what that means to

3     you, so tell me what you think.

4          MR. SWAMINATHAN:  Yeah, yeah.  I think, I think we and

5     I think all parties walked away from the conference with Judge

6     Blakey yesterday with the understanding that I think he was

7     just denying the motion to the extent the motion was before

8     him, but I think he even said that he understood that the

9     motion was being presented to you.

10         So my understanding is that the motion is still

11    pending essentially from the defendants or the request to have

12    the deposition.  So Your Honor would still be hearing it, and I

13    know the parties have said that we've got a settlement

14    conference (inaudible), and we will have some discussions with

15    you about that.

16         But from our perspective, I think it probably makes

17    sense, rather than have the depositions be (inaudible) before

18    we conduct the settlement discussions, we'd like to get Your

19    Honor's ruling, if you're able to, on this discrete issue, and

20    we'd like to get that deposition done under whatever the

21    circumstances are so that, you know, (inaudible) summary

22    judgment briefing.

23         THE COURT:  All right.  So you would like me to

24    resolve that motion.  You want to get that deposition done and

25    then talk about -- we can talk about a settlement conference

1   now, but then you want to do a settlement conference after that

2   expert discovery is completed.  Is that what you're saying?

3           MR. SWAMINATHAN:  I don't think we -- I don't think

4   there's any need for the settlement conference to have to

5   happen sequentially with the expert deposition.  I know the

6   parties have had (inaudible) in the briefing about getting it

7   scheduled, getting the deposition scheduled.  So we'll get that

8   scheduled in the normal course with defendants, so find a date

9   that's mutually agreeable and do it, regardless of whether

10  that's before or after the settlement conference.

11          At least from plaintiff's perspective, there's nothing

12  about that settlement -- that very limited rebuttal expert

13  deposition that's going to change anything about the settlement

14  posture of the parties.

15          THE COURT:  All right.

16          MR. SWAMINATHAN:  (Inaudible).

17          THE COURT:  I'm sorry for interrupting.

18          Anyone on the defendants' side disagree with what

19  Mr. Swaminathan is suggesting?

20          MS. ROSEN:  No.  I mean, Judge, it wasn't clear to us

21  whether or not, based on when we left the hearing -- well, we

22  know for sure that Judge Blakey suspended briefing on summary

23  judgment.

24          THE COURT:  Right.

25          MS. ROSEN:  He indicated that he didn't want to go

1   through the time and expense of summary judgment if there was

2   an interest in settlement, and the parties said there certainly

3   was an interest in settlement.

4           To do it before summary judgment, our position has

5   been consistently that we need all the experts done for a

6   variety of reasons.  Plaintiff disagrees with that, but our

7   position is we have to have all the expert deps done before we

8   can do summary judgment.

9           So I don't know that we have a strong feeling one way

10  or the other about whether or not we could be talking about

11  settlement while finishing up the Steblay dep, you know, so we

12  leave that to the Court.  We do need obviously a ruling from

13  you because plaintiff filed a motion to limit the deposition.

14  We believe we're entitled to the full seven hours, they believe

15  we're entitled to some lesser amount, but we obviously need

16  that ruling before we get set for the deposition.

17          Then as far as the settlement conference goes, you

18  know, I spoke with plaintiff's counsel after court and asked

19  them if the demand they made a few years ago was the demand,

20  still the demand, and they were supposed to get back to me and

21  they haven't yet.  So we obviously need that, that number,

22  whatever the number is, so that we can go through the process

23  we need to go through with the city.

24          So, you know, that obviously, you know, takes some

25  time.  So I'm not opposed to getting a ruling on this Steblay

 1    issue and getting her dep scheduled while we're embarking on

 2    settlement.

 3           THE COURT:  Okay.  So let's see.  I'll take care of

 4    the motion today, and then next we'll talk about scheduling.

 5    So plaintiff's motion is looking for a limitation on the second

 6    deposition of Dr. Steblay, if I'm pronouncing her name

 7    correctly.  Plaintiff's position is, you know, I think,

 8    two-fold.  One, this is a rebuttal expert, so Dr. Steblay has

 9    already been deposed.  Then, two, Dr. Steblay has been deposed

10    in other cases.

11           My view on this, you know, I appreciate the practical

12    implications of something like that, but my view on that is

13    that the deposition should be available to defendants for the

14    full seven hours for the following reasons.  It doesn't mean

15    they need to take all seven hours, but they should be at

16    liberty to do so for the following reasons.

17           First, it's not clear from the motion itself how much

18    additional information Dr. Steblay is providing different from

19    her previous opinion, different from what she's previously

20    provided in other cases.  So from a practical standpoint, it's

21    hard to measure how that would impact the length of it.

22           Second, the economic interests here are weighed just

23    as much in favor of defendants not using unnecessary time as it

24    does in the plaintiff having an efficient deposition; to wit,

25    if the defendants lose at trial, they have to pay for the costs

1    of the deposition as part of any recovery as well as the time

2    that plaintiff's counsel would consume sitting through an

3    unnecessarily long deposition to the extent that happens.  So

4    there's a built-in reason for defendants to be circumspect with

5    the time they're using.

6         Third, based on dealings with both counsel, both

7    sides -- or all counsel, I should say, in this case, I'm

8    confident that counsel are experienced civil litigators, and

9    while this case certainly has been fully litigated, there's

10   been no suggestion to me, you know, or very few times where

11   people ever complained about how things were conducted in the

12   sense of unnecessarily long depositions.  I'm not aware of any

13   complaints in that regard, and in general both sides, I think,

14   have conducted themselves professionally.  So I don't have

15   concerns that either side would abuse the process.

16        For all those reasons, in exercising my discretion,

17   I'm going to deny the motion.  Mr. Swaminathan, do you want me

18   to make a further record on my reasoning?

19        MR. SWAMINATHAN:  Not at all.  That's fine, Your

20   Honor.  We can commit to providing, you know, multiple dates

21   for depositions for Dr. Steblay in the next -- within the next

22   30 days.  I imagine we can get that scheduled relatively

23   quickly.  You know, I think our concern really is, you know,

24   obviously we have essentially suspended the summary judgment

25   process.  You know, it is clear that we are, you know, anxious

1    to see this case move forward after doing the fact discovery

2    for more than a year, past a year, about 18 months ago.

3          So we are very hopeful, and we were pleasantly

4    surprised to hear that the city is interested in having

5    settlement discussions.  But given that we have suspended the

6    schedule in the case, we're just anxious to try to move forward

7    as quickly as we can.  To the extent we can be productive in

8    settlement discussions, that would be great.  To extent it's

9    not, you know, I think Mr. Sierra is very anxious to see us be

10   able to move forward until this case reaches its conclusion.

11   So that is really, that is really my focus at this point.

12         So I understand Your Honor has a busy schedule, a very

13   busy schedule with everything else, so we are anxious to get in

14   for a settlement conference whenever it's possible.

15         THE COURT:  Yes, we'll talk about that, too, in a

16   second.

17         So I heard Mr. Swaminathan indicate that they would

18   make Dr. Steblay available in the next 30 days.  From

19   defendants' standpoint, I'll ask you, Ms. Rosen -- but if

20   either Mr. Engquist or Mr. Leinenweber want to chime in, tell

21   me -- do you think you can get her deposition done in the next

22   30 days?

23         MS. ROSEN:  Judge, if we can get her scheduled by

24   the second -- I think the earliest we are available is probably

25   the second or third week of October based on where we are with

1  all of our other responsibilities in cases.

2          THE COURT:  Okay.  So that looks like --

3          MS. ROSEN:  So that's about 30 days, yeah.

4          THE COURT:  Yes, so that looks like close to 30 days,

5  but maybe (inaudible) being over, correct?

6          MS. ROSEN:  Correct.

7          THE COURT:  Okay.  So let's do this.  I'll order that

8  her deposition be completed by October 27th.  If that somehow

9  becomes a problem, you know, file a motion.  I kind of see

10  backing off your comments, Ms. Rosen, and I think

11  Mr. Swaminathan has well-preserved the idea that they want to

12  move the case forward.  I'm hopeful we can get it settled but,

13  if not, expert discovery is going to be necessary for summary

14  judgment based on your assessment at least, Ms. Rosen.  I want

15  to have the case in a posture to move it forward, so I want

16  that deposition done by October 27th.

17          We can talk about scheduling a settlement conference.

18  I don't know if her deposition needs to happen before the

19  settlement conference or not.  I think I could provide you with

20  dates in October and probably before the 27th if everyone

21  thinks that makes sense.  You know, I do know that doing both

22  of those things at the same time sometimes becomes challenging.

23          So, Mr. Swaminathan, what's your view?

24          MR. SWAMINATHAN:  Yeah.  From our --

25          THE COURT:  Do you want you get the deposition done or

1    the settlement conference --

2              MR. SWAMINATHAN:  Yeah, I --

3              THE COURT:  The settlement conference?  So tell me

4    what you're thinking.

5              MR. SWAMINATHAN:  Yeah.  In terms of getting an

6    updated settlement demand from the city, I think that my

7    colleague (inaudible) yesterday said we could have it the same

8    day, but we will have the settlement demand to them either

9    today or tomorrow at the latest.  So they're going to have that

10   letter in hand, you know, tomorrow at the latest, and they'll

11   have time to evaluate it.

12             From our perspective, a deposition of a rebuttal

13   expert, I just cannot imagine how that is going to be a game

14   changer on the issue of the parties' positions on settlement in

15   the case, you know, (inaudible).  So from my perspective,

16   there's no reason we need to hold up a settlement conference,

17   you know, for this single rebuttal deposition.

18             To the extent the city takes the position that that is

19   the case, you know, I might shake my head, but it is what it

20   is.  So I would ask that we just try and get the settlement

21   conference scheduled as quickly as we can after that, the date

22   of that completed deposition.  If we're looking at the second

23   half of October, so be it.

24             THE COURT:  Okay.  That's fair enough.

25             So, Ms. Rosen, I'll turn to you first because I think

1  as a practical issue here you're dealing with a relatively new

2  administration.  If you get the demand letter tomorrow, I am

3  kind of clueless as to how long that is now taking to get

4  through, you know, the review process on the city's side.  So

5  tell me what you're thinking.

6          MS. ROSEN:  So, Judge, it is a new administration, and

7  it's difficult for us to peg it right now as well.  You know,

8  there's a lot of, there's a lot of cases in the pike, so to

9  speak.  So separate and apart from this delay -- and I agree

10 that her deposition is likely not going to be a game changer

11 with respect to settlement, although I would love to have her

12 dep sooner rather than later.  But separate from that, I think

13 to be safe, so that we have enough time to talk to the

14 appropriate people that we need to talk to, that it's probably

15 more realistic to look at something in early November.

16          THE COURT:  Okay.  I'm not in a position to argue with

17 you about it, and I do want a date that is going to be

18 meaningful.

19          So, Mr. Swaminathan, I absolutely appreciate you and

20 your client's concern, but I'm just being pragmatic here.

21 Obviously, a case like this is going to take some level of

22 review.  If it were a little more straightforward, I might have

23 a different view.

24          All right.  So let's look at the week of November 6th.

25 Well, okay.  That's not a great week.  I could do the end of

1      that week, like the 9th or 10th.

2              THE CLERK:  There's the holiday, too.

3              THE COURT:  Oh, the holiday, yes.

4              Okay.  Let's go to the 13th, the week of the 13th.

5      It's totally wide open except for Thursday, the 16th.

6              MR. SWAMINATHAN:  Every date that week works for

7      plaintiff.

8              THE COURT:  All right.  I will give the whole day to

9      the settlement conference.  I may be able to get it done in an

10     hour, but I'm thinking that may not happen.  But we'll have to

11     figure --

12             MR. ENGQUIST:  You're an eternal optimist, Judge.

13             THE COURT:  Yes.  I think I'm going to have a full

14     head of hair one day, and that has not happened.

15         (Laughter.)

16             THE COURT:  We'll start at 10:00, and we'll just

17     figure the whole day.  On the defendants' side, any day looking

18     better than another?

19             MS. ROSEN:  For the city, the only bad day for me is

20     the 15th.

21             THE COURT:  Okay.  Mr. Engquist?

22             MR. ENGQUIST:  For me, Friday, the 17th, is not a good

23     date, and the morning of the 14th, though if you start at 10:00

24     I could probably be there at 10:00.  But, yeah, the 17th for

25     now is not good for me.

1          THE COURT:  Okay.  Mr. Leinenweber?

2          MR. LEINENWEBER:  And the same for me, Judge.  The

3     17th is a bad day, but other than that I'm open.

4          THE COURT:  Okay.  I'm thinking Tuesday is good.  You

5     know, the workweek starts Monday.  People can do any

6     last-minute things they need to do, maybe meet with people, if

7     necessary, for the settlement conference.  So let's say the

8     14th at 10:00 o'clock.

9          And then, Ms. Owens, if you can just lock up the day

10    for that, that would be great.  Thank you.

11         Then I'm thinking about the most efficient way to try

12    to kind of convey information for settlement, you know, that

13    would be useful for me for settlement purposes.  I don't think

14    there's any unique legal issues here that will need a lot of

15    time being explained.  I think it's going to be much more

16    driven by facts.

17         But, Mr. Swaminathan, do you think you have any unique

18    legal theories of liability that need some explaining?

19         MR. SWAMINATHAN:  Your Honor, we filed an affirmative

20    motion for summary judgment that, you know, Judge Blakey denied

21    without prejudice to (inaudible) summary judgment schedule.  So

22    I do think that isn't something that's really unique.  It's

23    unique, obviously, for the plaintiff's side to be moving for

24    summary judgment (inaudible).  But I don't -- you know, I think

25    it could be (inaudible) referring to that summary judgment

1    briefing, which is very short, or the motion which is very

2    short.

3            If you want us to write you sort of a summary

4    settlement position, we could do that.  We're also happy to

5    show you the settlement correspondence that we've previously

6    sent, which is pretty factual detailed, and/or, you know, the

7    correspondence we'll send them by tomorrow.

8            But if you really want us to, Your Honor, we're happy

9    to (inaudible) to you.  So for you to have us send you

10   something like a new settlement letter that will give you some

11   factual details, we're happy to do that.  If you want us to

12   just sort of give you our previous settlement correspondence

13   and just attach our position on summary judgment, we're happy

14   to do that, whatever you'd like.

15           THE COURT:  Yes.  Let me see what the defendants are

16   saying.  What I think I'm most interested in are the facts that

17   both sides think.  You know, Mr. Swaminathan, since you filed a

18   summary judgment motion, the ones that you think are undisputed

19   that show liability, that would be of great interest to me, and

20   then, of course, the defendants' view of whether those are

21   disputed and how they may be disputed.

22           But let me hear from the defendants.  So, Ms. Rosen,

23   I'll start with you.  Any unique legal issues that I need to

24   bone up or catch up on?

25           MS. ROSEN:  Yeah.  No, I mean, I think for purposes of

1   the Monell claim, you know, it's our position that, I mean,

2   plaintiff has argued it to you in the beginning of the case

3   when they asked for all of the Monell discovery, that their

4   Monell discovery and their experts -- all the Monell discovery

5   that they asked for and received were for purposes of their

6   experts, and their Monell claim is -- well, Mr. Sierra's Monell

7   claim is entirely based on his experts.

8           And we believe we have strong motions, Daubert motions

9   that will gut their expert testimony, if not bar them entirely

10  on all of their Monell theories, and we think that summary

11  judgment will be granted for the city.  So if you want sort of

12  a snippet about that, the city would be happy to prepare that

13  for you.  I don't know.

14          THE COURT:  Yes.

15          MS. ROSEN:  I mean, at the end of the day, I'm not --

16  you know, Monell doesn't increase damages in a case, and I

17  don't know from Mr. Sierra's perspective if he went to trial

18  without a Monell claim what that would mean for him in terms of

19  his assessment of a verdict.  But that's a driving issue for

20  the city's claim.

21          THE COURT:  Yes.  I think, one, as far as the damages

22  issue, I think you're right about that.  I know that the

23  Seventh Circuit has suggested that there may be Monell

24  liability without underlying liability in some case, but I

25  don't think this is that case.

1      So all that's of real import to me -- and maybe the

2 questions are better directed to Mr. Engquist or

3 Mr. Leinenweber.  What's your view, Mr. Engquist, on the unique

4 legal issues from your clients' standpoint?  I'm presuming that

5 you believe it is fact-driven.

6      MR. ENGQUIST:  It is fact-driven, Your Honor, to a

7 large degree at least.  However, I think plaintiff's position

8 that since Mr. Guevara is asserting his Fifth Amendment rights

9 that it somehow is a done deal, based on the facts we have

10 here, I think they're completely wrong on that.

11      So that might be something we would need to address,

12 one that's kind of on the legal side of the issues.  Because

13 I'm looking at, at least for my clients, a fully dispositive

14 motion which we're working on right now.  We've been working on

15 it because we were working towards that schedule initially, and

16 I think most of my arguments would even transfer over to

17 Mr. Guevara.

18      So probably we'd have to give you some kind of -- if

19 you're going to be looking at their summary judgment which was

20 filed, which I did read, I think that we need to have some kind

21 of -- at least our position in your hands.

22      THE COURT:  Okay.

23      MR. LEINENWEBER:  Judge, I would echo Mr. Engquist's

24 comments.  I don't think that just because my client is taking

25 the Fifth, then that's:  Okay, do not pass go.  Go directly to

1    jail.

2              So I'd agree with what he just said.

3              THE COURT:  Okay.  All right.  Let's see what you --

4    I'm going to ask that you get the settlement letters out a

5    little further in time than I normally do.  In the settlement

6    letters, just reference your motion or just remind me,

7    Mr. Swaminathan, to look at your motion for summary judgment

8    that was denied without prejudice.

9              MR. SWAMINATHAN:  Right.

10             THE COURT:  I'll look at that, so you don't need to

11   recreate that.  But what I think would be most helpful for me

12   is kind of your summary of that motion and the things that you

13   think are the most compelling for liability purposes.

14             MR. SWAMINATHAN:  Sure.

15             THE COURT:  I don't know if you agree with Ms. Rosen

16   on the Monell issue.  I tend to agree with the broad legal

17   concept that it's not a separate bucket of damages, but you and

18   your team may see -- you may say:  That's true, but we think

19   because this will be in front of a jury we have some advantage.

20             So just file a summary of what you think the Monell --

21   the litigation of the Monell case would look like in front of a

22   jury.

23             MR. SWAMINATHAN:  Sure.

24             THE COURT:  I wouldn't spend a lot of -- I mean, I'm

25   sure I won't spend a lot of time on that because I'm more

 1    interested in some of the dynamics of the trial as opposed to

 2    if you have a legal issue there.

 3              MR. SWAMINATHAN:  Sure.

 4              THE COURT:  Do you get my drift?

 5              MR. SWAMINATHAN:  Yes, absolutely.

 6              THE COURT:  Okay.  Then, Ms. Rosen, from your

 7    perspective, you know, a summary of why you think -- you know,

 8    if you think you have a Daubert argument that's going to keep

 9    the experts out all together, that might go in there, and

10    anything you want to add on the Monell aspect of it.

11              Then, Mr. Engquist and Mr. Leinenweber, if you want to

12    write separately or together, it's up to you.  My practice is

13    that you do it together, but it's just a preference.  You can

14    do it either way.

15              MR. ENGQUIST:  Yes, sir.

16              THE COURT:  Then respond to the facts that

17    Mr. Swaminathan is laying out for his purposes.  You know,

18    oftentimes, you know, as is true in legal life, people will say

19    that it's undisputed and sometimes the other side says:  No,

20    we've got these three things from these depositions that say it

21    is an issue of fact.

22              So that kind of back-and-forth would be helpful for

23    me.  So if I can get defendants to file -- I'm just working

24    backwards a little bit.  If defendants can submit their letters

25    on the 3rd of November, I can give Mr. Swaminathan a date to

1   send his letters over.  Mr. Swaminathan, if you can give your

2   letters to the defendants and the Court on October 25th.

3              MR. SWAMINATHAN:  Okay.

4              THE COURT:  I think that's like ten days.

5              MR. SWAMINATHAN:  So you're saying send the

6   (inaudible) letter to you?  So I have it sent to you?  Is that

7   how you --

8              THE COURT:  Correct.  Yes, it will be in the minute

9   order.  Yes, send it over or send it to our proposed order box.

10             Then do you want to do this in person, or do you want

11  it by video?

12             MR. SWAMINATHAN:  I think from our perspective, you

13  know, I mean, we're assuming there will be some decision makers

14  from the city there, and I'm sure my client will be there.  I

15  think, you know, my experience in doing settlement conferences,

16  it's probably better to have everybody there in person.  But if

17  there's a reason they can't be there, then we will accommodate.

18             THE COURT:  All right.  Mr. Engquist, what are you

19  thinking?

20             MR. ENGQUIST:  These always work better if everyone is

21  in person, at least that's from my practice.

22             THE COURT:  Okay.  We'll do it in person.  I'll tell

23  you I've been out of the office going on three weeks because of

24  an injury.  If I am still injured then, I have no idea what is

25  going on with me.  So I'm hoping I will be back by then.

1   MS. ROSEN:  Oh, no.

2   THE COURT:  Yeah.

3   MR. SWAMINATHAN:  (Inaudible).

4   THE COURT:  Well, then for the city, you'll have a

5 deputy corporation counsel present, is that right, Ms. Rosen?

6   MS. ROSEN:  Yes, Judge.

7   THE COURT:  Okay.  And, Mr. Swaminathan, unfortunately

8 in some cases with your firm, sometimes an attorney shows up

9 who has not done anything on the case, and it interferes with

10 the settlement conference.  So I'm going to limit appearances

11 by your firm.  Hold on a second.

12 (Brief pause.)

13   THE COURT:  Yes.  So for counsel to appear at the

14 settlement conference on behalf of plaintiff, it's limited to

15 those attorneys who have an appearance on file as of

16 yesterday's date.

17   MR. SWAMINATHAN:  Very good.

18   THE COURT:  All right.  All right.  Anything else we

19 need to talk about right now from your perspective,

20 Mr. Swaminathan?

21   MR. SWAMINATHAN:  Nothing else.  Thank you.

22   THE COURT:  Thank you.

23   Mr. Leinenweber?

24   MR. LEINENWEBER:  No, Judge.  Thank you.

25   THE COURT:  Thank you.

```
 1              Mr. Engquist?

 2              MR. ENGQUIST:  Nothing from me.

 3              THE COURT:  Great.

 4              Ms. Rosen?

 5              MS. ROSEN:  Nothing from me.  Recover quickly.

 6              THE COURT:  Yes, thanks a lot.  We'll have a good

 7    couple of months here, and we'll see you in November.  Thank

 8    you.

 9              MR. SWAMINATHAN:  Thank you.

10              MS. ROSEN:  Thank you, Judge.

11              MR. LEINENWEBER:  Thank you.

12              MR. ENGQUIST:  Thank you.

13           (Proceedings concluded.)

14                   C E R T I F I C A T E

15              I, Patrick J. Mullen, do hereby certify the foregoing

16    is an accurate transcript prepared from an audio recording of

17    the proceedings had in the above-entitled case before the

18    Honorable M. DAVID WEISMAN, one of the magistrate judges of

19    said court, at Chicago, Illinois, on September 14, 2023.

20

21                             /s/ Patrick J. Mullen
                               Official Court Reporter
22                             United States District Court
                               Northern District of Illinois
23                             Eastern Division

24

25
```