# Exhibit VVV

| 09:27:20 | 1 | Judge Kennelly, November 30, 2016, 9:30 a.m. call and Fields |
| 09:28:15 | 2 | v. City of Chicago. |
| 09:36:11 | 3 | THE CLERK: Case number 10 C 1168, Fields v. City of |
| 09:36:16 | 4 | Chicago. |
| 09:36:19 | 5 | MR. LOEVY: Good morning, your Honor. Jon Loevy, |
| 09:36:23 | 6 | Steve Art, Anand Swaminathan, and Candace Gorman on behalf of |
| 09:36:26 | 7 | the plaintiff. |
| 09:36:27 | 8 | MR. NOLAND: Dan Noland, Terry Burns and Paul |
| 09:36:31 | 9 | Michalik for the City and Commander Murphy. |
| 09:36:31 | 10 | MR. KULWIN: Shelly Kulwin and Rachel Katz on behalf |
| 09:36:34 | 11 | of Mr. O'Callaghan. |
| 09:36:35 | 12 | THE COURT: Anything we need to talk about before we |
| 09:36:37 | 13 | get the jury out here? |
| 09:36:38 | 14 | MR. KULWIN: I have a number of issues about |
| 09:36:40 | 15 | Mr. Kees, Judge. |
| 09:36:41 | 16 | THE COURT: Okay. |
| 09:36:41 | 17 | MR. KULWIN: The first is I anticipate -- |
| 09:36:44 | 18 | THE COURT: Hang on one second. Go ahead. |
| 09:36:48 | 19 | MR. LOEVY: Your Honor, before he starts, I am going |
| 09:36:50 | 20 | to hand you a copy of your ruling so it's handy if you would |
| 09:36:54 | 21 | like. |
| 09:36:54 | 22 | THE COURT: That's fine. |
| 09:36:55 | 23 | MR. LOEVY: As well as the proffer that was related |
| 09:36:56 | 24 | to it by the defense. |
| 09:37:03 | 25 | THE COURT: Wait a second. |

Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 3 of 125 PageID #:66490
***REALTIME UNEDITED TRANSCRIPT ONLY***

| | | |
|---|---|---|
| 09:37:09 | 1 | MR. ART:  Your order refers to the defendant. |
| 09:37:12 | 2 | MR. KULWIN:  Whenever you are ready. |
| 09:37:14 | 3 | THE COURT:  Go ahead. |
| 09:37:14 | 4 | MR. KULWIN:  The first one is I anticipate that |
| 09:37:16 | 5 | plaintiff's counsel will try to cross-examine Mr. Kees about |
| 09:37:20 | 6 | statements made by the government in response to a Rule 35 |
| 09:37:26 | 7 | that he filed in 1994.  I don't think that Mr. Kees should be |
| 09:37:31 | 8 | asked those questions, it's hearsay, the only way he would |
| 09:37:34 | 9 | know about them is through hearsay.  Those questions to the |
| 09:37:37 | 10 | extent that they are relevant, admissible, if they are, I am |
| 09:37:42 | 11 | not sighing they are. |
| 09:37:42 | 12 | THE COURT:  Rule 35 was filed when? |
| 09:37:44 | 13 | MR. KULWIN:  I believe he filed it in 1994 or 199 -- |
| 09:37:50 | 14 | THE COURT:  Did it come out at the previous trial? |
| 09:37:53 | 15 | MR. KULWIN:  No, it came out -- I believe he filed it |
| 09:37:56 | 16 | -- |
| 09:37:56 | 17 | THE COURT:  I'm asking were these statements elicited |
| 09:38:00 | 18 | at the previous trial?  Is this something you're intending to |
| 09:38:04 | 19 | attempt to elicit? |
| 09:38:05 | 20 | MR. LOEVY:  Yes, but not through this witness.  In |
| 09:38:08 | 21 | other words, what happened was the government -- |
| 09:38:10 | 22 | THE COURT:  All right.  What are the statements that |
| 09:38:12 | 23 | you are talking about, Mr. Kulwin. |
| 09:38:13 | 24 | MR. KULWIN:  Barry Elden made a filing that the |
| 09:38:20 | 25 | government says they believes he is a liar.  This all came out |

09:38:23   1   at the El Rukn hearings.

09:38:25   2          THE COURT:  What's the witness that you are planning

09:38:27   3   to elicit.

09:38:28   4          MR. LOEVY:  We are planning to elicit from Mr. Kees

09:38:29   5   the underlying problem, he did lie repeatedly.

09:38:33   6          THE COURT:  Yeah.  What Mr. Kulwin is talking about

09:38:34   7   is the government's statement to that effect is that right?

09:38:36   8          MR. LOEVY:  Yes.

09:38:37   9          MR. KULWIN:  Yes.

09:38:38  10          MR. LOEVY:  And what the government said was after

09:38:40  11   Mr. Kees --

09:38:40  12          THE COURT:  Look.

09:38:41  13          MR. LOEVY:  I'm telling you.

09:38:42  14          THE COURT:  Answer my question.

09:38:43  15          MR. LOEVY:  I'm trying to.

09:38:44  16          THE COURT:  What's the witness that you intend to

09:38:46  17   elicit this from?

09:38:47  18          MR. LOEVY:  Hogan.

09:38:47  19          THE COURT:  When is he going to testify?

09:38:49  20          MR. KULWIN:  Probably next --

09:38:51  21          THE COURT:  I am not going to worry about it.

09:38:53  22          MR. KULWIN:  Great.

09:38:53  23          THE COURT:  I am not going to worry about it.

09:38:55  24          MR. KULWIN:  This is all about Kees.

09:38:57  25          The second thing is I want -- I want the plaintiffs

09:39:04   1   to be barred from saying when they gave you this deal, like

09:39:07   2   this, Judge, and I am making a hand gesture, so I am --

09:39:10   3           THE COURT:  You're asking me to bar the hand gesture.

09:39:15   4           MR. KULWIN:  I am moving in limine to bar hand

09:39:18   5   gestures on top of everything else, so I need your full

09:39:22   6   attention.

09:39:22   7           THE COURT:  I am paying attention.  I already know

09:39:25   8   what you are going to say.

09:39:27   9           MR. KULWIN:  And what they gave you, and what they

09:39:29  10   gave you, and what they gave you.

09:39:31  11           THE COURT:  Don't do the hand gesture, all right?

09:39:33  12           MR. LOEVY:  May I ask.  I won't gesture.  May I ask

09:39:35  13   the witness isn't it true you had an understanding -- in fact,

09:39:38  14   I can prove up that O'Callaghan made him a promise.

09:39:41  15           THE COURT:  You know what, when you stop in the

09:39:43  16   middle of a sentence and start a new sentence, it makes it

09:39:46  17   very difficult to follow what you're saying.  You do this with

09:39:49  18   witnesses too.

09:39:50  19           MR. KULWIN:  To great effect I might add.

09:39:52  20           THE COURT:  Start over.

09:39:54  21           MR. LOEVY:  Your Honor, we intend to prove that

09:39:57  22   O'Callaghan made him a promise that he would take care of him

09:40:00  23   that wasn't reflected in the agreement and Mr. Kulwin wants to

09:40:03  24   argue no, no, no, no, that was just the government trading his

09:40:07  25   testimony for a deal, but, yes, we intend to ask Mr. Kees,

11/30/16 AM
Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 6 of 125 PageID #:66493
***REALTIME UNEDITED TRANSCRIPT ONLY***

5

| | | |
|---|---|---|
| 09:40:11 | 1 | isn't it true O'Callaghan promised you he would take care of |
| 09:40:13 | 2 | you. |
| 09:40:13 | 3 | MR. KULWIN: When, in 1989? |
| 09:40:16 | 4 | THE COURT: All right. |
| 09:40:17 | 5 | MR. KULWIN: I'm sorry, Judge. |
| 09:40:18 | 6 | THE COURT: I don't have a problem with you asking |
| 09:40:19 | 7 | that question. What I'm talking about is when you're talking |
| 09:40:22 | 8 | about the current Rule 35 which is what you're talking about? |
| 09:40:25 | 9 | MR. KULWIN: It's one of them. There are others, |
| 09:40:28 | 10 | because the state cut him a deal in 2013, he had an original |
| 09:40:33 | 11 | plea deal with the federal government in 1990. The questions |
| 09:40:39 | 12 | always come out when they gave you a deal, when they gave you |
| 09:40:42 | 13 | another deal. |
| 09:40:42 | 14 | THE COURT: There's not going to be a motion in |
| 09:40:45 | 15 | limine regarding pronounce, okay, that somebody can't use |
| 09:40:49 | 16 | pronounce. I can bar the hand gestures. I am not going to |
| 09:40:52 | 17 | bar somebody from using they. Seriously, that level of micro |
| 09:40:57 | 18 | managing just isn't -- it's not just sane. |
| 09:40:59 | 19 | So no hand gestures. |
| 09:41:01 | 20 | MR. LOEVY: No hand gestures. |
| 09:41:03 | 21 | THE COURT: People giving you deals and they giving |
| 09:41:06 | 22 | you deals. Just ask questions. |
| 09:41:08 | 23 | What's next? |
| 09:41:09 | 24 | MR. KULWIN: I anticipate that there's going to be |
| 09:41:11 | 25 | questioning of Mr. Kees speculating on whether he got some |

09:41:14  1  consideration to testify in this case in April of 2014.

09:41:20  2  There's no evidence of it, there's no basis for it, there's no

09:41:24  3  good faith basis to ask the question.  In October -- he

09:41:28  4  testified in April 2014, in October of 2014, he went for

09:41:34  5  parole, he lost, there was no deal given and the question is

09:41:40  6  going to be like, oh, come on, we know that you really got

09:41:43  7  one, it's bad faith and the question itself is prejudicial.

09:41:47  8  So I want to bar it.

09:41:48  9          THE COURT:  Okay.  That request is overruled.

09:41:49  10         What's your next one?

09:41:50  11         MR. KULWIN:  No questions about why the state's

09:41:59  12  attorney or why he believes the state's attorney gave him a

09:42:02  13  deal in 2013.  They can ask him didn't you get a deal in 2013,

09:42:09  14  but not, you know, he would have no way of knowing the thought

09:42:13  15  process of the state's attorney and anyway he would know it is

09:42:18  16  through hearsay.

09:42:19  17         THE COURT:  Mr. Loevy?

09:42:20  18         MR. LOEVY:  We are going to ask him, isn't it true in

09:42:22  19  advance of the deposition that you gave in this case, you got

09:42:25  20  a deal and we had the same issue with Hawkins.  You know, they

09:42:28  21  can argue that it's unrelated to his testimony, but that's

09:42:30  22  what it was related to.  There was nothing else that

09:42:34  23  precipitated the deal.

09:42:35  24         THE COURT:  Did I not say that -- have I not said on

09:42:39  25  other witnesses -- honestly, I don't remember which way these

| | |
|---|---|
| 09:42:43 | 1 | requests were being made, but I think I have been relatively |
| 09:42:46 | 2 | consistent about it, that people can't talk about why other |
| 09:42:49 | 3 | people decided to do something. |
| 09:42:51 | 4 | MR. LOEVY:  Yes. |
| 09:42:51 | 5 | THE COURT:  Okay.  So you can't talk about that.  I |
| 09:42:54 | 6 | mean, but as I said, I think it was yesterday, it may have |
| 09:42:57 | 7 | been the day before yesterday, but I think it was yesterday, |
| 09:42:59 | 8 | there's a difference between whether person A can speculate on |
| 09:43:07 | 9 | what person B's motivation was generally speaking, they can't, |
| 09:43:15 | 10 | and on the other hand, whether somebody could argue that it's |
| 09:43:18 | 11 | a reasonable inference from the facts that A led to B or that |
| 09:43:23 | 12 | B acted for this reason, which, you know, if there's evidence |
| 09:43:27 | 13 | to support it, you can do.  Those are two different issues. |
| 09:43:29 | 14 | We are not in argument right now.  We'll worry about argument |
| 09:43:33 | 15 | when I get to argument. |
| 09:43:34 | 16 | So he is not going to be able to answer why, you |
| 09:43:37 | 17 | know, somebody else gave him a deal. |
| 09:43:39 | 18 | Next. |
| 09:43:40 | 19 | MR. KULWIN:  Next one, Judge, is Mr. Loevy when he |
| 09:43:46 | 20 | was examining Mr. Hawkins violated a motion in limine ruling |
| 09:43:49 | 21 | that you made in 2014.  I have the transcript.  I'll explain |
| 09:43:53 | 22 | briefly. |
| 09:43:54 | 23 | In 2014, Mr. Goodman tried to use this pros memo |
| 09:43:59 | 24 | argument, you got the pros memo from the government, it was |
| 09:44:01 | 25 | being passed around, you borrowed from me referring to it as a |

11/30/16 AM
Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 9 of 125 PageID #:66496
***REALTIME UNEDITED TRANSCRIPT ONLY***

8

09:44:07  1   document.  It didn't -- I didn't recognize it because --

09:44:11  2           THE COURT:  Why didn't --

09:44:12  3           MR. KULWIN:  I'm.

09:44:13  4           THE COURT:  Contemporaneous objection rule.

09:44:16  5           MR. KULWIN:  That's true.

09:44:18  6           THE COURT:  What you're trying to do is prospectively

09:44:21  7   deal with it.

09:44:22  8           MR. KULWIN:  I don't want it to happen on Kees or

09:44:24  9   Clay going forward and, you know, I do believe that Hogan,

09:44:29  10  because of what's happening with Hawkins, can simply say what

09:44:32  11  happened, what it was, and that should be the end of it,

09:44:34  12  Judge.  You made it really clear --

09:44:37  13          THE COURT:  How does he know what the other people

09:44:39  14  had at the MCC.

09:44:42  15          MR. KULWIN:  It was his stuff.

09:44:43  16          THE COURT:  That's not my question.  How does he

09:44:47  17  know?

09:44:47  18          MR. KULWIN:  Because he covered it.

09:44:49  19          THE COURT:  He himself recovered had.

09:44:52  20          MR. KULWIN:  My understanding is he had the marshals

09:44:54  21  for the guys from OCDETF go there or he was called by the MCC,

09:44:59  22  I am going on my memory from 20 years ago, but this is how I

09:45:03  23  recall it, it was a big deal, it was a big conning attempt at

09:45:09  24  the time and /STKPWHR-FRBLT the day it happened, they went

09:45:12  25  over there, they got it, they came back, it was a scheduling

| | |
|---|---|
| 09:45:15 | 1 memorandum.  When you ruled, Judge, you said it wasn't even a |
| 09:45:19 | 2 close call. |
| 09:45:19 | 3 THE COURT:  Well, you know, as I've said to |
| 09:45:23 | 4 everybody, I have made thousands of rulings in this case, |
| 09:45:26 | 5 literally, I can't be expected to remember. |
| 09:45:28 | 6 MR. LOEVY:  May I?  I'm sorry. |
| 09:45:30 | 7 THE COURT:  So what you're talking about right now is |
| 09:45:33 | 8 you want to preclude questioning of this regarding Mr. Kees |
| 09:45:36 | 9 who is the next witness. |
| 09:45:38 | 10 MR. KULWIN:  Yes, Judge. |
| 09:45:39 | 11 THE COURT:  Mr. Loevy. |
| 09:45:39 | 12 MR. LOEVY:  Your Honor, what Mr. Kulwin just showed |
| 09:45:42 | 13 me is a ruling with Sexton, so during a sidebar of a state's |
| 09:45:47 | 14 attorney who had nothing to do with Mr. Hogan. |
| 09:45:49 | 15 THE COURT:  Is anybody going to bother to show this |
| 09:45:51 | 16 to me? |
| 09:45:51 | 17 MR. KULWIN:  Ms. Katz is.  She's always ready, Judge. |
| 09:45:55 | 18 MR. LOEVY:  What we have done is since proved up what |
| 09:45:57 | 19 was missing.  You said you had no connection between the cross |
| 09:46:00 | 20 memos and the underlying events and what Mr. Hawkins admitted |
| 09:46:03 | 21 yesterday was, yes, I had the prosecution's memos -- |
| 09:46:06 | 22 THE COURT:  Actually, he didn't.  He said that he |
| 09:46:08 | 23 didn't see it.  He said these other people had the document, |
| 09:46:11 | 24 they were telling him about it, and he didn't see it.  That is |
| 09:46:14 | 25 what he said. |

Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 11 of 125 PageID #:66498
11/30/16 AM
***REALTIME UNEDITED TRANSCRIPT ONLY***

10

| | | |
|---|---|---|
| 09:46:14 | 1 | MR. LOEVY:  He said it both ways, your Honor. |
| 09:46:18 | 2 | THE COURT:  You show me the transcript where he said |
| 09:46:21 | 3 | he actually had a document. |
| 09:46:22 | 4 | MR. KULWIN:  Yesterday he testified -- |
| 09:46:24 | 5 | THE COURT:  The question on the table is for him. |
| 09:46:26 | 6 | That's going to be the next thing that happens. |
| 09:46:49 | 7 | You know, I think I actually -- I actually think that |
| 09:47:00 | 8 | I -- there's a bunch of stuff here, it's kind of out of |
| 09:47:03 | 9 | sequence, I think I actually need a couple pages prior to what |
| 09:47:06 | 10 | Ms. Katz handed me. |
| 09:47:07 | 11 | MR. KULWIN:  Which pages do you need? |
| 09:47:08 | 12 | THE COURT:  I have 2458 and 2459, but it looks like |
| 09:47:12 | 13 | the discussion at the sidebar started before that.  I don't |
| 09:47:14 | 14 | know how much before. |
| 09:47:16 | 15 | MR. KULWIN:  Okay.  Can you grab that from the trial |
| 09:47:19 | 16 | two? |
| 09:47:19 | 17 | THE COURT:  And there is a reference of -- there's a |
| 09:47:22 | 18 | reference on 2479 to an earlier sidebar, 2459. |
| 09:47:32 | 19 | MR. LOEVY:  Page 32 and 33. |
| 09:47:37 | 20 | MR. KULWIN:  2479 you admonished. |
| 09:47:39 | 21 | THE COURT:  I understand.  I need the pages before |
| 09:47:42 | 22 | 2458. |
| 09:47:42 | 23 | MR. KULWIN:  Sure, Judge.  Why don't we get you -- |
| 09:47:47 | 24 | THE COURT:  I may actually have all of this |
| 09:47:50 | 25 | somewhere.  Can you tell me what date the -- |

Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 12 of 125 PageID #:66499
11/30/16 AM                    ***REALTIME UNEDITED TRANSCRIPT ONLY***

11

| 09:47:54 | 1 | MR. KULWIN:  Yes. |
| 09:47:55 | 2 | THE COURT:  If you just give me the date I will be |
| 09:47:57 | 3 | able to find it myself probably easier. |
| 09:48:01 | 4 | MR. KULWIN:  Let me run to the closet and get that, |
| 09:48:03 | 5 | Judge. |
| 09:48:03 | 6 | THE COURT:  Okay. |
| 09:48:05 | 7 | MR. KULWIN:  She is in the closet getting it. |
| 09:48:07 | 8 | MR. LOEVY:  Your Honor, would you like to see the |
| 09:48:09 | 9 | testimony you asked for? |
| 09:48:11 | 10 | THE COURT:  Yeah.  Do you have a page cite from the |
| 09:48:14 | 11 | realtime? |
| 09:48:14 | 12 | MR. LOEVY:  The realtime it's page 32. |
| 09:48:17 | 13 | THE COURT:  From the morning? |
| 09:48:20 | 14 | MR. ART:  Afternoon of November 28th. |
| 09:48:22 | 15 | THE COURT:  Afternoon of November 28th. |
| 09:48:24 | 16 | MR. LOEVY:  Starting on page 32, line 17. |
| 09:49:06 | 17 | MR. ART:  Your Honor, I have a paper copy if you'd |
| 09:49:08 | 18 | like. |
| 09:49:08 | 19 | THE COURT:  It's the afternoon, you said page 32. |
| 09:49:10 | 20 | MR. LOEVY:  Starting at line 9. |
| 09:49:13 | 21 | THE COURT:  It's just taking a second for it to come |
| 09:49:16 | 22 | up here. |
| 09:49:38 | 23 | MR. LOEVY:  The important part is on 33. |
| 09:49:40 | 24 | THE COURT:  The important part is what I think is the |
| 09:49:42 | 25 | important part.  I am reading it in context.  Stop talking |

| | | |
|---|---|---|
| 09:49:44 | 1 | until I ask you something. |
| 09:49:46 | 2 | Okay. So you are correct that on whatever -- I |
| 09:50:21 | 3 | assume that's your examination of Mr. Hawkins. |
| 09:50:24 | 4 | MR. LOEVY: Correct. |
| 09:50:25 | 5 | THE COURT: He says that he saw -- this is the day |
| 09:50:28 | 6 | before yesterday, he said that he saw the documents, they were |
| 09:50:38 | 7 | shown to him by Eugene Hunter. |
| 09:50:42 | 8 | "QUESTION: Those documents had the same facts that |
| 09:50:44 | 9 | later became part of your testimony, correct? |
| 09:50:47 | 10 | "ANSWER: Yes, sir. |
| 09:50:47 | 11 | |
| 09:50:48 | 12 | "QUESTION: How do you guys get your hands on them? |
| 09:50:50 | 13 | "ANSWER: I guess they took them. |
| 09:50:52 | 14 | "QUESTION: Anybody ever explain to you how they took |
| 09:50:54 | 15 | them? |
| 09:50:55 | 16 | "ANSWER: No, because I wasn't interested." |
| 09:50:57 | 17 | So you're right that the previous day he testified |
| 09:51:00 | 18 | that he saw them. Yesterday, he testified that he didn't see |
| 09:51:02 | 19 | them. |
| 09:51:02 | 20 | MR. KULWIN: Right. |
| 09:51:03 | 21 | THE COURT: You're correct that he testified both |
| 09:51:05 | 22 | ways. |
| 09:51:05 | 23 | All right. So what I need to do now is I need to |
| 09:51:09 | 24 | look back at the full context of the ruling. Do you know what |
| 09:51:19 | 25 | date it was? |

09:51:19    1    MR. KULWIN:  April 2nd, 2014.

09:52:34    2    THE COURT:  Okay.  So what happened in the previous

09:52:37    3  trial is that it looks like it's right at the beginning of the

09:52:40    4  cross of Mr. Kees in that trial he was called by the defense.

09:52:47    5  Mr. Goodman says page 2458, there's information -- I am going

09:52:53    6  to paraphrase it.  Mr. Kees admitted that during a meeting

09:52:57    7  with Mr. Hogan, he took the pros memo, short for prosecution

09:53:02    8  memo.  Shared it.  I asked what's the relevancy of it.

09:53:05    9  Mr. Goodman said it basically explains how they got the same

09:53:08   10  story about good exercise, good exercise, the quote that's

09:53:11   11  been used in the case.

09:53:12   12    I asked do you have a pros memo, Mr. Goodman says,

09:53:17   13  no.  I say, does the pros memo say anything about good

09:53:21   14  exercise?  Mr. Goodman says, I don't know that.  I say, how do

09:53:24   15  you connect A with B?  He says, well, I don't know how I can

09:53:26   16  connect it to good exercise, but it certainly shows they were

09:53:28   17  sharing information.  And I say it's not -- you didn't make a

09:53:34   18  connection.

09:53:35   19    Okay.  So do you have the pros memo?

09:53:38   20    MR. LOEVY:  We have asked the government.  They won't

09:53:40   21  give it to us.

09:53:41   22    THE COURT:  Well, big surprise there.

09:53:42   23    MR. LOEVY:  Well, it's part of the -- it should have

09:53:44   24  been in our view discoverable, but we did connect it is our

09:53:50   25  position.

***REALTIME UNEDITED TRANSCRIPT ONLY***

09:53:50  1          THE COURT:  It probably would be determined to be

09:53:53  2   work product.  I can't guarantee that, but that's likely.

09:53:55  3          MR. LOEVY:  Hawkins said, yes, it became the basis of

09:53:57  4   the facts.  What the pros memo was, we know what it was, the

09:54:01  5   prosecution memo regarding the indictment, the RICO

09:54:04  6   indictment.  Smith/Hickman is one of the predicate acts,

09:54:07  7   Hawkins has said, yes, these are the facts that became my

09:54:11  8   testimony.

09:54:11  9          Kees and hunter they want to call and say isn't it

09:54:16  10  true you had personal knowledge of it, they had access to the

09:54:18  11  government's memos laying out the indictment of which

09:54:21  12  Smith/Hickman was one of the predicates.

09:54:27  13         THE COURT:  Let me ask this question, Mr. Kulwin.  As

09:54:29  14  you stand there, do you know what Mr. Hogan would say this

09:54:35  15  about topic?

09:54:36  16         MR. KULWIN:  I believe I do.

09:54:37  17         THE COURT:  What.

09:54:37  18         MR. KULWIN:  To the best of my knowledge he would say

09:54:39  19  it wasn't the pros memo, it was some form of scheduling forms

09:54:43  20  that talked about how they were going to put the trial

09:54:46  21  together.  I can double-check with a phone call.  It was not a

09:54:50  22  prosecution theory memo.  That's my understanding as I recall

09:54:53  23  it.  I haven't asked him specifically about it.

09:54:55  24         THE COURT:  This ended up as a dispute that was

09:54:58  25  brought before any judge?

***REALTIME UNEDITED TRANSCRIPT ONLY***

| 09:54:59 | 1 | MR. LOEVY: Yes. |

09:54:59    1          MR. LOEVY:  Yes.

09:55:00    2          MR. KULWIN:  Sure, it was one of the many, many

09:55:02    3   allegations of misconduct that went on during the El Rukn

09:55:05    4   hearings that was later reversed.

09:55:07    5          THE COURT:  Presumably there was some sort of hearing

09:55:09    6   or testimony somewhere about this at some point in time in one

09:55:12    7   of those cases.  If not testimony, at least there were briefs

09:55:15    8   filed.

09:55:16    9          MR. KULWIN:  I mean, there were so many allegations

09:55:19   10   back then, Judge.

09:55:20   11          THE COURT:  So, look, the stuff went in yesterday on

09:55:24   12   Hawkins, honestly without objection.

09:55:28   13          MR. KULWIN:  Right.

09:55:28   14          THE COURT:  And so you're telling me that you want to

09:55:34   15   be able to respond to it via Hogan, and you're also telling me

09:55:40   16   that you don't think that the plaintiff should be able to go

09:55:46   17   into it with the other witnesses who were involved.  I mean, I

09:55:48   18   really think you're trying to have it both ways.  I mean, you

09:55:50   19   guys -- to use a golf analogy, play it as it lies right now.

09:55:53   20   You are not asking to play it as you lies.  You are asking to

09:55:57   21   make the plaintiff play it as a lies, but you get to improve

09:56:04   22   upon it.  I don't know if you play golf.

09:56:07   23          MR. KULWIN:  I caddied a lot.

09:56:09   24          THE COURT:  Not good for your shoulders.

09:56:13   25          MR. KULWIN:  Be that as it may, I don't really think

                        ***REALTIME UNEDITED TRANSCRIPT ONLY***

| | | |
|--|--|--|
| 09:56:16 | 1 | so.  Let me get to the point.  There was a motion in limine, |
| 09:56:20 | 2 | my -- the defense -- |
| 09:56:23 | 3 | THE COURT:  There was a motion in limine. |
| 09:56:25 | 4 | MR. KULWIN:  There was a motion, a ruling, a ruling. |
| 09:56:28 | 5 | THE COURT:  Okay. |
| 09:56:28 | 6 | MR. KULWIN:  And like you said, there's thousands of |
| 09:56:31 | 7 | them and that one slipped my mind and I apologize for that. |
| 09:56:34 | 8 | Your rational on the ruling at the time was correct, it got |
| 09:56:37 | 9 | out, it's no different than if, you know, if something goes |
| 09:56:44 | 10 | wrong, okay, even if, you know, as you say, even if nobody |
| 09:56:49 | 11 | objects, if there is a violation, it could be cause for a |
| 09:56:53 | 12 | mistrial, these other things, fine.  All we're saying is it |
| 09:56:56 | 13 | shouldn't be compounded but now it's out there.  We are not |
| 09:56:59 | 14 | trying to improve our -- if he goes through it with five |
| 09:57:04 | 15 | different people, it still doesn't matter that Hogan is going |
| 09:57:07 | 16 | to say this is what it is. |
| 09:57:09 | 17 | THE COURT:  May I ask this?  What is it that you're |
| 09:57:14 | 18 | intending or proposing to ask Mr. Kees on this? |
| 09:57:14 | 19 | MR. LOEVY:  Isn't it true you got a hold of the memos |
| 09:57:18 | 20 | -- isn't is true, that, Mr. Kees, you got a hold of the memos |
| 09:57:20 | 21 | laying out the prosecution's theory of the case, not what he |
| 09:57:23 | 22 | just described about a scheduling thing, it actually was a |
| 09:57:25 | 23 | preindictment prosecution memo, Judge Conlon did rule on it |
| 09:57:29 | 24 | just as you said, isn't it true you reviewed it before you |
| 09:57:32 | 25 | testified. |

09:57:33   1        THE COURT:  Did Mr. Kees testify about this on some

09:57:35   2   prior occasion?

09:57:36   3        MR. LOEVY:  Yes, he has.  He did get the memos.  He

09:57:37   4   acknowledged he got the memos, he acknowledged that the shared

09:57:39   5   the memos with their other witness Eugene Hunter, who they're

09:57:43   6   going to call, in 1989 before they testified.  So he had the

09:57:45   7   prosecution memos laying out the facts about which he later

09:57:50   8   testified.  And by the way, he also says he thinks Hawkins had

09:57:53   9   them too so he contradicts Hawkins' second denial.

09:57:57  10        THE COURT:  Mr. Kulwin do you disagree that Mr. Kees

09:58:00  11   has testified on some prior occasion whenever it was.

09:58:06  12        MR. KULWIN:  I would have to see the transcript.

09:58:08  13        THE COURT:  When did he testify about this?

09:58:09  14        MR. LOEVY:  He testified about it in 1994, I believe

09:58:13  15   it was the Boyd case.  I am going to pull it right now, your

09:58:16  16   Honor.

09:58:16  17        THE COURT:  Okay.

09:58:18  18        MR. KULWIN:  I believe what occurred, Judge.

09:58:20  19        MR. LOEVY:  93.  I am handing you the transcripts

09:58:23  20   from Boyd, your Honor.  He's testified about it in his

09:58:26  21   deposition.

09:58:26  22        THE COURT:  This was Judge Conlon's case?

09:58:28  23        MR. LOEVY:  This one was Aspen, but judge Conlon

09:58:32  24   wrote the opinion.

09:58:33  25        THE COURT:  We are not going to go into the opinions

| | | |
|---|---|---|
| 09:58:34 | 1 | one way or the other. It's a point of reference for me. |
| 09:58:37 | 2 | So what page? You gave me a whole bunch of stuff, |
| 09:58:41 | 3 | what should I be looking at? |
| 09:58:43 | 4 | MR. LOEVY: I think the relevant page is 708. |
| 09:58:46 | 5 | THE COURT: Okay. Let me just page through. |
| 09:58:49 | 6 | MR. LOEVY: 708, 709. |
| 09:58:51 | 7 | THE COURT: Stop talking. Where is the testimony -- |
| 09:59:10 | 8 | what page is the testimony on where he says what this document |
| 09:59:13 | 9 | was? On 708 he says I got a hold of some documents. He says |
| 09:59:21 | 10 | he claims that he picked them up by accident. He's shown |
| 09:59:31 | 11 | post-trial motion exhibits 12 and 13. He says those look |
| 09:59:35 | 12 | familiar. So it seems like those are the documents. |
| 09:59:39 | 13 | MR. LOEVY: Your Honor, I found -- |
| 09:59:40 | 14 | THE COURT: What's the page where he says what the |
| 09:59:42 | 15 | contents are? Or is there a page? Do you have post trial |
| 09:59:46 | 16 | exhibits 12 and 13? |
| 09:59:47 | 17 | MR. LOEVY: Yes, what we have here, your Honor, if I |
| 09:59:49 | 18 | may is Judge Conlon's opinion stating as follows: In September |
| 09:59:53 | 19 | 89, Derrick Kees stole internal pre indictment memorandum from |
| 09:59:57 | 20 | the U.S. Attorney's Office and disseminated these records |
| 10:00:02 | 21 | presence describing the government's theory of the case, the |
| 10:00:05 | 22 | evidence and prospective charges against each defendant as |
| 10:00:08 | 23 | well as other issues to El Rukn inmate witnesses, stolen |
| 10:00:10 | 24 | documents were seized from the cells of Kees, Hunter and |
| 10:00:13 | 25 | Hawkins at USA Hogan's request. That's our good faith basis |

| | | |
|---|---|---|
| 10:00:24 | 1 | to ask the questions, your Honor. |
| 10:00:24 | 2 | MR. ART:  For the record, Judge, the cite is United |
| 10:00:24 | 3 | States against Andrews. |
| 10:00:28 | 4 | MR. KULWIN:  Whenever you're ready, Judge. |
| 10:00:28 | 5 | THE COURT:  Go ahead. |
| 10:00:28 | 6 | MR. KULWIN:  First of all, with all due respect to |
| 10:00:31 | 7 | Judge Conlon, there were a lot of factual findings made during |
| 10:00:35 | 8 | the El Rukn hearings, none of which were challenged by the |
| 10:00:38 | 9 | U.S. Attorney's Office at the time.  The U.S. Attorney's |
| 10:00:39 | 10 | Office never cross-examined anybody on those issues.  They |
| 10:00:42 | 11 | felt that all of it was -- |
| 10:00:45 | 12 | THE COURT:  Honestly, I am not really so much |
| 10:00:47 | 13 | concerned -- in fact, I am not at all concerned about any |
| 10:00:50 | 14 | findings.  I am just trying to see if I can identify what the |
| 10:00:53 | 15 | exhibit are. |
| 10:00:53 | 16 | MR. KULWIN:  And -- |
| 10:00:54 | 17 | THE COURT:  By the way, exhibits 12 and 13 were used |
| 10:00:57 | 18 | in open court, so that would seem to remove any work product |
| 10:01:00 | 19 | objection, assuming that those are what we are talking about |
| 10:01:03 | 20 | here. |
| 10:01:04 | 21 | MR. KULWIN:  Right.  And I don't believe that those |
| 10:01:05 | 22 | were the pros memos.  That's why they were used in open court. |
| 10:01:10 | 23 | And the testimony that they are reading doesn't say I got the |
| 10:01:12 | 24 | pros memos.  You know, Judge, this is pretty serious. |
| 10:01:16 | 25 | THE COURT:  Yeah, but what you're -- the basis of |

11/30/16 AM

***REALTIME UNEDITED TRANSCRIPT ONLY***

20

| | |
|---|---|
| 10:01:19 | 1 |
| 10:01:22 | 2 |
| 10:01:26 | 3 |

1 your argument where you started off is that there's no good

2 faith basis to ask the question. I'm just not seeing that

3 here.

4 MR. KULWIN: Wait a second, Judge. The basis of my

5 argument is that you previously ruled that it shouldn't come

6 in. We blew it. We didn't hear it. It shouldn't keep going.

7 If you're saying, look, you want it out and Hogan can't

8 explain it, we'll live with that, but it shouldn't keep going

9 forward. You made a good ruling the last time. They can't

10 connect it up. They don't have it. And there's no reason for

11 you to now vary from your prior ruling at this point.

12 THE COURT: Okay. So just to be clear about it, what

13 we are talking about here is not something where everybody

14 briefed something and argued it and I made a ruling like I've

15 done on several dozen things here. We are talking about a

16 ruling that I made in the middle of trial essentially that

17 there hadn't been a foundation connecting anything up and

18 therefore you couldn't go into it and more than that has been

19 done in this trial, and, again, it happened without objection.

20 So, look, I mean, I see two possibilities here. I'm not going

21 to retroactively go back and exclude testimony that nobody

22 asked me to exclude at the time. I'm not, period.

23 So to me there are only two possibilities.

24 Possibility number one is everybody plays it as it lies, we go

25 with Hawkins' testimony, nobody else gets to testify about it

***REALTIME UNEDITED TRANSCRIPT ONLY***

11/30/16 AM

***REALTIME UNEDITED TRANSCRIPT ONLY***

| | | |
|---|---|---|
| 10:02:41 | 1 | and people argue whatever they want to argue from it.  That's |
| 10:02:44 | 2 | number one. |
| 10:02:45 | 3 | Number two is both you get to ask Mr. Hogan about |
| 10:02:52 | 4 | whatever he has personal knowledge about and the plaintiff |
| 10:02:55 | 5 | gets to ask and both sides get to ask, you know, Mr. Kees and |
| 10:02:59 | 6 | whoever else is going to testify about, you know, who has |
| 10:03:02 | 7 | knowledge of this, about whatever they have personal knowledge |
| 10:03:05 | 8 | of.  And I am not -- I don't see a third alternative.  I don't |
| 10:03:09 | 9 | see -- it's non-appropriate alternative and this is the end of |
| 10:03:12 | 10 | this part of the discussion.  It's not an appropriate |
| 10:03:14 | 11 | alternative to say the defendants get to respond to this by |
| 10:03:17 | 12 | eliciting information from Hogan and other witnesses that are |
| 10:03:19 | 13 | favorable to them but the plaintiffs don't get to ask anybody |
| 10:03:23 | 14 | else questions.  That request is overruled. |
| 10:03:25 | 15 | So those are the other two possibilities.  Let me |
| 10:03:28 | 16 | have your thoughts on those two possibilities.  By the way, we |
| 10:03:31 | 17 | are now 35 minutes late with the jury.  35 minutes. |
| 10:03:35 | 18 | Okay.  Yours first. |
| 10:03:39 | 19 | MR. KULWIN:  I think it's important that Mr. Hogan be |
| 10:03:42 | 20 | able to respond. |
| 10:03:42 | 21 | THE COURT:  Then I am not going to preclude asking |
| 10:03:45 | 22 | Mr. Kees because I do not agree with the argument that there |
| 10:03:48 | 23 | is no good faith basis.  That's it. |
| 10:03:50 | 24 | MR. KULWIN:  I'm sorry, there are two other points |
| 10:03:52 | 25 | with Mr. Kees.  I apologize. |

11/30/16 AM
Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 23 of 125 PageID #:66510
***REALTIME UNEDITED TRANSCRIPT ONLY***

22

10:03:54　1　　　　One point, I anticipate that the plaintiff is going

10:03:58　2　to go into a bunch of Mr. Kees' testimony concerning -- that

10:04:03　3　went on during the El Rukn hearing.  What I'm concerned about.

10:04:06　4　　　　THE COURT:  What are we talking about?

10:04:08　5　　　　MR. KULWIN:  He is going to be saying I had a side

10:04:10　6　deal with Hogan, all that stuff.  You know, that may or may

10:04:13　7　not be fair game.  What I'm concerned about is is it's going

10:04:18　8　to open the door or try to open the door later on or during

10:04:22　9　his testimony that these were all -- I don't want the

10:04:25　10　discussion what the purpose of the El Rukn hearings, what

10:04:29　11　happened at the El Rukn hearings.

10:04:30　12　　　　MR. LOEVY:  That's fine.

10:04:31　13　　　　THE COURT:  You are not planning to go into that.  I

10:04:33　14　think that was a motion that I ruled on after briefing and I

10:04:36　15　precluded it.  That I remember.

10:04:37　16　　　　MR. KULWIN:  Two last very minor, one minor, Mr. Kees

10:04:42　17　should be admonished by the Court before the jury comes in not

10:04:45　18　to mention the murder and not to mention Tredeste Murray.

10:04:49　19　　　　MR. LOEVY:  Now on our points, your Honor, nobody has

10:04:51　20　prepped Mr. Kees except possibly Mr. Hogan who does not know

10:04:56　21　this Court's motion in limine rulings.  What we strongly

10:05:01　22　suggest is before he testifies your Honor explain to him and

10:05:04　23　we have handed you a copy of the ruling, there are four key

10:05:07　24　points, your ruling.

10:05:08　25　　　　THE COURT:  That's this thing?

10:05:09   1          MR. LOEVY:  Yes, your Honor.  The first, if you like,
10:05:11   2    I can summarize it.  Either way.
10:05:14   3          THE COURT:  Hang on a second.  Let me just ask this
10:05:23   4    question.  Again, I'm hoping you guys have a better memory
10:05:27   5    than I do.  Did I do this last go around?  Did I talk to Kees
10:05:31   6    before the testimony last go around about what he could and
10:05:35   7    couldn't say?
10:05:36   8          MR. NOLAND:  I don't remember.  I don't remember.
10:05:38   9          MS. GORMAN:  I recall that you did, your Honor.
10:05:39  10          THE COURT:  Okay.  What day did he testify?  It would
10:05:42  11    be helpful to me to be able to look at what I said because I
10:05:45  12    can just reread it.
10:05:47  13          MS. KATZ:  April 22nd.
10:05:50  14          THE COURT:  April 22nd.  Do you have a page number
10:05:52  15    for me.
10:05:52  16          MS. KATZ:  2405, but there were some initial rulings.
10:05:57  17    It goes on for a little while.  Let me see when he actually
10:06:01  18    starts testifying.
10:06:01  19          THE COURT:  I can find it.  You clued me in on it.
10:06:05  20    Let me see what I've got.  It doesn't look like I did.
10:06:37  21          MR. LOEVY:  We don't they you did.
10:06:39  22          THE COURT:  I didn't.
10:06:41  23          MR. LOEVY:  There's four key points.
10:06:44  24          THE COURT:  Okay.  What are the four?
10:06:45  25          MR. LOEVY:  First one you ruled out the Tredeste

***REALTIME UNEDITED TRANSCRIPT ONLY***

| | | |
|---|---|---|
| 10:06:47 | 1 | Murray stalking incident. |
| 10:06:50 | 2 | MR. KULWIN: We don't have they problem with that, |
| 10:06:51 | 3 | Judge. You already ruled on that. |
| 10:06:52 | 4 | MR. LOEVY: All of these are the ones you already |
| 10:06:54 | 5 | ruled on, your Honor. |
| 10:06:56 | 6 | The second one is. |
| 10:06:57 | 7 | THE COURT: Keep going. |
| 10:06:58 | 8 | MR. LOEVY: The second one is that any reference to |
| 10:07:00 | 9 | Nate's prior criminal record. I don't even know if he knows |
| 10:07:03 | 10 | about it, but that would be a disaster if he mentioned a prior |
| 10:07:06 | 11 | crime by Nate. |
| 10:07:06 | 12 | MR. KULWIN: Point on that, Judge. |
| 10:07:08 | 13 | THE COURT: Keep going. |
| 10:07:10 | 14 | MR. KULWIN: Sorry. |
| 10:07:10 | 15 | MR. LOEVY: No. 3 is in your opinion you ruled out |
| 10:07:13 | 16 | what he heard the next day about who committed the murders. |
| 10:07:16 | 17 | What you have allowed him to testify about is he got together |
| 10:07:19 | 18 | with the four guys and they all confessed to them but hearsay |
| 10:07:22 | 19 | about I heard from other people about what happened is barred |
| 10:07:25 | 20 | by your opinion. |
| 10:07:26 | 21 | And then the fourth point is the reasons why Fields |
| 10:07:29 | 22 | was chosen for the assignment. And then he is allowed -- |
| 10:07:35 | 23 | THE COURT: There is a fifth point. I am looking at |
| 10:07:38 | 24 | pages 15 and 16. He can't testify about what Alan Knox told |
| 10:07:41 | 25 | him about the prior -- |

***REALTIME UNEDITED TRANSCRIPT ONLY***

Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 26 of 125 PageID #:66513
11/30/16 AM                ***REALTIME UNEDITED TRANSCRIPT ONLY***

25

| | | |
|---|---|---|
| 10:07:43 | 1 | MR. KULWIN:  Judge, I didn't hear you. |
| 10:07:45 | 2 | THE COURT:  He can't testify about what Alan Knox |
| 10:07:50 | 3 | told him about the bribery of Judge Maloney. |
| 10:07:56 | 4 | MR. LOEVY:  And I think you said what is in |
| 10:07:59 | 5 | defendants' proffer, which we handed you, you said they could |
| 10:08:02 | 6 | do the first six and a half lines, you said the first six and |
| 10:08:06 | 7 | a half lines of page 11 of defendants' response. |
| 10:08:07 | 8 | THE COURT:  Yours is on page 15. |
| 10:08:09 | 9 | MR. LOEVY:  Exactly. |
| 10:08:09 | 10 | THE COURT:  Page 629 just so the record is clear. |
| 10:08:16 | 11 | So, look, it sometimes like I was comfortable enough |
| 10:08:27 | 12 | last go around to not admonish him about anything.  And I just |
| 10:08:36 | 13 | -- I guess I'm really kind of disinclined to sit here and give |
| 10:08:40 | 14 | this guy a laundry list of six or seven things that he can't |
| 10:08:44 | 15 | testify about. |
| 10:08:45 | 16 | MR. LOEVY:  Your Honor. |
| 10:08:45 | 17 | THE COURT:  I think I'm entitled to rely -- listen |
| 10:08:51 | 18 | very carefully, I am entitled to rely on lawyers who know what |
| 10:08:55 | 19 | my rulings were and who know what the possibilities are if |
| 10:08:58 | 20 | someone runs afoul of them, I am entitled to rely on lawyers |
| 10:09:03 | 21 | on both sides asking careful questions that don't tread into |
| 10:09:09 | 22 | prohibited ground or invite the witness to do that. |
| 10:09:11 | 23 | What was the point you wanted to make? |
| 10:09:13 | 24 | MR. KULWIN:  On that point, Judge, I'm basing my |
| 10:09:16 | 25 | examination of Mr. Kees of what was allowed at the last trial. |

10:09:20    1              THE COURT:  Right.

10:09:21    2              MR. KULWIN:  I am actually using the questions and

10:09:24    3      answers.

10:09:24    4              THE COURT:  Right.

10:09:25    5              MR. KULWIN:  That have all been allowed.  I don't

10:09:28    6      believe any of that crosses any lines.

10:09:29    7              THE COURT:  I don't think we had a problem with his

10:09:31    8      testimony last time.  I don't remember having one, so I don't

10:09:35    9      think we had any problems.

10:09:35   10              MR. KULWIN:  You did no.  And that's -- I'm just

10:09:38   11      telling you right now up front, that's what I am going to ask

10:09:42   12      about.  Now, depending on the cross, if Mr. Loevy is going to

10:09:45   13      into this whole you guys were all conspiring, I have some

10:09:51   14      thoughts.

10:09:52   15              THE COURT:  Conspiring about what?

10:09:54   16              MR. KULWIN:  Putting the case on Mr. Fields.  I'm not

10:09:57   17      going to go into what he was convicted for, but I am going to

10:10:00   18      test Mr. Kees' knowledge about whether he knew Mr. Fields was

10:10:03   19      in jail at the time this was going on and that he was

10:10:06   20      convicted for this crime at the time.  Okay?  I'm going to ask

10:10:10   21      him that.  I don't know what he is going to say.

10:10:12   22              THE COURT:  You're talking about in the '90s when all

10:10:14   23      of the El Rukn stuff was going on at the MCC did he know Mr.

10:10:18   24      Fields was in jail.

10:10:19   25              MR. KULWIN:  Yeah, and convicted for the


                        ***REALTIME UNEDITED TRANSCRIPT ONLY***

| | |
|---|---|
| 10:10:20 | 1 |
| 10:10:24 | 2 |
| 10:10:26 | 3 |
| 10:10:29 | 4 |
| 10:10:29 | 5 |
| 10:10:32 | 6 |
| 10:10:32 | 7 |
| 10:10:34 | 8 |
| 10:10:35 | 9 |
| 10:10:38 | 10 |
| 10:10:42 | 11 |
| 10:10:45 | 12 |
| 10:10:52 | 13 |
| 10:10:52 | 14 |
| 10:10:55 | 15 |
| 10:11:05 | 16 |
| 10:11:08 | 17 |
| 10:12:00 | 18 |
| 10:12:04 | 19 |
| 10:12:10 | 20 |
| 10:12:15 | 21 |
| 10:12:18 | 22 |
| 10:12:22 | 23 |
| 10:12:24 | 24 |
| 10:12:24 | 25 |

1 Smith/Hickman crime.  Good.  Just wanted to know.
2     THE COURT:  That's kind of the predicate of the case
3 that Mr. Fields was convicted of the Smith/Hickman.  Do you
4 see a problem?
5     MR. LOEVY:  No, as long as he doesn't elicit the
6 prior conviction.
7     MR. KULWIN:  I am not planning on doing that.
8     THE COURT:  What else?
9     MR. KULWIN:  The last point, you did rule in the last
10 trial at page 2459-63 that the plaintiff could not attribute
11 the promise of Kees doing less than 99 years to O'Callaghan
12 under 404(b) because that comment is different than what's
13 alleged in the complaint.
14     THE COURT:  Hang on a second.
15     MR. KULWIN:  2459-63 actually through 66.
16     THE COURT:  I am looking at it right now.
17     MR. KULWIN:  Sure, Judge.
18     THE COURT:  So what it looks like that I did in the
19 actual ruling is at 2462 to 2463 that I said that the
20 plaintiff could not attribute the particular deal that's being
21 talked about there that Mr. Kees evidently thought he had,
22 that the plaintiff can't try to attribute that to Mr.
23 O'Callaghan.  Is that what you're talking about?
24     MR. KULWIN:  Yes, Judge.
25     MR. LOEVY:  I am not sure.

        ***REALTIME UNEDITED TRANSCRIPT ONLY***

11/30/16 AM
Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 29 of 125 PageID #:66516
***REALTIME UNEDITED TRANSCRIPT ONLY***

28

| | | |
|---|---|---|
| 10:12:25 | 1 | THE COURT: That ruling stands. |
| 10:12:26 | 2 | THE COURT: Then you got to read the transcript, |
| 10:12:29 | 3 | which I am confident you have done. Have you read the |
| 10:12:31 | 4 | transcript? |
| 10:12:31 | 5 | MR. LOEVY: I have, your Honor. |
| 10:12:33 | 6 | THE COURT: Okay. That ruling stands. |
| 10:12:35 | 7 | MR. KULWIN: Thank you, Judge. I apologize. |
| 10:12:36 | 8 | THE COURT: And so you have a better sense of what |
| 10:12:39 | 9 | the deal is than I do, so if something is happening or |
| 10:12:43 | 10 | starting to happen that sounds like it's going awry, jump on |
| 10:12:46 | 11 | your feet and say objection, I need a sidebar. Okay? |
| 10:12:50 | 12 | MR. KULWIN: Judge, I'll stand up for sure. |
| 10:12:52 | 13 | MR. LOEVY: Your Honor, may I ask so we don't have a |
| 10:12:55 | 14 | sidebar. |
| 10:12:55 | 15 | THE COURT: I'll give you five minutes to read the |
| 10:13:01 | 16 | gosh darn transcript. What are we on, Day 11 now? I've lost |
| 10:13:05 | 17 | track. It's been so much fun. I've got 12 United States |
| 10:13:10 | 18 | citizens sitting back there who believe that they were |
| 10:13:14 | 19 | supposed to start this trial at 9:30. Okay? I know I've got |
| 10:13:17 | 20 | issues in the morning, but we have been talking for 40 minutes |
| 10:13:20 | 21 | now. I'm done talking. I am bringing the jury out. That's |
| 10:13:25 | 22 | it. |
| 10:13:25 | 23 | MR. KULWIN: Are you giving them five minutes to read |
| 10:13:27 | 24 | the transcript or bringing the jury out. |
| 10:13:30 | 25 | MR. ART: I've got it. |

```
10:13:30   1        THE COURT:  Some of the folks can look at it and
10:13:33   2   stick it in front of Mr. Loevy's face.
10:14:51   3     (The jury enters the courtroom.)
10:14:53   4        THE COURT:  Okay.  Everybody can have a seat.  Good
10:15:00   5   morning, ladies and gentlemen.  I apologize.  You have been
10:15:03   6   sitting back there for 40 to 45 minutes.
10:15:06   7        You know, I have told the lawyers that we need to try
10:15:08   8   to get issues that are going to come up the next day dealt
10:15:11   9   with at the end of the previous day, but for various reasons
10:15:14  10   that's not always possible, so we were dealing with a bunch of
10:15:17  11   issues that frankly probably saved about seven sidebars, so
10:15:21  12   just take that on faith for present purposes.
10:15:24  13        As I told you, you know, a question was asked
10:15:28  14   yesterday by one of the jurors about scheduling, and so let me
10:15:32  15   just talk about that in general here.  So that little sheet
10:15:35  16   that I had given at the start of the trial I think gave you a
10:15:40  17   schedule through -- I've got it right here through a week from
10:15:45  18   Friday, so the 9th of December.  As you may recall as I told
10:15:49  19   you at the opening, I don't have any control over how long the
10:15:55  20   jury's deliberations go.  That's up to the jury.  How long or
10:16:01  21   how short it is is going to be completely up to you.
10:16:04  22        What I can tell you and I have to -- you have to take
10:16:06  23   everything with a grain of salt because I told you you were
10:16:09  24   going to start at 9:30 this morning and here it is 10:15.
10:16:12  25   It's my expectation that we will finish with the witnesses and
```

10:16:16   1   the evidence and the arguments by the end of next week.  Okay?

10:16:20   2   It may be a little before that.  I can't guarantee it won't be

10:16:24   3   a little after that, but my expectation is we will finish by

10:16:27   4   the end of next week.  Now, what I can't tell you is how long

10:16:30   5   you're going to deliberate.  That's up to you.  I don't have

10:16:32   6   any control over that.  In terms of scheduling out beyond

10:16:35   7   that, I think it's reasonable to think that you might want to

10:16:37   8   think about, you know, that following week involving some

10:16:42   9   deliberations, and in terms of the scheduling for that, you

10:16:45  10   know, what are the hours?  I am going to leave that up to you

10:16:48  11   with, you know, I'm sort of the Court of Appeals on the hours.

10:16:51  12   I mean, if you were to say we're going to come in from 10:00

10:16:55  13   to 12:00 and then go home, I'd probably say, no, not going to

10:16:58  14   do that, but I am not going to make you work past the normal

10:17:01  15   time we have been working.  You can use the schedule that we

10:17:04  16   have been using as a predictable guide.  I hope that's enough

10:17:08  17   information.  I should have more information at the beginning

10:17:10  18   of next week.  I have a sense of who is left, but I don't have

10:17:13  19   a sense of how long everything is going to take.  We are ready

10:17:16  20   to resume with I think the defendants' examination of Ms.

10:17:19  21   Lyon.  Do you understand you are still under oath?

10:17:22  22            THE WITNESS:  I do, your Honor.

10:17:23  23            THE COURT:  Mr. Noland, you can go ahead.

10:17:24  24                           - - -

10:17:24  25            ANDREA LYON, CROSS-EXAMINATION CONTINUED

11/30/16 AM
Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 32 of 125 PageID #:66519
***REALTIME UNEDITED TRANSCRIPT ONLY***

31

| | | |
|---|---|---|
| 10:17:24 | 1 | BY MR. NOLAND: |
| 10:17:26 | 2 | Q.  Ms. Lyon, if we could just remind for the jury, you are |
| 10:17:30 | 3 | the post conviction criminal defense attorney for a man by the |
| 10:17:35 | 4 | name of Fulton? |
| 10:17:36 | 5 | A.  Jon Fulton. |
| 10:17:37 | 6 | Q.  And could you just remind the jury, Mr. Fulton was |
| 10:17:43 | 7 | convicted of a homicide? |
| 10:17:44 | 8 | A.  He was. |
| 10:17:44 | 9 | Q.  And when did that occur, when did the homicide occur? |
| 10:17:49 | 10 | A.  2003. |
| 10:17:50 | 11 | Q.  And Mr. Fulton was then tried for that case in 2006, true? |
| 10:17:54 | 12 | A.  It was either late 2005 or 2006, I am not a hundred |
| 10:18:00 | 13 | percent sure. |
| 10:18:00 | 14 | Q.  And you were not the lawyer? |
| 10:18:01 | 15 | A.  I was not. |
| 10:18:01 | 16 | Q.  Who represented Mr. Fulton at that trial? |
| 10:18:03 | 17 | A.  That was Mr. Zinger and Mr. /PWO*EU. |
| 10:18:05 | 18 | Q.  All right.  Elliot zinger, is that his name? |
| 10:18:08 | 19 | A.  Correct. |
| 10:18:09 | 20 | Q.  And so then from 2003 to 2006, I know you weren't |
| 10:18:14 | 21 | involved, but that would have been the pretrial period with |
| 10:18:16 | 22 | discovery and documents exchanged and motions filed, things |
| 10:18:19 | 23 | like that? |
| 10:18:19 | 24 | A.  Yes, I would assume so. |
| 10:18:22 | 25 | Q.  And then Mr. Fulton was convicted at that trial in 2006 of |

Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 33 of 125 PageID #:66520
11/30/16 AM
***REALTIME UNEDITED TRANSCRIPT ONLY***

32

| | | |
|---|---|---|
| 10:18:28 | 1 | that murder? |
| 10:18:28 | 2 | A.  There was a mistrial and then at the second trial, he was |
| 10:18:31 | 3 | convicted. |
| 10:18:31 | 4 | Q.  Thank you. |
| 10:18:31 | 5 | And then you got involved after that in 2011 to begin |
| 10:18:37 | 6 | your representation of Mr. Fulton; is that right? |
| 10:18:40 | 7 | A.  On the post conviction, correct. |
| 10:18:41 | 8 | Q.  On a post conviction petition. |
| 10:18:43 | 9 | And then in connection with that, you sent some |
| 10:18:50 | 10 | subpoenas -- strike that. |
| 10:18:51 | 11 | In connection with that, you gathered the files of |
| 10:18:54 | 12 | the prior criminal defense attorneys? |
| 10:18:56 | 13 | A.  I did. |
| 10:18:57 | 14 | Q.  And did you gather, I think you said the trial lawyers' |
| 10:19:02 | 15 | file? |
| 10:19:02 | 16 | A.  The trial lawyers' file, the appellate lawyers' file, |
| 10:19:06 | 17 | there was some of the file was from a family lawyer, I got it |
| 10:19:14 | 18 | from them as well, it took me a little while to get |
| 10:19:18 | 19 | everything, but I did. |
| 10:19:18 | 20 | Q.  And then after that, you spent subpoenas to the police |
| 10:19:23 | 21 | department, I'm sure you did some other things, but you sent |
| 10:19:25 | 22 | some subpoenas to the police department to follow up and to |
| 10:19:31 | 23 | make sure you had all the paperwork? |
| 10:19:32 | 24 | A.  That's correct, but I couldn't do that until after I filed |
| 10:19:35 | 25 | the post conviction petition because you are not allowed to |

| 10:19:38 | 1 | send a subpoena unless you have a case that's going on. |
| 10:19:41 | 2 | Q.  So you filed that.  And once you filed that petition, you |
| 10:19:45 | 3 | you had a case number, you had the authority to issue a |
| 10:19:48 | 4 | subpoena to various entities to get documents? |
| 10:19:51 | 5 | A.  Correct. |
| 10:19:52 | 6 | Q.  And one of those entities was the Chicago Police |
| 10:19:54 | 7 | Department? |
| 10:19:54 | 8 | A.  Correct. |
| 10:19:54 | 9 | Q.  And I think you testified that in response to one of those |
| 10:19:57 | 10 | subpoenas, you got an investigative file; is that right? |
| 10:20:01 | 11 | A.  I got the file, yes, the police reports. |
| 10:20:04 | 12 | Q.  And I believe correct me if I'm wrong, you said there were |
| 10:20:08 | 13 | about 12 pages in there that you hadn't seen before? |
| 10:20:10 | 14 | A.  Not from the subpoena.  That's from the basement file. |
| 10:20:13 | 15 | Q.  Okay.  And you did receive the basement file? |
| 10:20:15 | 16 | A.  Later, yes. |
| 10:20:16 | 17 | Q.  Okay.  And so that's what I wanted to talk about. |
| 10:20:18 | 18 | So from the basement file, you did receive that, |
| 10:20:22 | 19 | correct? |
| 10:20:23 | 20 | A.  Ultimately, yes. |
| 10:20:23 | 21 | Q.  And you looked at that file and that's the file that |
| 10:20:27 | 22 | you're saying that there were -- you think there were about 12 |
| 10:20:31 | 23 | pages in there that you didn't recognize, hadn't seen before? |
| 10:20:35 | 24 | A.  That's correct. |
| 10:20:35 | 25 | Q.  And you advised the plaintiff's counsel that you didn't |

| | | |
|---|---|---|
| 10:20:40 | 1 | recognize those pages and you hadn't seen them before? |
| 10:20:42 | 2 | A. I did tell them at some point. I don't think that's the |
| 10:20:44 | 3 | first thing I did. |
| 10:20:46 | 4 | Q. Oh, yeah, I'm not suggesting that. At some point? |
| 10:20:48 | 5 | A. I did tell them, yes. |
| 10:20:49 | 6 | Q. Okay. So and I think you said of those 12 pages, and I |
| 10:20:54 | 7 | know a couple of them I showed to you yesterday, a couple of |
| 10:20:57 | 8 | the pages were not particularly important; is that fair? |
| 10:21:01 | 9 | A. Not -- I mean, they varied in importance in my view. |
| 10:21:08 | 10 | MR. NOLAND: If I could have the ELMO, your Honor. |
| 10:21:09 | 11 | THE COURT: Sure. You told me that before, and I |
| 10:21:12 | 12 | didn't catch up with you. There you go. |
| 10:21:17 | 13 | BY MR. NOLAND: |
| 10:21:33 | 14 | Q. Ms. Lyon, is this one of the pages that was you hadn't |
| 10:21:40 | 15 | seen before that was provided to you? |
| 10:21:42 | 16 | A. Correct. |
| 10:21:42 | 17 | Q. And it's dated January 19th, 2010; is that right? |
| 10:21:46 | 18 | A. Yes. |
| 10:21:46 | 19 | Q. And it looks like it's a to/from memoranda from chief |
| 10:21:55 | 20 | Thomas Byrne of the Chicago Police Department to Al /TPOPB |
| 10:22:02 | 21 | /SKPWHROE /WAOEURB in the Chicago Police Department, right? |
| 10:22:05 | 22 | A. That's what it says it is, yes. |
| 10:22:06 | 23 | Q. We are just reading. |
| 10:22:08 | 24 | And the subject line is a request for information |
| 10:22:13 | 25 | office of legal affairs in a case called l-a-n-z-a, v. City |

***REALTIME UNEDITED TRANSCRIPT ONLY***

11/30/16 AM
Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 36 of 125 PageID #:66523
***REALTIME UNEDITED TRANSCRIPT ONLY***

35

| 10:22:18 | 1 | for the -- that's what it states? |
| 10:22:22 | 2 | A.  Correct. |
| 10:22:22 | 3 | Q.  It would appear that this is a request for information in |
| 10:22:25 | 4 | a civil case for information with respect to? |
| 10:22:29 | 5 | A.  That's what it looks like to me, yes. |
| 10:22:31 | 6 | Q.  And it's dated 2010, right? |
| 10:22:33 | 7 | A.  Correct. |
| 10:22:33 | 8 | Q.  And so the files that you had gathered from the prior |
| 10:22:39 | 9 | attorneys on the case would have within files that they had |
| 10:22:43 | 10 | created before 2010; is that right? |
| 10:22:45 | 11 | A.  Oh, of course, yes. |
| 10:22:46 | 12 | Q.  I didn't identify this for the record.  Thank you. |
| 10:22:53 | 13 | This is -- actually, it's plaintiff's 638 and it's |
| 10:23:01 | 14 | page 33498. |
| 10:23:05 | 15 | So this wouldn't have been a document that you would |
| 10:23:09 | 16 | have expected to find in the files that you had gathered |
| 10:23:12 | 17 | because it actually didn't even exist until after they were |
| 10:23:14 | 18 | done with the case? |
| 10:23:15 | 19 | A.  That's correct. |
| 10:23:16 | 20 | Q.  Am I right that this would have been one of the documents |
| 10:23:19 | 21 | that was not particularly important? |
| 10:23:20 | 22 | A.  That's correct.  Others were, this was not. |
| 10:23:36 | 23 | MR. NOLAND:  Your Honor, may I switch to the |
| 10:23:38 | 24 | computer, please? |
| 10:23:39 | 25 | THE COURT:  Yep. |

| | | |
|---|---|---|
| 10:23:41 | 1 | MR. NOLAND:  Laura, can you pull up page defense 249, |
| 10:23:54 | 2 | Part 2-878. |
| 10:23:58 | 3 | BY MR. NOLAND: |
| 10:24:11 | 4 | Q.  This was the document that was I think shown to you |
| 10:24:14 | 5 | yesterday, one of the documents you said was important that |
| 10:24:17 | 6 | was new to you? |
| 10:24:18 | 7 | A.  Yes. |
| 10:24:24 | 8 | MR. NOLAND:  Laura, if you could just show the whole |
| 10:24:26 | 9 | document.  If you could highlight in the top left-hand corner |
| 10:24:33 | 10 | it says OCC 10 March '03 is that right? |
| 10:24:38 | 11 | THE WITNESS:  That's what it says. |
| 10:24:39 | 12 | BY MR. NOLAND: |
| 10:24:39 | 13 | Q.  That's what it says. |
| 10:24:42 | 14 | MR. NOLAND:  If you could pull upside by side with |
| 10:24:44 | 15 | this document defense 249, part 3, page 1248. |
| 10:24:56 | 16 | BY MR. NOLAND: |
| 10:24:58 | 17 | Q.  Down in the bottom of that document, could you highlight |
| 10:25:01 | 18 | the received 2/20/04 and also the attorney for defendant. |
| 10:25:09 | 19 | BY MR. NOLAND: |
| 10:25:10 | 20 | Q.  Ms. Lyon, can you explain to the ladies and gentlemen of |
| 10:25:13 | 21 | the jury what this document is? |
| 10:25:13 | 22 | A.  This is a way of sort of trying to keep track of discovery |
| 10:25:18 | 23 | that was instituted after some problems between the state.  So |
| 10:25:25 | 24 | when the state turns over certain documents to you, they'll |
| 10:25:29 | 25 | give you a list and it will say this many police reports or |

11/30/16 AM
Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 38 of 125 PageID #:66525
***REALTIME UNEDITED TRANSCRIPT ONLY***

37

| | | |
|---|---|---|
| 10:25:32 | 1 | this many photos and then what you should do as a defense |
| 10:25:35 | 2 | attorney is look through and make sure that the list and what |
| 10:25:38 | 3 | you got are the same and if it is, then you sign and say I got |
| 10:25:41 | 4 | that.  That's basically what it's for. |
| 10:25:50 | 5 | MR. NOLAND:  Laura, if you could highlight the line, |
| 10:26:00 | 6 | can you also highlight the top left-hand corner of the other |
| 10:26:03 | 7 | document. |
| 10:26:10 | 8 | THE WITNESS:  I see that. |
| 10:26:10 | 9 | BY MR. NOLAND: |
| 10:26:11 | 10 | Q.  So this receipt for discovery, Ms. Lyon, indicates that on |
| 10:26:16 | 11 | February 20th, 2004, by the way, this document, this receipt |
| 10:26:26 | 12 | for discovery was signed by it appears to be Elliot zinger, |
| 10:26:29 | 13 | Mr. Fulton's attorney at the time? |
| 10:26:31 | 14 | A.  I assume so.  His handwriting is a little difficult to |
| 10:26:34 | 15 | read, but I shouldn't talk about anybody else's handwriting. |
| 10:26:38 | 16 | Mine is bad too. |
| 10:26:39 | 17 | Q.  So the document shows that Mr. Zinger who was Mr. Fulton's |
| 10:26:46 | 18 | attorney acknowledged receipt of in the middle here one |
| 10:26:54 | 19 | page-four photos, page marked OCC equal 10 March '03; is that |
| 10:26:54 | 20 | right? |
| 10:26:59 | 21 | A.  That's what he signed, yes. |
| 10:27:00 | 22 | Q.  And that's this document, right? |
| 10:27:07 | 23 | MR. NOLAND:  Can you take this stuff off, Laura? |
| 10:27:10 | 24 | Highlight again the 0 cc 10 March 3. |
| 10:27:14 | 25 | THE WITNESS:  It's not necessary.  It appears to me |

Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 39 of 125 PageID #:66526
***REALTIME UNEDITED TRANSCRIPT ONLY***

| | | |
|---|---|---|
| 10:27:17 | 1 | that this was referring to this document.  It was not in the |
| 10:27:21 | 2 | file nor produced by the police in response to the subpoena. |
| 10:27:25 | 3 | It was in the basement file.  I can't tell you if he got it or |
| 10:27:28 | 4 | didn't get it.  I can tell you it wasn't there. |
| 10:27:30 | 5 | MR. NOLAND:  I am not sure there is a question |
| 10:27:32 | 6 | pending. |
| 10:27:32 | 7 | THE WITNESS:  I'm sorry. |
| 10:27:33 | 8 | THE COURT:  The question was is that this document? |
| 10:27:35 | 9 | The answer is stricken as nonresponsive. |
| 10:27:40 | 10 | THE WITNESS:  Sorry. |
| 10:27:41 | 11 | BY MR. NOLAND: |
| 10:27:42 | 12 | Q.  Ms. Lyon, this receipt for discovery shows that the on |
| 10:27:45 | 13 | February 20th, 2004, that the state's attorney's office |
| 10:27:49 | 14 | provided these four photographs to Mr. Zinger, Mr. Fulton's |
| 10:28:02 | 15 | attorney on that date; is that right? |
| 10:28:04 | 16 | A.  It appears to say that, yes. |
| 10:28:29 | 17 | MR. NOLAND:  Laura, could you also pull up page on |
| 10:28:35 | 18 | the left, replace it with page D 249 Part 2, 119. |
| 10:28:48 | 19 | BY MR. NOLAND: |
| 10:28:49 | 20 | Q.  Ms. Lyon, is this I'm showing you a crime scene processing |
| 10:28:54 | 21 | report.   Is this one of the documents that was -- you say was |
| 10:29:02 | 22 | new to you? |
| 10:29:02 | 23 | A.  Yes, although the information was not, you know, not new |
| 10:29:11 | 24 | in the same way other things were, but, yes. |
| 10:29:14 | 25 | Q.  It was a document that you hadn't recognized as receiving |

***REALTIME UNEDITED TRANSCRIPT ONLY***

Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 40 of 125 PageID #:66527

```
10:29:17   1   from Mr. Zinger's file?
10:29:19   2   A.  Or Mr. /PWO*EU's file or Mr. Pullman's file or the Chicago
10:29:26   3   Police Department for that matter.
10:29:28   4              MR. NOLAND:  Judge.
10:29:29   5              THE COURT:  Overruled.  I assume that was an
10:29:32   6   objection.
10:29:32   7   BY MR. NOLAND:
10:29:33   8   Q.  Okay.  Going back to the receipt for discovery on the
10:29:36   9   right?
10:29:36  10   A.  Yes, sir.
10:29:37  11   Q.  Do you see?
10:29:40  12              MR. NOLAND:  Laura, if you could highlight the four
10:29:42  13   lines down.
10:29:44  14   BY MR. NOLAND:
10:29:46  15   Q.  This would indicate that a crime scene, one page crime
10:29:51  16   scene processing report was also tendered to Mr. Zinger on
10:29:57  17   February 20th of 2004; is that right?
10:29:59  18   A.  Yes, it does say that.  I don't know if it's the same one,
10:30:02  19   but, yes.
10:30:12  20              MR. NOLAND:  Laura, can you pull up page -- leave
10:30:16  21   that receipt for discovery there -- page 122, Part 2.  Can you
10:30:38  22   highlight, Laura, in the top left-hand -- leave it on the
10:30:41  23   screen there.  Just highlight it.  Don't tear it out, leave
10:30:46  24   the bomb and arson section, detective division.
10:30:53  25   BY MR. NOLAND:
```

***REALTIME UNEDITED TRANSCRIPT ONLY***

| | | |
|---|---|---|
| 10:30:54 | 1 | Q.  Is this one of the pages, Ms. Lyon, that you didn't get |
| 10:30:58 | 2 | from the prior defense counsel? |
| 10:30:59 | 3 | A.  From any of the sources I previously discussed, yes. |
| 10:31:07 | 4 | MR. NOLAND:  Laura, could you also highlight where I |
| 10:31:10 | 5 | put that cross there, two-page bomb and arson worksheet. |
| 10:31:15 | 6 | BY MR. NOLAND: |
| 10:31:16 | 7 | Q.  Again, Ms. Lyon, it would appear on February 20th, 2004, |
| 10:31:20 | 8 | Mr. Zinger signed for a receipt acknowledging that he had this |
| 10:31:23 | 9 | document too; is that right? |
| 10:31:25 | 10 | A.  I am not sure that I can say that because there is a |
| 10:31:28 | 11 | difference between a report and a worksheet. |
| 10:31:32 | 12 | Q.  Well, in the top left-hand corner, Ms. Lyon, it states |
| 10:31:36 | 13 | this is a bomb and arson worksheet is that true? |
| 10:31:39 | 14 | A.  It does. |
| 10:31:41 | 15 | Q.  And on the right side -- |
| 10:31:44 | 16 | A.  I can't say.  I don't know. |
| 10:31:45 | 17 | THE COURT:  The question was. |
| 10:31:48 | 18 | BY MR. NOLAND: |
| 10:31:48 | 19 | Q.  On the right side it says bomb and arson worksheet? |
| 10:31:51 | 20 | A.  It does, it does. |
| 10:31:54 | 21 | Q.  Laura, can you go to the very next page?  Ms. Lyon, this |
| 10:31:58 | 22 | is the second page of that bomb and arson worksheet? |
| 10:32:02 | 23 | A.  It's the second page, yes, of that report. |
| 10:32:05 | 24 | Q.  And this is another page that you said you hadn't received |
| 10:32:09 | 25 | from prior -- |

***REALTIME UNEDITED TRANSCRIPT ONLY***

***REALTIME UNEDITED TRANSCRIPT ONLY***

10:32:11   1   A.  From all the other sources we discussed, yes.

10:32:17   2        MR. NOLAND:  Laura, can you go to page 2, part 1161.

10:32:27   3   Can you take the highlighting off of the bomb and arson

10:32:30   4   worksheet.  Actually, you know, you can leave it on there.

10:32:33   5   Highlight the next two lines down, the vehicle tow report, a

10:32:39   6   two-pager.  Yeah, there you go.

10:32:49   7   BY MR. NOLAND:

10:32:50   8   Q.  Showing the witness page 1161 on the left, Ms. Lyon,

10:32:54   9   again, this is another page that you're saying you hadn't got

10:32:59  10   from the prior source; is that right?

10:33:01  11   A.  Correct.

10:33:01  12   Q.  And, again, on the discovery receipt, Mr. Zinger received

10:33:04  13   it from the state on February 20th, 2004; is that right?

10:33:07  14   A.  He signed that receipt, yes.

10:33:36  15        MR. NOLAND:  Laura, if you could go to the next page

10:33:38  16   of the discovery receipt which would be 1249, please.  If you

10:33:50  17   could highlight the four lines down, it says 38 pages, GPRs.

10:34:06  18        Can you pull up, Laura, page number -- on the left,

10:34:14  19   page number 1173, please.

10:34:22  20   BY MR. NOLAND:

10:34:22  21   Q.  Ms. Lyon, is this page 1173 a general progress report that

10:34:28  22   you say you hadn't received from those other sources?

10:34:31  23   A.  That's correct.

10:34:35  24        MR. NOLAND:  Could you go, Laura, to 1175, please.

10:34:45  25   BY MR. NOLAND:

Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 43 of 125 PageID #:66530
11/30/16 AM                    ***REALTIME UNEDITED TRANSCRIPT ONLY***

42

10:34:47   1   Q.  Ms. Lyon, is this another general progress report that you

10:34:50   2   hadn't received from the other sources?

10:34:52   3   A.  That's correct.

10:34:52   4   Q.  And then if you go to page 1176, Laura.

10:35:02   5   BY MR. NOLAND:

10:35:03   6   Q.  Am I right that this is another general progress report

10:35:06   7   that you didn't receive from those other sources?

10:35:09   8   A.  Correct.

10:35:09   9   Q.  On the right side we have the discovery receipt again

10:35:11   10  signed on February 20th, 2004, by Mr. Fulton's attorney that

10:35:17   11  he does acknowledge receiving 38 general progress reports that

10:35:20   12  day?

10:35:21   13  A.  He signed that receipt, yes.  It appears that way.  I

10:35:28   14  wasn't there.

10:35:28   15  Q.  It would appear?

10:35:29   16  A.  It would appear that way, yes.

10:35:30   17  Q.  It would appear that he was signing receipt acknowledging

10:35:34   18  receipt of all of these documents we have been talking about

10:35:36   19  here today is that true?

10:35:37   20  A.  It would so appear, yes.

10:35:46   21       MR. NOLAND:  Laura, could you pull up page

10:35:51   22  defendants' 249, part 3, why don't we put this on the right as

10:35:58   23  well, take off the other discovery receipt.  1278, part 3.

10:36:15   24       Could you pull up, Laura, on the left side of the

10:36:19   25  screen page defense 249, Part 2, page 011.

10:36:34  1    Laura, could you highlight the bottom of the

10:36:38  2    right-hand portion of the screen page 1278.  And could you

10:36:49  3    actually put that document on the left back to the way it was,

10:36:52  4    please.

10:36:58  5    Laura, could you highlight the part beginning with

10:37:01  6    all discovery equals all the way to the end of that paragraph,

10:37:08  7    the entirety.

10:37:11  8    BY MR. NOLAND:

10:37:12  9    Q.  Ms. Lyon, this would appear to be another discovery

10:37:14  10   receipt signed by Mr. Zinger in connection with his

10:37:19  11   representation of Jon Fulton on September the 2nd, 2005; is

10:37:19  12   that right?

10:37:24  13   A.  That's what it appears to be, yes.

10:37:26  14   Q.  And can you read the part beginning with all discovery

10:37:30  15   equals just into the record, please, so the jury can hear it?

10:37:34  16   A.  All discovery equals page numbers 5 equals 1 through 1241,

10:37:42  17   period.  Parentheses, because of scrivener's error, pages 266

10:37:50  18   and 571 through 579 do not exist, close parentheses, period.

10:37:56  19   This packet of discovery includes, there's something that's

10:37:58  20   crossed out there, materials previously tendered from defense

10:38:02  21   to state and previously tendered from state to defense,

10:38:07  22   period.

10:38:08  23   Q.  So it looks like during the course of the pretrial

10:38:11  24   proceedings before Mr. Fulton's trial that the parties were --

10:38:16  25   meaning the prosecution and the defense, were exchanging their

Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 45 of 125 PageID #:66532

| | |
|---|---|
| 10:38:19 | 1 |
| 10:38:23 | 2 |
| 10:38:25 | 3 |
| 10:38:29 | 4 |
| 10:38:31 | 5 |
| 10:38:37 | 6 |
| 10:38:39 | 7 |
| 10:38:40 | 8 |
| 10:38:41 | 9 |
| 10:38:45 | 10 |
| 10:38:46 | 11 |
| 10:38:49 | 12 |
| 10:38:52 | 13 |
| 10:39:01 | 14 |
| 10:39:05 | 15 |
| 10:39:06 | 16 |
| 10:39:06 | 17 |
| 10:39:12 | 18 |
| 10:39:14 | 19 |
| 10:39:16 | 20 |
| 10:39:21 | 21 |
| 10:39:22 | 22 |
| 10:39:23 | 23 |
| 10:39:23 | 24 |
| 10:39:26 | 25 |

1  documents and numbering for each other in connection with this

2  discovery receipt; is that fair?

3  A.  It does appear that way, yes.

4       MR. NOLAND:  Laura, if you could highlight the bottom

5  right-hand corner, the circled 1 there on page defendant 249,

6  page 11.

7  BY MR. NOLAND:

8  Q.  That would appear to be a 1, correct?

9  A.  It looks like it to me, or it could be a dash if you're

10  looking at it the other way.

11  Q.  It may be hard to see but on the right-hand side of this

12  screen at the bottom, Laura, can you highlight the RD number?

13  It's actually vertical, H J. 228346.  That would appear --

14  that's the RD number for the case for which Mr. Fulton was

15  convicted, the murder case?

16  A.  Yes, that is.

17  Q.  So that's page 1, right?  It appears to be page 1?

18  A.  I would assume so.

19       MR. NOLAND:  Laura, can you go to the next one, page

20  2, which would be -- in the bottom right-hand corner we have

21  page 2.

22  BY MR. NOLAND:

23  Q.  Right?

24  A.  Yes, that says page 2.

25  Q.  Can you go to the next page, Laura, page 3.  It appears to

| | | |
|---|---|---|
| 10:39:32 | 1 | be page 3, correct? |
| 10:39:33 | 2 | A. Yes. |
| 10:39:33 | 3 | Q. And those Bates stamps were in order. There's page 4. |
| 10:39:40 | 4 | And I am not going to go through them obviously until we get |
| 10:39:46 | 5 | to the numbers. I want to focus your attention on the |
| 10:39:48 | 6 | right-hand side of the screen it says because of scrivener's |
| 10:39:52 | 7 | error pages 266 and 571 through 579 don't exist. Do you see |
| 10:39:59 | 8 | that? |
| 10:39:59 | 9 | A. I do see that. I said that a moment ago. |
| 10:40:02 | 10 | MR. NOLAND: Laura, can you go to page defense page |
| 10:40:18 | 11 | 274, please. Can you highlight the circled number in the |
| 10:40:26 | 12 | bottom right-hand corner. Screen. |
| 10:40:28 | 13 | BY MR. NOLAND: |
| 10:40:28 | 14 | Q. That's page 264, right? |
| 10:40:30 | 15 | A. That's what it looks like, yes. |
| 10:40:31 | 16 | Q. Can you go to just the next page in the entire document. |
| 10:40:35 | 17 | Just go to the next page, page 265. |
| 10:40:37 | 18 | A. I see it. |
| 10:40:38 | 19 | Q. Can you highlight that, Laura. I just want you to go to |
| 10:40:44 | 20 | the very next page and see if it's 266 or some other number. |
| 10:40:49 | 21 | BY MR. NOLAND: |
| 10:40:49 | 22 | Q. Now, this very next page is 267, do you see that? |
| 10:40:53 | 23 | A. I do. |
| 10:40:53 | 24 | Q. And again the Bates number on this one, Laura is what -- |
| 10:40:59 | 25 | Ms. Lyon -- actually, on the bottom right? |

Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 47 of 125 PageID #:66534
11/30/16 AM                ***REALTIME UNEDITED TRANSCRIPT ONLY***

46

| | | |
|---|---|---|
| 10:41:03 | 1 | A. I see that. |
| 10:41:03 | 2 | Q. Okay. And then there's it's page 276, right? |
| 10:41:09 | 3 | A. That's what it says, yes. |
| 10:41:11 | 4 | THE COURT: 267. You're talking about the lower |
| 10:41:16 | 5 | right-hand corner. |
| 10:41:16 | 6 | THE WITNESS: 2-276. |
| 10:41:19 | 7 | BY MR. NOLAND: |
| 10:41:19 | 8 | Q. Just so we're clear and probably confused everybody, the |
| 10:41:22 | 9 | circled number in handwriting is 267? |
| 10:41:25 | 10 | A. Correct. |
| 10:41:25 | 11 | Q. And then the number it starts with D 0249, Part 2, 276, |
| 10:41:31 | 12 | right? |
| 10:41:31 | 13 | A. Correct. |
| 10:41:33 | 14 | MR. NOLAND: Laura, if you could go to the prior page |
| 10:41:36 | 15 | again. |
| 10:41:41 | 16 | BY MR. NOLAND: |
| 10:41:41 | 17 | Q. And the prior page is 265, so there is a gap between 265 |
| 10:41:45 | 18 | and 266, right? |
| 10:41:46 | 19 | A. Correct. |
| 10:41:48 | 20 | Q. And there is the 275 and 276 showing that these are in |
| 10:41:52 | 21 | order, right? |
| 10:41:52 | 22 | A. In order as produced at this time it looks like to me, |
| 10:41:55 | 23 | yes. |
| 10:41:56 | 24 | Q. And, again, referring to the right-hand side of the screen |
| 10:41:58 | 25 | it said because of scrivener's error pages 266 and 571 through |

| | | |
|---|---|---|
| 10:42:05 | 1 | 579 do not exist. That would appear that that's a reference |
| 10:42:08 | 2 | to 266 does not exist, right? |
| 10:42:10 | 3 | A. That's what it appears to be, yes. |
| 10:42:13 | 4 | MR. NOLAND: Laura, can you go to page 578 of Part 2 |
| 10:42:33 | 5 | on the right-hand side of the screen, sorry, on the left-hand |
| 10:42:36 | 6 | side. |
| 10:42:36 | 7 | BY MR. NOLAND: |
| 10:42:36 | 8 | Q. Now, I want to talk about the scrivener's error again for |
| 10:42:39 | 9 | pages 571 through 579. Here's page 569? |
| 10:42:43 | 10 | A. Um-hmm. |
| 10:42:44 | 11 | Q. Which has the typewritten Bates stamp on the bottom of |
| 10:42:47 | 12 | 578? |
| 10:42:48 | 13 | A. I see that. |
| 10:42:49 | 14 | Q. Okay? |
| 10:42:50 | 15 | MR. NOLAND: Laura, go to the next page, please, the |
| 10:42:53 | 16 | very next page in the exhibit. |
| 10:42:54 | 17 | BY MR. NOLAND: |
| 10:42:55 | 18 | Q. This would be 570, so we have 569 and 570, right? |
| 10:43:00 | 19 | A. Um-hmm. |
| 10:43:01 | 20 | Q. Let's see if the next one is 571 or if it skips to 580. |
| 10:43:07 | 21 | Go to the next page, Laura. The very next page in the Bates |
| 10:43:11 | 22 | range on the handwritten range, it's 580 and in the Bates |
| 10:43:15 | 23 | range on the bottom which is sequential is also 580, do you |
| 10:43:19 | 24 | see that? |
| 10:43:20 | 25 | A. Yes, I do. |

| | | |
|---|---|---|
| 10:43:20 | 1 | Q.  Again, this would appear to be reflecting the scrivener's |
| 10:43:24 | 2 | error that is noted in receipt for discovery which Mr. Zinger |
| 10:43:27 | 3 | acknowledged signing and getting these documents on September |
| 10:43:33 | 4 | 2nd, 2005? |
| 10:43:34 | 5 | A.  That would be correct. |
| 10:43:35 | 6 | Q.  Okay? |
| 10:43:47 | 7 | MR. NOLAND:  Lawyer are, go -- |
| 10:43:48 | 8 | BY MR. NOLAND: |
| 10:43:49 | 9 | Q.  Ms. Lyon, going back to the documents we talked about |
| 10:43:52 | 10 | earlier, can you pull up once again those photographs page |
| 10:44:00 | 11 | Part 2, 878.  Can you highlight that number in the bottom |
| 10:44:10 | 12 | reasoned.  There you go 888. |
| 10:44:10 | 13 | BY MR. NOLAND: |
| 10:44:16 | 14 | Q.  Do you see there again is a circle of '888 on this |
| 10:44:21 | 15 | grouping of four photographs that you said -- that you hadn't |
| 10:44:25 | 16 | seen before when you gathered the documents, right? |
| 10:44:27 | 17 | A.  From all the different sources, that's correct. |
| 10:44:29 | 18 | Q.  And this receipt for discovery would indicate that |
| 10:44:36 | 19 | Mr. Zinger actually got this document again on September the |
| 10:44:39 | 20 | 2nd, 2005, in advance of Mr. Fulton's criminal trial; is that |
| 10:44:39 | 21 | right? |
| 10:44:45 | 22 | A.  He signed the receipt, yes. |
| 10:44:51 | 23 | MR. NOLAND:  Laura, if you could go to page Part 2, |
| 10:44:55 | 24 | 119. |
| 10:45:04 | 25 | BY MR. NOLAND: |

11/30/16 AM
Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 50 of 125 PageID #:66537
***REALTIME UNEDITED TRANSCRIPT ONLY***

49

| | | |
|---|---|---|
| 10:45:05 | 1 | Q.  This is the crime scene processing report that we talked |
| 10:45:08 | 2 | about earlier, the other receipt for discovery showed had been |
| 10:45:12 | 3 | tendered, right? |
| 10:45:13 | 4 | A.  Yes, that Mr. Zinger signed. |
| 10:45:14 | 5 | Q.  And again on this page, there's page 109 in this sequence |
| 10:45:17 | 6 | of 1 through 1241 on the receipt on the right-hand side of the |
| 10:45:22 | 7 | screen, right? |
| 10:45:23 | 8 | A.  Correct. |
| 10:45:29 | 9 |         MR. NOLAND:  Laura, if you could pull up on the left, |
| 10:45:33 | 10 | page 2-12. |
| 10:45:33 | 11 | BY MR. NOLAND: |
| 10:45:37 | 12 | Q.  Here is that bomb and arson worksheet again that we looked |
| 10:45:40 | 13 | at a few minutes ago, right? |
| 10:45:42 | 14 | A.  Yes, sir. |
| 10:45:42 | 15 | Q.  Is there a handwritten number in the bottom right-hand |
| 10:45:45 | 16 | side again? |
| 10:45:45 | 17 | A.  There is. |
| 10:45:46 | 18 | Q.  What's that? |
| 10:45:46 | 19 | A.  112 it appears. |
| 10:45:49 | 20 |         MR. NOLAND:  Laura, can you go to the next page of |
| 10:45:53 | 21 | page 123. |
| 10:45:56 | 22 | BY MR. NOLAND: |
| 10:45:56 | 23 | Q.  Again, in the bottom right-hand corner there is a |
| 10:45:59 | 24 | handwritten 113, right? |
| 10:46:00 | 25 | A.  Yes. |

| | | |
|---|---|---|
| 10:46:00 | 1 | Q. And these are all the pages that you hadn't received |
| 10:46:03 | 2 | before from the other sources, right? |
| 10:46:05 | 3 | A. Correct. |
| 10:46:06 | 4 | MR. NOLAND: Laura, could you go to page 1161. |
| 10:46:13 | 5 | BY MR. NOLAND: |
| 10:46:14 | 6 | Q. This is that vehicle tow report we talked about a little |
| 10:46:17 | 7 | while ago, right? |
| 10:46:18 | 8 | A. Yes. |
| 10:46:18 | 9 | Q. And? |
| 10:46:20 | 10 | A. It looks like 1171. |
| 10:46:22 | 11 | Q. 1171. Sorry. I got the number wrong. |
| 10:46:26 | 12 | Again, this would be another number in this sequence |
| 10:46:30 | 13 | that had been signed for by Mr. Zinger on that date? |
| 10:46:35 | 14 | A. It does appear so, yes. |
| 10:46:36 | 15 | Q. Laura, if you could go to page Part 2, 1168. Now we |
| 10:46:43 | 16 | hadn't shown the jury this one before, but Ms. Lyon, is this |
| 10:46:46 | 17 | another one of the documents that you hadn't -- you didn't |
| 10:46:50 | 18 | have from the prior sources? |
| 10:46:52 | 19 | A. The prior sources, yes. |
| 10:46:53 | 20 | Q. Again, this has the 1178 handwritten number indicating |
| 10:46:56 | 21 | that it was on that receipt for discovery proving production |
| 10:47:03 | 22 | -- strike that. |
| 10:47:03 | 23 | This document, page 1178, would be within that range |
| 10:47:08 | 24 | of the documents that Mr. Zinger signed for on September the |
| 10:47:14 | 25 | 2nd, 2005? |

Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 52 of 125 PageID #:66539
11/30/16 AM ***REALTIME UNEDITED TRANSCRIPT ONLY***

51

10:47:15   1    A.  Right.

10:47:15   2    Q.  Just one more.

10:47:51   3         So just to recap, Ms. Lyon, based on these two

10:47:54   4    receipts for discovery, they would show that Mr. Zinger had

10:47:56   5    received these documents that we have been talking about that

10:48:01   6    you didn't get from him or these other sources first in 2004,

10:48:08   7    correct?

10:48:08   8    A.  It shows he signed a receipt for them, yes.

10:48:11   9    Q.  And then he signed another receipt for them in 2005,

10:48:15   10    correct?

10:48:15   11    A.  Correct.

10:48:20   12         MR. NOLAND:  If I may have a moment, your Honor.

10:48:22   13         THE COURT:  Sure.

10:48:33   14         MR. NOLAND:  Thank you very much, Ms. Lyon.

10:48:37   15         THE COURT:  Mr. Kulwin, do you have questions?

10:48:38   16         MR. KULWIN:  No, your Honor.

10:48:39   17         THE COURT:  Mr. Swaminathan.  Redirect Examination.

10:48:45   18    BY MR. SWAMINATHAN:

10:48:46   19    Q.  Ms. Lyon, a couple questions.

10:48:48   20         First, just to be clear, you got involved in this

10:48:50   21    case -- can you tell us approximately when you got involved in

10:48:53   22    the case?

10:48:53   23    A.  It would have been sometime in 2011.  I am not a hundred

10:48:57   24    percent sure.  I believe probably February, but I am not a

10:48:59   25    hundred percent sure of the date.

11/30/16 AM ***REALTIME UNEDITED TRANSCRIPT ONLY***

| | |
|---|---|
| 10:49:00 | 1 | Q. And so then you issued -- we talked about some of the |
| 10:49:03 | 2 | things you did including getting documents from criminal |
| 10:49:05 | 3 | defense attorneys, correct? |
| 10:49:06 | 4 | A. Correct. |
| 10:49:06 | 5 | Q. And in addition to that, you issued a subpoena to the |
| 10:49:09 | 6 | Chicago Police Department, correct? |
| 10:49:10 | 7 | A. I did after we filed in December, in December. |
| 10:49:14 | 8 | Q. And what did you basically ask the Chicago Police |
| 10:49:15 | 9 | Department for? |
| 10:49:16 | 10 | A. Any and all police reports, street files, you know, notes, |
| 10:49:20 | 11 | investigative reports, you know, basically please give me your |
| 10:49:23 | 12 | kitchen sink, whatever is in it. |
| 10:49:25 | 13 | Q. And in response to that, they gave you certain material, |
| 10:49:28 | 14 | correct? |
| 10:49:28 | 15 | A. They did. |
| 10:49:29 | 16 | Q. And was the dealer they gave you all material that you |
| 10:49:32 | 17 | already had in your file from the criminal defense attorneys? |
| 10:49:34 | 18 | A. It was. |
| 10:49:35 | 19 | Q. Did they give you this file, the basement file for |
| 10:49:42 | 20 | Mr. Fulton? |
| 10:49:42 | 21 | A. When I did the original subpoena, no. |
| 10:49:44 | 22 | Q. Later on, later on you learned that there was a basement |
| 10:49:48 | 23 | file for Mr. Fulton, correct? |
| 10:49:49 | 24 | A. I did. |
| 10:49:50 | 25 | Q. You learned that after it was revealed that there was one |

***REALTIME UNEDITED TRANSCRIPT ONLY***

11/30/16 AM
Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 54 of 125 PageID #:66541
***REALTIME UNEDITED TRANSCRIPT ONLY***

53

| | | |
|---|---|---|
| 10:49:52 | 1 | for Mr. Fields that hadn't been tendered long ago, correct? |
| 10:49:56 | 2 | A.  Correct. |
| 10:49:56 | 3 | Q.  After you learned that, after you issued the subpoena to |
| 10:49:59 | 4 | the Chicago Police Department and gotten documents, then you |
| 10:50:02 | 5 | made a special request now that you knew about the basement |
| 10:50:04 | 6 | file for the basement file, correct? |
| 10:50:07 | 7 | A.  Correct. |
| 10:50:08 | 8 | Q.  Okay.  And at that time you had a basement file produced |
| 10:50:12 | 9 | to you and you conducted a review is that right? |
| 10:50:14 | 10 | A.  I did. |
| 10:50:14 | 11 | Q.  And based on that review then you were able to determine |
| 10:50:17 | 12 | that these pages had not been produced to you, correct? |
| 10:50:20 | 13 | A.  Correct. |
| 10:50:20 | 14 | Q.  Okay.  And that's the pages that Mr. Noland was asking you |
| 10:50:23 | 15 | about, correct? |
| 10:50:24 | 16 | A.  Correct. |
| 10:50:24 | 17 | Q.  Okay.  Now, those page, are you confident that you did not |
| 10:50:27 | 18 | have those pages in your file? |
| 10:50:28 | 19 | A.  Until I got the basement file, yes, I am confident about |
| 10:50:32 | 20 | that. |
| 10:50:32 | 21 | Q.  Now, he asked you about a number of the documents in the |
| 10:50:38 | 22 | file and I'll just go through a couple.  I am not going to go |
| 10:50:45 | 23 | through all of them. |
| 10:50:47 | 24 | MR. SWAMINATHAN:  Judge, could you put the ELMO back |
| 10:50:49 | 25 | on? |

Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 55 of 125 PageID #:66542
11/30/16 AM                    ***REALTIME UNEDITED TRANSCRIPT ONLY***

54

| 10:50:49 | 1 | THE COURT:  Sure. |
| 10:50:53 | 2 | BY MR. SWAMINATHAN: |
| 10:50:55 | 3 | Q.  So, for example, he asked you about this document? |
| 10:50:58 | 4 | A.  Right. |
| 10:50:59 | 5 | Q.  You are confident that this is one of the documents that |
| 10:51:03 | 6 | was not given to you previously by the Chicago Police |
| 10:51:05 | 7 | Department in response to your subpoena around 2012? |
| 10:51:07 | 8 | A.  Correct. |
| 10:51:07 | 9 | Q.  Okay.  Now, this document it's a reference to a case named |
| 10:51:17 | 10 | Lanza, is that of any relevance or is that notable to you at |
| 10:51:20 | 11 | all? |
| 10:51:20 | 12 | MR. NOLAND:  Judge, objection. |
| 10:51:23 | 13 | THE COURT:  Put the question again.  Lanza.  I was |
| 10:51:27 | 14 | trying to figure out where it was on the page.  Can I see the |
| 10:51:32 | 15 | lawyers at sidebar, please. |
| 10:51:43 | 16 | THE COURT:  You folks obviously know more than I do. |
| 10:51:45 | 17 | What's the issue or problem here? |
| 10:51:47 | 18 | MR. NOLAND:  I think she acknowledged that document, |
| 10:51:50 | 19 | she wouldn't have expected to see that before.  I believe that |
| 10:51:54 | 20 | involved a lawsuit that the plaintiff's law firm handled and |
| 10:51:57 | 21 | they obtained a judgment against bar tech and so that would be |
| 10:52:02 | 22 | unduly prejudicial.  I think it's been gone over before.  I |
| 10:52:06 | 23 | didn't get anything other than what the document is. |
| 10:52:08 | 24 | MR. SWAMINATHAN:  He asked her is this document |
| 10:52:12 | 25 | important and my understanding, my understanding is she would |

Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 56 of 125 PageID #:66543
11/30/16 AM
***REALTIME UNEDITED TRANSCRIPT ONLY***

55

| | | |
|---|---|---|
| 10:52:15 | 1 | testify that this document is not important.  It was actually |
| 10:52:17 | 2 | notable to her that there was a case going in 2010 because the |
| 10:52:24 | 3 | idea is just to say even which he is suggesting is unimportant |
| 10:52:28 | 4 | is important to her.  So the basement file -- |
| 10:52:31 | 5 | THE COURT:  The lawsuit postdated the -- the lawsuit |
| 10:52:34 | 6 | postdated the prosecution of the criminal case, right? |
| 10:52:37 | 7 | MR. SWAMINATHAN:  That is true. |
| 10:52:38 | 8 | THE COURT:  I am going to exclude it under 403. |
| 10:52:41 | 9 | (The following proceedings were had in open court in the |
| 10:52:46 | 10 | presence and hearing of the jury:) |
| 10:52:46 | 11 | THE COURT:  Okay.  The objection is sustained.  You |
| 10:52:49 | 12 | can proceed. |
| 10:52:50 | 13 | BY MR. SWAMINATHAN: |
| 10:52:51 | 14 | Q.  This is another document that they showed you? |
| 10:52:54 | 15 | A.  Correct. |
| 10:52:54 | 16 | Q.  And you testified a little bit about this document |
| 10:52:56 | 17 | previously.  Is this gentleman Mr. Fulton? |
| 10:52:58 | 18 | A.  Yes. |
| 10:52:58 | 19 | Q.  And you explained previously the relevance -- strike that. |
| 10:53:02 | 20 | You explained previously why this document was |
| 10:53:05 | 21 | notable to you? |
| 10:53:06 | 22 | MR. NOLAND:  Objection, this is beyond the scope. |
| 10:53:08 | 23 | THE COURT:  Hang on a second.  I don't think I got |
| 10:53:13 | 24 | enough of a question yet to figure out whether it's beyond the |
| 10:53:16 | 25 | scope or not.  Go ahead. |

11/30/16 AM
Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 57 of 125 PageID #:66544
***REALTIME UNEDITED TRANSCRIPT ONLY***

56

| | | |
|---|---|---|
| 10:53:17 | 1 | BY MR. SWAMINATHAN: |
| 10:53:18 | 2 | Q.  Now, was this document produced to you in response to your |
| 10:53:20 | 3 | subpoena to the Chicago Police Department? |
| 10:53:23 | 4 | THE COURT:  The objection is overruled. |
| 10:53:24 | 5 | THE WITNESS:  It was not. |
| 10:53:25 | 6 | BY MR. SWAMINATHAN: |
| 10:53:26 | 7 | Q.  Okay.  And each of the other documents that were shown to |
| 10:53:30 | 8 | you by counsel, I am not going doing through all of them now, |
| 10:53:33 | 9 | were they produced to you in response to your subpoena to the |
| 10:53:36 | 10 | Chicago Police Department? |
| 10:53:37 | 11 | A.  They were not. |
| 10:53:38 | 12 | Q.  Okay.  So when you asked the police department for a file, |
| 10:53:41 | 13 | those documents were not given to you? |
| 10:53:43 | 14 | A.  Correct. |
| 10:53:46 | 15 | MR. NOLAND:  Objection. |
| 10:53:46 | 16 | THE COURT:  What? |
| 10:53:48 | 17 | MR. NOLAND:  Objection, asked and answered. |
| 10:53:49 | 18 | THE COURT:  Overruled. |
| 10:53:51 | 19 | BY MR. SWAMINATHAN: |
| 10:53:56 | 20 | Q.  So your understanding in response to the subpoena that you |
| 10:53:59 | 21 | made to the Chicago Police Department before you ever learned |
| 10:54:01 | 22 | of there being a basement file, they went and produced some |
| 10:54:05 | 23 | material to you but they didn't go into the file and get this |
| 10:54:08 | 24 | file? |
| 10:54:09 | 25 | MR. NOLAND:  Objection, your Honor. |

11/30/16 AM
Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 58 of 125 PageID #:66545
***REALTIME UNEDITED TRANSCRIPT ONLY***

57

| | | |
|---|---|---|
| 10:54:11 | 1 | THE COURT: Sustained. |
| 10:54:11 | 2 | THE COURT: Leave it for argument. |
| 10:54:13 | 3 | BY MR. SWAMINATHAN: |
| 10:54:14 | 4 | Q. Now, I want to turn back -- let me ask you about one more |
| 10:54:22 | 5 | document that you reviewed. |
| 10:54:23 | 6 | They showed you a few documents called GPRs. |
| 10:54:27 | 7 | A. Yes. |
| 10:54:27 | 8 | Q. Correct? |
| 10:54:28 | 9 | Now, counsel showed you a discovery receipt related |
| 10:54:33 | 10 | to 38 GPRs, right? |
| 10:54:35 | 11 | A. Correct. |
| 10:54:35 | 12 | Q. It just said 38 GPRs on it? |
| 10:54:39 | 13 | A. Correct. |
| 10:54:39 | 14 | Q. Do you have any idea whether or not this specific GPR was |
| 10:54:42 | 15 | in there? |
| 10:54:42 | 16 | A. I have no personal knowledge that it was. |
| 10:54:44 | 17 | Q. Was this one of the documents that you talked about -- we |
| 10:54:50 | 18 | talked about some documents yesterday that I didn't show you |
| 10:54:53 | 19 | and I said were there other documents that were useful to you? |
| 10:54:55 | 20 | A. Yes. |
| 10:54:55 | 21 | Q. Was this one of the documents that you were referring to? |
| 10:54:58 | 22 | A. Yes. |
| 10:54:58 | 23 | Q. And this was not given to you in response to your subpoena |
| 10:55:02 | 24 | to the Chicago Police Department? |
| 10:55:02 | 25 | A. It was not. |

| 10:55:02 | 1 | Q. And this is the last document I want to talk to you about. |
|---|---|---|

10:55:02  1   Q. And this is the last document I want to talk to you about.

10:55:09  2   We talked about a number of documents.  Counsel showed you a

10:55:11  3   number of documents.  He didn't show you this document,

10:55:14  4   correct?

10:55:15  5         MR. NOLAND:  Objection.  Beyond the scope.

10:55:18  6         THE COURT:  Overruled.

10:55:21  7         THE WITNESS:  He did not.

10:55:22  8         MR. SWAMINATHAN:  Okay.  Now, he didn't show you any

10:55:24  9   discovery receipt to suggest that this document had --

10:55:27  10         THE COURT:  Let's just ask questions about whether --

10:55:29  11   not about whether or not somebody else did or didn't show

10:55:32  12   something.

10:55:33  13   BY MR. SWAMINATHAN:

10:55:33  14   Q. Was there any indication on the discovery receipt that you

10:55:36  15   were shown that this document was produced to the criminal

10:55:38  16   defense attorneys?

10:55:38  17   A. There was not.

10:55:39  18   Q. Is there any indication on this document that it has an

10:55:42  19   OCC number or a circled number in the bottom right corner?

10:55:46  20   A. There is not either number.

10:55:48  21   Q. You were asked some questions about the importance of

10:55:53  22   documents.  Talked a little bit about this document yesterday.

10:56:04  23   Your testimony is --

10:56:05  24         MR. NOLAND:  Objection, beyond the scope.

10:56:10  25         MR. SWAMINATHAN:  This document --

***REALTIME UNEDITED TRANSCRIPT ONLY***

| | |
|---|---|
| 10:56:11 | 1 |
| 10:56:13 | 2 |
| 10:56:19 | 3 |
| 10:56:20 | 4 |
| 10:56:22 | 5 |
| 10:56:26 | 6 |
| 10:56:29 | 7 |
| 10:56:30 | 8 |
| 10:56:31 | 9 |
| 10:56:34 | 10 |
| 10:56:35 | 11 |
| 10:56:37 | 12 |
| 10:56:41 | 13 |
| 10:56:42 | 14 |
| 10:56:43 | 15 |
| 10:56:44 | 16 |
| 10:56:45 | 17 |
| 10:56:48 | 18 |
| 10:56:52 | 19 |
| 10:56:55 | 20 |
| 10:56:58 | 21 |
| 10:57:01 | 22 |
| 10:57:02 | 23 |
| 10:57:04 | 24 |
| 10:57:08 | 25 |

1  THE COURT:  Adds I said this, I am not a mind reader.

2  I can't figure out whether a question is proper or not after

3  hearing only 30 percent of it.  Go ahead.

4  BY MR. SWAMINATHAN:

5  Q.  This document leads you to believe that this may lead to a

6  potential perpetrator of the crime?

7  MR. NOLAND:  Objection.

8  THE COURT:  Overruled.

9  THE WITNESS:  Correct.

10  BY MR. SWAMINATHAN:

11  Q.  If you look at this document in isolation, isn't it

12  possible that someone could be mistaken to think that this is

13  not a particularly notable document?

14  MR. NOLAND:  Objection, Judge.

15  THE COURT:  Sustained.

16  BY MR. SWAMINATHAN:

17  Q.  This document, would you agree, is basically some

18  scribbles of numbers and a few names?

19  MR. NOLAND:  Objection, Judge.

20  THE COURT:  While everybody is looking at it, they

21  can see what it is.

22  BY MR. SWAMINATHAN:

23  Q.  Someone looking at this document in isolation, could they

24  reasonably look at it in isolation and say this doesn't seem

25  particularly notable?

***REALTIME UNEDITED TRANSCRIPT ONLY***

11/30/16 AM                    ***REALTIME UNEDITED TRANSCRIPT ONLY***

60

| 10:57:09 | 1 | MR. NOLAND: Objection. |
| 10:57:10 | 2 | THE WITNESS: I suppose they could. |
| 10:57:11 | 3 | THE COURT: The objection is overruled and the answer |
| 10:57:13 | 4 | can stand. |
| 10:57:15 | 5 | BY MR. SWAMINATHAN: |
| 10:57:16 | 6 | Q. Now, if based on what you know of someone who is handling |
| 10:57:18 | 7 | this file, that isn't actually true; is that correct? |
| 10:57:22 | 8 | A. That's correct. |
| 10:57:23 | 9 | MR. NOLAND: Objection. |
| 10:57:24 | 10 | THE COURT: What's the basis for the objection? |
| 10:57:25 | 11 | MR. NOLAND: Argumentative. |
| 10:57:28 | 12 | THE COURT: Overruled. |
| 10:57:30 | 13 | BY MR. SWAMINATHAN: |
| 10:57:31 | 14 | Q. This document proved to be useful to you, correct? |
| 10:57:33 | 15 | A. It is proving to be useful right now. |
| 10:57:35 | 16 | Q. And in your career, is it your experience that sometimes |
| 10:57:40 | 17 | small, little scribbles on a page have proven to be useful to |
| 10:57:46 | 18 | you in your cases? |
| 10:57:46 | 19 | A. They have turned the whole case sometimes. |
| 10:57:48 | 20 | MR. KULWIN: Calls for expert. |
| 10:57:50 | 21 | THE COURT: Overruled. I don't agree with that. |
| 10:57:52 | 22 | BY MR. SWAMINATHAN: |
| 10:57:53 | 23 | Q. Go ahead. |
| 10:57:53 | 24 | A. Sometimes a small detail like this will lead to something |
| 10:57:58 | 25 | really, really important in a case and how to exonerate |

***REALTIME UNEDITED TRANSCRIPT ONLY***

| | | |
|---|---|---|
| 10:58:00 | 1 | somebody, yes. |
| 10:58:02 | 2 | MR. SWAMINATHAN:  Nothing further. |
| 10:58:03 | 3 | THE COURT:  Mr. Noland. |
| 10:58:08 | 4 | - - - |
| 10:58:08 | 5 | ANDREA LYON, RECROSS-EXAMINATION |
| 10:58:08 | 6 | BY MR. NOLAND: |
| 10:58:17 | 7 | Q.  Counsel showed you this page and said that -- talked about |
| 10:58:22 | 8 | the 38 GPRs.  Do you remember that just a moment ago? |
| 10:58:24 | 9 | A.  Yes. |
| 10:58:24 | 10 | Q.  Now, this was one of the pages in the bottom right-hand |
| 10:58:32 | 11 | corner that had the handwritten page 1185 that it was |
| 10:58:37 | 12 | acknowledging receipt by the actual criminal defense attorney |
| 10:58:41 | 13 | at the time of the trial, right? |
| 10:58:43 | 14 | A.  There is a signature on a receipt that says pages -- I |
| 10:58:46 | 15 | forgot, 1 to 1241. |
| 10:58:49 | 16 | Q.  Yes. |
| 10:58:52 | 17 | A.  So, yes, there is such a signature. |
| 10:58:54 | 18 | Q.  Those receipts establish that all the documents that we |
| 10:58:57 | 19 | have been talking about except for that last one were signed |
| 10:59:00 | 20 | for by Mr. Zinger in 2004 and in 2005; is that right? |
| 10:59:05 | 21 | A.  It shows that he signed the receipt.  I have no way of |
| 10:59:08 | 22 | knowing if he sat there and went through and made sure that |
| 10:59:11 | 23 | there were actually 38 pages.  I have no way of knowing that. |
| 10:59:14 | 24 | I do know that he signed the receipt.  That I do know. |
| 10:59:16 | 25 | Q.  And the purpose of the discovery receipt is to have a |

Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 63 of 125 PageID #:66550

| | | |
|---|---|---|
| 10:59:19 | 1 | record that the state had tendered information to the criminal |
| 10:59:23 | 2 | defense attorney in advance of the criminal trial; is that |
| 10:59:23 | 3 | right? |
| 10:59:26 | 4 | A. That's right, and a careful lawyer would -- |
| 10:59:29 | 5 | THE COURT: The answer is that's right. The rest of |
| 10:59:31 | 6 | it is stricken. |
| 10:59:31 | 7 | MR. NOLAND: Thank you. |
| 10:59:33 | 8 | - - - |
| 10:59:33 | 9 | ANDREA LYON, REDIRECT EXAMINATION |
| 10:59:37 | 10 | BY MR. NOLAND: |
| 10:59:37 | 11 | Q. Was that document produced to you in response to your |
| 10:59:42 | 12 | request from the police department? |
| 10:59:43 | 13 | A. No. |
| 10:59:51 | 14 | MR. NOLAND: Objection. |
| 10:59:52 | 15 | THE COURT: Overruled. Any questions. |
| 11:00:11 | 16 | (The following proceedings were had at sidebar outside the |
| 11:00:15 | 17 | hearing of the jury:) |
| 11:00:15 | 18 | THE COURT: We had one from yesterday that -- you may |
| 11:00:20 | 19 | recall that there was an objection during or when going |
| 11:00:25 | 20 | through the background and I said shorten it up. One of the |
| 11:00:28 | 21 | jurors yesterday handed me. Provide a brief work history from |
| 11:00:32 | 22 | Andrea Lyon from 1979 until she became dean of Valparaiso, so |
| 11:00:35 | 23 | I am going to allow her to do that. |
| 11:00:38 | 24 | The other one is two questions. Can a juror ask a |
| 11:00:39 | 25 | witness their opinion? If not, then disregard. Second page, |

| 11:00:43 | 1 | what is your opinion on why the CPD did not give you the |

11:00:43    1    what is your opinion on why the CPD did not give you the

11:00:46    2    basement file in response to your subpoena?

11:00:48    3          The answer is no, she can't give her opinion on that.

11:00:51    4    And so I am not going to ask that question.  I am not going to

11:00:54    5    tell her why.  I am just going to say don't speculate.

11:00:59    6          MR. KULWIN:  Judge, with respect to her background, I

11:01:01    7    mean --

11:01:03    8          THE COURT:  You have to be louder.

11:01:03    9          MR. KULWIN:  With respect to her background,.

11:01:03    10          THE COURT:  I am going to ask her her work history.

11:01:05    11    I didn't say background, work history, which has been done

11:01:09    12    with every other witness.  Okay?

11:01:17    13     (The following proceedings were had in open court in the

11:01:17    14    presence and hearing of the jury:)

11:01:17    15          THE COURT:  One of these was from yesterday.  I think

11:01:21    16    when you were being questioned about your work history, you

11:01:24    17    got cut off someplace.  What jobs did you hold from 79 until

11:01:27    18    you became dean of the law school in Valparaiso?

11:01:31    19          THE WITNESS:  I was in the public defender office in

11:01:34    20    1990, then I ran an agency called the capital resource center.

11:01:38    21          THE COURT:  From when?

11:01:41    22          THE WITNESS:  1990 to 1995.  Then I joined the

11:01:43    23    University of Michigan faculty from 1995 to 2000.

11:01:46    24          THE COURT:  The law school or undergrad?

11:01:49    25          THE WITNESS:  The law school.  Then I turned to

| | | |
|---|---|---|
| 11:01:51 | 1 | Chicago and joined the DePaul University law school faculty |
| 11:01:54 | 2 | there and worked there, became the dean of the clinical |
| 11:01:57 | 3 | programs there in 2006 I think that's right, no, 2008, I'm |
| 11:02:05 | 4 | sorry. |
| 11:02:05 | 5 | THE COURT:  There until Valparaiso. |
| 11:02:08 | 6 | THE WITNESS:  Then I went to Valparaiso in 2014. |
| 11:02:12 | 7 | THE COURT:  There is one other question I am not |
| 11:02:14 | 8 | going to ask.  I just remind the jury don't speculate on what |
| 11:02:18 | 9 | the answers might have been.  We are going to take a short |
| 11:02:26 | 10 | break.  I will take the jury out and come back right.    (The |
| 11:02:56 | 11 | jury leaves the courtroom.) |
| 11:02:56 | 12 | THE COURT:  So the marshals are going to bring |
| 11:03:03 | 13 | Mr. Kees down once the jury is in the jury room.  Let me just |
| 11:03:06 | 14 | make sure that's happening.  I am hoping that the fact that |
| 11:03:25 | 15 | people are hovering by the podium does not moan you want to |
| 11:03:30 | 16 | raise more issues with me. |
| 11:03:31 | 17 | MR. KULWIN:  I don't. |
| 11:03:32 | 18 | THE COURT:  People being Mr. Loevy. |
| 11:03:33 | 19 | MR. LOEVY:  I have a motion to reconsider a motion |
| 11:03:36 | 20 | that I not be allowed to raise an issue. |
| 11:03:38 | 21 | THE COURT:  What's the issue? |
| 11:03:39 | 22 | MR. LOEVY:  He just got a deal to testify in the case |
| 11:03:43 | 23 | by the U.S. Attorney's Office.  He has been prepped by Bill |
| 11:03:47 | 24 | Hogan to testify in this case. |
| 11:03:48 | 25 | THE COURT:  How do you know that. |

11:03:49    1         MR. LOEVY:  His attorney told.

11:03:51    2         THE COURT:  How do you know he was prepped by

11:03:53    3    Mr. Hogan?

11:03:53    4         MR. LOEVY:  I don't know.  I withdraw it.  But he has

11:03:55    5    not -- before the last trial --

11:03:57    6         THE COURT:  What is the ruling that you want me to

11:03:59    7    reconsider?

11:03:59    8         MR. LOEVY:  To not advise him not to volunteer the

11:04:04    9    Tredeste Murray incident, what he heard about the murder and

11:04:07   10    anything about Mr. Fields' criminal background.

11:04:09   11         THE COURT:  Hang on just one second.

11:04:12   12         MR. LOEVY:  Before the last trial, he was warned by

11:04:14   13    attorneys explained in the motion in limine in 2014.  This

11:04:18   14    time it's been years that anybody's explained the motions.

11:04:21   15         THE COURT:  I follow what you're saying.

11:04:23   16         MR. LOEVY:  Nobody has told him.

11:04:24   17         MR. KULWIN:  I don't care.

11:04:25   18         THE COURT:  I assume nobody has a problem with that.

11:04:27   19         MR. NOLAND:  The criminal background, Mr. Kees has

11:04:30   20    testified in 2014 that at some point after Mr. Fields was

11:04:37   21    released from prison.

11:04:37   22         THE COURT:  So what I would say to him is that

11:04:40   23    there's not going to be any questions to him about the

11:04:44   24    Tredeste Murray incident, there's not going to be any

11:04:46   25    questions to him about Mr. Fields' prior convictions other

11:04:50    1    than the Smith/Hickman murder, and there's not going to be any

11:04:53    2    questions to him about what was the third thing?

11:04:56    3              MR. LOEVY:  What he heard about the murder from other

11:04:58    4    people.

11:04:58    5              THE COURT:  What he heard about the murder from

11:05:00    6    people other than Mr. Fields.

11:05:02    7              MR. KULWIN:  No, Judge, no, you let that precise

11:05:05    8    testimony in the last trial.  There was -- no.

11:05:12    9              THE COURT:  Page.  I am -- I said at page 15 of my

11:05:16   10    ruling on certain motions in limine, document number 629 Kees

11:05:23   11    may not testify regarding what he heard the next day about who

11:05:26   12    had committed the murders or why certain persons including

11:05:29   13    Fields were chosen for the assignment.  That testimony is

11:05:31   14    hearsay and possibly second or third left hearsay not subject

11:05:35   15    to any exception established by defendants.

11:05:38   16              MR. KULWIN:  Judge, here is the exact testimony that

11:05:40   17    was let in.  Do you want me to read it to you?

11:05:44   18              THE COURT:  No, I want to look at it.  This is page

11:05:47   19    2449.  It looks like at page 2449, he was asked about

11:06:18   20    conversation at the Al Hambra on April 29th with Charles

11:06:25   21    Green, Earl Hawkins, no Mr. Fields was there.

11:06:27   22              MR. KULWIN:  Right.

11:06:28   23              MR. LOEVY:  The confession is okay.

11:06:32   24              MR. KULWIN:  It's to put the rest of the statements

11:06:33   25    in context.  As long as I can bring that conversation up.


                     ***REALTIME UNEDITED TRANSCRIPT ONLY***

| | | |
|---|---|---|
| 11:06:36 | 1 | Fields is there. |
| 11:06:37 | 2 | THE COURT:  You can bring this conversation up. |
| 11:06:39 | 3 | MR. KULWIN:  Thanks. |
| 11:06:40 | 4 | THE COURT:  I am going to leave that alone.  I am |
| 11:06:42 | 5 | just going to talk to him about Tredeste Murray and prior |
| 11:06:45 | 6 | criminal history.  That's it.  Okay?  No more issues before he |
| 11:06:49 | 7 | starts. |
| 11:06:49 | 8 | MR. KULWIN:  Thank you, Judge. |
| 11:06:51 | 9 | THE COURT:  Everybody stay here while I admonish him. |
| 11:07:28 | 10 | Mr. Kees, the jury is taking a break.  We will be |
| 11:07:30 | 11 | back in 10 minutes, I'll swear you in, you'll start your |
| 11:07:34 | 12 | testimony.  There's two things I want to tell you.  Based on |
| 11:07:36 | 13 | some rulings I have made, there's not going to be any |
| 11:07:38 | 14 | questions to you about Mr. Fields' prior criminal history |
| 11:07:42 | 15 | other than his conviction on the Smith/Hickman murders. |
| 11:07:45 | 16 | That's number one.  And number two, there's not going to be |
| 11:07:47 | 17 | any questions to you about an incident involving a person by |
| 11:07:51 | 18 | the name of Tredeste Murray.  Do you know what I'm talking |
| 11:07:53 | 19 | about? |
| 11:07:54 | 20 | THE WITNESS:  Yeah. |
| 11:07:54 | 21 | THE COURT:  There's not going to be any questions to |
| 11:07:57 | 22 | you about that.  I have ruled that that evidence is not |
| 11:07:59 | 23 | admissible.  You are noting to go into those two things.  He |
| 11:08:06 | 24 | is nodding his head yes. |
| 11:08:09 | 25 | Everybody take a short break and then we will go |

Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 69 of 125 PageID #:66556
11/30/16 AM
***REALTIME UNEDITED TRANSCRIPT ONLY***

68

| | | |
|---|---|---|
| 11:08:11 | 1 | ahead. |
| 11:08:12 | 2 | (Short break.) |
| 11:14:24 | 3 | MS. GORMAN: |
| 11:15:18 | 4 | (The jury enters the courtroom.) |
| 11:15:19 | 5 | THE COURT: Everybody can have a seat except the |
| 11:15:21 | 6 | witness. |
| 11:15:21 | 7 | (Witness sworn.) |
| 11:15:31 | 8 | THE COURT: Mr. Loevy, you can go ahead. |
| 11:15:31 | 9 | - - - |
| 11:15:31 | 10 | DERRICK KEES, DIRECT EXAMINATION |
| 11:15:31 | 11 | BY MR. LOEVY: |
| 11:15:37 | 12 | Q. If you could state your name for the record. |
| 11:15:38 | 13 | A. Derrick Kees. |
| 11:15:39 | 14 | Q. You are presently in prison? |
| 11:15:41 | 15 | A. That's correct. |
| 11:15:42 | 16 | Q. A former member of the El Rukn organization? |
| 11:15:43 | 17 | A. That's correct. |
| 11:15:44 | 18 | Q. And when did you stop being a member of the El Rukn |
| 11:15:47 | 19 | organization? |
| 11:15:47 | 20 | A. In about '86. |
| 11:15:48 | 21 | Q. All right. Back in the '70s and '80s, your role in the |
| 11:15:59 | 22 | organization was an enforcer, correct? |
| 11:15:59 | 23 | A. That's correct. |
| 11:16:00 | 24 | Q. You were a hit man essentially, right? |
| 11:16:01 | 25 | A. I was not a hit man. |

11/30/16 AM
Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 70 of 125 PageID #:66557
***REALTIME UNEDITED TRANSCRIPT ONLY***

69

| | | |
|---|---|---|
| 11:16:02 | 1 | Q. You did assassinate people? |
| 11:16:04 | 2 | A. I killed people. |
| 11:16:05 | 3 | Q. All right. How many people did you kill? |
| 11:16:06 | 4 | A. I wasn't keeping count. |
| 11:16:11 | 5 | Q. You weren't keeping count you said? |
| 11:16:13 | 6 | A. Right. |
| 11:16:13 | 7 | Q. Can you give us a ballpark? |
| 11:16:15 | 8 | A. No. |
| 11:16:15 | 9 | Q. More than 10? |
| 11:16:16 | 10 | A. Whatever number you have. |
| 11:16:21 | 11 | Q. I'm asking you. More than 10, less than ten? |
| 11:16:24 | 12 | A. Whatever number you have. |
| 11:16:25 | 13 | Q. How many did you plead guilty to, sir? |
| 11:16:27 | 14 | A. About four or five. |
| 11:16:47 | 15 | Q. Six sound right? |
| 11:16:48 | 16 | A. You may be right. |
| 11:16:52 | 17 | Q. All right. Sir, you got a sentence in exchange for those |
| 11:16:57 | 18 | murders, right? How many years were you sentenced to? |
| 11:17:00 | 19 | A. 99. |
| 11:17:01 | 20 | Q. Isn't it true, sir, that you were approached about |
| 11:17:05 | 21 | testifying in this trial in exchange -- in this trial in |
| 11:17:09 | 22 | exchange for a reduction in sentence? |
| 11:17:13 | 23 | A. Come again? |
| 11:17:15 | 24 | Q. Isn't it true, sir, that prior to this trial before Judge |
| 11:17:19 | 25 | Kennelly, you were approached about the possibility of you |

11/30/16 AM
Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 71 of 125 PageID #:66558
***REALTIME UNEDITED TRANSCRIPT ONLY***

70

11:17:22    1    testifying for the defense and you would get a break on your

11:17:25    2    sentence, correct?

11:17:26    3    A.   That's correct.

11:17:29    4    Q.   When was the deal struck?

11:17:31    5    A.   A couple of weeks ago.

11:17:39    6    Q.   Was it struck before the trial started?

11:17:41    7    A.   I don't know when the trial started.

11:17:45    8    Q.   The trial started November the 14th, two weeks ago

11:17:50    9    Monday,.  Was a deal made with you to cut your time in

11:17:54    10   exchange for your testimony at this civil trial before we

11:17:57    11   started?

11:17:57    12   A.   Yeah I asked for a deal, I asked for a Rule 35.

11:18:03    13   Q.   In fact, the motion to cut your time was granted on

11:18:06    14   Monday, wasn't it?

11:18:06    15   A.   Yeah.

11:18:07    16   Q.   And that cut in time, when are you going to get out of

11:18:11    17   prison, sir?

11:18:12    18   A.   About November 21.

11:18:16    19   Q.   Of?

11:18:17    20        THE COURT:   November of the year 2021?

11:18:20    21        THE WITNESS:   2021.

11:18:26    22   BY MR. LOEVY:

11:18:26    23   Q.   That's not 99 years?

11:18:28    24   A.   No.

11:18:28    25   Q.   They cut 12 years off your sentence in he can change for

Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 72 of 125 PageID #:66559
11/30/16 AM                    ***REALTIME UNEDITED TRANSCRIPT ONLY***

71

| 11:18:31 | 1 | your testimony in this case, correct? |
| 11:18:33 | 2 | A.  Yeah. |
| 11:18:34 | 3 | Q.  Isn't it true, sir, the deal wasn't struck until last |
| 11:18:40 | 4 | Thursday, the day O'Callaghan testified? |
| 11:18:43 | 5 | MR. KULWIN:  Judge, I am going to object. |
| 11:18:45 | 6 | THE COURT:  Sustained. |
| 11:18:45 | 7 | BY MR. LOEVY: |
| 11:18:45 | 8 | Q.  Isn't it true the deal was not struck until last Thursday? |
| 11:18:48 | 9 | A.  I thought we had a deal a couple of weeks ago. |
| 11:18:55 | 10 | Q.  Why did you have that understanding? |
| 11:18:57 | 11 | A.  I suppose -- |
| 11:19:01 | 12 | THE COURT:  Can I just see the lawyers at sidebar for |
| 11:19:03 | 13 | a second. |
| 11:19:06 | 14 | (The following proceedings were had at sidebar outside the |
| 11:19:09 | 15 | hearing of the jury:) |
| 11:19:09 | 16 | THE COURT:  This seems to me to be an appropriate |
| 11:19:13 | 17 | point for me to tell you, Mr. Loevy, that you cannot do your |
| 11:19:17 | 18 | normal thing on this witness.  You got to be extremely careful |
| 11:19:21 | 19 | when you start something somebody like this an open-ended |
| 11:19:25 | 20 | question.  I'm warning you. |
| 11:19:27 | 21 | MR. LOEVY:  May I speak? |
| 11:19:29 | 22 | THE COURT:  Do you understand my warning? |
| 11:19:31 | 23 | MR. LOEVY:  Yes. |
| 11:19:31 | 24 | THE COURT:  Then go ahead. |
| 11:19:32 | 25 | MR. LOEVY:  A hundred percent I understand.  What I'm |

11:19:34   1   saying is it was told to us that the deal was struck by his

11:19:38   2   attorney, and so he's now saying it was struck before trial.

11:19:42   3          THE COURT:  But you got his answer.  You got his

11:19:45   4   answer.

11:19:45   5          MR. LOEVY:  I want to probe it.  There was a deal

11:19:48   6   struck before trial and nobody told us.  That's a big deal.  I

11:19:52   7   agree with you I'm asking a question that I have no idea what

11:19:55   8   the answer is but this is a big deal.  There was a deal struck

11:19:59   9   before trial and nobody told us.

11:20:00  10          THE COURT:  When did the motion get filed?

11:20:02  11          MR. LOEVY:  The motion got filed Thursday.

11:20:04  12          THE COURT:  Those motions don't appear out of thin

11:20:08  13   air.  It's five or six pages.  Any reasonable lawyer looking

11:20:13  14   at that motion would understand that that thing didn't appear

11:20:16  15   suddenly on that day and there was some prior discussion I'm

11:20:22  16   warning you.  I'm warning you.

11:20:24  17          MR. KULWIN:  He has an attorney-client privilege and

11:20:26  18   if he heard all of this from his attorney --

11:20:29  19          THE COURT:  I don't necessarily agree with that.  Let

11:20:32  20   me explain why.  So it was contemplated that the deal was

11:20:36  21   going to be presented to a judge, so when he learned it

11:20:38  22   happened, whether he learned it from a lawyer or somebody else

11:20:42  23   I don't think it's a privileged.  I'm just saying I think

11:20:46  24   you're really skating on thin ice here.  I'm just telling you.

11:20:49  25          MR. LOEVY:  You're right.

11/30/16 AM
Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 74 of 125 PageID #:66561
***REALTIME UNEDITED TRANSCRIPT ONLY***

73

| | | |
|---|---|---|
| 11:20:50 | 1 | THE COURT:  I am not going to micro manage your |
| 11:20:53 | 2 | questions, but I'm telling you that you're skating on thin ice |
| 11:20:58 | 3 | when you start asking this guy open ended questions like that. |
| 11:21:01 | 4 | MR. LOEVY:  That's the point. |
| 11:21:02 | 5 | THE COURT:  You've got his answer.  You may not like |
| 11:21:05 | 6 | his answer, but it's not -- you are not going to get anything |
| 11:21:08 | 7 | different out of him. |
| 11:21:09 | 8 | MR. LOEVY:  Understood. |
| 11:21:10 | 9 | THE COURT:  That's all I'm going to say. |
| 11:21:14 | 10 | (The following proceedings were had in open court in the |
| 11:21:14 | 11 | presence and hearing of the jury:) |
| 11:21:14 | 12 | THE COURT:  All right.  You can proceed. |
| 11:21:16 | 13 | BY MR. LOEVY: |
| 11:21:17 | 14 | Q.  They did cut 12 years off your sentence, correct? |
| 11:21:20 | 15 | A.  Yeah. |
| 11:21:21 | 16 | Q.  And you have an understanding that that 12-year cut is in |
| 11:21:26 | 17 | exchange for testimony that you're going to give in this |
| 11:21:30 | 18 | courtroom? |
| 11:21:31 | 19 | A.  From my perspective, it's for what I've already done. |
| 11:21:41 | 20 | Q.  For the murders you've done? |
| 11:21:43 | 21 | A.  No, testimony. |
| 11:21:45 | 22 | Q.  All right.  Let's talk -- let's back up.  In the late '80s |
| 11:21:49 | 23 | after you committed some of these murders, you got caught by |
| 11:21:51 | 24 | the police, right? |
| 11:21:52 | 25 | A.  Caught, no, I didn't get caught. |

***REALTIME UNEDITED TRANSCRIPT ONLY***

74

| | | |
|---|---|---|
| 11:21:56 | 1 | Q. When did you get caught? |
| 11:22:00 | 2 | THE COURT: Why don't you just use the word arrested. |
| 11:22:02 | 3 | BY MR. LOEVY: |
| 11:22:03 | 4 | Q. When did you get arrested, sir? |
| 11:22:07 | 5 | A. I was arrested in '88, 87. |
| 11:22:08 | 6 | Q. All right. At that point, you knew you were in serious |
| 11:22:11 | 7 | legal trouble, correct? |
| 11:22:12 | 8 | A. I knew I had some problems. |
| 11:22:16 | 9 | Q. You were looking at life in prison? |
| 11:22:18 | 10 | A. Exactly what case are you talking about being arrested on? |
| 11:22:26 | 11 | Q. You told me you committed more murders than you can |
| 11:22:28 | 12 | remember, right? |
| 11:22:30 | 13 | A. I didn't say that. |
| 11:22:33 | 14 | Q. All right. When you got arrested, you knew you had a very |
| 11:22:36 | 15 | real possibility of spending the rest of your life in prison, |
| 11:22:41 | 16 | correct? |
| 11:22:41 | 17 | A. I knew I had some legal problems, how about that. |
| 11:22:43 | 18 | Q. All right. We can agree on that. |
| 11:22:45 | 19 | You also knew that they were talking about the death |
| 11:22:47 | 20 | penalty, correct? |
| 11:22:47 | 21 | A. No. |
| 11:22:52 | 22 | Q. This is your testimony -- do you remember giving this |
| 11:22:54 | 23 | statement on November the 17th, 1994, in the matter of U.S. v. |
| 11:22:59 | 24 | Kees at page 167. |
| 11:23:02 | 25 | "QUESTION: Well, weren't you aware, sir, that the |

***REALTIME UNEDITED TRANSCRIPT ONLY***

11/30/16 AM
Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 76 of 125 PageID #:66563
***REALTIME UNEDITED TRANSCRIPT ONLY***

75

| | | |
|---|---|---|
| 11:23:04 | 1 | assistant state's attorneys initially wanted the death penalty |
| 11:23:08 | 2 | for you? |
| 11:23:08 | 3 | "ANSWER:  Yeah, I was made aware of that." |
| 11:23:11 | 4 | Did you give that testimony, sir? |
| 11:23:17 | 5 | The first question is did you give that testimony? |
| 11:23:20 | 6 | A.  I don't want you to minutes my words at all. |
| 11:23:24 | 7 | MR. LOEVY:  Your Honor. |
| 11:23:25 | 8 | THE COURT:  The question is did you give the |
| 11:23:27 | 9 | testimony that he just quoted to you there? |
| 11:23:31 | 10 | THE WITNESS:  He is talking about something in '94. |
| 11:23:33 | 11 | THE COURT:  I understand.  He is asking whether you |
| 11:23:35 | 12 | gave that testimony -- the question is whether you gave that |
| 11:23:38 | 13 | testimony in 1994, that is the question.  That's the question |
| 11:23:41 | 14 | I want you to answer. |
| 11:23:42 | 15 | THE WITNESS:  If that's what he has before him, then, |
| 11:23:45 | 16 | yes, I testified to that. |
| 11:23:46 | 17 | BY MR. LOEVY: |
| 11:23:47 | 18 | Q.  When you got arrested, they took you to Joliet? |
| 11:23:49 | 19 | A.  Come again? |
| 11:23:51 | 20 | Q.  Where did they put you after they arrested you? |
| 11:23:53 | 21 | A.  At the county jail. |
| 11:23:57 | 22 | Q.  At some point, were you transferred to Joliet? |
| 11:24:01 | 23 | A.  Yeah. |
| 11:24:01 | 24 | Q.  What facility over there? |
| 11:24:02 | 25 | A.  In Joliet. |

Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 77 of 125 PageID #:66564

| | | |
|---|---|---|
| 11:24:04 | 1 | Q. Okay. What's it called? |
| 11:24:06 | 2 | A. It's prison. |
| 11:24:07 | 3 | Q. What's that? |
| 11:24:07 | 4 | A. Illinois state prison. |
| 11:24:09 | 5 | Q. All right. Were you under a sentence when you got to |
| 11:24:12 | 6 | Joliet? |
| 11:24:13 | 7 | A. Yeah. |
| 11:24:13 | 8 | Q. What sentence was that? |
| 11:24:14 | 9 | A. 5 five years. |
| 11:24:15 | 10 | Q. On the State charges? |
| 11:24:17 | 11 | A. Yeah. |
| 11:24:17 | 12 | Q. And at that point, sometime around March 1989, you got an |
| 11:24:22 | 13 | unexpected visit from Detective O'Callaghan, correct? |
| 11:24:24 | 14 | A. Yeah. |
| 11:24:25 | 15 | Q. And Sergeant Murphy as well, right? |
| 11:24:28 | 16 | A. You got him with him. |
| 11:24:36 | 17 | Q. You spoke to O'Callaghan and Murphy for about three hours, |
| 11:24:39 | 18 | right? |
| 11:24:39 | 19 | A. I mean, I wasn't looking at the clock, but, yeah, we |
| 11:24:42 | 20 | talked for a while. |
| 11:24:44 | 21 | Q. And they wanted you to help them make their cases, right? |
| 11:24:47 | 22 | A. Yeah, yes, they did. |
| 11:24:48 | 23 | Q. And you asked them what's in it for me, right? |
| 11:24:50 | 24 | A. Absolutely. |
| 11:24:51 | 25 | Q. And what did they tell you? |

| | | |
|---|---|---|
| 11:24:53 | 1 | A. They talked to the U.S. Attorney's Office. |
| 11:24:59 | 2 | Q. And you would get a deal? |
| 11:25:01 | 3 | A. That was my idea of it. |
| 11:25:04 | 4 | Q. Because all things being equal, you didn't want to testify |
| 11:25:08 | 5 | against other people, right? |
| 11:25:09 | 6 | A. I had no reason to. |
| 11:25:14 | 7 | Q. Right. So you decided to save yourself to do that, right? |
| 11:25:17 | 8 | A. Absolutely. |
| 11:25:19 | 9 | Q. That's what I'm asking. |
| 11:25:21 | 10 | So in 1989, you reached an agreement that you would |
| 11:25:26 | 11 | point your finger at others in exchange for less time for |
| 11:25:29 | 12 | yourself, right? |
| 11:25:30 | 13 | A. Come again? |
| 11:25:32 | 14 | Q. When they were asking you to cooperate, they were asking |
| 11:25:36 | 15 | you to cooperate about a lot of cases, correct? |
| 11:25:38 | 16 | A. Yeah. |
| 11:25:40 | 17 | Q. A lot of cases against a lot of people, right? |
| 11:25:42 | 18 | A. Yeah. |
| 11:25:42 | 19 | Q. And you understood that if they were going to give you a |
| 11:25:45 | 20 | deal, you were going to have to give them something very |
| 11:25:47 | 21 | useful and be very helpful, correct? |
| 11:25:49 | 22 | A. Absolutely. |
| 11:25:50 | 23 | Q. All right. And your plea agreement that you signed |
| 11:25:55 | 24 | required you to testify about all the various cases, correct, |
| 11:25:59 | 25 | that you talked about? |

| 11:26:01 | 1 | A.  Yeah. |
| 11:26:02 | 2 | Q.  Now, at some point after you agreed with Mr. O'Callaghan |
| 11:26:09 | 3 | and Mr. Murphy to be a cooperator, they transferred you to |
| 11:26:14 | 4 | Chicago, correct? |
| 11:26:15 | 5 | A.  Yeah. |
| 11:26:17 | 6 | Q.  And O'Callaghan did most of the interviewing during this |
| 11:26:20 | 7 | time period, correct? |
| 11:26:21 | 8 | A.  He did the initial interviewing. |
| 11:26:25 | 9 | Q.  He did most of the interviewing, didn't he? |
| 11:26:27 | 10 | A.  I said he did the initial interviewing. |
| 11:26:30 | 11 | Q.  All right.  Was he doing most of the interviewing during |
| 11:26:35 | 12 | the initial interview? |
| 11:26:37 | 13 | A.  Yeah. |
| 11:26:39 | 14 | Q.  Who was doing most of the talking? |
| 11:26:41 | 15 | A.  Okay.  Yeah, okay. |
| 11:26:44 | 16 | Q.  You were asked about certain incidents before you brought |
| 11:26:48 | 17 | those incidents up; is that fair? |
| 11:26:59 | 18 | A. |
| 11:26:59 | 19 |          MR. NOLAND:  Objection. |
| 11:27:00 | 20 |          THE COURT:  He said he can't remember. |
| 11:27:02 | 21 |          THE WITNESS:  I don't remember the order of how he |
| 11:27:04 | 22 | asked all the questions, but. |
| 11:27:06 | 23 | BY MR. LOEVY: |
| 11:27:06 | 24 | Q.  Isn't it true he was bringing up certain murders before |
| 11:27:09 | 25 | you were bringing up certain murders and asking if you knew |

| 11:27:12 | 1 | about that? |
| 11:27:12 | 2 | MR. NOLAND:  Judge, objection. |
| 11:27:13 | 3 | THE COURT:  The objection is sustained. |
| 11:27:16 | 4 | BY MR. LOEVY: |
| 11:27:16 | 5 | Q.  Isn't it true that O'Callaghan brought out a box of files |
| 11:27:19 | 6 | and he was asking you do you know anything about this, do you |
| 11:27:22 | 7 | know anything about that one? |
| 11:27:23 | 8 | MR. NOLAND:  Objection, Judge, if I could be heard. |
| 11:27:25 | 9 | THE COURT:  Okay. |
| 11:27:28 | 10 | (The following proceedings were had at sidebar outside the |
| 11:27:41 | 11 | hearing of the jury:) |
| 11:27:41 | 12 | MR. NOLAND:  I apologize for having to ask for the |
| 11:27:43 | 13 | sidebar.  I'm worried about the Ronnie bell incident. |
| 11:27:47 | 14 | THE COURT:  Remind me. |
| 11:27:48 | 15 | MR. NOLAND:  The Houston.  That O'Callaghan and |
| 11:27:50 | 16 | Murphy went down there to talk to him and they specifically |
| 11:27:53 | 17 | were going down there to exonerate those two guys.  That was |
| 11:27:58 | 18 | the case they initially were talking to him about.  I think |
| 11:28:01 | 19 | the record would support that they did bring up that case and |
| 11:28:03 | 20 | he did provide the consistent information which was |
| 11:28:06 | 21 | exonerating those two El Rukns in prison, saying that other |
| 11:28:10 | 22 | guys did it, that's my concern and I'm concerned that it would |
| 11:28:12 | 23 | open the door to what he might say and that something would |
| 11:28:15 | 24 | have to come in after. |
| 11:28:17 | 25 | MR. LOEVY:  Our theory of the case is not that they |

Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 81 of 125 PageID #:66568
11/30/16 AM     ***REALTIME UNEDITED TRANSCRIPT ONLY***

80

11:28:19    1   said tell us about your murders and he said, oh,

11:28:23    2   Smith/Hickman, that they suggested cases to him and as you'll

11:28:25    3   see he puts himself in them.  It is relevant that he didn't

11:28:28    4   bring up Smith/Hickman.  What's relevant is the question I

11:28:31    5   asked had nothing to do about Bell.  It's true he pulled out a

11:28:34    6   box of files and started asking you about different cases.  I

11:28:37    7   am not going to ask specifics, so I can take care of that

11:28:37    8   concern.  I am just going to say, isn't it true they were

11:28:42    9   pulling out files, asking you about different cases and

11:28:43   10   whether you knew anything.

11:28:44   11          THE COURT:  Okay.

11:28:44   12          MR. LOEVY:  That's the question.

11:28:46   13          THE COURT:  I don't see that as opening the door if

11:28:48   14   that's what you're going to do.

11:28:50   15          MR. KULWIN:  I will say if all he says is they pulled

11:28:53   16   out a box, they asked you about this case, fine, I'm going to

11:28:57   17   say, they asked you about a murder.  On my examination, I'll

11:29:01   18   say, okay, well, your Honor asked some questions about the box

11:29:04   19   and they pulled out a file, they asked you did you know

11:29:08   20   anything about this?

11:29:09   21          MR. LOEVY:  That's what I am going to ask.

11:29:11   22          THE COURT:  That's what he is going to ask.

11:29:16   23          MR. KULWIN:  Okay.

11:29:16   24      (The following proceedings were had in open court in the

11:29:17   25   presence and hearing of the jury:)


                      ***REALTIME UNEDITED TRANSCRIPT ONLY***

| | |
|---|---|
| 11:29:17 | 1 |
| 11:29:20 | 2 |
| 11:29:20 | 3 |
| 11:29:25 | 4 |
| 11:29:28 | 5 |
| 11:29:30 | 6 |
| 11:29:33 | 7 |
| 11:29:35 | 8 |
| 11:29:36 | 9 |
| 11:29:39 | 10 |
| 11:29:42 | 11 |
| 11:29:44 | 12 |
| 11:29:45 | 13 |
| 11:29:46 | 14 |
| 11:29:47 | 15 |
| 11:29:49 | 16 |
| 11:29:49 | 17 |
| 11:29:52 | 18 |
| 11:30:07 | 19 |
| 11:30:09 | 20 |
| 11:30:14 | 21 |
| 11:30:17 | 22 |
| 11:30:19 | 23 |
| 11:30:21 | 24 |
| 11:30:24 | 25 |

1     THE COURT:  Okay.  You can proceed, Mr. Loevy.

2  BY MR. LOEVY:

3  Q.  Did the question get asked?

4     THE COURT:  Yeah, the question was did Mr.

5  O'Callaghan bring out a box of files and he was showing them

6  to you and asking you if you knew anything about particular

7  files.  Do you want to rephrase it or is that good enough?

8  BY MR. LOEVY:

9  Q.  Isn't it true what happened was he brought out this box

10  that had files in it, he was asking you do you know anything

11  about this one, do you know anything about that one?

12  A.  Yeah.

13  Q.  And some of them you knew about?

14  A.  You are right.

15  Q.  And some of them you didn't, right?

16  A.  Right.

17  Q.  And this time period is March '89, correct?

18  A.  I thought it might have been like -- yeah, yeah, about

19  March '89, somewhere around there, yeah.

20  Q.  All right.  Once you became a cooperating witness, two of

21  the people they wanted you to cooperate against were Earl

22  Hawkins and Nate Fields, correct?

23  A.  Yeah.

24  Q.  And in fact, at various proceedings you did give testimony

25  involving Hawkins, correct?

| 11:30:25 | 1 | A. Yep. |
| 11:30:26 | 2 | Q. And he testified against you, didn't he? |
| 11:30:28 | 3 | A. Yes, he did. |
| 11:30:28 | 4 | Q. So you had no problem pointing your finger at Earl |
| 11:30:31 | 5 | Hawkins, did you? |
| 11:30:31 | 6 | A. If you are talking about a tit for tat, you know, that's |
| 11:30:40 | 7 | not our issue. |
| 11:30:41 | 8 | Q. Fair enough. |
| 11:30:42 | 9 | How many times did you meet with Mr. O'Callaghan |
| 11:30:45 | 10 | between March 89 and May of '89? |
| 11:30:49 | 11 | A. Between March and May? |
| 11:30:53 | 12 | Q. Yeah, first few months you were cooperating. |
| 11:30:56 | 13 | A. At the initial one, end of May, a couple of times. Three, |
| 11:31:09 | 14 | four times, I guess. |
| 11:31:10 | 15 | Q. Three or four times. Were you talking about various |
| 11:31:13 | 16 | different cases? |
| 11:31:14 | 17 | A. Yeah. |
| 11:31:14 | 18 | Q. You were telling them what you knew or didn't know? |
| 11:31:16 | 19 | A. Yeah. |
| 11:31:16 | 20 | Q. Now, the first time you ever talked about Smith/Hickman, |
| 11:31:19 | 21 | the murder that we are here to talk about today was May 4th, |
| 11:31:22 | 22 | 1989, correct? |
| 11:31:24 | 23 | A. If you have that, you know, document, then, yeah. |
| 11:31:28 | 24 | Q. I am going to -- |
| 11:31:29 | 25 | MR. LOEVY: May I approach, your Honor? |

11:31:30    1           THE COURT:  Sure.

11:31:31    2   BY MR. LOEVY:

11:31:31    3   Q.  Showing you some notes dated May 4, does that refresh your

11:31:37    4   recollection?

11:31:37    5           MR. KULWIN:  Could we have an exhibit number?

11:31:40    6           THE WITNESS:  It says May 4th, 89.

11:31:43    7           MR. LOEVY:  The exhibit number at the bottom.

11:31:44    8           THE WITNESS:  172.

11:31:46    9           MR. LOEVY:  172.

11:31:48   10           MR. KULWIN:  Thank you.

11:31:48   11   BY MR. LOEVY:

11:31:49   12   Q.  Does that refresh your recollection that the first time

11:31:50   13   Smith/Hickman came up was May 4th?

11:31:52   14   A.  Yeah, that refreshed my memory.

11:31:56   15   Q.  And on May 4th, that's when they brought you a document to

11:32:00   16   sign, correct?

11:32:01   17   A.  You got that document.

11:32:08   18   Q.  First I'm asking your memory?

11:32:10   19   A.  Do you have a document?  I don't know the date.

11:32:12   20   Q.  What was the document they asked you to sign, sir?

11:32:16   21           MR. NOLAND:  Objection, foundation.

11:32:18   22           THE COURT:  Overruled.  I think he's basically saying

11:32:22   23   he doesn't remember dates.  That's what he just said a second

11:32:24   24   ago.

11:32:25   25   BY MR. LOEVY:

Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 85 of 125 PageID #:66572
11/30/16 AM ***REALTIME UNEDITED TRANSCRIPT ONLY***

84

| | | |
|---|---|---|
| 11:32:25 | 1 | Q. Did you sign a cooperation agreement? |
| 11:32:26 | 2 | A. In May 89? |
| 11:32:34 | 3 | Q. Yes. |
| 11:32:35 | 4 | A. I can't quite remember. |
| 11:32:40 | 5 | Q. All right. Do you remember giving this statement on |
| 11:32:42 | 6 | November the 16th, 1994, at page 77 in U.S. v. Kees. |
| 11:32:48 | 7 | "QUESTION: |
| 11:32:48 | 8 | MR. KULWIN: Hold on a second, Judge. I have to find |
| 11:32:50 | 9 | that transcript. |
| 11:32:54 | 10 | THE COURT: What's the date and page, Mr. Loevy, |
| 11:32:56 | 11 | again? |
| 11:32:56 | 12 | MR. LOEVY: The date is November the 16th, 1994, |
| 11:32:59 | 13 | United States v. Kees, page 77. |
| 11:33:01 | 14 | THE COURT: Okay. Go ahead. |
| 11:33:01 | 15 | BY MR. LOEVY: |
| 11:33:03 | 16 | Q. "QUESTION: Did you discuss at that time what you would |
| 11:33:05 | 17 | be receiving for the information you were giving? |
| 11:33:07 | 18 | "ANSWER: At that time, no, not at that time. Let me |
| 11:33:11 | 19 | ask you, Derrick, I will market it as Defendant's Exhibit 2, |
| 11:33:14 | 20 | whether or not you recognize this document? |
| 11:33:15 | 21 | "ANSWER: Yes. |
| 11:33:16 | 22 | "QUESTION: Is that your signature in the lower |
| 11:33:18 | 23 | right-hand corner? |
| 11:33:19 | 24 | "ANSWER: Yes, it is. |
| 11:33:20 | 25 | "QUESTION: What is the date on there? |

11/30/16 AM
Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 86 of 125 PageID #:66573
***REALTIME UNEDITED TRANSCRIPT ONLY***

85

11:33:22    1       "ANSWER:  5/4/89.

11:33:25    2       "QUESTION:  Was this the date that Murphy and

11:33:27    3   O'Callaghan were visiting you in jail?

11:33:30    4       "ANSWER:  Yes

11:33:31    5       "QUESTION:  What is the document that your signature

11:33:33    6   appears on the lower right-hand corner on?

11:33:36    7       "ANSWER:  That's a waiver.

11:33:37    8       "QUESTION:  Did you sign this document?

11:33:39    9       "ANSWER:  Yes, I did."

11:33:41   10       Did you give that statement

11:33:42   11       MR. KULWIN:  It's not a cooperating agreement.  It's

11:33:45   12   a waiver.

11:33:45   13       THE COURT:  Sustained.

11:33:46   14   BY MR. LOEVY:

11:33:47   15   Q.  What was it you signed with them on May 4th, 1989?

11:33:50   16   A.  Obviously just the document that you have in front of you.

11:33:54   17   Q.  What is a waiver?  Either you don't remember it sounds

11:33:57   18   like what it was?

11:33:58   19       MR. KULWIN:  Objection, Judge, multiple questions.

11:34:00   20       THE COURT:  Sustained.

11:34:01   21   BY MR. LOEVY:

11:34:02   22   Q.  All right.  You did come to cooperate on the Smith/Hickman

11:34:05   23   case, correct?

11:34:14   24   A.  I cooperated in federal court.

11:34:15   25   Q.  On a number of different scenarios, correct?

| | | |
|---|---|---|
| 11:34:18 | 1 | A. Right. |
| 11:34:19 | 2 | Q. And once you decided to become a cooperator, they isn't |
| 11:34:22 | 3 | you over to the MCC, correct? |
| 11:34:23 | 4 | A. Say it again. |
| 11:34:26 | 5 | Q. There is a federal prison down the street from this |
| 11:34:28 | 6 | building, the MCC? |
| 11:34:30 | 7 | A. Yeah. |
| 11:34:30 | 8 | Q. That's where you got September, right? |
| 11:34:32 | 9 | A. That's where I was housed for quite some time. |
| 11:34:35 | 10 | Q. A couple years, right? You were on the sixth floor? |
| 11:34:38 | 11 | A. Yeah. |
| 11:34:39 | 12 | Q. With you, Earl Hawkins, he was there too, right? |
| 11:34:44 | 13 | MR. NOLAND: Judge, could we have a foundation, time |
| 11:34:46 | 14 | frame? |
| 11:34:47 | 15 | THE COURT: Set the time frame as best you can. |
| 11:34:53 | 16 | BY MR. LOEVY: |
| 11:34:53 | 17 | Q. This is 87 to about 89, would you agree, sir? |
| 11:34:57 | 18 | MR. KULWIN: Judge, I am going to object on that time |
| 11:34:59 | 19 | frame. He has to be more specific given the housing. |
| 11:35:02 | 20 | BY MR. LOEVY: |
| 11:35:02 | 21 | Q. You tell us, sir? |
| 11:35:03 | 22 | THE COURT: Do you know what period of time you were |
| 11:35:05 | 23 | at the MCC? |
| 11:35:06 | 24 | THE WITNESS: I went into the MCC in '89. |
| 11:35:08 | 25 | BY MR. LOEVY: |

11/30/16 AM
Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 88 of 125 PageID #:66575
***REALTIME UNEDITED TRANSCRIPT ONLY***

87

| 11:35:09 | 1 | Q. All right. How long did you stay there? |
| 11:35:11 | 2 | A. Well, I was there until about 90 and then I got |
| 11:35:16 | 3 | transferred. |
| 11:35:16 | 4 | Q. All right. But you started cooperating as far back as 86, |
| 11:35:19 | 5 | right? |
| 11:35:19 | 6 | A. No. |
| 11:35:23 | 7 | Q. On May 4th? |
| 11:35:25 | 8 | THE COURT: That would be 89. |
| 11:35:27 | 9 | MR. LOEVY: 89, got it. |
| 11:35:29 | 10 | THE COURT: That's what you elicited. |
| 11:35:30 | 11 | MR. LOEVY: I misunderstood. |
| 11:35:32 | 12 | BY MR. LOEVY: |
| 11:35:33 | 13 | Q. In '89 to 90, you are in the MCC with Earl Hawkins, early |
| 11:35:40 | 14 | Sumner and Jackie Clay? |
| 11:35:41 | 15 | A. Yeah. |
| 11:35:42 | 16 | Q. And you guys were all allowed to exchange information? |
| 11:35:47 | 17 | A. There was no exchange of information. |
| 11:35:49 | 18 | MR. NOLAND: Objection. |
| 11:35:49 | 19 | THE COURT: Overruled. |
| 11:35:50 | 20 | BY MR. LOEVY: |
| 11:35:51 | 21 | Q. You had the opportunity to exchange information with them, |
| 11:35:53 | 22 | right? |
| 11:35:53 | 23 | A. There was no exchange of information. |
| 11:35:54 | 24 | Q. For that -- I understand that you say you didn't exchange |
| 11:35:57 | 25 | information. |

| | | |
|---|---|---|
| 11:35:58 | 1 | A. Let's be clear. |
| 11:35:59 | 2 | Q. What's that? |
| 11:35:59 | 3 | A. Let's be clear. There was no exchange of information. |
| 11:36:02 | 4 | Q. I'm asking you a different question. |
| 11:36:04 | 5 | There was an opportunity if you were so inclined to |
| 11:36:08 | 6 | exchange information with Earl, Jackie, and Eugene, the other |
| 11:36:11 | 7 | cooperators, correct? |
| 11:36:12 | 8 | A. That sounds like a theory to me. |
| 11:36:15 | 9 | THE COURT: Just answer the question, please. |
| 11:36:17 | 10 | THE WITNESS: There is no other answer for it. |
| 11:36:19 | 11 | BY MR. LOEVY: |
| 11:36:19 | 12 | Q. All right. You and the others, they also made deals to |
| 11:36:22 | 13 | cooperate with the government, correct? |
| 11:36:24 | 14 | A. I guess they did. |
| 11:36:30 | 15 | Q. You understood that at the time, right? |
| 11:36:32 | 16 | A. Yeah. |
| 11:36:33 | 17 | Q. All of you were trying to be as helpful as possible to the |
| 11:36:36 | 18 | government to save yourself, correct? |
| 11:36:38 | 19 | MR. KULWIN: I object as to what -- |
| 11:36:40 | 20 | THE COURT: Sustained. |
| 11:36:40 | 21 | BY MR. LOEVY: |
| 11:36:41 | 22 | Q. All right. You eventually gave testimony to a grand jury, |
| 11:36:43 | 23 | correct? |
| 11:36:43 | 24 | A. Yeah. |
| 11:36:45 | 25 | Q. And you spent quite a bit of time preparing that |

| 11:36:48 | 1 | testimony, right? |
| 11:36:49 | 2 | A.  Preparing for the grand jury, no. |
| 11:36:54 | 3 | Q.  Well, didn't you create a statement that listed out all of |
| 11:36:56 | 4 | your information about all your crimes? |
| 11:36:58 | 5 | A.  I didn't create a statement. |
| 11:37:00 | 6 | Q.  Okay.  Did you cooperate with a lawyer named Bill Hogan? |
| 11:37:04 | 7 | A.  I went before a grand jury and they asked me questions and |
| 11:37:07 | 8 | I answered them. |
| 11:37:07 | 9 | Q.  All right.  But before you went to the grand jury and |
| 11:37:11 | 10 | asked questions and answered them, you spent quite a bit of |
| 11:37:15 | 11 | time getting ready, right? |
| 11:37:16 | 12 | A.  No. |
| 11:37:20 | 13 | Q.  They just said, hey, let's go to the grand jury, tell us |
| 11:37:23 | 14 | what you know? |
| 11:37:24 | 15 |         MR. KULWIN:  Objection, argumentative, Judge. |
| 11:37:25 | 16 |         THE COURT:  Overruled. |
| 11:37:26 | 17 | BY MR. LOEVY: |
| 11:37:26 | 18 | Q.  That's your testimony? |
| 11:37:27 | 19 | A.  That is my testimony. |
| 11:37:28 | 20 | Q.  All right.  In the time when you were at the MCC for that |
| 11:37:32 | 21 | year or so, were you interacting with Bill Hogan, the U.S. |
| 11:37:35 | 22 | attorney? |
| 11:37:36 | 23 | A.  Yes. |
| 11:37:36 | 24 | Q.  Were you talking about cases? |
| 11:37:37 | 25 | A.  We were talking about cases, yeah. |

| | | |
|---|---|---|
| 11:37:40 | 1 | Q. Were you interacting with O'Callaghan and Murphy? |
| 11:37:42 | 2 | A. Yes. |
| 11:37:43 | 3 | Q. Were you talking about cases? |
| 11:37:45 | 4 | A. Yes. |
| 11:37:45 | 5 | Q. Wasn't that getting ready for your grand jury testimony? |
| 11:37:48 | 6 | A. No. |
| 11:37:49 | 7 | Q. All right. At some point during this process, you got |
| 11:37:55 | 8 | your hand on the -- your hands-on the internal prosecution |
| 11:37:59 | 9 | memos, correct? |
| 11:37:59 | 10 | A. A memo got into my file when he was picking up a bunch of |
| 11:38:08 | 11 | stuff that I had. |
| 11:38:09 | 12 | Q. All right. Before we talk about how you got it? |
| 11:38:11 | 13 | A. I'm telling you how I got it. |
| 11:38:14 | 14 | Q. I wasn't asking you how you got it. I'm asking you what |
| 11:38:17 | 15 | it is. What you got was a memo that laid out the government's |
| 11:38:20 | 16 | case, correct? |
| 11:38:21 | 17 | A. I don't remember the entire memo. |
| 11:38:23 | 18 | Q. But the gist of it was, it was an internal preindictment |
| 11:38:27 | 19 | prosecution memo? |
| 11:38:28 | 20 | A. Not -- you said I read. |
| 11:38:33 | 21 | Q. Oh, you didn't read it? |
| 11:38:35 | 22 | A. No, I didn't. |
| 11:38:37 | 23 | Q. When you sort of read it, did you see that it was an |
| 11:38:39 | 24 | internal preindictment, let me ask the question, if you would, |
| 11:38:42 | 25 | sir. When you sort of read it, did you see that it was an |

11/30/16 AM
Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 92 of 125 PageID #:66579
***REALTIME UNEDITED TRANSCRIPT ONLY***

91

| | | |
|---|---|---|
| 11:38:45 | 1 | internal preindictment prosecution memo laying out the |
| 11:38:47 | 2 | government's theory of the case? |
| 11:38:48 | 3 | A. I don't remember everything that it said. I really -- I |
| 11:38:57 | 4 | really just looked at it and said this is not mine. That is |
| 11:39:00 | 5 | not I went down there to pick up. |
| 11:39:04 | 6 | Q. I think we established that you sort of looked at it. Did |
| 11:39:07 | 7 | you sort of get the sense that even though you weren't meant |
| 11:39:11 | 8 | to see it that that's what it was? |
| 11:39:12 | 9 | A. Well, I had no idea about, you know, it being part of a |
| 11:39:18 | 10 | strategy or anything like that, no. |
| 11:39:19 | 11 | Q. But you knew you shouldn't have it, right? |
| 11:39:21 | 12 | A. Yeah, I knew it wasn't mine. |
| 11:39:23 | 13 | Q. You read enough of it to know that you had no business? |
| 11:39:25 | 14 | A. I knew it wasn't mine. |
| 11:39:26 | 15 | Q. How did you get your hands-on the government preindictment |
| 11:39:29 | 16 | prosecution memo? |
| 11:39:30 | 17 | MR. KULWIN: Judge, I am going to object to the |
| 11:39:32 | 18 | question. |
| 11:39:32 | 19 | THE COURT: Rephrase the question. |
| 11:39:33 | 20 | BY MR. LOEVY: |
| 11:39:33 | 21 | Q. How did you get your hands-on this piece of paper? |
| 11:39:37 | 22 | A. I was picking up a bunch of stuff that I had, and it was |
| 11:39:41 | 23 | obviously on the table under something and it got collected up |
| 11:39:45 | 24 | in my stuff. |
| 11:39:46 | 25 | Q. By accident? |

| | | |
|---|---|---|
| 11:39:48 | 1 | A. Yeah. |
| 11:39:48 | 2 | Q. Who did it belong to? |
| 11:39:50 | 3 | A. It belonged to the government. |
| 11:39:53 | 4 | Q. All right. You shared this document with another |
| 11:39:55 | 5 | cooperator, didn't you? |
| 11:39:56 | 6 | A. Yeah. |
| 11:39:58 | 7 | Q. Who did you share it with? |
| 11:39:59 | 8 | A. I asked Eugene Hunter to look at it. |
| 11:40:02 | 9 | Q. Why did you ask Eugene Hunter to look at it? |
| 11:40:05 | 10 | A. Basically, the title of it, it didn't seem like it had |
| 11:40:11 | 11 | nothing to do with nothing directly to me, you know, as far as |
| 11:40:15 | 12 | what I was doing, so I let him look at it. |
| 11:40:18 | 13 | Q. Well, even know it had nothing to do, why Eugene Hunter, |
| 11:40:22 | 14 | why did you let him look at it? |
| 11:40:25 | 15 | A. He was available. |
| 11:40:25 | 16 | Q. What did he tell you? |
| 11:40:26 | 17 | A. He said it belongs to the government. He needs to tell |
| 11:40:34 | 18 | Hogan and them. |
| 11:40:34 | 19 | Q. Did you tell Hogan? |
| 11:40:35 | 20 | A. No, I didn't tell him, he told him. |
| 11:40:38 | 21 | Q. Why didn't you tell Hogan that you accidentally got your |
| 11:40:41 | 22 | hands-on the preindictment prosecution memo? |
| 11:40:43 | 23 | MR. KULWIN: Argumentative, ask to be heard. |
| 11:40:45 | 24 | THE COURT: You are going to have to rephrase the |
| 11:40:48 | 25 | question. |

Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 94 of 125 PageID #:66581
11/30/16 AM ***REALTIME UNEDITED TRANSCRIPT ONLY***

93

| | | |
|---|---|---|
| 11:40:48 | 1 | BY MR. LOEVY: |
| 11:40:49 | 2 | Q.  Why did you not tell Hogan that you got your hands-on this |
| 11:40:54 | 3 | piece of paper?  I think that was the question. |
| 11:40:56 | 4 | A.  Because by the time I talked to Hogan he already knew |
| 11:41:00 | 5 | because Eugene Hunter had already told him. |
| 11:41:01 | 6 | Q.  I got you.  And Earl Hawkins also got a copy of this |
| 11:41:05 | 7 | document, correct? |
| 11:41:06 | 8 | A.  I don't know what Earl got a hold of. |
| 11:41:08 | 9 | Q.  This is your deposition in October of 2013 at page 176, |
| 11:41:13 | 10 | lines 13 through 16. |
| 11:41:16 | 11 | "QUESTION:  Did you give some other inmates some of |
| 11:41:19 | 12 | those files, some of those documents? |
| 11:41:21 | 13 | "ANSWER:  I showed it to what, Henry hair he is and |
| 11:41:26 | 14 | Eugene Hunter |
| 11:41:27 | 15 | "QUESTION:  Did you show it to Earl Hawkins? |
| 11:41:30 | 16 | "ANSWER:  I think I did.  I think I did." |
| 11:41:32 | 17 | Did you give that answer under oath? |
| 11:41:35 | 18 | A.  I gave it to Eugene Hunter.  He obviously shared it, so |
| 11:41:39 | 19 | you know, at the time, it really didn't matter to me. |
| 11:41:42 | 20 | Q.  Doubling back to my question, did you give that answer? |
| 11:41:45 | 21 | A.  If that's what you have before you, then, yeah, that's |
| 11:41:48 | 22 | what I gave. |
| 11:41:49 | 23 | Q.  And you did review them, didn't you? |
| 11:41:58 | 24 | MR. KULWIN:  Objection, Judge.  Asked and answered. |
| 11:42:00 | 25 | THE COURT:  Sustained. |

11/30/16 AM
Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 95 of 125 PageID #:66582
***REALTIME UNEDITED TRANSCRIPT ONLY***

94

| 11:42:00 | 1 | BY MR. LOEVY: |

Q. Do you remember being asked this question?

11:42:01   2

11:42:02   3   MR. KULWIN: I'm sorry. I didn't hear your ruling.

11:42:05   4   THE COURT: I sustained that objection, but now he's

11:42:07   5 asking another question.

11:42:08   6 BY MR. LOEVY:

11:42:08   7 Q. On October 13th, 1993, did you give the following answer

11:42:11   8 to the following question.

11:42:13   9   "QUESTION:

11:42:13   10   MR. KULWIN: Judge.

11:42:14   11   THE COURT: Page?

11:42:15   12   MR. LOEVY: Page 13, lines 21 through 23.

11:42:18   13   MR. KULWIN: He is impeaching him with something he

11:42:22   14 doesn't know the answer.

11:42:23   15   THE COURT: I disagree. The objection is overruled.

11:42:25   16 BY MR. LOEVY:

11:42:25   17 Q. Were you asked this?

11:42:26   18   "QUESTION: Question did you review those along with

11:42:28   19 some. Other cooperating witnesses? Let me back up so I am

11:42:32   20 very clear what we are talking about. Line 12.

11:42:34   21   "QUESTION: Did you share those documents with the

11:42:36   22 other cooperating witnesses, let them review them?

11:42:38   23   "ANSWER: Yes.

11:42:39   24   "QUESTION: And these documents that had the

11:42:41   25 government's theory of the case, the evidence, and the

***REALTIME UNEDITED TRANSCRIPT ONLY***

11:42:45   1   prospective charges against each defendant is that true?

11:42:51   2          "ANSWER:  All that.

11:42:53   3          "QUESTION:  All of that was in there so you reviewed

11:42:55   4   those along with some of the other cooperating witnesses isn't

11:42:58   5   that correct?

11:42:59   6          "ANSWER:  Yeah, we reviewed.  Yeah, absolutely."

11:43:02   7          Did you give that testimony under oath?

11:43:03   8   A.  If that's what you have before you, then that's my answer.

11:43:07   9   Q.  Was it true?

11:43:07   10  A.  Was it true?  What was true?

11:43:11   11         THE COURT:  The testimony he just read.  That's what

11:43:13   12  he's asking you about.

11:43:14   13         THE WITNESS:  Yeah, the testimony is true.  He's got

11:43:17   14  it right in front of him.

11:43:18   15  BY MR. LOEVY:

11:43:18   16  Q.  When you reviewed the memos, the papers, isn't it true

11:43:21   17  that what you saw was the government's theory of the evidence

11:43:23   18  that proved all of the predicate acts?

11:43:26   19  A.  That's a compound question.  Break that down.

11:43:33   20  Q.  When you reviewed these papers, they laid out the

11:43:37   21  government's case, right?

11:43:38   22  A.  If that's what the document was about, yeah.

11:43:41   23  Q.  And when you reviewed those papers, you saw facts relating

11:43:44   24  to cases you were going to testify in, correct?

11:43:46   25  A.  Yeah.  Yeah.

| 11:43:52 | 1 | Q. This was before you testified, correct? |
| 11:43:54 | 2 | A. Yeah. |
| 11:43:57 | 3 | Q. This was 1989, wasn't it? |
| 11:43:59 | 4 | A. Yeah. |
| 11:43:59 | 5 | Q. Isn't it true that copies were made of these documents |
| 11:44:06 | 6 | before they were retrieved? |
| 11:44:08 | 7 | A. I don't know about that. I don't remember making no |
| 11:44:12 | 8 | copies. I didn't have a copier. |
| 11:44:15 | 9 | Q. Remember this statement on July 22nd, 1993, at page 710. |
| 11:44:20 | 10 | "QUESTION: Did you show them to anybody else? |
| 11:44:23 | 11 | "ANSWER: I only remember showing them to hunter and he |
| 11:44:26 | 12 | got to talking about making some copies. |
| 11:44:28 | 13 | "QUESTION: Did he make copies? |
| 11:44:30 | 14 | "ANSWER: I think he did." |
| 11:44:32 | 15 | Did you give that testimony? |
| 11:44:33 | 16 | A. If that's what you have before, but that don't mean I made |
| 11:44:37 | 17 | copies. |
| 11:44:38 | 18 | Q. All right. Isn't it true that you testified at the grand |
| 11:44:49 | 19 | jury based on a prepared statement that Hogan wrote up after |
| 11:44:54 | 20 | he interacted with you? |
| 11:44:54 | 21 | A. The grand jury? |
| 11:45:04 | 22 | Q. Yes. |
| 11:45:04 | 23 | A. He asked questions, I answered questions. |
| 11:45:06 | 24 | Q. I'm asking isn't it true he had a prepared statement that |
| 11:45:09 | 25 | you and him had worked out and then he read it to you at the |

11/30/16 AM
Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 98 of 125 PageID #:66585
***REALTIME UNEDITED TRANSCRIPT ONLY***

97

11:45:13  1  grand jury?

11:45:13  2  A.  This prepared statement was prepared by him.

11:45:19  3  Q.  Do you remember giving this testimony on November the

11:45:21  4  17th, 1994, at page 176 lines 5 through 12.

11:45:27  5      "QUESTION:  Now you gave your grand jury testimony from

11:45:29  6  a prepared statement from Mr. Hogan, did you not?

11:45:31  7      "ANSWER:  That's correct.

11:45:33  8      "QUESTION:  And Mr. Hogan wrote that statement up?

11:45:36  9      "ANSWER:  Yes.

11:45:37  10     "QUESTION:  And he read that to you in a narrative form

11:45:40  11  during the grand jury proceedings?

11:45:41  12     "ANSWER:  Yes, he did."

11:45:43  13     Did you give that testimony?

11:45:44  14  A.  That's exactly what happened.

11:45:45  15  Q.  All right.  Does that refresh your recollection that what

11:45:47  16  happened was he read you a long document and you said that's

11:45:50  17  accurate, that's accurate, that's accurate?

11:45:52  18  A.  Right.

11:45:52  19  Q.  And what was your understanding at this point in time what

11:46:02  20  was in it for you forgiving that testimony?

11:46:06  21     THE COURT:  Are you talking about the grand jury

11:46:07  22  testimony?

11:46:08  23     MR. LOEVY:  Yes, at that time.

11:46:09  24  BY MR. LOEVY:

11:46:09  25  Q.  What was your understanding of what was going to benefit


***REALTIME UNEDITED TRANSCRIPT ONLY***

| 11:46:11 | 1 | Derrick Kees? |
| 11:46:11 | 2 | A.  We hadn't come to that part. |
| 11:46:15 | 3 | Q.  What was that? |
| 11:46:15 | 4 | A.  We hadn't come to that part right there. |
| 11:46:17 | 5 | Q.  How many -- you were testifying against more than a dozen |
| 11:46:20 | 6 | of your colleagues? |
| 11:46:21 | 7 | A.  You're talking about the grand jury. |
| 11:46:23 | 8 | Q.  That's what I'm talking about? |
| 11:46:24 | 9 | A.  The grand jury is early in the process. |
| 11:46:26 | 10 | Q.  I'm asking you at the grand jury you're implicating more |
| 11:46:28 | 11 | than a dozen of your colleagues, correct? |
| 11:46:30 | 12 | A.  Yeah, I am pretty much talking about the entire El Rukn |
| 11:46:35 | 13 | government. |
| 11:46:35 | 14 | Q.  You're saying it hadn't come up what's in it for Derrick |
| 11:46:39 | 15 | Kees at that point? |
| 11:46:39 | 16 | A.  Oh, yeah, Derrick Kees definitely asked about that. |
| 11:46:41 | 17 | Q.  Okay.  What did they tell you? |
| 11:46:43 | 18 | A.  We hadn't come to that part yet. |
| 11:46:44 | 19 | Q.  Okay. |
| 11:46:46 | 20 | A.  We hadn't got to all of that part. |
| 11:46:48 | 21 | Q.  Isn't it true you were threatened that they would send you |
| 11:46:51 | 22 | back to death row if you didn't cooperate? |
| 11:46:54 | 23 | A.  There were times that I felt that way.  As a matter of |
| 11:47:03 | 24 | fact, I wasn't on death row and I felt it if I had another |
| 11:47:07 | 25 | state murder case, that's where I'd be going. |

| 11:47:09 | 1 | Q. And you were instructed to lie if the judge asked you if |
| 11:47:13 | 2 | there was any promises, correct? |
| 11:47:15 | 3 | A. I was never instructed to lie. |
| 11:47:19 | 4 | Q. You told the judges you had no side agreements, no |
| 11:47:23 | 5 | understanding about a sentence, correct, when you testified? |
| 11:47:26 | 6 | A. Yeah. |
| 11:47:31 | 7 | Q. All right. This is your testimony on November 16th, 1994, |
| 11:47:35 | 8 | at Page 91. Were you asked these questions and give these |
| 11:47:40 | 9 | answers. |
| 11:47:42 | 10 | "QUESTION: Was anything else said to you? |
| 11:47:45 | 11 | "ANSWER: You. |
| 11:47:46 | 12 | "QUESTION: By Mr. Hogan concerning your plea or plea |
| 11:47:50 | 13 | agreement? |
| 11:47:50 | 14 | "ANSWER: Yes. |
| 11:47:52 | 15 | "QUESTION: What? |
| 11:47:53 | 16 | "ANSWER: He said after he explained all that, that |
| 11:47:57 | 17 | what I just previously said, he said, he told me he said when |
| 11:48:01 | 18 | the judge asks you about any other representations made about |
| 11:48:04 | 19 | the plea agreement in the written plea agreement, he said say |
| 11:48:07 | 20 | no and don't tell Mike Mann." |
| 11:48:10 | 21 | That's what he told you, right? |
| 11:48:14 | 22 | A. That's what I testified to? |
| 11:48:16 | 23 | Q. That's what he told you, right? |
| 11:48:18 | 24 | A. Is that what you're saying I testified to? |
| 11:48:20 | 25 | MR. LOEVY: Your Honor, may I put it on the screen so |

| | | |
|---|---|---|
| 11:48:22 | 1 | he can see it only? |
| 11:48:23 | 2 | THE COURT:  So he can see it only.  Give me a second. |
| 11:48:28 | 3 | Now you can put it on the screen. |
| 11:48:30 | 4 | BY MR. LOEVY: |
| 11:48:31 | 5 | Q.  This is 91, line 23 there.  Do you see at the bottom.  And |
| 11:48:44 | 6 | then continuing through line ten.  Mike m-a-n-n-^ ? |
| 11:49:01 | 7 | THE COURT:  Okay.  So did he accurately read the |
| 11:49:03 | 8 | testimony before? |
| 11:49:04 | 9 | THE WITNESS:  Yeah. |
| 11:49:05 | 10 | THE COURT:  He said yes.  Go ahead, Mr. Loevy. |
| 11:49:07 | 11 | MR. LOEVY:  May I have a moment, your Honor?  Let me |
| 11:49:16 | 12 | get a transcript. |
| 11:49:18 | 13 | (Brief pause.) |
| 11:49:27 | 14 | BY MR. LOEVY: |
| 11:49:33 | 15 | Q.  Am and although you told -- you were told not to say you |
| 11:49:37 | 16 | had been given any promises but that you had been given |
| 11:49:40 | 17 | promises, correct? |
| 11:49:40 | 18 | A.  I thought so. |
| 11:49:45 | 19 | Q.  And you thought so because you had been made promises, |
| 11:49:48 | 20 | right? |
| 11:49:48 | 21 | A.  I thought so. |
| 11:49:50 | 22 | Q.  All right.  So since you thought so, when you told the |
| 11:49:53 | 23 | judges that you hadn't been made promises, you were lying, |
| 11:49:56 | 24 | correct? |
| 11:49:56 | 25 | A.  I found out different. |

11:50:02    1   Q. All right. You had been instructed to say you hadn't been

11:50:04    2   made any promises even though you had, correct?

11:50:06    3   A. At that point, it was -- everything is kind of ambiguous

11:50:15    4   and confusing and it was like a back and forth thing.

11:50:19    5   Q. Do you remember being asked this question. This is on

11:50:21    6   page 132 of the same transcript.

11:50:24    7       "QUESTION: And you're telling us, sir, that Mr. Hogan

11:50:27    8   told you if you were asked about these promises by Judge Aspen

11:50:30    9   at your guilty plea to deny them is that right?

11:50:32   10       "ANSWER: He said to say no."

11:50:36   11       That's what you were told, right?

11:50:38   12   A. If that's what the document right there is saying.

11:50:40   13   Q. But that's what happened, isn't it?

11:50:41   14   A. That's what I testified to.

11:50:44   15   Q. And you were specifically told that with you being able to

11:50:54   16   represent yourself as having a 99 year sentence that would

11:50:57   17   make you more credible in these trials, right?

11:50:59   18   A. I never represented myself.

11:51:05   19           MR. KULWIN: Your Honor.

11:51:06   20           THE COURT: The objection is overruled.

11:51:07   21   BY MR. LOEVY:

11:51:08   22   Q. Do you remember being asked these questions and giving

11:51:09   23   these answers. This is page 90, lines 17 through 23.

11:51:12   24       "QUESTION:

11:51:14   25       THE WITNESS: Can I see it?

***REALTIME UNEDITED TRANSCRIPT ONLY***

102

| 11:51:17 | 1 | MR. LOEVY: Sure. |
| 11:51:17 | 2 | THE COURT: Just put it up there. |
| 11:51:25 | 3 | THE WITNESS: Starting where? |
| 11:51:26 | 4 | BY MR. LOEVY: |
| 11:51:26 | 5 | Q. Line 17. |
| 11:51:27 | 6 | "QUESTION: Did he tell you anything else regarding the |
| 11:51:29 | 7 | reason that -- |
| 11:51:30 | 8 | "ANSWER: Yes, he did |
| 11:51:32 | 9 | "QUESTION: That the sentence was 99? |
| 11:51:34 | 10 | "ANSWER: Yes. |
| 11:51:35 | 11 | "QUESTION: What else did he say? |
| 11:51:37 | 12 | "ANSWER: He said that it would look good in trial and |
| 11:51:39 | 13 | it would make a more believable witness." |
| 11:51:43 | 14 | Correct? |
| 11:51:44 | 15 | A. That's what the testimony says right here. |
| 11:51:47 | 16 | Q. That's your testimony, right? |
| 11:51:48 | 17 | A. It is my testimony. |
| 11:51:49 | 18 | Q. So you intentionally to make yourself a more believable |
| 11:51:54 | 19 | witness gave the judge the false impression that you were in |
| 11:51:57 | 20 | for 99 even though you knew they were going to take care of |
| 11:52:00 | 21 | you later? |
| 11:52:00 | 22 | A. Is that a question? |
| 11:52:14 | 23 | Q. It is. |
| 11:52:15 | 24 | A. Say it again. |
| 11:52:16 | 25 | Q. You intentionally misrepresented to the judges that you |

11:52:19  1   believed you were in for 99 years even though you knew you had

11:52:22  2   a deal that you were going to do less and you did that in

11:52:26  3   order to make yourself look better on the stand; isn't that

11:52:26  4   true?

11:52:34  5   A.  That sounds like more than one question.

11:52:35  6   Q.  Mr. Hogan wanted you to testify at trials, correct?

11:52:40  7   A.  Yes.

11:52:41  8   Q.  And you didn't really want to do that after a while,

11:52:46  9   right?

11:52:46  10  A.  That was really not the case.

11:52:50  11  Q.  And isn't it true that the only reason you went through

11:52:53  12  with it is because you had been made this promise that you'd

11:52:56  13  do less time?

11:52:57  14  A.  My perception was that, sure, I would be rewarded in some

11:53:05  15  type of way, yeah.

11:53:06  16  Q.  All right.  Isn't it true that on the day -- at some point

11:53:14  17  Hogan threatened you that death awaited you if you didn't

11:53:16  18  cooperate with the proffer?

11:53:17  19  A.  Do you have that in testimony, to?

11:53:25  20  Q.  That's a question, sir.  Didn't Hogan tell you something

11:53:28  21  like that?

11:53:28  22  A.  No, he didn't tell me anything like that.

11:53:32  23  Q.  What's that?

11:53:33  24  A.  No, he didn't tell me anything like that.

11:53:34  25  Q.  This is your testimony, November 16th, 1994, at page 99.

11:53:42   1   A.  Where are we starting?

11:53:43   2   Q.  Line 21.

11:53:44   3   A.  Okay.

11:53:44   4   Q.

11:53:45   5       "QUESTION:  Well, when you asked them or did you ask

11:53:47   6   him, let me ask you, what would be done for you?

11:53:49   7       "ANSWER:  Well, the next day, when I was brought in to

11:53:52   8   testify -- actually testify, I asked Hogan had he contacted

11:53:55   9   Mike Mann and I asked, you know, did he talk to the U.S.

11:54:00  10   attorneys, what they examining do tore me.  And Hogan, he

11:54:04  11   looked at me and said, Derrick, death waits for you over there

11:54:07  12   in the state,you know.  It scared me, you know.  I

11:54:13  13       THE COURT:  Looked at Hogan.

11:54:14  14   BY MR. LOEVY:

11:54:15  15   Q.  I looked at Hogan, I said that's like putting a gun to my

11:54:18  16   head.  He said, yeah, it is and I'm making the rules.  Did you

11:54:21  17   give that answer?

11:54:22  18   A.  Yeah, I remember that.

11:54:24  19   Q.  And you went through with the proffer and Hogan's

11:54:28  20   statement because you felt you had no choice, correct?

11:54:30  21       MR. KULWIN:  Judge, objection as to what proffer,

11:54:32  22   what statement, it's five years after the proffer, five years

11:54:36  23   later.

11:54:36  24   BY MR. LOEVY:

11:54:37  25   Q.  You were cooperating in a number of cases, correct?

11:54:38  1   A.  Yeah.

11:54:39  2   Q.  And isn't it true that each time you had to tell a story

11:54:42  3   about a lot of cases, right?

11:54:44  4            MR. KULWIN:  Objection as to story.

11:54:45  5   BY MR. LOEVY:

11:54:46  6   Q.  You had to testify about a lot of cases, right?

11:54:50  7   A.  I did testify about a lot of cases.

11:54:51  8   Q.  One of them was the Smith/Hickman murder?

11:54:53  9   A.  Yeah.

11:54:53  10  Q.  And you felt you were being threatened that if you didn't

11:54:56  11  go through with the whole thing, that death awaited you?

11:55:00  12           MR. KULWIN:  Objection, Judge.

11:55:01  13           THE COURT:  Overruled.

11:55:02  14           THE WITNESS:  I was already obligated, so why would I

11:55:06  15  back out then, you know, regardless of what our conversation

11:55:10  16  was.

11:55:10  17  BY MR. LOEVY:

11:55:20  18  Q.  Isn't it true, and last question on the lying under oath,

11:55:23  19  but you did lie under oath?

11:55:25  20           MR. KULWIN:  Judge, I am going to object to the

11:55:27  21  comment.

11:55:27  22           THE COURT:  The objection is sustained.

11:55:29  23           MR. ART:  Isn't it true.

11:55:30  24           THE COURT:  The comment is sustained.  The jury is

11:55:32  25  directed to disregard it.


                   ***REALTIME UNEDITED TRANSCRIPT ONLY***

| | | |
|---|---|---|
| 11:55:34 | 1 | BY MR. LOEVY: |
| 11:55:34 | 2 | Q.  You lied under oath on Hogan's instructions to lie? |
| 11:55:37 | 3 | MR. KULWIN:  Objection, asked and answered.. |
| 11:55:39 | 4 | THE COURT:  Sustained. |
| 11:55:42 | 5 | BY MR. LOEVY: |
| 11:55:42 | 6 | Q.  All right.  There came a point when you did not in 1994 |
| 11:55:47 | 7 | when you testified about a number of cases including the |
| 11:55:50 | 8 | Smith/Hickman case, correct?  I'm sorry, January 93. |
| 11:55:53 | 9 | A.  You compounding your questions.  Break it down. |
| 11:55:59 | 10 | Q.  Thank you. |
| 11:56:00 | 11 | In 1993, January, there came a time when you were |
| 11:56:03 | 12 | going to be called onto give your testimony about all the |
| 11:56:05 | 13 | different cases, correct? |
| 11:56:08 | 14 | A. |
| 11:56:10 | 15 | MR. NOLAND:  Objection, form, Judge. |
| 11:56:11 | 16 | THE COURT:  Overruled. |
| 11:56:12 | 17 | MR. NOLAND:  Compound. |
| 11:56:13 | 18 | THE COURT:  It's not compound.  Overruled. |
| 11:56:16 | 19 | THE WITNESS:  I knew that when I testified. |
| 11:56:18 | 20 | BY MR. LOEVY: |
| 11:56:18 | 21 | Q.  Hogan did a briefing with you to prepare for that |
| 11:56:21 | 22 | testimony? |
| 11:56:21 | 23 | A.  Yeah. |
| 11:56:23 | 24 | Q.  And you refused to come out of your cell? |
| 11:56:25 | 25 | A.  What was that date again? |

Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 108 of 125 PageID #:66595
11/30/16 AM
***REALTIME UNEDITED TRANSCRIPT ONLY***

107

| | | |
|---|---|---|
| 11:56:34 | 1 | Q. January 1993. |
| 11:56:35 | 2 | A. I remember having an altercation at the MCC. |
| 11:56:42 | 3 | Q. The warden was instructing you go talk to Hogan before |
| 11:56:46 | 4 | your testimony, right? |
| 11:56:46 | 5 | A. Well, it didn't start because of Hogan. It started |
| 11:56:53 | 6 | because of something else. |
| 11:56:53 | 7 | Q. All right. |
| 11:56:54 | 8 | A. Hogan ended up getting involved. |
| 11:56:56 | 9 | Q. And then the orange crush came and got you out of the |
| 11:56:59 | 10 | cell? |
| 11:57:00 | 11 | MR. KULWIN: Objection as to orange crush, Judge. |
| 11:57:02 | 12 | THE COURT: Rephrase the question. |
| 11:57:04 | 13 | BY MR. LOEVY: |
| 11:57:04 | 14 | Q. Six or seven big guys in riot gear and helmets came and |
| 11:57:08 | 15 | got you out of the cell? |
| 11:57:09 | 16 | A. They were standing out there: They were just standing out |
| 11:57:15 | 17 | there, but I agreed to come out. |
| 11:57:16 | 18 | Q. All right. And you were still trying to make sure you got |
| 11:57:19 | 19 | your deal, right? |
| 11:57:20 | 20 | A. I always wanted a deal, so let's get that out. |
| 11:57:28 | 21 | Q. You stopped trying -- you stopped starting to trust them, |
| 11:57:35 | 22 | didn't you? |
| 11:57:36 | 23 | A. Phrase that again. |
| 11:57:43 | 24 | Q. At some point you filed a motion asking to enforce the |
| 11:57:46 | 25 | agreement that you had been promised, correct? That's a |

***REALTIME UNEDITED TRANSCRIPT ONLY***

11/30/16 AM     ***REALTIME UNEDITED TRANSCRIPT ONLY***

| | | |
|---|---|---|
| 11:58:02 | 1 | question. |
| 11:58:03 | 2 | A.  I am going to need to come through my lawyer that |
| 11:58:10 | 3 | something was coming my way. |
| 11:58:11 | 4 | Q.  Isn't it true that for most of that time you thought Hogan |
| 11:58:14 | 5 | was your lawyer? |
| 11:58:14 | 6 | A.  Not at all. |
| 11:58:15 | 7 | Q.  Not at all.  You never thought Bill Hogan was your lawyer? |
| 11:58:19 | 8 | A.  No. |
| 11:58:21 | 9 | Q.  And isn't it true that you thought Bill Hogan was your |
| 11:58:25 | 10 | lawyer is because Mr. O'Callaghan told you that he was? |
| 11:58:27 | 11 | A.  I just said I never thought he was my lawyer. |
| 11:58:30 | 12 | MR. LOEVY:  May I have a moment, your Honor? |
| 11:58:31 | 13 | THE COURT:  Yes. |
| 11:58:34 | 14 | (Brief pause.) |
| 11:58:42 | 15 | BY MR. LOEVY: |
| 11:58:42 | 16 | Q.  Do you remember giving this statement on November 16th, |
| 11:58:45 | 17 | 1994, at page 76. |
| 11:58:49 | 18 | A.  Let me see that. |
| 11:58:51 | 19 | Q.  Lines 18 through 15.  I'm sorry, lines 8 through 15? |
| 11:59:00 | 20 | THE COURT:  11 through 15. |
| 11:59:01 | 21 | THE WITNESS:  11 through 15. |
| 11:59:03 | 22 | THE COURT:  Or 9 through 15. |
| 11:59:05 | 23 | THE WITNESS:  It's not real clear over here. |
| 11:59:08 | 24 | BY MR. LOEVY: |
| 11:59:08 | 25 | Q.  I'll read it.  Okay. |

***REALTIME UNEDITED TRANSCRIPT ONLY***

| 11:59:13 | 1 | "ANSWER: |
| 11:59:14 | 2 | "QUESTION:  Do you recall that?  I'll backup. |
| 11:59:17 | 3 | "QUESTION:  Here at 219, this building, answer in this |
| 11:59:21 | 4 | building here on the 24th floor. |
| 11:59:22 | 5 | "QUESTION:  And how were you taken there by |
| 11:59:26 | 6 | O'Callaghan?  Yeah O'Callaghan brought. |
| 11:59:28 | 7 | "QUESTION:  Do you recall? |
| 11:59:29 | 8 | "ANSWER:  It was a U.S. Marshal with O'Callaghan.  I |
| 11:59:32 | 9 | was brought from the state by another car by some state |
| 11:59:35 | 10 | officers.  Okay okay when I got there, then I met O'Callaghan |
| 11:59:38 | 11 | and another guy named t-i-n-t-i-l-l-a, another U.S. Marshal. |
| 11:59:45 | 12 | Okay.  O'Callaghan talked with me and then he had Hogan. |
| 11:59:49 | 13 | Quote, this is Bill Hogan from the U.S. Attorney's Office, |
| 11:59:52 | 14 | this is your lawyer.  Did you make that statement |
| 11:59:54 | 15 | A.  Who asked this question? |
| 12:00:10 | 16 | Q.  You.  This is your direct in U.S. v. Kees.  Did you make |
| 12:00:19 | 17 | that statement? |
| 12:00:19 | 18 | A.  My answer is at line 9. |
| 12:00:31 | 19 | Q.  That's what I read, correct? |
| 12:00:37 | 20 | THE COURT:  The question is did he read the testimony |
| 12:00:42 | 21 | correct? |
| 12:00:42 | 22 | THE WITNESS:  Yeah, he read the testimony correct. |
| 12:00:44 | 23 | Yeah. |
| 12:00:46 | 24 | BY MR. LOEVY: |
| 12:00:46 | 25 | Q.  Now, the reason you filed that motion was because you |

12:00:51   1    believed that Mr. O'Callaghan had made you a promise that your

12:00:54   2    time would be cut if you followed through, correct?

12:00:57   3         MR. KULWIN:  Judge, I am going to object as to what

12:01:02   4    he represented, it's not correct, O'Callaghan.

12:01:04   5         THE COURT:  It's the question.

12:01:07   6         MR. KULWIN:  Judge, we'd like to be heard, please.

12:01:10   7      (The following proceedings were had at sidebar outside the

12:01:26   8    hearing of the jury:)

12:01:26   9         MR. LOEVY:  Here's the testimony that I propose to

12:01:27  10    read.

12:01:34  11         THE COURT:  He showed me page 79 from what date is

12:01:37  12    this?  Is this the same transcript?

12:01:40  13         MR. LOEVY:  Same transcript.

12:01:41  14         THE COURT:  November 16, 94.  At that point in time

12:01:46  15    had either O'Callaghan or Murphy made to you any promises that

12:01:50  16    about sentence that you would receive as far as numbers.

12:01:53  17         "ANSWER:  No.  Dave O'Callaghan told me I wouldn't have

12:01:56  18    to do all my time.  Okay.  So what's the objection?

12:02:01  19         MR. KULWIN:  Here's your ruling at the second trial.

12:02:03  20    The Court, I am not going --

12:02:05  21         THE COURT:  This is page 2462.

12:02:09  22         MR. KULWIN:  We talked about this this morning.

12:02:17  23         THE COURT:  I want to make sure that this is the same

12:02:18  24    this.  Okay?  That's what I'm trying to figure out.

12:02:24  25         That's the thing I ruled on.  It's excluded.


                           ***REALTIME UNEDITED TRANSCRIPT ONLY***

| | | |
|---|---|---|
| 12:02:50 | 1 | MR. KULWIN:  Thank you. |
| 12:02:54 | 2 | (The following proceedings were had in open court in the |
| 12:02:55 | 3 | presence and hearing of the jury:) |
| 12:02:55 | 4 | THE COURT:  Okay.  The objection is sustained. |
| 12:02:59 | 5 | BY MR. LOEVY: |
| 12:03:05 | 6 | Q.  All right.  Sir, fast forward to 2013, you gave a |
| 12:03:13 | 7 | deposition in this case, correct? |
| 12:03:15 | 8 | A.  2013, I testified. |
| 12:03:26 | 9 | Q.  The question was you gave a deposition? |
| 12:03:28 | 10 | THE COURT:  You gave a deposition. |
| 12:03:29 | 11 | BY MR. LOEVY: |
| 12:03:29 | 12 | Q.  On October the 7th, 1993, you gave a deposition in this |
| 12:03:32 | 13 | case, correct, sir? |
| 12:03:33 | 14 | A.  Do you have it? |
| 12:03:35 | 15 | Q.  Yes.  Let me have a keep of Mr. Kees' deposition, guys. |
| 12:03:58 | 16 | MR. LOEVY:  May I approach, your Honor? |
| 12:03:59 | 17 | THE COURT:  Yes. |
| 12:04:01 | 18 | THE WITNESS:  Yep. |
| 12:04:02 | 19 | BY MR. LOEVY: |
| 12:04:03 | 20 | Q.  Thank you. |
| 12:04:04 | 21 | And prior to giving the deposition in this case, they |
| 12:04:07 | 22 | cut your time, correct? |
| 12:04:09 | 23 | MR. NOLAND:  Judge, objection. |
| 12:04:10 | 24 | THE COURT:  Sustained. |
| 12:04:11 | 25 | BY MR. LOEVY: |

| | | |
|---|---|---|
| 12:04:11 | 1 | Q.  The state cut your time? |
| 12:04:14 | 2 | A.  The state cut my time, I think I was -- I think I was done |
| 12:04:22 | 3 | testifying. |
| 12:04:23 | 4 | Q.  Okay.  As a matter of fact, you testified, the deposition |
| 12:04:27 | 5 | was on the 7th and then they took you over to see judge Ford |
| 12:04:30 | 6 | on the 9th, right? |
| 12:04:31 | 7 | A.  Okay.  Yeah. |
| 12:04:36 | 8 | Q.  And then you went back on the stand in a different |
| 12:04:38 | 9 | proceeding on the 10th, right? |
| 12:04:39 | 10 | A.  Is that a true fact? |
| 12:04:44 | 11 | Q.  I'm asking you if you remember it that way, that you |
| 12:04:47 | 12 | started testifying, then they cut your time, then you |
| 12:04:49 | 13 | testified again?  Either you remember it that way or you |
| 12:04:59 | 14 | don't.  Do you remember it that way? |
| 12:05:00 | 15 | A.  I don't quite remember, you know. |
| 12:05:01 | 16 | Q.  All right.  Prior to the deposition, you met with |
| 12:05:05 | 17 | Mr. Sexton, the state's attorney, for a couple hours to go |
| 12:05:07 | 18 | over the documents, correct? |
| 12:05:08 | 19 | A.  Okay. |
| 12:05:10 | 20 | Q.  What's that? |
| 12:05:11 | 21 | A.  Yeah. |
| 12:05:11 | 22 | Q.  And by the documents, I mean the document relating to the |
| 12:05:14 | 23 | Smith/Hickman case, right? |
| 12:05:15 | 24 | A.  Okay.  Yeah. |
| 12:05:16 | 25 | Q.  And you went over the transcripts of your prior testimony |

| | | |
|---|---|---|
| 12:05:24 | 1 | about Smith/Hickman? |
| 12:05:25 | 2 | A.  Yes. |
| 12:05:25 | 3 | Q.  And Mr. Sexton left you copies of your old testimony from |
| 12:05:30 | 4 | Smith/Hickman to study up, right? |
| 12:05:31 | 5 | A.  He asked me to review them. |
| 12:05:33 | 6 | Q.  And did you? |
| 12:05:33 | 7 | A.  Yeah, I reviewed them. |
| 12:05:35 | 8 | Q.  Then you went before judge Ford over at 26th and Cal to |
| 12:05:38 | 9 | get your time cut, correct? |
| 12:05:40 | 10 | A.  Yeah. |
| 12:05:40 | 11 | Q.  And how much did they cut your time by? |
| 12:05:43 | 12 | A.  They cut my time five years. |
| 12:05:47 | 13 | Q.  Five years? |
| 12:05:48 | 14 | A.  In the state. |
| 12:05:49 | 15 | Q.  And when they explained to judge Ford that they were going |
| 12:05:52 | 16 | to cut your time, you had to tell them what your out date was, |
| 12:05:56 | 17 | right? |
| 12:05:56 | 18 | MR. NOLAND:  Judge, objection as to they. |
| 12:05:58 | 19 | THE COURT:  Rephrase the question. |
| 12:06:00 | 20 | BY MR. LOEVY: |
| 12:06:01 | 21 | Q.  The person there -- |
| 12:06:02 | 22 | THE COURT:  Just ask -- |
| 12:06:03 | 23 | BY MR. LOEVY: |
| 12:06:05 | 24 | Q.  I'm sorry.  The person there was state's attorney Sexton, |
| 12:06:09 | 25 | right? |

***REALTIME UNEDITED TRANSCRIPT ONLY***

| | | |
|---|---|---|
| 12:06:09 | 1 | A.  Yeah. |
| 12:06:09 | 2 | Q.  What's his first name?  All right? |
| 12:06:15 | 3 |        THE COURT:  It doesn't really matter. |
| 12:06:17 | 4 | BY MR. LOEVY: |
| 12:06:17 | 5 | Q.  Whatever pronoun I use, that's who I am talking about. |
| 12:06:20 | 6 | A.  Yeah, I know what you're talking about. |
| 12:06:22 | 7 | Q.  The judge asked you what your out date was, correct? |
| 12:06:25 | 8 | A.  I don't remember everything the judge asked me. |
| 12:06:29 | 9 | Q.  All right.  This is the October 9th, 2013, proceeding |
| 12:06:33 | 10 | before judge Ford at page 8. |
| 12:06:36 | 11 |        THE COURT:  Do you want to put it up there so he can |
| 12:06:38 | 12 | see it? |
| 12:06:39 | 13 |        MR. LOEVY:  All right. |
| 12:06:40 | 14 | BY MR. LOEVY: |
| 12:06:42 | 15 | Q.  You were asked, well, in your presence, the Court asked, |
| 12:06:47 | 16 | well, what's his current out date from the federal, his first |
| 12:06:50 | 17 | eligibility date from the federal parole?  And then |
| 12:06:55 | 18 | Mr. Sexton, you know what?  And the Court said, do you know |
| 12:06:57 | 19 | that?  Mr. Sexton said I do not know that first has been. |
| 12:07:06 | 20 | Then you said 2042.  And the court said 2042.  You know that |
| 12:07:11 | 21 | happened? |
| 12:07:11 | 22 | A.  Yeah. |
| 12:07:12 | 23 | Q.  That wasn't true? |
| 12:07:13 | 24 | A.  That was -- that was the last date that I heard from my |
| 12:07:16 | 25 | case manager at the unit. |

Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 116 of 125 PageID #:66603
11/30/16 AM
***REALTIME UNEDITED TRANSCRIPT ONLY***

115

| | | |
|---|---|---|
| 12:07:17 | 1 | Q. Do you remember giving this statement on October the 10th, |
| 12:07:23 | 2 | the day after that happened at page 75? |
| 12:07:27 | 3 | MR. KULWIN: Can you -- |
| 12:07:28 | 4 | MR. LOEVY: The 10/10 transcript, the same |
| 12:07:32 | 5 | proceeding. |
| 12:07:33 | 6 | THE WITNESS: Can you show me? |
| 12:07:34 | 7 | BY MR. LOEVY: |
| 12:07:34 | 8 | Q. You were asked the following question and gave the |
| 12:07:36 | 9 | following answers. When you went before judge Ford yesterday |
| 12:07:40 | 10 | afternoon and he asked you what your earliest possible out |
| 12:07:43 | 11 | date was, what did you tell him? Answer answer I told him |
| 12:07:46 | 12 | 2042. |
| 12:07:46 | 13 | "QUESTION: That wasn't correct, was it? |
| 12:07:48 | 14 | "ANSWER: I might have had the number wrong." |
| 12:07:52 | 15 | Did you give that testimony, sir? |
| 12:07:54 | 16 | A. That's the testimony I gave. |
| 12:07:55 | 17 | Q. What was your out date after you were done testifying at |
| 12:08:00 | 18 | the 2013 proceeding and Mr. Fields' deposition? What would |
| 12:08:09 | 19 | the right number have been? |
| 12:08:11 | 20 | A. The number was 2042 until they showed it to me on |
| 12:08:15 | 21 | documents. |
| 12:08:15 | 22 | Q. Okay. So what should you have said if you had testified |
| 12:08:19 | 23 | truthfully? |
| 12:08:20 | 24 | A. I said what I should have said. |
| 12:08:21 | 25 | Q. 2042? |

Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 117 of 125 PageID #:66604

| | | |
|---|---|---|
| 12:08:24 | 1 | A. Yeah. |
| 12:08:24 | 2 | Q. What was your actual out date? I think we're missing each |
| 12:08:27 | 3 | other? |
| 12:08:27 | 4 | A. Yeah, we are. |
| 12:08:29 | 5 | Q. On October 2013, what was your actual out date? |
| 12:08:33 | 6 | A. As of October 2013, be before or after I got the |
| 12:08:39 | 7 | reduction? |
| 12:08:39 | 8 | Q. Say before. |
| 12:08:41 | 9 | A. Before, it was 2042. |
| 12:08:43 | 10 | Q. Okay. |
| 12:08:44 | 11 | A. As far as I knew. |
| 12:08:45 | 12 | Q. And then when you got the reduction, what was your out |
| 12:08:47 | 13 | date? |
| 12:08:47 | 14 | A. It came down a couple of years. |
| 12:08:53 | 15 | Q. Well, let's be precise. I assume you knew what your out |
| 12:08:56 | 16 | date was, right? |
| 12:08:58 | 17 | 2042 is where you started. After 2013, what was your |
| 12:09:01 | 18 | new out date after that cooperation against Mr. Fields? |
| 12:09:04 | 19 | A. I can't see that. |
| 12:09:05 | 20 | Q. I'll write it accurate. What year? |
| 12:09:09 | 21 | A. That would be five years earlier. |
| 12:09:16 | 22 | Q. Okay. You knew exactly how many years they were cutting, |
| 12:09:20 | 23 | didn't you? |
| 12:09:20 | 24 | A. I said five years. |
| 12:09:22 | 25 | Q. I don't want to put words in your mouth. Are you saying |

12:09:25   1   after 2013 your out date was 2037?

12:09:29   2   A.  Yeah, okay.

12:09:30   3   Q.  If your out date was 2037 in October of 2013, then why are

12:09:37   4   you going to be free three years from now or how many years

12:09:42   5   from now, five years from now?

12:09:44   6   A.  I asked for a Rule 35.

12:09:47   7   Q.  It's your understanding you were going to walk out of

12:09:53   8   prison on what date?

12:09:54   9   A.  I don't have the exact date.

12:09:56  10   Q.  I bet you do?

12:09:58  11   A.  Somewhere.

12:09:58  12         MR. KULWIN:  I object to that.  Ask it be stricken.

12:10:02  13         THE COURT:  The comment is stricken.

12:10:03  14   BY MR. LOEVY:

12:10:03  15   Q.  You know the exact date you are going to walk out of

12:10:05  16   prison, don't you, sir?

12:10:07  17   A.  It's like November 2021, something like that.

12:10:12  18   Q.  Did you say 20 or 21?

12:10:16  19         THE COURT:  No, he said November of the year 2021, is

12:10:19  20   that what you said?

12:10:20  21         THE WITNESS:  That's what I said, your Honor.

12:10:22  22   BY MR. LOEVY:

12:10:25  23   Q.  You have not cooperated against any other witnesses

12:10:28  24   between 2013 and this trial, have you?

12:10:30  25   A.  No.

Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 119 of 125 PageID #:66606
11/30/16 AM          ***REALTIME UNEDITED TRANSCRIPT ONLY***

118

| | | |
|---|---|---|
| 12:10:32 | 1 | Q.  Just Mr. Fields and this civil proceeding since 2013, |
| 12:10:36 | 2 | correct? |
| 12:10:37 | 3 | A.  Correct. |
| 12:10:38 | 4 | Q.  Let's talk about your story -- |
| 12:10:43 | 5 | MR. KULWIN:  Judge, I am going to object to story. |
| 12:10:47 | 6 | It's argumentative. |
| 12:10:48 | 7 | MR. LOEVY:  We don't concede that it's -- |
| 12:10:50 | 8 | THE COURT:  Okay.  I have to make rulings on whether |
| 12:10:54 | 9 | questions are argumentative.  I am sustaining the objection. |
| 12:10:56 | 10 | MR. LOEVY:  All right. |
| 12:10:56 | 11 | BY MR. LOEVY: |
| 12:10:56 | 12 | Q.  Let's talk about your allegations that you knew something |
| 12:10:59 | 13 | about the Smith/Hickman murder and Mr. Fields.  All right, |
| 12:11:02 | 14 | sir? |
| 12:11:02 | 15 | A.  Okay. |
| 12:11:03 | 16 | Q.  Let's -- you were not present when Mr. Jerome Fuddy Smith |
| 12:11:11 | 17 | was murdered, correct? |
| 12:11:12 | 18 | A.  That is correct. |
| 12:11:13 | 19 | Q.  You did not witness the murder? |
| 12:11:14 | 20 | A.  That is correct. |
| 12:11:14 | 21 | Q.  So you had no firsthand personal knowledge of who did it? |
| 12:11:18 | 22 | MR. KULWIN:  Objection as to the firsthand personal |
| 12:11:21 | 23 | knowledge. |
| 12:11:21 | 24 | THE COURT:  You've sustained 403. |
| 12:11:23 | 25 | BY MR. LOEVY: |

| | | |
|---|---|---|
| 12:11:25 | 1 | Q.  So you were still notwithstanding lacking personal |
| 12:11:28 | 2 | knowledge, you were still able to get a deal in relation to |
| 12:11:32 | 3 | this particular murder, correct? |
| 12:11:34 | 4 | MR. KULWIN:  Judge, I am going to object. |
| 12:11:35 | 5 | THE COURT:  Sustained, argumentative. |
| 12:11:36 | 6 | BY MR. LOEVY: |
| 12:11:37 | 7 | Q.  All right.  You claim you were part of the Smith/Hickman |
| 12:11:45 | 8 | hit team, correct? |
| 12:11:46 | 9 | A.  He was part of the El Rukn team. |
| 12:11:54 | 10 | Q.  Okay.  Who was the hit team that Jeff Fort assigned to |
| 12:11:59 | 11 | kill Hickman and Smith?  It was you, right? |
| 12:12:04 | 12 | A.  Me. |
| 12:12:07 | 13 | Q.  Earl Hawkins? |
| 12:12:08 | 14 | A.  Earl Hawkins. |
| 12:12:09 | 15 | Q.  Who else, sir? |
| 12:12:10 | 16 | A.  Harry Evans. |
| 12:12:17 | 17 | Q.  Who else was on the Smith/Hickman hit team? |
| 12:12:20 | 18 | A.  That depends. |
| 12:12:21 | 19 | Q.  I'm asking who the four guys were? |
| 12:12:24 | 20 | A.  You mean the four people that killed him or the four |
| 12:12:27 | 21 | people that -- |
| 12:12:28 | 22 | Q.  The four people you claim were on the hit team is you, |
| 12:12:31 | 23 | Hawkins, Harry Evans and Anthony Sumner, right? |
| 12:12:34 | 24 | MR. KULWIN:  Judge, I am object for lack of |
| 12:12:37 | 25 | foundation. |

| | |
|---|---|
| 12:12:37 | 1 |
| 12:12:39 | 2 |
| 12:12:45 | 3 |
| 12:12:48 | 4 |
| 12:13:19 | 5 |
| 12:13:19 | 6 |
| 12:13:21 | 7 |
| 12:13:21 | 8 |
| 12:15:06 | 9 |
| 12:15:08 | 10 |
| 12:15:11 | 11 |
| 12:15:13 | 12 |
| 12:15:17 | 13 |
| 12:15:20 | 14 |
| 12:15:23 | 15 |
| 12:15:26 | 16 |
| 12:15:28 | 17 |
| 12:15:31 | 18 |
| 12:15:34 | 19 |
| 12:15:38 | 20 |
| 12:15:40 | 21 |
| 12:15:42 | 22 |
| 12:15:45 | 23 |
| 12:15:49 | 24 |
| 12:15:51 | 25 |

1    THE COURT:  What we are going to do since I don't

2  have any cases up at 1:30, I have a little more flexibility of

3  when we are going to take the lunch break.  We are going to do

4  it now.  I am going to take the jury out.

5    (The jury leaves the courtroom.).

6    THE COURT:  Everybody stay here other than the

7  witness.  I'll be right out.

8    (Brief pause.)

9    THE COURT:  The question is vague.  I mean, I don't

10  know what you mean by "hit."  I don't know what you mean by

11  "hit team."  You may know what you mean by hit time.

12    Everybody else can sit down other than the people I

13  am talking to.  That would be him.  You guys can have a seat.

14    I know that because I have seen you try a lot of

15  cases including this one part that of the MO is putting the

16  whole theory in through the way you ask questions.  You're not

17  going to get to do that with this witness and it's to stop

18  right now.  Okay?  You're courting disaster with a witness

19  like this.  You are courting disaster.  If you didn't pick

20  that up in the first two minutes of his testimony, then it's

21  only because you are not paying attention.

22    You're going to have to ask tighter questions.  You

23  can't -- you can't be asking him, what's hit team?  I don't

24  know what that means.  Does that mean the people that planned

25  it, does that mean the people that did it?  It's obvious you

Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 122 of 125 PageID #:66609
11/30/16 AM
***REALTIME UNEDITED TRANSCRIPT ONLY***

121

| | | |
|---|---|---|
| 12:15:55 | 1 | didn't know what you meant by that.  You are not going to be |
| 12:15:57 | 2 | able to do that. |
| 12:15:59 | 3 | Do you understand what I'm telling you? |
| 12:16:01 | 4 | MR. LOEVY:  I do. |
| 12:16:01 | 5 | THE COURT:  You know, sanctions can go every which |
| 12:16:05 | 6 | way in this case.  It can go every which way in this case if |
| 12:16:09 | 7 | there ends up being a mistrial.  It doesn't just apply to the |
| 12:16:11 | 8 | defendants.  It applies to you personally. |
| 12:16:14 | 9 | I don't think you are paying attention to what the |
| 12:16:16 | 10 | guy is saying, first of all.  You ask him a question and you |
| 12:16:18 | 11 | are staring down at the page and not even looking at the guy. |
| 12:16:21 | 12 | It's going to have to be done in a tighter way.  If that's not |
| 12:16:27 | 13 | your MO, then you better fix your MO in the next hour.  That's |
| 12:16:31 | 14 | what I'm telling you. |
| 12:16:31 | 15 | MR. LOEVY:  I understand, your Honor. |
| 12:16:32 | 16 | I would like to be heard. |
| 12:16:34 | 17 | THE COURT:  On what? |
| 12:16:35 | 18 | MR. LOEVY:  On that. |
| 12:16:35 | 19 | THE COURT:  Do you disagree with what I am saying? |
| 12:16:35 | 20 | MR. LOEVY:  Not at all. |
| 12:16:36 | 21 | THE COURT:  What do you want to tell me then? |
| 12:16:38 | 22 | MR. LOEVY:  I understand you're saying. |
| 12:16:36 | 23 | THE COURT:  What do you want to tell me? |
| 12:16:38 | 24 | MR. LOEVY:  What I want to tell you is every time |
| 12:16:39 | 25 | this man has told the story, the hit team was him, Harry |

Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 123 of 125 PageID #:66610
11/30/16 AM ***REALTIME UNEDITED TRANSCRIPT ONLY***

122

12:16:43  1  Evans, Earl Hawkins.  The fact that he's trying to change it

12:16:49  2  now, IT will be the first time he's ever told the story

12:16:51  3  differently.

12:16:51  4  THE COURT:  Where is the question at which he

12:16:52  5  responded to -- let me see it.  I want to see it, "hit team."

12:16:55  6  MR. LOEVY:  I will show you.

12:16:56  7  THE COURT:  If that's the case, then you have a basis

12:16:57  8  for and he answered it that way.  Hit team.  If that's the

12:17:01  9  case, then you have a basis for asking that question.  Put it

12:17:04  10  on the ELMO.  Tell me what it is and put it on the ELMO.

12:17:16  11  MR. LOEVY:  He went out in a car with Harley Evans

12:17:21  12  and he took --

12:17:22  13  THE COURT:  You just got an order from a judge.  The

12:17:24  14  next thing that is going to happen is that you are going to

12:17:26  15  comply with the order from the judge.

12:17:28  16  MR. LOEVY:  I'm already done.  He said he had to take

12:17:32  17  a break, a leak I believe is the expression he used in one of

12:17:35  18  the transcripts.  Yeah, where did you go?  I stepped out over

12:17:37  19  there in a field.  He got back in the car.

12:17:40  20  THE COURT:  I am looking for the word "hit team."

12:17:42  21  Show them to me.

12:17:42  22  MR. LOEVY:  The word hit team is not this there.

12:17:45  23  THE COURT:  Okay.  You are missing my point.  You are

12:17:47  24  not evening listen to me, for God's sake.  You're not even

12:17:49  25  listening to me.  You're trying to jam this language into his

| | |
|---|---|
| 12:17:51 | 1 | ear.  And I know that's part of the strategy, I get it.  I |
| 12:17:54 | 2 | mean, that's what lawyers do.  You're not going to be able to |
| 12:17:56 | 3 | do it with this witness.  You are just not. |
| 12:17:59 | 4 | MR. LOEVY:  I am past that because I am not going to |
| 12:18:01 | 5 | try. |
| 12:18:01 | 6 | THE COURT:  No, you are not past it because that's |
| 12:18:03 | 7 | where this thing fell apart right now. |
| 12:18:05 | 8 | MR. LOEVY:  Four men got in the car -- |
| 12:18:06 | 9 | THE COURT:  So you're now listening to what the judge |
| 12:18:08 | 10 | is telling you. |
| 12:18:08 | 11 | MR. LOEVY:  I already am. |
| 12:18:09 | 12 | THE COURT:  Okay.  No.  I mean, I just said to you if |
| 12:18:12 | 13 | there was some question that you could show me where, you |
| 12:18:15 | 14 | know, he's asked a question, who was the hit team and he names |
| 12:18:18 | 15 | four people, then, of course, you have a basis to ask that |
| 12:18:20 | 16 | question.  I asked you to show it to me.  You showed me |
| 12:18:23 | 17 | something else.  I said where is the word hit team.  You said |
| 12:18:26 | 18 | I don't have that in there, so you can't use this vague |
| 12:18:29 | 19 | terminology. |
| 12:18:29 | 20 | MR. LOEVY:  That I am well past.  No hit team words. |
| 12:18:33 | 21 | Four men got in a car to kill Fuddy.  Four men got in |
| 12:18:37 | 22 | a car to kill him.  That's always been his story. |
| 12:18:39 | 23 | THE COURT:  I understand.  Then ask him that |
| 12:18:41 | 24 | question. |
| 12:18:41 | 25 | MR. LOEVY:  All right.  There you go.  Because I do |

Case: 1:18-cv-03029 Document #: 511-75 Filed: 03/15/24 Page 125 of 125 PageID #:66612

| | | |
|---|---|---|
| 12:18:43 | 1 | get -- |
| 12:18:44 | 2 | THE COURT:  It's just -- I don't understand if you're |
| 12:18:46 | 3 | getting the message here.  This is a witness, okay, who is |
| 12:18:50 | 4 | poised, I'll just use this word, to screw you.  He's poised to |
| 12:18:55 | 5 | screw you.  And what you do with a witness like that, and I |
| 12:18:59 | 6 | know you've tried a lot of cases, maybe you have tried more |
| 12:19:02 | 7 | cases than I've tried as a lawyer, but you haven't tried more |
| 12:19:04 | 8 | cases than I've seen as a judge and I have seen every possible |
| 12:19:08 | 9 | mistake that can be made times about ten.  What you do with a |
| 12:19:12 | 10 | witness who is trying to screw you is don't give him floating |
| 12:19:15 | 11 | softballs that he can screw you on. |
| 12:19:17 | 12 | MR. LOEVY:  I hear you. |
| 12:19:18 | 13 | THE COURT:  And you got to stop doing it. |
| 12:19:19 | 14 | MR. LOEVY:  I hear you. |
| 12:19:20 | 15 | THE COURT:  And that's all I'm going to say. |
| 12:19:22 | 16 | MR. LOEVY:  Thank you, your Honor. |
| 12:19:23 | 17 | THE COURT:  1:15. |
| 12:19:25 | 18 | (The trial was adjourned at 12:15 p.m. until 1:15 p.m. of |
| 12:19:30 | 19 | this same day and date.) |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |