# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

THOMAS SIERRA        )

                            )

        *Plaintiff,* v.       )

                            )

REYNALDO GUEVARA, et al,    )

                            )

        *Defendants.*      )

                            )

Case No. 1:18-cv-03029

Hon. John Robert Blakey

## PLAINTIFF'S MOTION FOR SANCTIONS
### <u>PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11</u>

Jon Loevy
Anand Swaminathan
Steve Art
Rachel Brady
Sean Starr
Meg Gould
Wally Hilke
Ruth Brown
**LOEVY & LOEVY**
311 N. Aberdeen St.
Chicago, IL 60607
(312) 243-5900

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION ..............................................................................................................1

RELEVANT FACTUAL BACKGROUND .......................................................................2

     A.    Relevant Background Regarding Litigation Against Defendants Guevara and Halvorsen ..........................................................2

     B.    Effort to Avoid Wasteful and Frivolous Summary Judgment Briefing ......................................................................................3

     C.    Brief Summary of Andujar Homicide and Investigation ...................5

LEGAL STANDARD ........................................................................................................8

ARGUMENT .....................................................................................................................9

I.  DEFENDANTS GUEVARA'S AND HALVORSEN'S MOTIONS FOR SUMMARY JUDGMENT ARE FRIVOLOUS. .................................9

     A.    Defendants Guevara's and Halvorsen's concessions bar granting summary judgment on Plaintiff's due process claim ..................................................................................................10

     B.    Defendants Guevara and Halvorsen cannot move for summary judgment after pleading the Fifth in response to all questions about their misconduct ..............................................13

     C.    In addition to the inference from pleading the Fifth, ample additional evidence creates genuine disputes of material facts as to all of Plaintiff's claims ..............................................15

          i.    There is significant evidence creating a dispute of fact that Defendants Guevara and Halvorsen fabricated Jose Melendez's identifications ........................................16

          ii.    There is significant evidence creating a dispute of fact that Defendants Halvorsen and Guevara fabricated Alberto Rodriguez's identifications. ..............................19

          iii.    There is significant evidence creating a dispute of fact that Guevara and Halvorsen fabricated the Esther Reyes story to make Sierra a suspect ...............................22

          iv.    There is ample evidence from which a jury can conclude that Guevara and Halvorsen suppressed exculpatory and impeaching evidence. ....................................25

          v.    Given all of the above, there are clearly disputes of fact that preclude any attempt at summary judgment on Plaintiff's malicious prosecution, conspiracy and other remaining claims. ...................................................26

II. THE COURT SHOULD SANCTION DEFENDANTS GUEVARA
    AND HALVORSEN....................................................................................................26

CONCLUSION...........................................................................................................................30

## TABLE OF AUTHORITIES

**Cases**                                                                             **Page(s)**

*4SEMO.com Inc. v. S. Illinois Storm Shelters, Inc.,* 939 F.3d 905 (7th Cir. 2019) ......................28

*Anderson v. City of Rockford,* 932 F.3d 494 (7th Cir. 2019)...............................................24

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ...................................................13

*Avery v. City of Milwaukee,* 847 F.3d 433 (7th Cir. 2017) ..............................................24

*Baxter v. Palmigiano,* 425 U.S. 308 (1976)...............................................................13

*Cage v. Harper,* 2020 WL 1248685 (N.D. Ill. Mar. 16, 2020)......................................9

*Camm v. Faith,* 937 F.3d 1096 (7th Cir. 2019)..........................................................10

*Chambers v. NASCO, Inc.,* 501 U.S. 32 (1991)...........................................................27

*Clarendon Am. Ins. Co. v. Miami River Club, Inc.,* No. 04-23184-CIV, 2006 WL 8431817 (S.D.

    Fla. Apr. 5, 2006)...................................................................................30

*Cooney v. Casady,* 735 F.3d 514 (7th Cir. 2013) ...........................................................8

*Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384 (1990)................................................8

*Divane v. Krull Elec. Co.,* 319 F.3d 307 (7th Cir. 2003)...............................................27

*Egan v. Huntington Copper Moody & Maguire, Inc.,* No. 12 C 9034, 2015 WL 1631547 (N.D.

    Ill. Apr. 10, 2015) ..................................................................................27

*Egan v. Pineda,* 808 F.3d 1180 (7th Cir. 2015)..........................................................27

*Frederick v. Easty,* No. 14 C 342, 2015 WL 603884 (N.D. Ill. Feb. 11, 2015) .............................8

*Fuery v. City of Chicago,* 900 F.3d 450 (7th Cir. 2018)...............................................27

*Goudy v. Cummings,* 922 F.3d 834 (7th Cir. 2019)...................................................10

*Intellect Wireless, Inc. v. Sharp Corp.,* 87 F. Supp. 3d 817 (N.D. Ill. 2015)................................30

*Jacques Rivera v. Guevara, et al.,* 12 Civ. 4428 ..........................................................3

*Jose Montanez & Armando Serrano v. Guevara, et al.,* 17 Civ. 4560 & 2869 (N.D. Ill.) .............3

*Juan Johnson v. Guevara,* 05 Civ. 1042 ................................................................2, 29

*LaSalle Bank Lake View v. Seguban,* 54 F.3d 387 (7th Cir. 1995)........................................13, 16

*Levinger v. Morell,* No. 20-CV-07292, 2022 WL 4552398 (N.D. Ill. Sept. 29, 2022) ..................9

*LiButti v. United States,* 178 F.3d 114 (2d Cir. 1999) ...................................................13

*Littler v. Martinez,* No. 216CV00472JMSDLP, 2020 WL 42776 (S.D. Ind. Jan. 3, 2020) .........28

*LKQ Corp. v. Kia Motors Am., Inc.,* 345 F.R.D. 152 (N.D. Ill. 2023) ....................................9

*Malin v. Hospira, Inc.,* 762 F.3d 552 (7th Cir. 2014)...................................................28

*Mallory v. Rush Univ. Med. Ctr.,* 2020 WL 6152670 (N.D. Ill. Oct. 20, 2020)...........................30

*McGreal v. Vill. of Orland Park,* 928 F.3d 556 (7th Cir. 2019) ...........................................9

*McKenzie-Morris v. V.P. Recs. Retail Outlet, Inc.,* 638 F. Supp. 3d 333 (S.D.N.Y. 2022) .........30

*Meeks v. Jewel Companies, Inc.,* 845 F.2d 1421 (7th Cir. 1988) ...................................28

*Mullen v. Butler,* 91 F.4th 1243 (7th Cir. 2024) ......................................................27

*Outley v. City of Chicago,* 648 F. Supp. 3d 996 (N.D. Ill. 2022) ...................................9

*Patrick v. City of Chicago,* 974 F.3d 824 (7th Cir. 2020)..............................................24

*Ricardo Rodriguez v. Reynaldo Guevara, et al.,* No. 18 C 7951 (N.D. Ill.)..................................29

*Roblox Corp. v. Bigfinz,* No. 23 C 5346, 2023 WL 8258653 (N.D. Ill. Nov. 29, 2023) ..............27

*Stichting Ter Behartiging Van de Belangen v. Schreiber,* 407 F.3d 34 (2d Cir. 2005)................14

*Stinson v. Gauger,* 868 F.3d 516 (7th Cir. 2017)........................................................24

*Tolan v. Cotton,* 572 U.S. 650 (2014).................................................................9, 13

*Webster v. Bunge-SCF Grain, LLC,* 2024 WL 343167 (C.D. Ill. Jan. 30, 2024) ........................27

*Whitehouse v. Piazza,* No. 05 C 1638, 2007 WL 9809230 (N.D. Ill. May 21, 2007) ..................27

*Whitlock v. Brueggemann,* 682 F.3d 567 (7th Cir. 2012)......................................24, 25

iv

*Xped LLC v. Entities Listed on Exhibit 1,* No. 21 CV 6237, 2023 WL 5748350 (N.D. Ill. Sept. 6, 2023) ..................................................................................................................................30

**Other Authorities**

Fed. R. Civ. P. 11 .............................................................................................................8, 9

28 U.S.C. § 1927.................................................................................................................27

Now comes Plaintiff Thomas Sierra, by his attorneys Loevy & Loevy, and respectfully requests this Court to impose sanctions upon Defendants Reynaldo Guevara and Ernest Halvorsen pursuant to Federal Rule of Civil Procedure 11.

## INTRODUCTION

Plaintiff does not bring this motion lightly. But this is a truly unique circumstance: Defendants Guevara and Halvorsen do not deny the misconduct they are accused of; instead, they have pleaded their Fifth Amendment right against self-incrimination in response to every question about the myriad ways in which they framed Thomas Sierra for a crime he did not commit. Yet, they now turn around and ask this Court to grant them summary judgment on nearly all of Plaintiff's claims against them.

Their motions are factually and legally frivolous. Defendants Guevara and Halvorsen are at the center of this homicide investigation; they developed nearly every single piece of evidence that Plaintiff alleges was fabricated; and they wrote and signed the closing report and other critical reports documenting their fabrications. They cannot possibly claim that there are a set of material facts that are undisputed, based on which they are entitled to summary judgment. Not only have they pleaded the Fifth on every one of those material facts, there is a massive body of additional evidence creating a dispute on those facts. Their motions for summary judgment merely serve to impose needless delay and increase the cost of litigation.

Months ago Plaintiff offered to dismiss nearly every other individual defendant in this case (and forego his own motions for summary judgment against Guevara and the City), if Guevara and Halvorsen would agree not to waste the Court's time by filing motions for summary judgment. Immense time and effort could have been saved and the case could have been set for trial. But Defendants refused that offer, insisting that Guevara and Halvorsen had a good faith

basis to move for summary judgment. Having seen their motions, that is simply not true. Having provided a draft of this motion to Guevara and Halvorsen, who have refused to withdraw their motions during the safe harbor period, this motion is now necessary.

There are almost a dozen more cases against Defendant Guevara (and in most cases, against his partner Halvorsen too) being litigated in this courthouse, all of which are near the summary judgment stage or at various stages of fact discovery. The impact of Guevara's and Halvorsen's decision to bring frivolous motions for summary judgment in each case will present a massive cost to clients, counsel and judges in numerous courtrooms in this building. The need to—for lack of a better word—police the misuse of the summary judgment standard by two detectives, and long-time partners, with more than forty wrongful convictions under their belts, and who pleaded the Fifth in response to all questions, could not be greater. For that reason, Plaintiff moves for sanctions and asks the Court to summarily deny Guevara's and Halvorsen's motions and order them to pay Plaintiff's attorneys' fees for the time spent responding to their meritless filings.

## RELEVANT FACTUAL BACKGROUND

### A. Relevant Background Regarding Litigation Against Defendants Guevara and Halvorsen

To date, Defendants Guevara and Halvorsen are at the center of more than forty-five exonerations, i.e., cases in which murder convictions obtained based on evidence they created were later thrown out. Those exonerations have resulted in several dozen wrongful conviction lawsuits in this courthouse, many of which are still pending.

The completed cases demonstrate the futility of Guevara and Halvorsen's pending motions. The first Guevara-related wrongful conviction case filed in this district was *Juan Johnson v. Guevara*, 05 Civ. 1042. In that case, **no summary judgment motion was filed at all**,

2

and the case instead went to trial, resulting in a $21 million verdict for Mr. Johnson against Guevara.[1] The second case was *Jacques Rivera v. Guevara, et al.*, 12 Civ. 4428. In that case, Guevara's motion for summary judgment was denied; he was found liable at trial, along with his then-partner Steve Gawrys and his supervising sergeant, Ed Mingey (also a Defendant in this case); and the jury awarded Mr. Rivera $17 million in compensatory damages, plus additional punitive damages against all three. Dkt. 519-11 at Ex. 117. The third lawsuit filed in this district involved co-plaintiffs, *Jose Montanez & Armando Serrano v. Guevara, et al.*, 17 Civ. 4560 & 2869 (N.D. Ill.). In that case, Guevara and Halvorsen both moved for summary judgment, both of their motions were denied, and the City then settled the cases before trial for $20.5 million.[2]

Albert Einstein described insanity as doing the same thing over and over and expecting different results. The same could be said of frivolity.

### B. Effort to Avoid Wasteful and Frivolous Summary Judgment Briefing

On August 21, 2023, Plaintiff sent Defendants a letter outlining their position that this was not a case in which summary judgment was warranted, given the innumerable fact disputes on every material issue, and Defendant Guevara and Halvorsen's invocations of the Fifth in response to all questions about their conduct in the underlying homicide investigation. Ex. 1. In that letter, Plaintiff specifically noted that any motion for summary judgment by Defendants Guevara and Halvorsen would be frivolous. He then made an offer that would have permitted the parties to forego summary judgment and allow this case to be resolved at an inevitable trial, without the waste of tremendous attorney, taxpayer, and judicial expense: Plaintiff would (a)

---

[1] https://www.chicagotribune.com/2009/06/23/record-verdict-former-gang-member-awarded-21-million-for-wrongful-conviction/
[2] https://www.cbsnews.com/chicago/news/jose-montanez-armando-serrano-settlement-finance-committee-wrongful-conviction-former-detective-reynaldo-guevara/

dismiss Defendants Biebel, Mingey, and Figueroa, (b) dismiss Plaintiff's *Monell* theory based on a failure to supervise and discipline Chicago police officers, (c) forego moving for partial summary judgment on certain claims against Defendant Guevara, and (d) forego moving to preclude the City of Chicago from relitigating *Monell* theories already decided against it at recent jury trials. Ex. 1 at 3.

The Defendants never responded to that offer, nor made a counterproposal. They did not take Plaintiff up on his request to confer. And they did not respond with any explanation or justification for how Defendants Guevara and Halvorsen could reasonably expect to prevail at summary judgment given the evidence in this case.

Instead, on March 8, 2024, Halvorsen moved for summary judgment on all of Plaintiff's claims. Dkt. 502. The same day, Guevara also moved for summary judgment, filing a 5-page perfunctory motion joining Halvorsen's arguments, but conceding that certain theories premised on Guevara's interactions with a single eyewitness should be decided by a jury. Dkt. 505.

On March 15, 2024, Plaintiff responded in opposition to Guevara's and Halvorsen's motions, Dkt. 520, along with a detailed recitation of the facts that create clear disputes of fact on every material issue on which Defendants Guevara and Halvorsen rely in bringing their motions for summary judgment, Dkts. 518, 519. In addition, because Defendants refused to discuss an agreement to circumvent summary judgment, Plaintiff also filed his cross-motion for summary judgment on certain claims against Defendant Guevara and the City of Chicago. Dkts. 509-511.

On April 16, 2024, after providing Defendants with ample time to review his response to Defendants Guevara and Halvorsen's motions, and the statements of clearly disputed facts, Plaintiff sent a copy of this motion to Guevara's and Halvorsen's counsel. As prescribed by Federal Rule of Civil Procedure ("Rule") 11, Plaintiff identified the factual and legal basis for

Plaintiff's motion for sanctions, and provided Guevara and Halvorsen 21 days to withdraw their motions. They refused to do so.

### C. Brief Summary of Andujar Homicide and Investigation

On May 23, 1995, at 10:30pm, Noel Andujar was shot while seated in the back seat of a car. The car was driven by Jose Melendez, who was accompanied by front seat passenger, Alberto Rodriguez. The shooting happened quickly. A dark Buick Park Avenue with tinted windows pulled alongside Melendez; the other car's front passenger side door opened, the front passenger extended his hand and fired a gun. Melendez and Rodriguez immediately ducked and Melendez sped away. Andujar was killed. Dkt. 519, Plaintiff's Statement of Disputed Facts in Support of his Opposition to Defendants' Summary Judgment Motion (hereinafter, "PSOF") at ¶¶14-23.

When Melendez and Rodriguez were interviewed at the scene, they were asked to provide as much descriptive information they could about the shooter. They could say only that he was a male White Hispanic. When they were interviewed by detectives again that night at Area 5 they again could not provide any descriptive information other than that the shooter had black hair pushed back, but could not describe any facial features or identify any distinguishing characteristics. The case went cold, with no leads. PSOF ¶¶36-40, 43-50.

Then a few days later Defendants Guevara and Halvorsen joined the case. They took the lead in the investigation and developed the evidence used to secure Sierra's conviction. ASOF¶¶51-53. Guevara and Halvorsen wrote a report claiming that *three days before the Andujar shooting*, they had gone to the home of Esther Reyes, whose son had been killed in a different shooting; at her house, they saw a Buick Park Avenue pull up that matched the description of the car that would later be used in the Andujar shooting, and learned from Esther

Reyes that the two men in the car were Hector Montanez and Thomas Sierra. ASOF¶¶173-177, 185-189. With Sierra now as the suspect, suddenly Melendez and Rodriguez had gotten a good view of the shooter and purportedly identified Sierra. ASOF¶¶87-146, 195-196. Melendez and Rodriguez also purportedly identified the shooter's car as being the Buick Park Avenue belonging to Montanez. ASOF¶¶154-161, 199. They then interrogated Montanez, who purportedly confessed to participating in the shooting as the driver, and also implicated Plaintiff as the shooter. ASOF¶¶54-72, 198. Guevara and Halvorsen wrote police reports documenting all of this evidence. ASOF¶¶84-86, 193-199.

But Sierra has repeatedly testified to and sworn to his innocence. In 2018, he was exonerated and in 2022, he was certified innocent by the State of Illinois. ASOF¶¶1-13. On Defendants' motion for summary judgment, the Court must make all inferences in Plaintiff's favor and credit this evidence that Plaintiff is innocent. How then did Melendez and Rodriguez, who initially could not provide any descriptive information about the shooter, manage to both identify the same innocent man—who also happened to be Guevara and Halvorsen's suspect—as the shooter? How did another man, Hector Montanez, come to implicate an innocent man as being the person who shot Andujar? The answer, especially at summary judgment when all inferences must be taken in Plaintiff's favor, is simple: because Guevara and Halvorsen framed Plaintiff, fabricating all of this evidence, and suppressing evidence of their misconduct and Plaintiff's innocence. Guevara and Halvorsen's motions do not even mention the evidence of Sierra's innocence, let alone grapple with its implications on their motions.

Plus, there is ample additional evidence of their misconduct. Melendez has testified repeatedly that he never saw the shooter's face and could not make an identification; that he only identified Plaintiff because Guevara told him to; and that the Buick Park Avenue used to connect

Sierra (and Montanez) to the shooting in fact was *not* the car used in the shooting. ASOF¶¶89-97, 154-156. Guevara and Halvorsen's closing report documenting these purported identifications was therefore fabricated. *Id.* Similarly, Rodriguez has also admitted that he did not get a good look at the shooter and could not provide a description, given the tinted window and circumstances of the shooting; he has described the unduly suggestive manner Guevara and Halvorsen conducted his photo array procedure; and admitted that he told the detectives that the car he was shown had differences from the car used in the shooting. ASOF¶¶107-119, 157-159. Guevara and Halvorsen's closing report omitted all of this information. *Id.* And Hector Montanez is adamant that his statement implicating himself and Sierra was false, and extracted from him only because of Guevara's use of overwhelming pressure, threats and promises. ASOF¶¶54-72. None of this is included in the closing report Guevara and Halvorsen wrote, which instead documented his fabricated statement implicating Sierra. *Id.* And Guevara and Halvorsen, too, have become witnesses for Plaintiff. When Guevara and Halvorsen were deposed about whether they framed Sierra, and whether they fabricated and suppressed evidence as discussed above, they each invoked their Fifth Amendment right to remain silent. *See generally* Dkt. 519-3 (Ex. 29, Guevara Dep. Aug. 21, 2019); *see also* Dkt. 519-4 (Ex. 36 at 282-289, Halvorsen Dep., April 20, 2018).

The above is merely a summary. There is ample additional evidence of Guevara and Halvorsen's misconduct, set forth in great detail in Plaintiff's brief in opposition to their motions for summary judgment, and Plaintiff's additional statement of facts in support of his response, Dkts. 519 & 520, and in Plaintiff's motion for summary judgment against Guevara on certain claims, and the accompanying statement of undisputed facts. Dkts. 510 & 511.

Despite all of this evidence, in addition to their refusal to deny their own misconduct, Guevara and Halvorsen now claim that there is a set of undisputed facts on which they are entitled to summary judgment. That is not possible. And while Defendant Guevara concedes that a few of Plaintiff's claims must be tried, Defendant Halvorsen seeks to dismiss *all* of Plaintiff's claims against him. Dkt. 471. Their motions are frivolous.

## LEGAL STANDARD

"[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus, . . . streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). Under Rule 11, when a party files a written motion, the attorney certifies that the motion is meritorious. Fed. R. Civ. P. 11(b). The certification specifically attests that "the claims, defense, and other legal contentions are warranted by existing law" and are not frivolous; the motion is not being presented for an improper purpose; "the factual contentions have evidentiary support;" and "the denials of factual contentions are warranted on the evidence, or if specifically so identified, are reasonably based on a belief or lack of information." *Id.* An argument is frivolous when the court determines that it is "baseless or made without reasonable and competent inquiry." *Id.* (citation omitted) (internal quotation marks omitted). To find a Rule 11 violation, the court conducts an objective evaluation to determine "whether the petitioner should have known that [the] position is groundless." *Frederick v. Easty*, No. 14 C 342, 2015 WL 603884, at *9 (N.D. Ill. Feb. 11, 2015) (citation omitted) (internal quotation marks omitted).

A court's decision to grant a motion for Rule 11 sanctions "is within the sound judgment of the district court and will be disturbed only where the court abuses its discretion." *Cooney v. Casady*, 735 F.3d 514, 523 (7th Cir. 2013). Upon a finding of a Rule 11 violation, the court can

impose monetary and non-monetary sanctions. *LKQ Corp. v. Kia Motors Am., Inc.*, 345 F.R.D. 152, 168 (N.D. Ill. 2023) (quoting *Cage v. Harper*, 2020 WL 1248685, at *6 (N.D. Ill. Mar. 16, 2020). The sanction imposed is one that will "deter repetition of the conduct or comparable conduct by others similarly situated." *Outley*, 648 F. Supp. 3d at 1021 (quoting Fed. R. Civ. P. 11(c)(4)). A claim of good faith is not a defense to the imposition of sanction when "a reasonable inquiry into the facts and law would have revealed the frivolity of the position." *Levinger v. Morell*, No. 20-CV-07292, 2022 WL 4552398, at *2 (N.D. Ill. Sept. 29, 2022) (quoting *McGreal v. Vill. of Orland Park,* 928 F.3d 556, 560 (7th Cir. 2019)).

## ARGUMENT

### I.  DEFENDANTS GUEVARA'S AND HALVORSEN'S MOTIONS FOR SUMMARY JUDGMENT ARE FRIVOLOUS.

The standard at summary judgment is strict. Summary judgment is warranted only if Guevara and Halvorsen show that there is no genuine issue of fact on any of Plaintiff's claims against them, such that they are entitled to judgment as a matter of law. *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014).

This is a standard Guevara and Halvorsen obviously cannot meet. Indeed, Defendants Guevara and Halvorsen concede that Plaintiff's due process claim should be decided by a jury, because there are a number of instances of fabricated evidence and suppressed exculpatory information that they do not challenge at summary judgment. That should end their pursuit of summary judgment, not invite extensive motion practice over whether each additional piece of fabricated or suppressed evidence can independently support a finding for Plaintiff at trial.

Second, both Guevara and Halvorsen have asserted their Fifth Amendment right to remain silent in response to all questions about every material fact at issue in this case. Their invocation of the Fifth alone creates a dispute of fact on every one of those issues, and so they

9

cannot meet their burden to show that there are a set of undisputed facts on which they are entitled to summary judgment. Third, there are hotly disputed facts underlying each of the claims Guevara and Halvorsen challenge at summary judgment, evidence Guevara and Halvorsen simply ignore when they represent to the Court that they are relying on a set of undisputed facts. The existence of these disputes categorically forecloses the grant of summary judgement. Finally, Guevara's and Halvorsen's legal arguments are not only dependent on disputed facts, but they are also legally untenable under binding Seventh Circuit caselaw.

### A. Defendants Guevara's and Halvorsen's concessions bar granting summary judgment on Plaintiff's due process claim.

Guevara's and Halvorsen's decisions to concede and/or not to contest some of the theories on which they can be found liable on Plaintiff's due process claim demonstrates that their motion is frivolous. The Seventh Circuit has directed that courts at summary judgment should not weed through sub-theories and parse items of evidence giving rise to a fair trial claim, so long as it has been established that there is a material dispute of fact about whether a Defendant contributed to violating a plaintiff's right to a fair trial. *See Goudy v. Cummings*, 922 F.3d 834, 844 (7th Cir. 2019) (holding that once it is established at summary judgment that a trial is required on due process theories, the court "need not and do[es] not address [the plaintiff's] allegation that the alleged [additional theory of liability] independently constituted a basis for liability"); see also *Camm v. Faith*, 937 F.3d 1096, 1108–09 (7th Cir. 2019) ("It's worth noting that while the parties sometimes refer to three '*Brady* claims,' it's more accurate to say that [the plaintiff] has a single *Brady* claim alleging the suppression of three baskets of evidence."); *Goudy*, 922 F.3d at 838 (stating that "[i]t is important to clarify that although the parties occasionally refer to [the plaintiff's] '*Brady* claims' or 'identification procedure claim,' his allegations do not give rise to separate *claims* under section 1983. [The plaintiff] has presented a

single claim: that the defendants are liable for causing him to receive an unfair trial in violation of his due process rights"); *id.* (holding that "all defendants who can be shown to have 'suppressed' evidence in violation of *Brady* . . . should be liable for the aggregate impact on the outcome of the trial [the plaintiff] ultimately received.")

So once Plaintiff has shown a genuine dispute of fact that can support liability on his due process claim against Guevara and Halvorsen, summary judgment is not available to them on that claim. The Court should not entertain motions for summary judgment from Guevara and Halvorsen trying to parse every additional piece of evidence and sub-theory that could further support liability on the due process claim.

Here, Guevara and Halvorsen have conceded and/or do not contest that there are facts from which a jury could find that Guevara and Halvorsen fabricated evidence and suppressed evidence. Defendant Guevara, for example, expressly concedes that a trial is necessary on Plaintiff's claims that Guevara fabricated (a) the story about seeing the shooter's car, and Sierra, at Esther Reyes's house several days before the Andujar shooting; (b) the photo array and lineup identifications of Jose Melendez; and (c) Melendez's identifications of Hector Montanez's car as the one used in the shooting. *See* Dkt. 505 at 2-4. And Halvorsen concedes that there is evidence that Melendez's identifications were fabricated and the result of unduly suggestive identification procedures, Dkt. 502 at 18-20; that there are disputes of fact as to whether he fabricated police reports, witness statements, and other evidence (and limiting his attack only to the argument that the documents were not introduced at trial), *id.* at 22-25; and that there is a dispute of fact as to whether he disclosed evidence of the investigative misconduct, including the illegally coercive tactics used on Melendez, Rodriguez, and Montanez to implicate Sierra, to the prosecutor, *id.* at

25-32. *See also* Dkt. 520 at 11-12 (Plaintiff's response brief, identifying unchallenged evidence supporting Plaintiff's due process claim).

This unchallenged evidence also renders summary judgment unavailable on additional claims. For example, Guevara concedes that there is evidence from which a jury can conclude that he fabricated the Esther Reyes story used to make Sierra a suspect in the first place, Melendez's identifications of Sierra, and Montanez's car being the shooter's car. So then how can be possibly move for summary judgment on Plaintiff's Fourth Amendment and malicious prosecution claims, when this same fabricated evidence was used to arrest Plaintiff without probable cause and initiate and continue criminal proceedings against him?

For Halvorsen's part, if Guevara admits a trial is necessary on whether the Esther Reyes story was made up, how can Halvorsen seek summary judgment on the same claim, when he admits that there is evidence from which a jury can conclude that he was involved in creating that false evidence? Dkt. 472-2 (Halvorsen's brief, admitting the following fact: "According to *their* May 30, 1995 Clear/Closed Report, Guevara *and Halvorsen* recalled seeing a dark Park Avenue on May 20 . . . in front of the home of Esther Reyes, who *they were interviewing*" and from whom they learned the occupants "were Imperial Gangsters known as Little Hector [Montanez] and Junito [Sierra]").[3] Likewise, how can Halvorsen seek summary judgment on Plaintiff's conspiracy claim against him, when he wrote the police reports documenting all of the evidence Guevara concedes a trial is necessary on? For example, Halvorsen admits that he wrote the police report documenting Melendez's photo array and lineup identifications of Sierra, and of the car. Dkt. 472-2 at 5-6, 19. So even in Halvorsen's self-serving telling, Guevara manipulated

---

[3]  As discussed below, his only argument is that this was not introduced at trial, Dkt. 502 at 24-25 which is demonstrably false. Guevara testified to this false story at trial, even making his own in-court identification of Sierra as the person he saw at Esther Reyes' home, all of which was further cemented by additional testimony from Defendant Figueroa. Dkt. 520 at 38-39.

the witness and the evidence, and Halvorsen (Guevara's partner) documented this fabrication in a report. This alone creates a dispute of fact as to whether they conspired to fabricated evidence and frame Sierra in violation of his constitutional rights.

None of these contradictions are acknowledged or addressed in Guevara and Halvorsen's motions for summary judgment. Given Guevara's and Halvorsen's concessions, under Seventh Circuit case law they have not moved for summary judgment in good faith.

**B. Defendants Guevara and Halvorsen cannot move for summary judgment after pleading the Fifth in response to all questions about their misconduct.**

Guevara and Halvorsen's invocation of the Fifth in response to every question about their conduct in this case is by itself sufficient to preclude them from moving for summary judgment.

As set forth in great detail in Plaintiff's consolidated response to Defendants' motion for summary judgment, Guevara's and Halvorsen's invocations of the Fifth have consequences. Among them, they cannot meet their burden of production to produce evidence that negates an essential element of Plaintiff's claim, and they cannot meet their burden of persuasion that there are no material facts in dispute. Dkt. 520 at 16-21. Plaintiff incorporates those arguments and discussion without repeating them here.

Put simply, the Supreme Court has made clear that if a party pleads the Fifth in a civil case, the jury should be instructed that it may draw adverse inferences against the person asserting the Fifth. *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387 (7th Cir. 1995); *see also LiButti v. United States*, 178 F.3d 114, 120 (2d Cir. 1999) (An "adverse inference may be given significant weight because silence when one would be expected to speak is a powerful persuader"). And of course a court at summary judgment must draw inferences in favor of the non-moving party and against the movant. *E.g.*, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

255 (1986). **Accordingly, where a defendant asserts his Fifth Amendment rights in response to questions about material facts, then moves for summary judgment, the Court must draw an inference against that defendant on all of those material facts.** *Stichting Ter Behartiging Van de Belangen v. Schreiber*, 407 F.3d 34, 55 (2d Cir. 2005) (noting that while "a jury might draw" an inference from the assertion of privilege, "we [the court] are required at summary judgment to draw all reasonable inference in favor of the non-moving party"); *cf. Seguban*, 54 F.3d 387 (7th Cir.1995) (holding that this inference based on an assertion of the privilege may be drawn against *even the non-moving party* at summary judgment).

Here, Guevara and Halvorsen were at the center of every aspect of the Andujar investigation, and have pleaded the Fifth in response to every question about their conduct during that investigation. They have pleaded the Fifth about whether they knowingly and intentionally framed Sierra, fabricated police reports and other evidence used to charge and prosecute Sierra, suppressed exculpatory evidence, arrested Plaintiff without probable cause, and so much more. *See, e.g.*, Dkt. 519-3, Ex. 29 (Guevara Dep.) at 8-13, 112-115, 118-19, 126-27, 140-42, 156-158, 192-93; Ex. 519-4, Ex. 36 (Halvorsen Dep.) at 282-290. They have also done so in response to specific questions about the evidence they fabricated and suppressed:

- Before the identification procedures, Alberto Rodriguez and Jose Melendez told Guevara and Halvorsen that they could not make an identification. Dkt. 519-3, Ex. 29 at 16, 22-23; Dkt. 519-4, Ex. 36 at 285, 287.
- They fabricated the photo array and lineup identifications of Sierra by telling Rodriguez and Melendez to identify Plaintiff as the shooter. Dkt. 519-3, Ex. 29 at 10-12, 77-78, 84-85; Dkt. 519-4, Ex. 36 at 284-289.
- They fabricated the car identifications used to connect Sierra to the shooter's car. Dkt. 519-3, Ex. 29 at 112, 115; Dkt. 519-4, Ex. 36 at 287-88.
- They made up the story that they saw Sierra and Montanez's house three days before the Andujar shooting. Dkt. 519-3, Ex. 29 at 283-84; Dkt. 519-4, Ex. 36 at 283-84.
- They used threats and promises to coerce witnesses, including Hector Montanez, to falsely implicate Sierra. Dkt. 519-3, Ex. 29 at 125-30, 140-42.
- They wrote false police reports documenting the evidence they fabricated. Dkt. 519-3, Ex. 29 at 93-94, 145-46; Dkt. 519-4, Ex. 36 at 284, 288-89.

14

The adverse inferences from Guevara's and Halvorsen's assertions directly support allegations that are material to each of Plaintiff's claim, which means the Court must find that Guevara and Halvorsen cannot satisfy their burden summary judgment standard of showing there are no disputes of material fact on the claims against them.

Making matters worse, Guevara and Halvorsen make no effort in their motions to explain how they can move for summary judgment despite repeatedly pleading the Fifth. As part of his offer to circumvent summary judgment, *see supra* pp. 4-5, Plaintiff raised this very issue with Defendants, long before motions for summary judgment were filed. Defendants did not respond to that offer, nor did they explain how Guevara and Halvorsen could move for summary judgment in good faith. Instead, they simply filed their motion, ignoring the issue entirely. Indeed, in reading Guevara and Halvorsen's motions for summary judgment, the Court would have no idea they pleaded the Fifth at all. Their refusal to grapple with this critical fact—and critical source of factual disputes—is an additional independent reason their motions are frivolous.

**C. In addition to the inference from pleading the Fifth, ample additional evidence creates genuine disputes of material facts as to all of Plaintiff's claims.**

To defend their frivolous motions, Guevara and Halvorsen are likely to argue that the Court cannot deny summary judgment based solely on their Fifth Amendment assertions on essential facts, and that a Plaintiff must present additional evidence of misconduct before denying summary judgment to a moving party who has asserted the Fifth Amendment privilege. This misunderstands the implications of asserting the Fifth, discussed above, and mischaracterizes the caselaw on this issue.

15

The case typically relied on to support this incorrect "more evidence" rule is *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 391 (7th Cir. 1995).[4] But that case undermines rather than supports this rule. There, a motion for summary judgment was denied on the logic that the *non-moving party's* assertion of privilege could not justify a grant of judgment to the moving party, without consideration of other evidence. That situation is doubly different than this case: First, here the *moving* party is asking for summary judgment *and* asserting the Fifth. Second, the consequence for the moving party here of asserting the privilege is not a judgment in the nonmovants favor, but instead is the mere denial of the moving party's motion (not finding of liability). Put simply, the Seventh Circuit case used to support the "more evidence" rule does not support that argument at all.

Regardless, even if the erroneous "some evidence" standard were applied here, requiring Plaintiff to point to evidence beyond Guevara's and Halvorsen's assertion of the Fifth to defeat summary judgment, there is ample additional evidence. Plaintiff's affirmative statement of fact in support of his response brief contains almost three hundred paragraphs of documents and witness testimony regarding the myriad ways in which Guevara and Halvorsen violated Sierra's constitutional rights. Dkt. 519. Indeed, when one considers that evidence, examples of which are discussed below, in the light most favorable to Plaintiff, along with Guevara and Halvorsen's assertion of their Fifth Amendment rights when asked about that same misconduct, their motions for summary judgment are clearly frivolous even under a "more evidence" rule.

> i. *There is significant evidence creating a dispute of fact that Defendants Guevara and Halvorsen fabricated Jose Melendez's identifications.*

---

[4] Plaintiff discusses this argument in detail in his response to Defendants' motion for summary judgment, Dkt. 520 at 20-21, which he incorporates here without repeating it.

Jose Melendez has testified repeatedly that he did not see the shooter's face and could not make an identification, that he was told who to pick from the photo array he was shown, that his lineup identification never happened, and that when he went to the Area 5 parking lot to view Hector Montanez's car (used to connect Sierra to the shooting) he told detectives it was not the car used in the shooting. PSOF¶¶24-40, 88-99, 155-156. So, there is direct evidence as to every one of these fabrications, and the suppression of Melendez's exculpatory statements related to the identifications of Sierra and the car. Guevara, for his part, concedes that Plaintiff's due process claim based on the fabrication of this evidence must be tried by a jury. Dkt. 505 at 3.

Yet, Halvorsen argues that he is entitled to summary judgment on this same fabrication theory because he was not present for Melendez's identifications and therefore did not know they were fabricated. Dkt. 502 at 18-20. But this is plainly a disputed fact that requires the Court to not only ignore evidence pointing to the contrary, but also to violate the summary judgment standard and draw inferences in Halvorsen's favor. Accordingly, the argument is frivolous.

The amount of evidence contrary to Halvorsen's position is numerous, and is illustrative of the lack of merit in his motion. **1.** Halvorsen authored and signed the closing report with Guevara—a report that identified them both as reporting detectives—in which Halvorsen documents the photo array, lineup and car identifications of Sierra. In that report, Halvorsen explains that they performed those procedures together: "On 30 May 95 at 1700 hrs. the R/Dets [Reporting Detectives] were able to contact Jose Melendez," who "stated that he would only be able to identify the shooter," "was shown the same photo array previously viewed by Alberto Rodriguez," and "identified the photo of Thomas Sierra." PSOF ¶¶84-87; Dkt. 519-2, Ex. 1. Halvorsen then documented "that a line-up was conducted at Area 5 detectives," and that "R[eporting]/Det[ective]s asked eye-witness Jose Melendez and Alberto Rodriguez to walk

17

through this parking lot and see if the car involved in the shooting of Andujar was present," and they "both identified" the car. PSOF ¶154; Dkt. 519-2, Ex. 1. This is all authored by Halvorsen; and it is attributed not to Guevara but to the reporting detectives, of which Halvorsen was one. Halvorsen is asking this Court to reject the plain language of the closing report and instead draw the inference that it means that only Guevara was involved in those interactions with Melendez. This alone is sufficient to establish the frivolous nature of Halvorsen's argument.

But in addition, **2.** Halvorsen authored and signed the lineup report (again, with Guevara) documenting Melendez's fabricated identification of Sierra. The report identifies the "persons conducting lineup" as Halvorsen and Guevara. PSOF ¶131. **3.** Halvorsen authored a crime scene report processing report inventorying the photograph used in the identification procedure with Melendez. PSOF ¶132. **4.** Halvorsen signed the photos used in the photo array shown to Melendez. PSOF ¶119. So, Halvorsen asks this Court to reject the plain reading of every one of these reports.

There is more. **5.** Halvorsen's co-authored closing report identifies him as being present when Melendez allegedly identified the car in the Area 5 parking lot as the shooter's car, which not only establishes his involvement in that procedure, but also supports his presence and involvement in the photo array procedure with Melendez occurring that same night, and his knowledge that no lineup with Melendez occurred that night. PSOF ¶¶154, 199. **6.** Halvorsen's summary judgment motion does not deny that he was present during the car identification procedure with Rodriguez, Dkt. 502 at 20-21, and his own report reflects that Melendez and Rodriguez walked through the parking lot together. Dkt. 519-2, Ex. 1 at RFC-Sierra 26. Finally, **7.** Halvorsen was involved with many of the other fabrications in this case, including the made-up Esther Reyes story, and Alberto Rodriguez's purported identifications of Sierra and the car,

18

which supports the inference that he knew about and involved in the other fabrications occurring over the same time period.

On top of all of this, there is Halvorsen's invocation of the Fifth. If Halvorsen really had no involvement in generating Melendez's fabricated identifications of Sierra and the car, how easy would it have been for him to simply say so when asked about it under oath? "I wasn't there," or even "I don't know – ask Guevara." Instead, he pleaded the Fifth. Worse, after Guevara and Halvorsen have used the Fifth to deprive Plaintiff of evidence about their involvement in misconduct, Halvorsen is now using that silence to seek summary judgment. The Court should not allow Defendants to use the privilege in that way. Halvorsen's refusal to defend his actions, or even deny his involvement, speaks volumes, especially in light of the other evidence set forth above. His motion for summary judgment on these claims is frivolous.

      *ii.*    *There is significant evidence creating a dispute of fact that Defendants Halvorsen and Guevara fabricated Alberto Rodriguez's identifications.*

Guevara and Halvorsen both move for summary judgment on any due process theories based on the fabrication of Alberto Rodriguez's purported photo array and lineup identifications, and Rodriguez's purported car identification, because they claim there is no evidence those identifications were false or fabricated. Dkt. 505 at 3-4; Dkt. 502 at 20-21. In support of this argument, Guevara and Halvorsen simply cite to their preferred passages from Rodriguez's testimony at Plaintiff's criminal trial and at a deposition in another case, ignoring the ample record evidence demonstrating clear disputes of fact.

First, there is overwhelming evidence that Rodriguez did not see the shooter at all, and so could not possibly make an identification of the Defendants' suspect without being told who to pick. **1.** The circumstances of the shooting itself—at night, between two moving vehicles, over a matter of seconds, with the shooter behind tinted windows—made it all but impossible to make

an identification. PSOF ¶¶24, 27, 28-33, 255. **2.** In addition, Rodriguez had smoked marijuana that night and was cognitively impaired by it, and was presented with a high-stress incident in which weapon-focus would have drawn his attention away from the shooter's face and toward the gun. PSOF ¶¶25-26, 31, 256-258. **3.** Rodriguez immediately ducked down, all the way under the dashboard to the bottom of the front passenger seat, in order to avoid being shot, and so he was not looking at the person shooting around the tinted window. PSOF ¶¶35, 110, 256. **4.** Melendez was on the driver's side closest to the shooter, and has testified that he could not see the shooter's face to make an identification given the tinted windows in the shooter's car and other circumstances of the fast-moving incident. Rodriguez was on the opposite side of the car and would have had to look past Melendez to see the shooter, and so he had a worse view, supporting the inference that if Melendez could not make an identification, Rodriguez could not either. PSOF ¶¶107-110. All of this evidence supports the reasonable inference that Rodriguez could not possibly see the shooter's face in order to be able to make an identification.

Second, all of this evidence is supported by Rodriguez's own testimonial admissions, including his admissions that **5.** when asked to describe the shooter that he could not give a description because of the tinted windows. PSOF ¶112.

Third, all of this evidence that Rodriguez could not actually make an identification is further affirmed by **6.** the initial police reports written by officers and detectives other than Guevara and Halvorsen, PSOF ¶¶36-40, 43-50; **7.** the reports and testimony of the officers who first interviewed Rodriguez at the scene, asked him for all descriptive details of the perpetrator, but the only information Rodriguez (and Melendez) could provide was that the shooter was a male White Hispanic, PSOF ¶¶38, 88, 113; **8.** The reports and testimony of the detectives that interviewed Rodriguez again that day, and reported that they asked him for as much detail as he

could provide but Rodriguez still could not provide any description of the perpetrator's face or any distinguishing features. PSOF ¶¶43-50.

That Rodriguez could not see the shooter's face in order to make an identification, yet purportedly identified Guevara and Halvorsen's suspect Sierra (who became a suspect based on the made-up Esther Reyes story), is itself sufficient evidence from which to conclude that Rodriguez's identifications were fabricated.

But in addition, there is direct evidence of Guevara and Halvorsen's misconduct in creating these fabricated identifications. **9.** Rodriguez admitted that he spent 5-10 minutes looking at the photo array that was shown to him, PSOF ¶114; **10.** he was told before looking at those photos that they believed the perpetrator was in the photos he was being shown, PSOF ¶116; and **11.** when he viewed the suspected car used in the shooting in the Area 5 parking lot, he told Guevara and Halvorsen that it had differences from the car used in the shooting PSOF ¶¶157-58.  In addition to all of this, **12.** there is ample evidence that no photo array at Rodriguez's home ever occurred on May 25; that is, it was entirely made up. PSOF ¶¶120-129. **13.** That all of this information was not documented in Guevara and Halvorsen's police reports and concealed from Sierra is further evidence of their misconduct. PSOF ¶¶200-202.

Next, **14.** Plaintiff has testified repeatedly to his innocence, and has been adjudicated innocent, PSOF ¶¶1-13, and so at summary judgment as the non-moving party his innocence must be accepted as true. It is powerful evidence of misconduct that Guevara and Halvorsen managed to get Rodriguez and Melendez, two witnesses who could not possibly make an identification, to both identify the same, innocent person, who happened to be their suspect. That they unlawfully steered these witnesses into falsely identifying Sierra is not just a reasonable inference from these facts, it is obvious.

And of course, as discussed above, **15.** when asked about all of this misconduct under oath—if they fabricated Rodriguez's identifications and falsely reported them—Guevara and Halvorsen did not deny it; they both pleaded the Fifth.

Perhaps most egregious, *Defendants do not acknowledge or address any of this evidence that clearly creates a dispute of fact*. They simply ignore it, and then falsely represent to the Court that there is no evidence that creates a dispute of fact as to whether Rodriguez's identifications were fabricated. This is inexcusable, especially given that Plaintiff warned Defendants about these concerns repeatedly in correspondence and in filings with the Court. Defendants ignored these concerns and simply filed their motion without due consideration, asking the Court to reach an erroneous ruling based on a woefully incomplete understanding of the record. This is unfair to the Court. And to Plaintiff, who was then forced to spend hundreds of hours ensuring this Court is presented with an accurate portrayal of the record from which it is being asked to dismiss the vast majority of Plaintiff's lawsuit.

> iii. *There is significant evidence creating a dispute of fact that Guevara and Halvorsen fabricated the Esther Reyes story to make Sierra a suspect.*

Defendants Guevara and Halvorsen seek to dismiss the claim that Guevara and Halvorsen fabricated the story that they had seen Sierra in a car with Hector Montanez three days before the Andujar shooting, at the home of a grieving mother, Esther Reyes. Dkt. 505 at 3; Dkt. 502 at 24-25. This, too, is a frivolous argument that cannot support a claim for summary judgment.

As an initial matter, it bears noting that Guevara's cursory motion for summary judgment is internally inconsistent. On the one hand, he concedes that he is not moving on the due process fabrication theory that "Guevara fabricated his initial identification of the car and its occupants," but then moments later asserts that he is moving on Sierra's claim that he "fabricated a report of

seeing Junito (Sierra) in a dark color Buick Park Avenue three days before the Andujar murder." Dkt. 505 at 3. Guevara's motion is incoherent, and on that basis alone is frivolous.

As an evidentiary matter, Guevara and Halvorsen's argument is equally frivolous. There can be no debate that there is substantial evidence in the record creating, at minimum, a dispute of fact. Sierra and Montanez have both testified that the Esther Reyes story is made up; they were not there, or together, or in a Buick Park Avenue belonging to Montanez. PSOF ¶¶185-86. That alone is sufficient to create a dispute of fact.

Likewise, neither Guevara nor Halvorsen can claim they were not part of that fabrication; they claim to have both gone to Esther Reyes's house, and Halvorsen documented it in the closing report as information they learned together. PSOF ¶¶173-177. Halvorsen concedes as much in his brief. Dkt. 502 at 4-5. And they both pleaded the Fifth when asked whether they fabricated this evidence. PSOF ¶¶190, 192.

Guevara and Halvorsen's only remaining argument is that the Esther Reyes story was not used against Sierra at his criminal trial, but this is plainly false. Guevara testified at trial about the entire Esther Reyes story, using it to justify making Sierra a suspect, and Guevara even made an in-court identification of Sierra as the person he saw at Esther Reyes's house. PSOF ¶¶235-238; *see also id.* at ¶¶173-77, 185-89, 193-94. Defendant Figueroa, too, testified about how the fabricated Esther Reyes story was then combined with a false nickname to connect Sierra to the Andujar shooting. PSOF ¶¶178-89, 253. Defendants do not grapple with this undeniable fact at all in their motion. It renders their argument frivolous.

To the extent Guevara and Halvorsen are trying to create some distinction between the fabrication of the Esther Reyes story, and the fabrication of the *police report documenting* that story—arguing that Plaintiff is entitled to a trial on the former but not on the latter because the

23

report was not admitted into evidence—that argument is also frivolous. First, it is a distinction that makes no difference at Plaintiff's trial (all of the same evidence will be relevant and admissible at trial), and another example of using summary judgment to improperly parse Plaintiff's due process claim into sub-theories, and in this case, sub-sub-theories.

Second, the argument is legally frivolous. Controlling Seventh Circuit caselaw makes clear that the introduction of a police report is not necessary to state a cognizable due process claim. The question is simply whether the fabrication caused a deprivation of liberty. As the Seventh Circuit put it in *Whitlock v. Brueggemann*, "We have consistently held that a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of her liberty *in some way*." *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012) (emphasis added). The cases unanimously hold that due process is violated when fabricated evidence causes a liberty deprivation at any stage of the criminal proceedings, even when the initial fabrication is not admitted in its original form in those proceedings. See, *e.g.*, *Patrick v. City of Chicago*, 974 F.3d 824, 835-36 (7th Cir. 2020) (affirming a due process fabrication verdict against multiple defendants where a plaintiff's coerced confession and a fabricated lineup report were introduced at the criminal trial in the form of oral testimony); *Anderson v. City of Rockford*, 932 F.3d 494 (7th Cir. 2019) (holding that summary judgment not available where police officer fabricated witness statements before trial and then instructed witnesses to testify consistent with those fabricated statements at trial); *Avery v. City of Milwaukee*, 847 F.3d 433, 441-42 (7th Cir. 2017) (due process violated when fabricated confession of the plaintiff was introduced at trial through police testimony); *Stinson v. Gauger*, 868 F.3d 516, 528 (7th Cir. 2017) (*en banc*) (due process violated when police collude with a witness to fabricate expert testimony before a criminal trial and the fabrication is later

24

introduced as trial testimony); *Whitlock*, 682 F.3d at 582-84 (due process violated when witness testimony fabricated by police before trial is introduced at trial by an immune prosecutor). Plaintiff's brief in response to Defendants' motion for summary judgment further explains why Guevara and Halvorsen's argument is baseless, and that discussion is incorporated here. Dkt. 520 at 34-39.

> iv. *There is ample evidence from which a jury can conclude that Guevara and Halvorsen suppressed exculpatory and impeaching evidence.*

On Plaintiff's *Brady* claims, Guevara and Halvorsen rely on a set of scattershot arguments centered around the argument that the suppressed evidence was not material, and could have been discovered by Plaintiff's counsel through the reasonable exercise of due diligence. Dkt. 502 at 25-33. But the arguments are entirely dependent on a one-sided reading of the evidence that requires construing all evidence in Defendants' favor.

First, to the extent Guevara and Halvorsen argue that Plaintiff's Brady claim simply "recast" his fabrication claims as *Brady* claims, they are both wrong as a matter of law, as set forth in Plaintiff's response brief, Dkt. 520 at 42-47; but also fails to address the ample additional exculpatory and impeaching evidence that was withheld from Sierra. Among other things, Guevara and Halvorsen did not disclose that Rodriguez and Melendez told them they could not make an identification, that Rodriguez looked at photos for five to ten minutes, and that Rodriguez and Melendez both identified ways in which the car they were shown in the parking lot looked different than the shooter's car. PSOF ¶¶200-202; Dkt. 520 at 39-57. Guevara and Halvorsen's only argument to dismiss these claims is that they are not material, and could have been otherwise learned of through counsel's reasonable diligence. Dkt. 502 at 28-32. But those are clearly fact fact-intensive inquiries to be resolved by a jury, not by granting all inferences in

Guevara and Halvorsen's favor. Guevara and Halvorsen's efforts to dismiss Plaintiff's *Brady* claims are also frivolous. Dkt. 520 at 57-66.

>    v. *Given all of the above, there are clearly disputes of fact that preclude any attempt at summary judgment on Plaintiff's malicious prosecution, conspiracy and other remaining claims.*

For all of the reasons set forth above, Guevara and Halvorsen's attempt at summary judgment on Plaintiff's remaining claims is equally frivolous. For example, there is ample evidence creating a dispute of fact as to whether they fabricated every piece of evidence used to justify Plaintiff's arrest and the approval of charges against him—the Esther Reyes story, Melendez and Rodriguez's identifications of Sierra, the car purportedly used in the shooting, and much more—so then how can Guevara and Halvorsen now seek to move for summary judgment on his Fourth Amendment and malicious prosecution claims? They rely on the argument that Rodriguez's identifications were not fabricated, and independently support summary judgment. Dkt. 502 at 50-53. But as set forth above, the claim that there is not a dispute of fact as to whether Rodriguez's identifications were fabricated is frivolous, *see supra* at 19-22, and so their effort to dismiss these claims is equally frivolous.

Likewise, any argument that they cannot be found liable for conspiring with one another, among others, is equally frivolous. They worked together to develop nearly every item of fabricated evidence, and then documented it all together. Dkt. 520 at 96-101.

## II.     THE COURT SHOULD SANCTION DEFENDANTS GUEVARA AND HALVORSEN

Because Halvorsen's and Guevara's motions were premised on frivolous arguments, as set forth above, Rule 11 sanctions should be imposed.

The court has broad discretion in setting a sanction award that it believes will serve the deterrent purpose of Rule 11, the central purpose of which is to deter baseless and frivolous

filings. *See Divane v. Krull Elec. Co.*, 319 F.3d 307, 314 (7th Cir. 2003); *Whitehouse v. Piazza*, No. 05 C 1638, 2007 WL 9809230, at *7 (N.D. Ill. May 21, 2007). Rule 11 also serves the additional purpose of "compensating the victims of the Rule 11 violation as well as punishing present litigation abuse, streamlining court dockets, and facilitating court management." *In re Kunstler*, 914 F.2d at 522 (citations omitted). To achieve these aims, the court may "impose a flat sanction, it may strike offensive pleadings, or—more commonly—it may direct the offending party to pay the other party's reasonable attorney's fees." *Divane,* 319 F.3d at 314.[5]

In doing so, the Court must make a finding of bad faith before imposing sanctions. *Roblox Corp. v. Bigfinz*, No. 23 C 5346, 2023 WL 8258653, at *1 (N.D. Ill. Nov. 29, 2023). The inquiry into bad faith is an objective one. *Egan v. Huntington Copper Moody & Maguire, Inc.*, No. 12 C 9034, 2015 WL 1631547, at *5 (N.D. Ill. Apr. 10, 2015), *aff'd sub nom. Egan v. Pineda*, 808 F.3d 1180 (7th Cir. 2015) ("Bad faither or vexatious conduct, in both the inherent power and § 1927 contexts, does not require subjective bad intent; certain types of reckless conduct suffice). Bad faith can be demonstrated when attorneys "recklessly mak[e] a frivolous claim." *Egan v. Pineda*, 808 F.3d 1180, 1180 (7th Cir. 2015); (collecting cases in support); *Mullen v. Butler*, 91 F.4th 1243, 1254 (7th Cir. 2024); *Roblox Corp.,* 2023 WL 8258653, at *1 (N.D. Ill. Nov. 29, 2023) ("Objective bad faith consists of reckless indifference to the law:

---

[5] Notably, Rule 11 is not the only mechanism by which the Court can sanction Guevara and Halvorsen for their misconduct. Sanctions can be imposed under 28 U.S.C. § 1927 and through the court's inherent authority. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (fundamental principle of jurisprudence that the courts vested with the "power to impose silence, respect, and decorum in their presence, and submission to their lawful mandates."); *Fuery v. City of Chicago*, 900 F.3d 450, 463 (7th Cir. 2018) (court's power to sanction individuals who "act in bad faith, vexatiously, wantonly, or for oppressive reasons"); 28 U.S.C. § 1927 (allows for the reimbursement of "excess costs, expenses, and attorneys' fees reasonably incurred" because an attorney engages in conduct that multiplies the proceedings in a way that is unreasonable and vexatious); *Webster v. Bunge-SCF Grain, LLC*, No. 23-CV-3026, 2024 WL 343167, at *3 (C.D. Ill. Jan. 30, 2024) ("Section 1927 is intended to deter frivolous litigation and abusive practices by attorneys and ensure that those who crate unnecessary costs also bear them.").

pursuing a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound.") (citing *4SEMO,* 939 F.3d 905, 913 (7th Cir. 2019)).

Guevera's and Halvorsen's motions reflect that they have paid no heed to the Seventh Circuit's warning that "the failure to take seriously the summary judgment standard is improper and sanctionable." *Littler v. Martinez*, No. 216CV00472JMSDLP, 2020 WL 42776, at *3 (S.D. Ind. Jan. 3, 2020). Parties are not permitted to file for summary judgment based on a try it and see philosophy or premised on an attempt to get the Court to follow them down a path of legal error. *See Meeks v. Jewel Companies, Inc.*, 845 F.2d 1421, 1422 (7th Cir. 1988) ("The attitude [reflected in the party's brief] seems to be, it can't hurt to ask. It can. Any frivolous motion . . . is subject to sanctions . . . ."); *see also Littler*, 2020 WL 42776 at *3 ("It violates Rule 11(b)(2) for counsel to ask the Court to commit an obvious legal error . . . .").

Guevara and Halvorsen were aware of the factual disputes in the record, as was obvious from the enormous record of obvious disputes, the battle of experts on virtually every issue, Plaintiff's correspondence prior to summary judgment raising the impropriety of summary judgment given the numerous fact disputes, and Guevara and Halvorsen's invocations of the Fifth along with their attendant legal consequences. And they raised unsound legal arguments that have failed in every prior case involving Defendants Guevara and Halvorsen, and if adopted would lead to an appeal and the Court's ruling being overturned.

These tactics unnecessarily increase the costs of litigation. In fact, it is precisely the sort of foreseeable consequence the Seventh Circuit has counseled litigants to avoid:

> This approach to summary judgment is also both costly and wasteful. If a district court grant summary judgment in a party's favor based on its mischaracterization of the record, the judgment will in all likelihood be appealed, overturned, and returned to the district court for settlement or trial. This course is much more expensive than simply pursuing a settlement or trying the case in the first instance.

*Malin v. Hospira, Inc.*, 762 F.3d 552, 564–65 (7th Cir. 2014).

The Seventh Circuit's warning is not the only admonishment Guevara and Halvorsen have disregarded. Six months ago, Guevara's and Halvorsen's counsel appeared before Judge Rowland in *Ricardo Rodriguez v. Reynaldo Guevara, et al.*, No. 18 C 7951 (N.D. Ill.). *See generally* Ex. 2 (Hearing Transcript). During the status hearing the parties discussed Guevara's flip-flopped stance on pursing summary judgment. *Id.* at 13-16. Plaintiff argued that Guevara had "walked back" his position that he was not going to move for summary judgment, and a motion for summary judgment on his behalf would not be in good faith. *Id.* at 13. After hearing from the parties, Judge Rowland warned Guevara's counsel to make sure there was a good faith basis to file for summary judgment. *Id.* at 15. The Judge went further and instructed Guevara's counsel to lean on prior experience to determine if summary judgment could be filed in good faith:

> So if you're going to file one, make sure you have a strong basis because you've already been to trial on these cases a couple times. . . . You've already been down this road. I actually looked at the first one of these case. It was in front of Judge Grady. There were not motions for summary judgment filed. It's a 2005 case.[6] No motions for summary judgment filed. There's one motion on one count because of a statute of limitations from the Supreme Court. No motions for summary judgment were filed. And the case went to trial. So everybody might want to look at that docket.

*Id.* at 15-16. (emphasis added).

That advice was not followed. Guevara and Halvorsen should be directed to withdraw their motions for summary judgment in their entirety, or in the alternative their motions should be summarily denied. They should then be directed to participate in meaningful efforts to reach agreement to proceed to trial. Once it is clear that Guevara and Halvorsen cannot move, and that there will be a trial on Plaintiff's claims against them, perhaps Defendants will take seriously Plaintiff's offer to dismiss certain other Defendants so the case can proceed to trial.

In addition, an award of attorneys' fees is appropriate here. Guevara's and Halvorsen's motions are voluminous and required Plaintiff to devote hundreds of hours of time and resources

---

[6] *Juan Johnson v. Reynaldo Guevara, et al*, No. 05-c-1042 (N.D. Ill.).

to respond to their motions, and to catalog all of the disputes of fact that preclude summary judgment. Dkts. 518-520. In addition, Plaintiff has spent significant additional time drafting this motion for sanctions. Plaintiff should be compensated for all of this time spent responding to frivolous motions. *See Xped LLC v. Entities Listed on Exhibit 1*, No. 21 CV 6237, 2023 WL 5748350, at *16-17 (N.D. Ill. Sept. 6, 2023); *Mallory v. Rush Univ. Med. Ctr.*, No. 18 CV 4364, 2020 WL 6152670, at *3 (N.D. Ill. Oct. 20, 2020); *Intellect Wireless, Inc. v. Sharp Corp.*, 87 F. Supp. 3d 817, 854-55 (N.D. Ill. 2015); *Clarendon,* 2006 WL 8431817; *McKenzie-Morris* 638 F. Supp. 3d at 341-342.

Without a meaningful consequence for pursuing improper litigation tactic, there is little reason for Guevara and Halvorson to not keep using the "try it and see" tactic in these cases. The continued use of this tactic will exact a tremendous cost on the dozens of victims of Guevara and Halvorsen's misconduct, on taxpayers who will bear the expense of the hundreds of additional attorney hours on both sides, and ultimately on the many district judges and court staff in this District burdened by the weight of such voluminous motion practice.

## CONCLUSION

Wherefore, for the foregoing reasons, Plaintiff respectfully requests that the Court enter an order denying Defendants Guevara and Halvorsen' motions and imposing attorneys' fees as a sanction for filing motions for summary judgment in violation of Rule 11.

May 8, 2024

RESPECTFULLY SUBMITTED,
**THOMAS SIERRA**

By: /s/ Anand Swaminathan
*One of Plaintiff's Attorneys*

Jon Loevy
Anand Swaminathan
Steve Art

Rachel Brady
Sean Starr
Meg Gould
Wally Hilke
Ruth Brown
**LOEVY & LOEVY**
311 N. Aberdeen Street
Chicago, IL 60607
(312) 243-5900
anand@loevy.com

31